Page 1

IN THE CIRCUIT COURT OF COOK COUNTY

COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF         *
ILLINOIS,                      *
                               *
           Respondent,         *
                               *
VS.                            *   No. 83 CR 769
                               *
ROBERT SMITH,                  *
                               *
           Petitioner.         *

---------------------------------

AUDIO TRANSCRIPTION OF

VIDEOTAPED DEPOSITION OF

DANIEL McWEENY

Taken January 13, 2020

---------------------------------

Transcriptionist: Carmel Martinez

Job Number: 175067

Daniel McWeeny

end, we would reserve signature so that we can allow him to review the court reporter -- since there is no court reporter present --

MR. CHANEN:  Yeah.

MS. BENJAMIN:  -- to review any transcript that was prepared.

MR. CHANEN:  That's not a problem.

EXAMINATION

BY MR. CHANEN:

Q.  Mr. McWeeny, on November 10th, 2005, you appeared before a Special Cook County Grand Jury.  Do you recall doing that?

A.  When was this?

Q.  November 10th, 2005.  This is often called the Egan-Boyle Grand Jury.

A.  Yes, I did.

Q.  And at that time you stated under oath that Jon Burge was the, quote, the best supervisor I ever worked for ever, closed quote.  Is that still your position today?

A.  Absolutely.

Q.  And you're aware that Jon Burge is reputed to have tortured suspects into confessing?

MS. BENJAMIN:  Object to the form of the

Page 6

Daniel McWeeny

question.

A. I don't -- repeat the question again?

Q. (By Mr. Chanen) Sure. You are aware that Jon Burge is reputed to have tortured suspects into confessing?

A. Yes.

Q. Did you ever see him do that during your time under his command?

A. No.

Q. Did you ever see him physically strike an individual in police custody?

A. No.

Q. Did you ever see him put a plastic bag over the head of a person in police custody?

A. No.

Q. Sir, you understand that you're under oath today, correct?

A. Correct.

Q. And you understand that requires you to tell the truth in every regard, correct?

A. I abs -- I do know what perjury is, yes, sir.

Q. All right. And you understand that, notwithstanding that you are -- have a use immunity agreement for your testimony today, if you were to give

Daniel McWeeny

false testimony, that would wipe out the protections of the immunity agreement, correct?

A. I got no problems testifying to anything that I ever did with Jon Burge or -- as my -- or my work as a police detective for the City of Chicago. I got problem talking to you or anybody else about it.

Q. All right.

A. As a matter of fact, I'm glad I'm talking about it with you.

Q. Did you ever see Jon Burge put a gun to someone's mouth or against his head while that person was in police custody?

A. No.

Q. Did you ever see him use electroshock on an individual in police custody?

A. No.

Q. Did you ever physically torture a suspect when you worked under Jon Burge's command?

A. No way.

Q. Did you ever physically strike any person when you worked under his command regardless of whether that person was a suspect or not?

A. No.

Q. Did you ever physically strike any individual

Daniel McWeeny

in police custody?

A. No.

Q. Did you ever bag an individual in police custody?

A. No, sir.

Q. You know --

MS. BENJAMIN: Object to form.

Q. (By Mr. Chanen) And you know what I mean by the word "bag" someone?

A. Yes.

Q. That's where you take a typewriter -- a plastic typewriter bag or other form of bag and put it over their head so they have that sense that they're suffocating, correct?

MS. BENJAMIN: Object to form.

Q. (By Mr. Chanen) That's what bagging someone means.

A. Well, if you say so, but no, I've never seen anything like that.

Q. Did you ever use electroshock on an individual in police custody?

A. No, sir.

Q. Did you ever see any fellow detective at Area 2 torture a suspect?

Daniel McWeeny

A. No, sir.

Q. Did you ever see any fellow detective at Area 3 torture a suspect?

A. No, sir.

Q. How about physically lay hands on an individual in police custody in any -- let me rephrase that.

Strike a person in police custody in any way, did you ever see that, a fellow detective do that?

A. I'm not following your context.

Q. Yeah, that was a badly-phrased question; let me try again.

Did you ever see a fellow detective at Area 2 or Area 3 physically strike an individual in police custody?

MS. BENJAMIN: Object to form.

A. Self-defense. But if you're saying if I ever seen anyone deliberately hit somebody --

Q. (By Mr. Chanen) Right.

A. -- because they wanted just to hit them or get a thing, no, I never did.

Q. Okay.

A. But I have been involved myself in situations that were of self-defense in which --

Q. You had to strike back?

Daniel McWeeny

A. Well, you have to defend yourself, yes.

Q. Okay. Did you ever see a fellow detective bag a person in police custody?

A. No, sir, I did not.

Q. Did you ever see a fellow detective use electroshock on a person in police custody?

A. No, sir, I did not.

Q. Is it correct that you took the Fifth Amendment in a case called Patterson versus Burge?

MS. BENJAMIN: Object to form. Is that a civil case that you're referring to?

MR. CHANEN: Yes.

MS. BENJAMIN: Do you have a case number?

MR. CHANEN: Yeah, I do, sorry. Civil case 03-CV-4433.

A. That's --

Q. (By Mr. Chanen) It's a civil rights case that was filed against --

A. Aaron Patterson?

Q. Yes, sir.

A. Yes.

Q. Okay. And that -- so you were subpoenaed to either testify in a deposition or at trial in that case and you -- is that correct?