IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Robert Smith Jr.,** <br> **Plaintiff,** <br> <br> v. <br> <br> **City of Chicago, et al.,** <br> **Defendants.** | No. 21 C 1159 <br> <br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion to dismiss Defendant Rowan and for leave to file a third amended complaint naming Defendants Rios and Hughes [122, 128] is granted in part and denied in part. Plaintiff's unopposed request to dismiss Rowan as a defendant is granted, and Plaintiff's request to file a third amended complaint naming Rios and Hughes is denied.

## STATEMENT

Plaintiff moves for leave to file a third amended complaint, seeking to dismiss one named defendant, Detective M. Rowan, and add two Chicago Police Officers, Martin Rios and Warren Hughes. The City of Chicago ("the City") objects to the addition of Officers Rios and Hughes as untimely, prejudicial, and futile. The City does not object to Plaintiff's request to dismiss Detective Rowan.

Plaintiff alleges against all Defendants various constitutional and state-law violations based on his wrongful arrest, conviction, and imprisonment. Plaintiff filed his initial complaint on March 1, 2021. (Compl., Dkt. # 1.) After the Court sua sponte struck Plaintiff's initial complaint as containing unnecessary verbiage and not in compliance with Federal Rule of Civil Procedure 8(a)(2), (4/28/21 Order, Dkt. # 20), Plaintiff filed an amended complaint on May 11, 2021. (Am. Compl., Dkt. # 25.) The Court's scheduling order directed that any amendments to the complaint were to be filed by August 5, 2021. (Dkt. # 22.) On July 19, 2021, Plaintiff sought, and later received, a three-week extension of time in which to file an amended complaint, to August 26, 2021. Plaintiff filed a second amended complaint on August 26, 2021, adding one Chicago Police Officer, who is not subject to this motion, as a defendant. (Dkt. # 82.)

On December 2, 2021, over Plaintiff's objection, the Court granted Defendants' motion for a 45-day extension of the fact-discovery close date, to January 20, 2022. (Dkt. # 120.) At no time did Plaintiff raise the possibility that he would be adding more defendants. Less than a week later, though, on December 7, 2021, Plaintiff filed the instant motion seeking to add Rios and Hughes. In its initial response to Plaintiff's motion, the City noted that Plaintiff had failed to attach a proposed third amended complaint and had not established good cause under Rule 16(b)(4) to add defendants beyond the date in the scheduling order. At the hearing on the

motion, the Court granted Plaintiff leave to file a supplement to the motion for leave to amend, which he did on December 16, 2021. As part of the supplement, Plaintiff filed a proposed third amended complaint, alleging against Rios two federal claims for coerced confession and conspiracy and three state-law claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy. Against Hughes, Plaintiff alleges fabrication of evidence used at trial, failure to intervene, and conspiracy, and three state-law claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy.

The City then filed a comprehensive response to the supplement, which incorporated all its objections to the proposed amendment. To the extent the City objected to Plaintiff's initial failure to file a proposed third amended complaint, Plaintiff cured the failure, and the City has had the opportunity to respond to the proposed amendments. Therefore, this basis for denial of the motion for leave to file a third amended complaint is rejected.

"When a party moves to amend its complaint after the amendment deadline set in a Rule 16 order, the Court first considers whether to extend the deadline under the 'heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.'" *Lynch v. United States*, No. 2:17-CV-43-JVB-JEM, 2021 WL 4932854, at *1 (N.D. Ind. Oct. 22, 2021) (citation omitted). "'In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment,' a burden that 'is more onerous than Rule 6(b)(1)(B)'s excusable neglect requirement.'" *Id*. (citations and certain internal quotation marks omitted).

The City notes that Plaintiff was aware of Officers Rios and Hughes' purported liability long before Plaintiff filed the instant motion for leave to file a third amended complaint. In fact, in 1989, Plaintiff testified at a suppression hearing that the first officer to abuse him at Area 2 was the uniformed officer who transported him (i.e., Officer Rios), when that officer kicked him in the chest. (2/6/1989 Tr., City's Ex. 1, Dkt. # 132-1, at SMITH-003469 to SMITH-003470). In addition, on July 14, 2011, Plaintiff swore in an affidavit filed in his postconviction proceedings that "Officer Rios kick[ed] me in the chest which knocked me down" in an interview room at Area 2. (Pl.'s 7/14/11 Aff., City's Ex. 2, Dkt. # 132-2, ¶ 10.) Plaintiff explains his failure to name Rios earlier as follows:

> The City is correct that Smith has known since September 19, 1987, that it was a plain-clothes officer who kicked him the chest, and by February 1989, Smith knew that officer's name was Rios. The City is also correct that Smith could have named Rios at any time since filing his initial Complaint in March 2021. He did not, however, because until very recently, he believed that there was good reason to name only detectives who participated in the conspiracy, emphasizing that the detectives had worked at Area 2 Violent Crimes under the command and tutelage of notorious Commander Jon Burge. It was not until November and December that Smith realized that was a strategic mistake, that by omitting Rios, the Defendants would try to use Rios's kick to Smith's chest as the sole violence that was perpetrated against him that day, and that since Rios was not a named defendant, the detectives would employ an "empty chair defense," attempting, as just one example, to shift the blame for Smith's broken rib to Officer Rios.

2

(Pl.'s Reply, Dkt. # 137, at 6.) Further, Plaintiff acknowledges that he was "negligent" in failing to name Rios but argues that the failure should be considered excusable neglect because "recent developments in the case" put Plaintiff's counsel on notice that Rios should be named. Plaintiff first states:

> Defendants spent a lot of time during Smith's recent deposition suggesting that he is not able to identify which Detectives in fact beat him. While Plaintiff's counsel believe that he will do fine in doing so, they nevertheless decided that naming at least one person over whom the identification is unequivocal was of value in light of the defense the Defendants are attempting to develop. Indeed, on the very same day the City opposed Smith's motion to add Rios, the Individual Defendants were busy trying to take advantage of his absence from the case.

(*Id*. at 6-7.) Plaintiff further contends that the officers' counsel was delinquent in timely producing the officers for deposition, and "[i]t was only during those November and December [2021] depositions that Smith first learned that the detectives were not only denying beating and abusing him, but also now claim that they cannot even recall interrogating Smith *at all*." (*Id*. at 7.) (emphasis in original). According to Plaintiff, he "could not anticipate this testimony and shift in the detectives' defense strategy, certainly not in light of the police reports and records showing the same detectives taking leading roles in Smith's interrogation and the homicide investigation." (*Id*.)

The Court is unpersuaded. This is not the first wrongful conviction case in which Plaintiff's counsel has been involved; he is well aware that stories and testimony change, particularly when the events at issue occurred over 30 years ago, and the "empty-chair" defense is not novel. Moreover, Plaintiff can plead claims against a defendant provided he has a good-faith factual basis for the allegations. Plaintiff admits that he possessed this good-faith belief prior to filing the complaint in this case; his strategic miscalculation is not good cause for allowing a last-minute amendment to the complaint. The Court need not address Plaintiff's contention that his failure to include Rios constituted excusable neglect.

With respect to Hughes, Plaintiff contends that Hughes lied when he testified on August 28, 1990 at Plaintiff's criminal trial that Plaintiff dove into a pool of blood at the crime scene. Plaintiff knew of Hughes' alleged role in the wrongdoing prior to filing the instant lawsuit. Not only was Plaintiff present for Hughes's original testimony, but on April 2, 2020, nearly one year prior to filing the instant lawsuit, Plaintiff alleged in a state-court postconviction brief that "[t]he bottom line is that the testimony of Officer Hughes was wholly unreliable, repeatedly inconsistent with McWeeny's testimony, and was clearly fabricated in order to bolster McWeeny's completely implausible version of the blood incident." (City's Ex. 4, Dkt. # 132-4, *Ill. v. Hughes*, No. 87 CR 15089 (Cir. Ct. Cook Cty.), Pl.'s Mem. Support Summ. J., at 46.) According to Plaintiff, the City's delays in producing both a report from the Office of

3

Professional Standards ("OPS")[1] and Hughes for a deposition were the cause of Plaintiff's failure to name Hughes earlier.

Plaintiff's attempt to place the blame on the City for his late addition of Hughes is unavailing. Plaintiff acknowledges that Hughes "joined [the conspiracy to frame Plaintiff] in August 1990 when he agreed to corroborate the fabricated 'dove-into-a-pool-of-blood' story during Smith's August 1990 trial." (Pl.'s Reply, Dkt. # 137, at 4-5.) Indeed, Plaintiff himself refers to the original complaint in this case, which "describes the fabricated 'dove-into-blood' story in detail," but inexplicably fails to name Hughes expressly. (*Id*. at 5.) Plaintiff contends that he "*suspected* all this about Hughes prior to November 2021, but he was not in a position to *prove it* until after he reviewed the hidden OPS Statement" because "Smith did not receive Hughes' OPS Statement *ever* until August 13 of this year, and, as the Court is already aware, Smith did not have a chance to depose Hughes until November 22." (*Id*. at 5) (emphasis in original). But Plaintiff had a good faith belief of Hughes' involvement as of August 1990, when Hughes purportedly gave false testimony at his criminal trial -- that is sufficient to have included him in the instant complaint. He, moreover, continued to argue against extending discovery deadlines even after deposing Hughes. The Court finds that Plaintiff also has not been diligent in seeking the amendment as to Hughes.

In addition, as the City notes, if the Court were to grant Plaintiff's motion, the City would have less than one month to conduct discovery. Plaintiff claims that the City's concerns about its inability to evaluate the claims and conduct discovery are unspecified, ill-founded, and disingenuous and notes that counsel for the City and the individual officers participated in and asked questions at both Rios' and Hughes' recent depositions. But given that neither the City's nor the individual officers' counsel had reason to believe that these officers were potentially liable, their questioning may not have been as thorough as it otherwise might have been. If the officers are added as defendants, the Court would be obligated to once again extend the close of fact discovery to allow these defendants time to fully explore and evaluate the claims against them and conduct possible motion practice and additional discovery. The Court is not willing to do so under the circumstances.

Because the Court has concluded that relief is not appropriate under Rule 16, it need not address the City's other bases for denial.

---

[1] According to Plaintiff, "Hughes' OPS Statement was the game-changer in terms of proof because in that January 1988 statement Hughes told OPS the exact opposite of what he told Smith's criminal jury in August 1990." (Pl.'s Reply, Dkt. # 137, at 5.)

  For these reasons, Plaintiff's motion for leave to file a third amended complaint is granted in part and denied in part. Plaintiff's motion for leave to amend to add Officers Rios and Hughes is denied, and his motion to dismiss Detective Rowan is granted.

**Date**: January 4, 2021

*Ronald A. Guzmán*
**Ronald A. Guzmán**
**United States District Judge**