IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
|         Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Ronald A. Guzman |
| The City of Chicago, et al. | ) | Honorable David Weisman |
| | ) | |
|         Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPOUSAL PRIVILEGE MOTION

Plaintiff Robert Smith opposes Defendants' Motion Challenging Plaintiff's Assertion of Spousal Privilege and for Leave to Re-Depose Plaintiff, Dkt.130 ("Motion") on several grounds. If, however, this Court concludes that Smith's failure to object to questions put to Diane Smith at her deposition leads not only to a waiver of Diane Smith's assertion of the privilege, but also to his own assertion of the privilege, Smith is prepared to answer any question he refused to answer on November 17 that were also put to Diane Smith on October 26 and answered by her.

At the same time, Smith: (1) disagrees with Defendants that *United States v. Brock* answers the question of whether Smith's failure to object at Diane Smith's deposition constitutes a waiver of both Diane Smith's spousal communications privilege and Robert Smith's spousal communications privilege; (2) disagrees with Defendants that his counsel's failure to object to certain questions put to Diane Smith during her deposition constituted a "subject matter waiver" with respect to any subject or conversation; and (3) if the Court decides to compel Smith to answer certain questions, disagrees that the Court should permit questions beyond the specific words between husband and wife that Diane Smith has already in fact disclosed, which, as Defendants concede in their motion, are specifically limited as follows:

(A) **3:07 a.m. TELEPHONE CALL.** At deposition, Diane Smith disclosed that Robert called Diane at approximately 3:00 a.m. and asked Diane to pick him up at 87th or 83rd and Racine and that "he was finished or something" (24:24-26:2) and that "he was washing something" (Diane Smith Deposition, 159:23-160:13).

(B) **5:15 a.m. CAR RIDE.** Diane Smith picked Robert up at approximately 5:15 a.m., and she disclosed that she said to Robert, "Before going home, I'm going to just run by my mother's house." (81:24 – 83:1). Diane Smith also disclosed that during that car ride Robert said to her that he "was starting something new or something like that," "was finished, done with it, something like that," "was going to turn over a new leaf," "was sorry about things he had done in the past or something," and "wanted to start something over." (82:17-83:9)

(C) **DRUG USE.** Diane Smith disclosed that she had "fights" (the word Defendants used in the question) with Robert about "what he was doing in the area of 87th with Santee and Sally" and that those "fights" continued "through September 1987." Ms. Smith then stated, "I wouldn't say fights, would say arguments." (52:2-53:4 and 80:11-82:12)

(D) **POLICE BEATINGS AND INNOCENCE.** Diane Smith disclosed that Robert told her he was beaten by the police at the police station, that he was "injured at the police station," "that he was tricked into signing the confession," and that "he did not do [the murders]." (135:16-17 and 137:7-21)

## THE FACTS RELEVANT TO THIS MOTION

On January 5, 1985, Robert Smith and Diane Yeager married.

On September 19, 1987, Diane's mother and grandmother were brutally murdered in their home by someone whom Area 2 Violent Crime Detectives never even looked for because they decided to frame Robert Smith for the murders instead. They beat a fabricated and false confession out of him (which he gave orally but refused to sign in writing), and they fabricated extensive additional evidence to frame him for the murders of his own in-laws, which he had nothing to do with. In August 1990, based on the confession and other fabricated evidence, a jury convicted Smith of the murders.

By 2020, the State had overwhelming doubts about the evidence used to convict Smith, and on October 23, on the State's motion, the Circuit Court vacated Smith's murder

2

convictions and dismissed the murder indictment against him. He was released from an Illinois prison the same day. On November 6, 2020, Cook County's Chief Criminal Judge concluded that Smith had established that he "was innocent of the crimes for which he had been convicted" and awarded Smith a Certificate of Innocence.

On March 1, 2021, Smith brought this lawsuit. On October 26, 2021, Diane Yeager Smith gave her deposition in this case. Diane Smith represented herself at the deposition. She had turned down the offer of Robert Smith's counsel to help her locate a lawyer to represent her. Smith did not object to some questions directed at Diane that invaded the spousal communication privilege. Diane Smith waived for herself the statements identified above, and a central question, but not the only question, presented by this motion is whether Robert's failure to object to Diane's waiver of her spousal privilege also constituted a waiver for Robert's own assertion of the privilege.

On November 17, 2021, Smith gave his deposition, and his counsel directed him not to answer certain questions based on the spousal communications privilege. Defendants initially took the position that the spousal privilege does not apply at all in federal civil litigation. Robert Smith Dep. at 49 ("Pardon? [Spousal privilege] does not exist in federal court."); *Id.* at 50 ("So you are directing Mr. Smith not to answer that question based on a spousal privilege that does not exist in a civil case? I just want to make it clear."); *Id.* at 51 ("Then we better take a break right now. Because if not, we're going to have to adjourn this deposition so that we can have this dealt with by the Court because it's absurd.").

After an eleven-minute break in the deposition, Plaintiff's counsel provided Defendants' counsel with Judge Kendall's decision in *Stanfield v. Dart*, which is discussed

3

extensively below and unquestionably holds that the spousal communication privilege is protected in federal civil proceedings. When the deposition resumed, Smith's counsel directed Smith not to answer certain questions, and when, several pages later, Defendants' counsel switched from the privilege is "not applicable in federal proceedings" to "Smith waived the privilege at Diane's deposition," Smith's counsel immediately responded:

> Even if we waived the privilege, which I'm not sure we did, but if we did, for sake of argument, waived it as to [Diane Smith], that doesn't mean we are required to then waive it as to Mr. Smith. Because Mr. Smith could end up testifying at the trial and Mrs. Smith would not end up testifying at the trial, and if that were to happen, then we're still allowed to assert the privilege as it applies to him.

Robert Smith Deposition at 57.

Defendants never initiated a Local Rule 37.2 meet and confer to discuss the parties' disagreement. Then, more than one month later, December 21, Defendants filed this Motion.

## ARGUMENT

Plaintiff *agrees with* Defendants' core propositions:

- Communications between a husband and wife are presumptively confidential;
- The marital communications privilege is applicable in federal civil litigation; and
- Both the party-spouse (Robert Smith) and the witness-spouse (Diane Smith) each have their own *independent right to invoke the spousal privilege* when faced with "questions about communications that occurred during marriage."

*See* Motion at 3 (citations omitted). The sole issue on this motion is waiver. Defendants assert that Smith waived his own spousal privilege in three different ways:

(1) by failing to object to certain questions put to Diane Smith at her deposition;

(2) by answering certain questions that were put to him at his own deposition; and

(3) by "injecting" into this case the defendant police officers' treatment of Smith during his in-laws' murder investigation.

For reasons explained in detail below, with respect to Defendants' first argument we could find only two cases that address the distinct privileges held by husband and wife in relation

4

to waiver; neither favors the Defendants' position. Defendants' second argument has no support in the factual record. Defendants' third argument has no support in the case law.

I. SMITH DID NOT WAIVE HIS OWN SPOUSAL PRIVILEGE BY FAILING TO OBJECT AT HIS EX-WIFE'S DEPOSITION; BUT EVEN IF HE DID, HIS WAIVER IS LIMITED TO THE INFORMATION SHE HAS DISCLOSED.

On pages 3 to 6 of their Motion, Defendants assert that this Court's ruling is controlled solely by the Seventh Circuit's prior opinion in *U.S. v. Brock,* 724 F.3d 817 (7th Cir. 2013), and that *Brock* holds that Smith waived *his own spousal privilege* when he failed to object at Diane Smith's deposition. *See* Motion at 5 ("when Mr. Brock did not assert [the spousal privilege] during Mrs. Brock's deposition, he waived the marital communications privilege as to [all] topics that potentially may have been confidential under the privilege"). This is wrong for at least three reasons.

First, Mrs. Brock never gave a deposition in *United States v. Brock*; she gave testimony at Mr. Brock's criminal detention hearing, and Mr. Brock himself called her to the witness stand.

Second, *Brock* answers only the question of whether Smith's failure to object on privilege grounds to questions put to Diane Smith and Diane Smith's answers to those questions waived *Diane Smith's spousal communication privilege*. It does not address at all whether Smith's failure to object to Diane Smith's waiver of the privilege also waived Robert Smith's right to assert the privilege. Plaintiff submits that *Brock* does not control this Court's waiver decision on this motion because even if Diane Smith waived *her* own spousal privilege (and Smith also waived *her privilege* by not objecting at *her* deposition), he did not waive his own privilege because if, for example, Diane Smith is not called in this trial, why should Defendants be permitted to compel Robert Smith to testify to those privileged communications? Unlike an attorney-client communication, where once disclosed, the

5

privilege is waived in its entirety, here, as Defendants concede, each spouse has an independent right to assert the privilege. *See* Motion at 3. In other words, while Smith's failure to object now permits Defendants to use *Diane's deposition testimony* in this case (which is what *Brock* holds), that waiver did not necessarily also waive Robert Smith's assertion of the privilege *as to his own testimony*. As noted above on page 4, Smith's counsel made precisely this point during Robert Smith's deposition.

Third, Plaintiff has been able to locate only two cases that appear to even touch on the question before this Court: *Andrews v. Holloway,* 256 F.R.D. 136, 147 (D.N.J. 2009) and *Stanfield v. Dart*, No. 10 C 06569, 2011 WL 5301784, at *4 (N.D. Ill. Nov. 3, 2011). In *Andrews*, the district could held that:

> One spouse may waive the ability to assert the spousal communication privilege *on his or her own behalf,* where he or she has not asserted the privilege through a timely objection, or has already testified as to certain confidential communications, but the privilege is held by both spouses, and thus it would be inconsistent to permit the waiver by one spouse (by testimony or failure to assert the privilege) to constitute a waiver of the privilege on behalf of the other spouse.

*Andrews*, 256 F.R.D. at 147 (internal citations omitted). In other words, Diane waived *her* privilege by answering the questions and by failing to object, Robert waived any argument that Defendants cannot use *Diane's testimony*. Neither action, however, stands as an intentional waiver with respect to Robert asserting his own privilege at his own deposition.

More importantly, in *Stanfield v. Dart*, No. 10 C 06569, 2011 WL 5301784 (N.D. Ill. Nov. 3, 2011) – a case which Defendants themselves cite six times – Judge Kendall cites *Andrews* for this same proposition and goes even farther. *Id.* at *4. In *Stanfield*, Plaintiff Barbara Stanfield was a correctional officer at the Cook County Sheriff's Department under the supervision of Defendant Thomas Snooks. Stanfield alleged that Snooks, among other things, sexually harassed and assaulted her. Stanfield subpoenaed Defendant

6

Snook's wife for deposition, and Defendant Snooks sought to quash the subpoena and for a protective order. *Id.* at *1. Judge Kendall first found that both federal and state law supported the privilege Snook was invoking, *Id.* at 2-3, and then she turned to waiver, *Id.* at 4. Stanfield argued that Defendant Snooks waived the marital communications privilege when he testified at his own deposition that he could not have performed the alleged sex act of which Stanfield had accused him. Stanfield further argued that Snooks' deposition statement also waived the privilege as to Mrs. Snooks testifying whether he "could have performed the alleged sex act" she alleged. *Id.*

Judge Kendall made several holdings that support Smith's position on this Motion. First, she cited *Andrews v. Holloway* for the proposition:

> One spouse may waive the ability to assert the marital communications privilege on his or her own behalf, but the privilege is held by both spouses, and thus its waiver by one spouse (by testimony or failure to assert the privilege) does not constitute a waiver of the privilege on behalf of the other spouse.

*Id.* She then stated,

> That Stanfield claims that [Mr.] Snooks waived the privilege does not surmount the prohibition raised by Snooks's wife: she has indicated that she does not want to testify at any deposition for this case and that she does not want to waive her marital [communications] privilege.

*Id.* The Court further held that even if Snook had waived the privilege at his own deposition *or even if he desired to waive the privilege at his wife's deposition*, Snooks's wife nevertheless had an independent and distinct right "to assert the privilege regardless of the evidentiary limitation this may pose." *Id.* Judge Kendall also emphasized that "[a] waiver requires an intentional disclosure of the content of the confidential communication by the party seeking to invoke the privilege." *Id.* Here, Robert Smith is the party seeking to invoke the privilege at his own deposition, and Defendants have not established that the waiver he made at Diane's deposition was an intentional one.

7

In sum, Smith's failure to object to questions put to Diane Smith at her deposition – questions she answered – waives the privilege as to her testimony but did not independently waive Smith's right to invoke the privilege at his own deposition. For all these reasons, Smith requests this Court to deny Defendants' motion.

## II. DEFENDANTS ARE SILENT ABOUT FEDERAL RULE OF EVIDENCE 502, WHICH CONTROLS THE SCOPE OF THE WAIVER.

If, however, the Court disagrees and orders Smith to answer the questions to which he asserted a privilege at his own deposition, Smith also disputes Defendants' position that his doing so constituted a blanket waiver "as to [all] topics that potentially may have been confidential under the privilege." Motion at 5. Defendants' statement is wrong because the scope of Smith's waiver, if any, is controlled by Federal Rule of Evidence 502(a), about which Defendants are silent. That Rule provides that Defendants must establish:

(1) that Robert Smith's waiver was intentional;

(2) that the information Diane disclosed and any aspect of those conversations that were not yet disclosed concern the same subject matter; and

(3) that both the disclosed conversations and the undisclosed conversations ought in fairness to be considered together.

Fed. R. Ev. 502(a)(1-3). To command the scope of waiver Defendants are requesting, they must establish all three elements, and here, they have not attempted to establish, nor established, any of the three. There is no evidence that Smith intentionally waived the privilege; the waiver was at worst negligent. There is no evidence that there are any additional relevant conversations between them because Defendants did not ask Diane Smith a single follow-up question about these conversations beyond what has been identified above on pages 1-2. Finally, and most importantly, the "fairness" component clearly favors Smith. Even if his lawyer negligently waived the narrow conversations disclosed by Diane, given

8

that each holds the privilege independently, and given that Robert may testify at the trial and Diane may not, it would be "unfair" to Smith for his counsel's error in not objecting to then constitute a complete subject matter waiver of every conversation Robert ever had with Diane about these narrow topics or to permit questioning about these specific conversations but then also open them up to any numerous other topics that may have been discussed, even if Defendants in fact never pursued them with Diane and even if Diane never testified about them because she was not asked. That request is wildly broader than any waiver that occurred.

Indeed, Defendants' own case, *United States v. Brock*, repeatedly emphasizes the very limited nature of the waiver that applies. See 724 F.3d at 820 ("[t]he [district] court also found that both Mr. and Mrs. Brock had waived the marital communications privilege <u>as to anything she said in the detention hearing</u>") *Id.* at 821 ("party-spouse's failure to object to witness-spouse's deposition testimony about confidential communications waived the marital communications privilege for trial <u>as to those statements</u>"); *Id.* at 822 ("We agree with the district court that what happened in the detention hearing amounted to a clear waiver of the marital communications privilege <u>as to the communications that Mrs. Brock described in her testimony</u>")(emphasis added in all three).

The bottom line is that Defendants have not met their Rule 502 burden, and if the Court re-opens Smith's deposition, the Court should not permit any questioning beyond the specific statements Diane Smith provided. At such a re-opened deposition, Smith would:

> **Confirm that** he called Diane at approximately 3:00 a.m. and asked her to pick him up at 87th & Racine and that he was cleaning up and counting some change. He has no memory of saying to her that he was "washing something" and does not believe he did so.

9

> **Confirm that** Diane Smith picked him up Sally's building at approximately 5:15 a.m. and that Diane said, "Before going home, I'm going to just run by my mother's house."
>
> **Confirm that** prior to and through September 1987 Diane questioned what Robert was doing in the area of 87th with Santee, Sally, and others and that he would respond, "just hanging in my old neighborhood." Smith would further testify that he would describe these as neither fights nor arguments, but rather, Diane showing concern for what he was up to and him not wanting to answer her question.
>
> **Confirm that** he said to Diane during the ride from 87th to 107th that he "was sorry about things he had done in the past" and that he was "going to turn over a new leaf."
>
> **Confirm that** he told Diane at Cook County Jail that he did not murder Diane's mother or grandmother.
>
> **Confirm that** he told Diane at Cook County Jail that police beat him at Area 2 and that he was injured from the beatings.
>
> **Confirm that** he told Diane that he was beaten into confessing to the murders.
>
> **Deny that** he ever told Diane at Cook County Jail that he was "tricked into signing the confession," in part because he never signed the confession and in part because it was the beatings, the promises of taking him to a doctor, and the other reasons he stated in his Complaint that got him to agree to confess orally.

This Court should therefore not permit any other questions beyond these.

### III. DEFENDANTS' TWO ADDITIONAL ARGUMENTS FOR SUBJECT MATTER WAIVER SHOULD ALSO BE REJECTED.

Defendants inserted two additional arguments into their motion to assert further that Smith had made a broad "subject matter waiver," that he did so by waiving the privilege as to certain questions put to him at his own deposition, and also that by injecting into the case the police's abuse of him, he has made a blanket waiver of any conversations he has had about the police's abuse of him. Both arguments should be rejected.

#### A. Defendants are Wrong that Smith Committed a Full Subject Matter Waiver By Answering Preliminary Questions About A Topic.

On page 7 of their Motion, Defendants assert that Smith waived his spousal privilege "when he divulged the contents of privileged conversations himself." Defendants assert,

> During his deposition, when asked about . . . conversations [with his wife], Smith voluntarily divulged certain portions of these conversations but asserted 'spousal privilege' with respect to other portions of these same conversations. By divulging certain portions of these conversations, Smith has voluntarily waived any assertion of privilege over all the content of those same conversations. *Id.*

This argument should be rejected on the sole ground that the deposition transcript simply does not bear out that Smith substantively disclosed any conversations between Diane and him at any time in the deposition and certainly not in a manner that would lead to a "subject matter" waiver broader than what Diane has already testified to.

On pages 45-49, the sole question Smith answered was,

```
18   . . . how long after you got married in
19 · ·1985 was the first time that Diane expressed
20 · ·concerns that she had about your drug use?
```

Smith answered words to the effect, "about one month before his arrest for the murder of Diane's mother," but answering a "when-was-the-first-time" question does not constitute a waiver of all conversations that a husband and wife ever had about that subject matter. By answering "in mid-August 1987," Smith did not divulge the contents of the conversation, he simply indicated that the first time she raised the topic was mid-August 1987. Defendants provide nothing to suggest that constitutes a blanket waiver.

On pages 113-115, there is no waiver of subject matter at all. Counsel allowed Smith to answer, "Did you ask your wife to pick you up during that [3:07 a,m.] phone call?," to which Smith answered "Yes." That is not a subject matter waiver of the complete contents of a 17-minute call between husband and wife. Defendants do not explain, nor can they, how "Diane, please pick me up at Sally's" opens the door to asking everything else they talked about for the next seventeen minutes.

On pages 115-118, there is no waiver of subject matter at all. In those pages, Smith's counsel asserted the privilege as to conversations between husband and wife during a car ride. The only question counsel allowed Smith to answer was:

```
13     Q.    When your wife picked you up did you
14           have a discussion about where you would go after
15           she picked you up?
16     A.    Yeah. I wanted her to go and get
17           something to eat.
```

Again, that cannot constitute a subject matter waiver of everything they talked about during the car ride from 87th to 325 W. 107th Street. Indeed, before Ms. Benjamin even asked the question above, Mr. Chanen stated that while he would be objecting to their car-ride conversation on spousal privilege grounds, he would not as to "food" or dropping by Diane's mother's home:

> Stacy, just to be clear,. . . I will let you ask any question you want about [their references to] food, and I will let you ask any question you want about going to 325 107th. And the reason why those two are distinct is, one, I don't believe they contain the confidential nature of the conversation at the same level. And two, I believe it would be waived from prior instances where [Robert has] discussed those two topics. (Smith Dep. at 115-16.)

In light of that statement to Ms. Benjamin, Defendants cannot now use "I asked to stop and get food" to constitute a blanket subject-matter waiver of the entire conversation.

This Court should reject Defendants' assertion that by "answering some questions" and not others, he waived his spousal communication privilege, and reject their assertion such waiver constituted a broad subject matter waiver.

### B. There is No "Injecting-Into-The-Case" Exception To The Spousal Communications Privilege.

In their final waiver section, Defendants rely on three cases for the proposition that because Smith has injected into this case the issue of how Defendants treated him during their interrogation of him, Smith has waived his right to assert the spousal privilege – in its

12

entirety – about that subject. Motion at 7-8, *citing Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006), *Darst v. Interstate Brands Corp.*, 512 F. 3d 903 (7th Cir. 2008), and *United Auto Ins. Co. v. Veluchamy*, 747 F. Supp 2d 1021, 1030 (N.D. Ill. 2010).

None of these three cases support the proposition Defendants assert. In *Doe*, the Seventh Circuit affirmed the district court's decision to allow defendant to see plaintiff's psychiatric records. The Court simply held that by seeking damages for emotional distress, a plaintiff "places his or her psychological state in issue," and that the defendant "is then entitled to discover any records of that [psychological] state," notwithstanding the existence of psychiatrist-patient privilege. The Seventh Circuit pointed out that this particular waiver is supported by the existence of Federal Rule of Civil Procedure 35, which allows one party to demand a psychiatric examination of the other party and therefore Seventh Circuit concluded that the waiver was triggered by Rule 35 and the Plaintiff's own emotional distress claim. 456 F.3d at 718. The case does not support Defendants' interpretation that every issue inserted into a case constitutes a waiver of that topic for all spousal communications, attorney communications, all work product, etc.

The second case, *Darst*, is a bankruptcy case that does not mention the words "privilege," "waiver," or "issues injected into the case" at all, and we cannot figure out what the case has to do with this issue. In any event, nothing in *Darst* supports the waiver of all privileges on the sole ground that an issue was injected into the case.

The third case Defendants cite is Judge Cole's second discovery opinion in *Velchumy*, in which the judge broadly states that "[a] party may surrender a privilege by affirmatively injecting an issue in the suit," 747 F. Supp. 2d at 1030, but Defendants take that quote completely out of context, and it does not mean what they say it means as it applies to this

case. In *Velchumy*, the Defendant, Velchumy waived the attorney-client privilege by refusing to file a privilege log with his generalized claim of attorney-client and work-product protection. Then later, he waived any Fifth Amendment privilege he *might* have had in producing documents or answering interrogatories by (1) failing to assert the Fifth Amendment in response to any discovery directed to him; (2) failing to assert the Fifth Amendment on a timely basis; and (3) affirmatively asserting in his Answer and Affirmative Defenses that the plaintiff had engaged in fraud and unclean hands. In other words, the controlling principle in Judge Cole's first *Veluchamy* Order was that a party cannot accuse his or her opponent of fraud and unclean hands, and then when that opponent asks the party to produce evidence in support of the allegation, assert the Fifth Amendment. 2010 WL 749980, at *3. Judge Cole concluded that allowing someone to allege fraud and then attempt to shield all discovery responses through the Fifth Amendment was "unsustainable." *Id*.

Then, in Judge Cole's second *Veluchamy* opinion he reiterated this point in dicta (it was dicta because he had already ruled that the Fifth Amendment had been waived) by concluding that "[i]mplicit disclosure [of privileged information] can occur when a holder . . . relies on a legal claim or defense, *the truthful resolution of which will require examining confidential communications*. The parlance often employed in the cases is that *one cannot use a privilege as both a shield and a sword*." 747 F. Supp. 2d at 1030 (citations omitted) (emphasis added). Here, by omitting both Judge Cole's "truthful resolution" point and the "sword and shield" point from the discussion Defendants suggest an analogy to *Veluchamy* that simply does not hold up.

Although Smith has plenty to say about how he was tortured by the police in providing a confession that the police had fabricated (and the police will undoubtedly take the stand in

14

response), Smith has not waived the spousal communication privilege simply because he shared with his wife what the Defendants did to him. Those communications are neither "required" for "the truthful resolution" of Smith's torture claims (the jury can decide the issue without hearing anything about those conversations), nor is Smith using his allegation that Defendants tortured him as both a "shield and a sword" by asserting the spousal privilege. Defendants have not and cannot explain how the mere bringing a coerced confession civil rights claim waives privileged conversations that Smith had with his wife about what the police did to him. Indeed, the exception that Defendants propose would swallow the spousal communications privilege in its entirety (and perhaps all the other privileges too), as the structural integrity appears to be nothing more than if a plaintiff makes an accusation against a defendant, that plaintiff's privileged communications about those accusations are now no longer privileged. That, as Judge Cole said in *Veluchamy*, is "unsustainable."

WHEREFORE, Smith requests the Court to deny Defendants' motion, or, in the alternative, to grant it but limit Smith's testimony to the statements he makes in this memorandum, through counsel, on page 10 above.

Dated: January 10, 2022

Respectfully submitted,
*Robert Smith Jr.*

/s/ Stuart J. Chanen

Stuart J. Chanen
Ariel Olstein
Chanen & Olstein
7373 N. Lincoln Ave.
Lincolnwood, IL 60712
(847) 469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

15