IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith Jr.,<br>      Plaintiff,<br><br>v.<br><br>City of Chicago, et al.,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 21 C 1159<br><br>  Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiff's objections to the magistrate judge's January 14, 2022 order [163] are overruled. Plaintiff's motion for leave to file an oversized reply brief [190] is granted.

## STATEMENT

**Background**

The Court assumes familiarity with the background facts of this case. Briefly, Plaintiff was convicted of the 1987 murders of his mother-in-law and grandmother-in-law. In 2020, Plaintiff's conviction was vacated, the charges against him were dismissed, and he received a Certificate of Innocence from the Circuit Court of Cook County. The instant case is Plaintiff's civil-rights action against several police officers and one assistant state's attorney, alleging that they coerced his confession, planted evidence, and fabricated evidence against him, among other things.

After granting one extension, the Court set the fact-discovery cutoff date in this case for January 21, 2022. On December 23, 2021, Defendants moved for leave to conduct DNA tests on several pieces of evidence being held by the Circuit Court of Cook County and the Chicago Police Department ("CPD"). The magistrate judge conducted two hearings on Defendants' motion; Plaintiff has attached the transcripts of these hearings to his objections. On January 14, 2022, the magistrate judge granted Defendants' motion, allowing DNA testing to proceed on the following evidence: blue undershorts; black socks; foot swabs; a white handkerchief and black plastic card case; a green jacket; extracts of evidence contained in the CPD evidence inventory; and extracts (blood vials) impounded with the Clerk of the Circuit Court. Defendants then moved the Circuit Court of Cook County to release the impounded evidence, but the presiding state-court judge agreed with Plaintiff's request to postpone release until this Court rules on Plaintiff's objections to the magistrate judge's ruling.

Plaintiff argues that the magistrate judge should have denied Defendants' request for DNA testing for the following reasons: the DNA evidence is neither relevant nor proportional to any disputed issue of material fact; Defendants' request was untimely; Defendants' request did not comply with Illinois law governing DNA testing in postconviction proceedings; and

Defendants were required to "establish some minimal chain of custody sufficient to prove that the evidence has not been tampered with, altered, or contaminated in some material respect." (Pl.'s Objs., Dkt. # 163, at 3.)

**Standard**

For non-dispositive matters, a district court may only reverse a magistrate judge's order when it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Thus, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). This Court's conclusion that it would have decided the matter differently provides an insufficient reason to overturn the magistrate judge's decision. *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006). Rather, under the clear-error standard, reversal is appropriate only when the magistrate judge's decision strikes this Court "as wrong with the force of a 5[-]week[-]old, unrefrigerated, dead fish." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001).

**Analysis**

<u>Relevance</u>. Regarding the relevance and proportionality of the DNA evidence, Plaintiff asserts that DNA has never been an issue in this case. Plaintiff notes that although DNA testing was used by the CPD during the two years preceding his criminal trial,[1] no DNA testing was conducted on the evidence in Plaintiff's criminal case, either for the trial or during the postconviction proceedings. Thus, Plaintiff contends, because both sides agree that he arrived at the crime scene several hours after the murders occurred and "ended up on the floor" where the murders were committed, the fact that he had the victims' blood on him does not indicate that he is guilty.

However, given Defendants' position that they intend to show that Plaintiff committed the murders, the Court can see no basis on the current record for not allowing Defendants the ability to make their case. For example, Defendants point out that they are seeking testing on the pair of blue undershorts that were found at the scene and which Plaintiff claims the police planted. Although Plaintiff stated in his (purportedly coerced) confession that the undershorts were his, Defendants note that at his deposition in this case, Plaintiff testified that the underwear could be that of the son of one of the victims.[2] Defendants also seek to test swabs that were taken from the soles of Plaintiff's feet after the murders. According to Defendants, the swabs

---

[1] Defendants contest that DNA testing "was prevalent in 1987 or 1990." (Defs.' Resp., Dkt. # 180, at 7.)

[2] Defendants also state in a subsequent section of their response brief that while the Special Prosecutor informed the Circuit Court that a primary basis for his dismissing the charges against Plaintiff was due to concerns related to the recovery of the undershorts and the absence of any photos of the undershorts at the crime scene, Defendants have a photo taken by the Chicago Fire Department on the morning of the murders "depicting the underwear exactly where the detectives reported they found them, refuting Plaintiff's allegation that they were planted." (Defs.' Resp., Dkt. # 180, at 9.)

contain human blood, and "Plaintiff has never offered a plausible theory how the blood of the victim(s) got on the bottom of his feet if he isn't guilty." (Defs.' Resp., Dkt. # 180, at 7.) In any event, the relevance determination is premature given that it is not clear that Defendants will seek to rely on the DNA evidence at trial.

Timeliness. With respect to Plaintiff's argument that Defendant's request was untimely, the Court finds no clear error. The magistrate judge concluded that timeliness was not an issue because Defendant's request falls under the rubric of expert discovery given that Defendants are requesting evidence for examination by their expert, and expert discovery is ongoing. To the extent Plaintiff needs additional time beyond the previously set dates to conduct his own DNA testing and inquiry into the chain of custody,[3] it may seek such relief before this Court.

Chain of custody. Nor is the Court left with a firm conviction that the magistrate judge was mistaken in concluding that he was not bound by state procedural rules in granting Defendants' request to seek release of the DNA evidence. Plaintiff argues that before granting Defendants request, the magistrate judge should have required Defendants to comply with the Illinois Code of Criminal Procedure, which states that a party moving to test DNA evidence collected by a criminal justice agency must present "a prima facie case that . . . the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." 725 ILCS 5/116-3(b)(2). The statute, however, begins by stating that "[a] *defendant may make a motion before the trial court that entered the judgment of conviction* in his or her case" for forensic evidence. *Id.* § 5/116-3(a) (emphasis added). Thus, the magistrate judge accurately concluded that the statute was inapplicable to Defendants' request in federal court. Any argument regarding compliance with the Illinois Code of Criminal Procedure should be made before the state-court judge.

Plaintiff's citation to 725 ILCS 5/116-4(d-10) does not persuade the Court otherwise. That section is entitled "[p]reservation of evidence for forensic testing," and subsection (d-10) provides that "[a]ll records documenting the possession, control, storage, and destruction of

---

[3] Plaintiff contends that he should be able to pursue other "fact" discovery during the expert discovery period, stating:

> [O]ur arson expert wants to know how much gasoline was in the gas can when recovered, which is relevant to Smith's purported confession stating he spread gasoline all over the house (while in fact the evidence actually shows it was poured only on the sofa). We didn't pursue that question in the nine months discovery was open, but we want to now; therefore, we are going to send third-party deposition subpoenas to each of the firefighters at the scene to see if one of them remembers. Also, our police practices expert has asked for a long list of department rules and regulations we failed to ask for during fact discovery, but he really, really wants to see them, so we are just going to serve a document request today for the "expert evidence" we failed to obtain during fact discovery. It's not a big deal because the March 13 return date is well before the April 1 expert discovery cutoff.

(Pl.'s Reply, Dkt. # 189, at 6.)

evidence and all police reports, evidence control or inventory records, and other reports cited in this Section, including computer records, must be retained for as long as the evidence exists and may not be disposed of without the approval of the Local Records Commission." 725 ILCS 5/116-4(d-10). Not only is the Local Records Commission an Illinois state entity, it is not clear how the section applies here or supports a finding that the magistrate judge's ruling was in error.

Finally, to the extent that Plaintiff argues that even if the magistrate judge was correct in concluding that the requirements set forth in the Illinois Code of Criminal Procedure do not apply to Defendant's request at issue before this Court, "Defendants should still be required, as a pre-requisite to DNA testing, to establish some minimal chain of custody sufficient to prove that the evidence has not been tampered with, altered, or contaminated in some material respect." (Pl.'s Objs., Dkt. # 183, at 3.) The Court sees no basis on which to make this determination prior to any testing taking place, and indeed, any effort in that regard could significantly delay the progress of this case. If Plaintiff wants to challenge chain of custody, it may seek rebuttal expert testimony in that regard and present it either in some type of pretrial motion or at trial.

For these reasons, Plaintiff's objections to the magistrate judge's January 14, 2022 order are overruled.

**Date:** February 15, 2022

**Ronald A. Guzmán**
**United States District Judge**