IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, JR., | ) | |
| | ) | Case No. 21 C 1159 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The case is before the Court on Defendants' Joint Motion to Reconsider the Denial of Defendants' Joint Supplemental Motion to Release Standards and Extracts at the Forensic Services Division and Nail Clippings at ERPS to Defendants' DNA Expert to Conduct Forensic Testing [ECF 195]. For the reasons explained herein, the Court denies the motion in part, and grants the motion in part.

## Background

The matter involves allegations that the plaintiff was wrongfully convicted of a double-homicide and framed by various defendants, resulting in plaintiff's incarceration for 33 years, one month, and seven days. ECF 82 at 2. Plaintiff sought, and eventually received a certificate of innocence in state court and filed this lawsuit to be compensated for the damages he alleges were caused by the defendants. *See id.* at 3–4.

Fact discovery closed on January 20, 2022. ECF 120. In the run-up to that closing date, defendants filed a motion to secure certain physical evidence being held by the Chicago Police Department as well as physical evidence being held by the Circuit Court of Cook County, and to allow that evidence to be examined as part of defendants' expert discovery process. *See* ECF 133. In short, defendants were seeking DNA evidence that might implicate the plaintiff in the double-murder that he has since been exonerated of committing.

The Court granted defendants' request to allow access to the physical evidence and for testing of the same. ECF 152. Specifically, defendants sought to secure "the 'cuttings' the original CPD serologist took from the clothing the City Defendants' sought to test [for DNA purposes], including the blue undershorts, black socks, white handkerchief, and green jacket." ECF 173 at 2. Through the cuttings, the defendants hope to show that certain clothing belonging to the defendant was exposed to blood belonging to the victims.

In securing a court order to allow the transfer of physical evidence and DNA testing of Chicago Police Department Inventory #438315, defendants operated under certain beliefs as to where particular physical evidence would be found. As it turns out, these presumptions were not correct. When all counsel went to examine the evidence envelope for Inventory #438315, the cuttings of plaintiff's clothing were not found. *Id.* Instead, located in Inventory #438315 were the "victims' fingernail clippings taken at the morgue" during autopsies. *Id.* at 3–4. As defendants explain, they "did not reference the fingernail clippings in their original motion for DNA testing because they did not know the clippings still existed until they viewed Inventory No. 438315 on January 20, 2022." *Id.* at 4.

As to the cuttings, because DNA testing was not used at the original criminal trial, defendants hope that expert discovery, vis a vis DNA testing, will connect plaintiff's clothing to the blood of the victims, which defendants presume will be found on plaintiff's clothing. Yet, this DNA connection would not be nearly as devastating to the plaintiff's case as one might think. First, the victims and the plaintiff were related. Plaintiff was their son-in-law and grandson-in-law and had been in the residence on multiple occasions. *See* ECF 82 at 6, 7; ECF 160, Exhibit 1 at 16, 231, 233. Moreover, plaintiff alleges detectives fabricated bloody underwear found at the crime scene in an effort to frame plaintiff in 1987 (ECF 82 at 18-19) and that the police threw him to the floor where the victims had been killed the day of the murders in 1987 as an explanation for blood being present on his clothes and body (ECF 160, Exhibit 1 at 243, 249). Thus, from plaintiff's standpoint, the DNA connection does not have nearly the negative implications as one might normally expect. Finally, the issue of the cuttings was known to all parties. Christine Anderson, the serologist who created the cuttings, was deposed about her practice of creating the cuttings, and her knowledge of the preservation of the cuttings since the original forensic investigation. *See* ECF 195, Exhibit 15.

As to the fingernail clippings, the same cannot be said. Neither side was aware of the clippings' existence. Neither side developed any background information that might explain why the plaintiff's DNA might be found in the clippings (if in fact such DNA material is found there). In fact, defendants had never even disclosed the existence of the "clippings" because defense counsel were not aware of the clippings' existence until they discovered them on January 20, 2022.

### **Original Rulings**

When defendants first presented their motion to allow DNA testing of the clothing cuttings, this Court granted the motion over plaintiff's vigorous objections. *See* ECF 140. Among the many objections raised by plaintiff, the one that is most relevant at this juncture is plaintiff's concern as to the chain of custody for the cuttings. *Id.* at 16–25. Despite plaintiff's objections, this Court allowed defendants to secure the physical evidence from the Chicago Police Department and subject the cuttings to DNA testing. ECF 152. While neither side argued this point, much of this Court's consideration as to plaintiff's chain of custody objections was informed by the presumption of regularity, as explained in cases such as *United States v. Tatum*, 548 F.3d 584 (7th Cir. 2008), *United States v. Prieto*, 549 F.3d 513 (7th Cir. 2008), *United States v. Scott*, 19 F.3d 1238 (7th Cir. 1994), and *United States v. Lott*, 854 F.2d 244 (7th Cir. 1988). The Court presumed that defendants' representations of the handling and custody of the cuttings were true. And, despite plaintiff's concerns on this point, the presumption of regularity would apply in guiding the admissibility of the cuttings at trial.

### Second Motion for Inspection and DNA Testing

After all counsel determined that the cuttings were not where they had supposed, defense counsel did some more investigating and again sought an order from this Court to conduct similar DNA examination on the cuttings, having now determined that those cuttings should be located in an envelope at the Forensic Services Division of the Chicago Police Department. ECF 173 at 3. In addition to this request, defendants also sought permission to conduct similar DNA testing on the fingernail "clippings," which to everyone's surprise were located in Inventory No. 438315. *Id.* at 3–4.

This Court then heard argument on this motion and denied both of defendants' requests. We again considered the presumption of regularity, this time explicitly explaining our assessment of that doctrine on the record. *See* ECF 187. We also considered issues of Federal Rule of Civil Procedure 26(a)(1) disclosure requirements and prejudice to the plaintiff, ultimately concluding that the motion for DNA testing as to both the cuttings and the clippings would be denied. ECF 186.

### Third Motion for Inspection and DNA Testing

Not satisfied with this Court's ruling, defendants filed a motion to reconsider, arguing that the presumption of regularity would support admission of both the cuttings and the clippings. ECF 195 at 10.

### Analysis

Motions to reconsider serve a limited function, to be used "where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). The parties may not introduce evidence previously available but unused in the prior proceeding or tender new legal theories. *See In re Prince*, 85 F.3d 314, 324 (7th Cir.1996). In the instant case, this Court's reliance on the presumption of regularity, a theory or issue that neither party suggested nor relied upon, provides a sound basis for a motion to reconsider.

As to the clippings, however, even upon reconsideration, we are confident that our decision to bar DNA testing was appropriate because the clippings (unlike the cuttings) suffer from a more fundamental issue. The clippings were never disclosed by the defendants in the discovery process. To address the lack-of-disclosure concerns, the defendants argued: 1) their practice in these types of cases is to wait to examine the physical evidence until the end; 2) plaintiff was equally as able to have requested an examination of Inventory #438315 and could have discovered the clippings if he had done so; and 3) there is no prejudice to plaintiff because of this late disclosure.[1]

---

[1] The first two arguments were made in response to the Court's question at the motion hearing. The third argument was included in defendants' motion to reconsider. *See* ECF 195 at 14.

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires, in part, disclosure of the following:

[A] copy—or a description by category and location—of all documents, electronically stored information, and *tangible things* that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses[.]

Defendants concede the clippings were not "disclosed" until they were "found" on January 20, 2022. This 'disclosure' is simply not timely. Moreover, the defendants do not offer any reasonable explanation for the delay. Defendants' prior practices are an explanation but not a suitable justification for the current situation. The fact that plaintiff was able to request an earlier examination of Inventory #438315 is not the point. Rule 26 does not require the plaintiff to dig around a huge discovery production, seek court orders, and the like to identify evidence that defendants themselves did not know existed. Finally, there is prejudice to plaintiff as to the late disclosure of the clippings. If the parties were aware of the clippings at the onset of the case, both sides would have had the opportunity to explore how plaintiff's DNA may have been transmitted to the victims' fingernails. Again, this is not a case where the plaintiff and murder-victims did not know each other, had never had contact, etc. In addition to a dereliction of their discovery obligations, the defendants' late disclosure of the clippings also creates a level of potential prejudice that properly timed disclosure would have completely obviated. For all of these reasons, this Court reaffirms that as a matter of discovery management, this Court will not allow expert discovery as requested in defendants' motion to proceed on the clippings.

As to the cuttings, however, after further consideration, we find that defendants should be able to proceed with inspection and expert discovery as to possible DNA findings. Here's why. The Court's reliance on the presumption of regularity was misplaced. That doctrine involves admissibility of evidence at trial. *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir.1994) (presumption of regularity applied to admission of physical evidence at trial); *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008) (presumption of regularity applied to admission of crack cocaine at trial); *United States v. Dewitt*, 943 F.3d 1092, 1098 (7th Cir. 2019) (same as to cellphone). The presumption of regularity is not a discovery concept or mandate. This is an important distinction.

This Court's sole authority is to manage discovery. True, this Court's decisions in the discovery process may impact the evidence used at trial. However, in making discovery decisions, this Court should be focused on the discovery process. Unlike the clippings, which were not disclosed in any meaningful way (and thus violated discovery obligations), the existence of the cuttings was well known by all the parties. The parties engaged in discovery regarding how the forensic scientist created the cuttings. *See* ECF 195 at 4–5; ECF 187 at 20. In fact, the plaintiff has laid out an extensive amount of evidence that he has obtained in the discovery process as to how the cuttings were (or were not) properly maintained over the years. *See* ECF 197 at 8–10.

While plaintiff presses arguments as to disclosure and prejudice, the evidence simply contradicts these arguments. *See e.g.*, ECF 195, Exhibit 15 at 63 (plaintiff's counsel's detailed and informed questioning of Christine Anderson regarding the extracts of clothing that are at issue here). Plaintiff was aware of the cuttings and was able to conduct meaningful discovery as to the chain of custody of those cuttings.

4

In short, there is nothing about the discovery process that has been implicated by defendants' incorrect identification of the cuttings' location. Therefore, my decision to not allow examination and DNA testing of RD #J403385 was erroneous for two reasons. First, the legal reasoning I applied was incorrect. The presumption of regularity informs evidentiary decisions at trial, not discovery obligations. Second, plaintiff has been able to explore issues related to the chain of custody. Plaintiff's counsel's work on this point may ultimately rule the day, and he may convince the trial court that certain evidence should not be admitted at trial. But, again, that is a decision for trial, not a discovery issue. This Court's reliance on presumption of regularity put the evidentiary cart before the discovery horse, and that was error. Defendant's motion for reconsideration as to allowing inspection and DNA testing of the cuttings is therefore granted.

## Conclusion

For the reasons stated above, the Court denies in part, and grants in part, defendants' motion to reconsider (ECF 195). The parties shall confer and send a proposed order to Proposed_Order_Weisman@ilnd.uscourts.gov by March 25, 2022. If parties cannot come to an agreement, they shall each submit their own respective proposed order, copying opposing counsel, for the Court's consideration. The Court will rule by mail following review of the proposal(s).

SO ORDERED.   ENTERED: March 18, 2022

**M. David Weisman**
**United States Magistrate Judge**