IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT SMITH JR., ) | |
| ) | Case No. 21 C 1159 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| THE CITY OF CHICAGO, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff's motion to name an additional expert [356]. For the reasons set forth below, the Court denies the motion.

### Background

Plaintiff Robert Smith Jr.[1] ("Plaintiff") sues the City of Chicago and several individual defendants for allegedly framing him for a double murder, resulting in his wrongful conviction and extended term of imprisonment. Plaintiff seeks compensation for his injuries under 42 U.S.C. § 1983, the United States Constitution, the Illinois Constitution, and Illinois common law.

The instant discovery dispute pertains to whether Plaintiff may name an additional expert witness following the closure of expert discovery.[2] Specifically, Plaintiff requests that this Court allow the parties more time to identify and issue reports for police practices experts. Defendants object to this request.

---

[1] Diane Yeager-Smith was appointed Representative of the Estate of Robert Smith in this matter. *See* ECF 296. The parties' briefing generally refers to Robert Smith Jr. as the Plaintiff, and for simplicity purposes, the Court will do the same herein.
[2] While both parties agree that expert discovery has closed, the parties disagree on when expert discovery closed. Defendants assert that it closed on April 29, 2022. Plaintiff argues that it closed on February 10, 2023. We address these conflicting timelines, *infra*.

Expert Discovery Timeline

Because the parties cannot agree on the date expert discovery closed, the Court provides the below timeline based on our review[3] of the docket.

(1) On November 22, 2021, the parties filed an agreed proposed expert discovery schedule (corrected), indicating that expert discovery would close on April 29, 2022. ECF 114.

(2) On March 24, 2022, Plaintiff filed a motion seeking, *inter alia*, a reaffirmation of the expert discovery cutoff. ECF 217. Within the motion, Plaintiff argued that "the formal closing of expert discovery permits Judge Guzman and the Parties to proceed with other parts of the case, and to conduct such additional business simultaneously with the remaining DNA Testing and Discovery, which was introduced very late in the case." *Id*. at p. 4. In short, Plaintiff sought a court order reaffirming April 29, 2022, as the close of formal expert discovery, with the caveat that limited expert discovery as to DNA Testing could proceed up through June 30, 2022.

(3) On March 29, 2022, this Court ruled that non-DNA expert discovery would close on April 29, 2022 (except for Dr. Shurgin's deposition, which would be completed by May 12, 2023). ECF 221. This Court further ruled that, barring extraordinary circumstances, all DNA discovery would close on July 29, 2022. *Id*.

(4) On May 10, 2022, this Court placed a stay on discovery issues before this Court through at least May 26, 2022, except that Defendant City of Chicago was required to continue its efforts to prepare and present an expert report as to serology issues. ECF 268. The stay pertained to resolution of the guardianship issue in state court.

(5) On June 3, 2022, this Court extended the stay on discovery issues before this Court until June 21, 2022. ECF 282.

(6) On August 18, 2022, Judge Guzman set expert discovery dates regarding the serology reports/issues of chain of custody or evidence contamination. ECF 300. The latest date noted by Judge Guzman was November 11, 2022, when Defendants were to complete the deposition of Plaintiff's expert. *Id*.

(7) On November 15, 2022, Judge Guzman set discovery dates relating to Defendants' rebuttal expert as to blood contamination issues. ECF 316. Judge Guzman provided a final deadline of February 10, 2023, for Plaintiff to depose the rebuttal expert. *Id*.

---

[3] The Court reviewed the docket entries that expressly referenced "expert discovery," as well as other surrounding entries to create a general timeline. This timeline is not meant to be exhaustive of every docket entry that may have impacted expert discovery. Rather, the timeline is meant to be a summary of how expert discovery progressed in the case since the parties initially proposed their expert discovery schedule in November 2021.

(8) On January 17, 2023, the parties filed a joint status report stating that, because Plaintiff indicated he would waive the right to depose Defendants' rebuttal expert, "Expert discovery should therefore close in its entirety on January 20, 2023[.]" ECF 342. Notably, a separate entry on the report addressed ongoing competency discovery. *Id*.

(9) On March 3, 2023, the parties filed a joint status report indicating that expert discovery was completed. ECF 349. The status report did not indicate a precise date that expert discovery closed.

(10) On March 23, 2023, Plaintiff filed the instant motion. ECF 356.

The above timeline demonstrates, at minimum, that general expert discovery closed on April 29, 2022 (with a narrow exception for Dr. Shurgin's deposition, which was to be completed by May 12, 2022). After that point, the parties only engaged in limited expert discovery on DNA-related and/or blood contamination issues.[4] That limited expert discovery appears to have closed on January 20, 2023, based on the joint status report filed at ECF 342. Thus, Plaintiff brought his motion to name an additional expert nearly one year after general expert discovery closed, and over two months after the remaining, limited expert discovery closed.

## Discussion

Plaintiff brought the instant motion under Federal Rule of Civil Procedure 16(b)(4). However, in the reply brief, Plaintiff changed course, claiming that Rule 37(c)(1) is the proper and exclusive basis for his request for relief. Defendants maintain that Rule 16(b)(4) governs the motion, but argue that even if Rule 37 applied, Plaintiff's motion must still be denied.[5]

---

[4] As noted above, the parties (and the Court) have generally viewed competency discovery as separate and distinct from expert discovery. While Plaintiff's briefing in the instant motion conflates the two types of discovery, the Court is unconvinced that the parties (and, more importantly, the Court) have historically viewed "expert discovery" as encompassing the unique "competency discovery" that is ongoing.

[5] Defendants also argue that Plaintiff waived any Rule 37 arguments because they are made for the first time in a reply brief, and that the Court should therefore decline to address Plaintiff's Rule 37 arguments. However, while it is true that arguments raised for the first time in a reply brief are waived (*see United States v. Kennedy*, 726 F.3d 968, 974 n. 3 (7th Cir. 2013)), a reply may respond to issues and arguments raised in a response brief. *See Central States, Southeast and Southwest Areas Pension Fund v. White*, 258 F.3d 636, 640 n.2 (7th Cir. 2001). In this case, Defendants identified Rule 37 in their response brief as being implicated by Plaintiff's motion. Thus, Rule 37 was

Thus, although there is seemingly a threshold question presented as to which rule properly governs the motion, the Court finds that it need not decide which rule properly governs. Indeed, under both Rule 16 and Rule 37, Plaintiff has failed to establish that he is entitled to relief. We explain below.

### I. Rule 16(b)(4)

Federal Rule of Civil Procedure 16(b)(4) states that a scheduling order may be modified for "good cause" with the judge's consent. Fed. R. Civ. P. 16(b)(4). The appropriate method to seek an extension of discovery deadlines is to file a motion under Rule 16(b)(4) before the deadline has passed. *See Naud v. City of Rockford*, 2013 WL 4447028, at *5 (N.D. Ill. 2013). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). The moving party bears the burden of proving his diligence. *McCann v. Cullinan*, 2015 WL 4254226, at *11 (N.D. Ill. 2015).

Plaintiff claims that he meets Rule 16(b)(4)'s "good cause" standard because, after originally deciding to forego a police practices expert in March 2022, four events changed Plaintiff's assessment. Plaintiff asserts that these four events, taken collectively, establish good cause. Plaintiff urges that this is especially the case when considering the Court's flexibility in granting many of Defendants' prior extension requests. Finally, Plaintiff posits that a lack of prejudice to Defendants weighs in favor of finding good cause.[6] We find that none of the above

---

fair game to address in the reply brief. Moreover, the Court finds that a Rule 37 decision on the merits will facilitate a more efficient appeal of this order, to the extent Plaintiff pursues that relief. *See McCann v. Cullinan*, 2015 WL 4254226, at *6 (N.D. Ill. 2015) (wherein Judge Johnston explained that he would fully address all issues for the benefit of the reviewing District Court Judge, in the likely event that an objection was filed).

[6] Notably, while Plaintiff concedes that a party's "diligence" is a primary concern under Rule 16(b)(4), Plaintiff largely neglects to analyze his own diligence, instead focusing on the four cited events.

factors, taken independently or collectively, establish good cause under Rule 16. Most importantly, we find that Plaintiff was not diligent in bringing this motion.

### A. The Four Events Cited by Plaintiff

As previously mentioned, Plaintiff relies on four events in the case to establish good cause. The first event was Plaintiff's review of Judge Guzman's November 30, 2022, order, denying Plaintiff's motion for default against Defendant Cline. Plaintiff apparently reviewed that order in preparation for a March 9, 2023, court hearing, and that review sparked a desire to disclose a police practices expert. However, Plaintiff does not elaborate upon what specifically he read in that order that "brought into sharper focus Plaintiff's need for an expert." ECF 356 at pp. 4-5. Additionally, Plaintiff provides no explanation for why it took him until three months after the Court's November decision to come to this realization. A party's diligence is the primary consideration under Rule 16(b)(4)'s good cause standard, and reviewing a judicial decision three months after it was rendered does not strike this Court as particularly diligent or noteworthy. Thus, this event is unpersuasive in the good cause analysis.

The second event was Judge Guzman's March 9, 2023, denial of Plaintiff's motion to lift the *Monell* discovery stay. Once again, Plaintiff provides no further explanation in the motion for why this ruling "brought into sharper focus Plaintiff's need for an expert on issues related to police practices at Area 2 Headquarters in 1987." ECF 356 at pg. 5. Furthermore, *Monell* discovery has been stayed since August 2021, so Judge Guzman's March 2023 decision changed nothing substantial in the case—indeed, it retained the status quo—and therefore it is an unpersuasive reason for allowing late disclosure of an expert.

The third event was Judge Guzman's extension of competency discovery to a date unknown. This ruling was also made on March 9, 2023. Plaintiff contends that this open-ended

extension of competency discovery created additional time for Plaintiff to disclose an expert in advance of trial. However, the competency discovery contemplated by Judge Guzman is unrelated to expert discovery in the case, and there is no indication that Judge Guzman had any intention of allowing other, non-competency discovery to proceed. In short, while this event resulted in a changed timeline for the case—solely due to an unrelated and very discrete discovery inquiry—that change alone is unpersuasive in the good cause analysis.

Finally, Plaintiff argues that the setting of a distant trial date is another event that helps establish good cause. On March 14, 2023, Judge Guzman set a trial date of August 12, 2024. Plaintiff posits that additional expert discovery can be completed in advance of trial without prejudice to Defendants. However, even assuming there is no prejudice here—which is a questionable proposition, at best[7]—a lack of prejudice by itself does not establish good cause under Rule 16. *See McCann*, 2015 WL 4254226, at *11 (noting that the Seventh Circuit has not addressed whether prejudice to a non-movant is a proper consideration under Rule 16(b)(4)'s good cause standard, and confirming that diligence of the moving party is the predominant inquiry).[8] In short, even presuming no prejudice to the defendants if expert discovery were re-opened, the extension of the trial date until August 2024 is not persuasive in the good cause analysis, particularly when Plaintiff has not established diligence.

Therefore, the four events cited by Plaintiff do not independently nor collectively rise to the level of "good cause" under Rule 16.

## B. Diligence and Other Considerations

---

[7] *See* the Court's Rule 37 analysis, *infra*.
[8] Plaintiff cites to *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 831-832 (7th Cir. 2016) for the proposition that a court should consider prejudice to the non-moving party when determining whether to modify the case schedule. However, the Seventh Circuit's analysis in *Empress* pertained to a motion for extension of time to amend a Complaint under Federal Rule of Civil Procedure 15—not Rule 16. Plaintiff fails to meaningfully demonstrate how Rule 15's standard for allowing leave to amend a Complaint relates to Rule 16(b)(4)'s good cause standard. Thus, the citation to *Empress* is unavailing.

Plaintiff's motion does not analyze diligence to a degree that would typically be expected in a Rule 16(b)(4) motion. However, Plaintiff notes that he attempted to retain two different police practices experts in a timely manner, but both were forced to withdraw due to health issues. The latter expert purportedly withdrew in March 2022, which was one month before the close of general expert discovery. Plaintiff states that, rather than seek an extension of the expert discovery deadline to find a new police practices expert, Plaintiff made a strategic decision to forego any police practices expert—based on the understanding that an extension of expert discovery would delay trial. Plaintiff places great importance on the fact that this strategic decision was made before Judge Guzman's comments in August 2022 (stating that trial was at least a year and a half away). Thus, Plaintiff asserts it was not a lack of diligence that resulted in the delay of seeking an extension of expert discovery, but rather changed circumstances in the litigation.

While this is ostensibly a fair point, it does not withstand scrutiny. First, Plaintiff waited nearly seven months *after* Judge Guzman's August 2022 comments. Additionally, Plaintiff's citation to subsequent rulings within the litigation (i.e., the denial of the motion for default judgment against Defendant Cline and the denial of the motion to lift the stay on *Monell* discovery) do not justify the lack of diligence on the part of Plaintiff.[9] In short, while the Court appreciates Plaintiff's dilemma in Spring 2022—when Plaintiff's second police practices expert withdrew in advance of a potentially foreseeable[10] trial date—the Court finds that Plaintiff, if

---

[9] As previously explained, Plaintiff failed to demonstrate how these rulings altered the litigation such that a police practices expert suddenly became a necessity, as compared to March 2022 when Plaintiff was accelerating toward trial without seeing the need for this expert testimony. Moreover, the denial of the motion for default judgment against Defendant Cline occurred in November 2022. If this was such an important milestone in the litigation as to the necessity of a police practices expert, waiting nearly four months to file the instant motion does not demonstrate diligence.

[10] The Court makes no finding as to whether Plaintiff reasonably believed trial was imminent in Spring 2022. Even if Plaintiff's belief was reasonable, that does not change the Court's analysis as to diligence, for the reasons stated in this Order.

acting diligently, could have brought this motion *at least* by the Fall of 2022, following Judge Guzman's comments about a far-off trial date. *See, e.g., McCann v. Cullinan*, 2015 WL 4254226, at *11 (N.D. Ill. 2015) (noting that diligent counsel promptly raises issues that need to be addressed, particularly when deadlines are involved). Thus, because Plaintiff failed to establish diligence, his motion must fail under Rule 16(b)(4).

Lastly, Plaintiff cites to instances where the Court was flexible regarding certain extension requests made by Defendants throughout this litigation (not just limited to expert discovery) to argue that the Court should provide similar flexibility now. This argument is unpersuasive. While the Court certainly endeavors to be flexible where possible (life happens), the relief sought by Plaintiff is quite distinct from the average extension request. Indeed, Plaintiff filed a motion to disclose an expert nearly *one year* after the close of general expert discovery, and over *two months* after the close of remaining, limited expert discovery. Plaintiff does not specifically cite to any instances where the Court granted an extension request from Defendants that was made in such a belated manner. Thus, Plaintiff's citation to prior extension allowances is unpersuasive.

For all of these reasons, pursuant to Rule 16(b)(4), we conclude that Plaintiff failed to establish good cause to belatedly disclose a police practices expert.

## II. Rule 37(c)(1)

After Defendants identified Federal Rule of Civil Procedure 37 as being relevant to Plaintiff's motion, Plaintiff reached the conclusion that Rule 37(c)(1) is the proper governing standard for his motion.

Rule 37(c)(1) provides that: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a)(2)(D) requires a party to disclose expert testimony "in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). In this case, the Court ordered general expert discovery (which would be inclusive of police practices experts) to close on April 29, 2022.

A party seeking relief under Rule 37(c) has the burden of establishing that the failure was substantially justified or harmless. *Finwall v. Chicago*, 239 F.R.D. 494, 503 (N.D. Ill. 2006). "Substantial justification" is satisfied when there is a genuine dispute regarding compliance or when "reasonable people could differ as to [the appropriateness of the contested action]." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Seventh Circuit has outlined the following relevant factors in a court's analysis of whether a failure to disclose was harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (*citing David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Plaintiff does not overtly argue that the failure to timely disclose a police practices expert was substantially justified. Rather, Plaintiff appears to merge the substantial justification and harmless concepts contemplated by Rule 37. *See* ECF 372 at p. 4. To the extent Plaintiff argues that the four-part test outlined above evaluates substantial justification in addition to harmlessness, that proposition is unsupported. *See, e.g., Tribble* at 760 (applying the Rule 37 four-part test only toward a harmless analysis, not substantial justification); *see also McCann* at *13 ("But this Court notes that these factors focus on the harmless/prejudice component of Rule

37(c), not the 'substantially justified' component. Perhaps these factors have simply developed because movant's more often assert a lack of harm rather than substantial justification."). Plaintiff has therefore forfeited any substantial justification argument. *See Outley v. City of Chicago*, 2022 WL 4448739, at *4 (N.D. Ill. 2022) (citing *Escobar v. Holder*, 657 F. 3d 537, 548 (7th Cir. 2011)).

Nonetheless, because the language of Rule 37 does not require a finding of both substantial justification *and* harmlessness—one is sufficient—Plaintiff's failure to show substantial justification is not fatal to his argument.

We now analyze whether Plaintiff's intended late disclosure of a police practices expert is harmless under Rule 37(c)(1).

### A. The *McCann* case

As an initial matter, Plaintiff places great importance on the 2015 case of *McCann v. Cullinan*, 2015 WL 4254226 (N.D. Ill. 2015). There, in a similar procedural posture, Judge Johnston provided a comprehensive overview of the interplay of Federal Rules of Civil Procedure 6, 16, and 37. Judge Johnston initially concluded that Rule 37 properly governs in a circumstance where a party fails to timely disclose an expert under Rule 26(a)(2)(D), and then the party belatedly seeks to disclose an expert.[11] *Id*. at *12. Next, Judge Johnston applied the four-part test to determine whether the late expert disclosure was harmless. *Id*. at *12-15. Lastly, applying Seventh Circuit precedent, Judge Johnston considered whether a preclusion order would be outcome determinative. *Id*. at *16 (citing *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir.2000) and *Salgado v. General Motors Corp*., 150 F.3d 735, 740 (7th Cir.1998) for the proposition that this consideration is necessary). Judge Johnston ultimately concluded that,

---

[11] Again, we need not decide this issue because it is not dispositive. However, we appreciate Judge Johnston's analysis on this point.

because preclusion of the underlying expert testimony would be fatal to plaintiff's case, justice weighed in favor of allowing the late disclosure. *Id*. Accordingly, rather than excluding the expert testimony, Judge Johnston found that an award of fees and costs to the non-moving party was a more appropriate sanction for the discovery violation. *Id*.

Before applying the Rule 37 factors to the instant case, we note three crucial distinctions between *McCann* and the circumstances of this case. First, in *McCann*, it was only *eight days* after the applicable expert discovery deadline that plaintiff's counsel emailed defense counsel and requested an extension of the deadline. *Id.* at *3. Here, Plaintiff voluntarily decided to forego a police practices expert in advance of the April 2022 general expert discovery deadline, and Defendants had no reason to believe Plaintiff's position on this issue had changed until nearly *one year* later. The underlying reason for missing the deadline is also a distinguishing factor. In *McCann*, plaintiff noted there were health and scheduling issues at play that resulted in non-compliance with the deadline. *Id*. Here, Plaintiff made a strategic decision to not disclose a police practices expert in advance of the applicable deadline.[12] The outcome-determinative quality of the underlying expert testimony is the third and final crucial distinction between the instant case and *McCann*. These distinctions are essential to our analysis below.

### B. Rule 37 "Harmless" Factors

#### (1) Prejudice or Surprise to Defendants

Plaintiff claims there is no prejudice or surprise to Defendants. Specifically, Plaintiff argues that Defendants knew from the beginning of expert discovery that Plaintiff was seeking a

---

[12] Although there were some health issues at play with Plaintiff's intended police practices experts, Plaintiff nonetheless made a strategic decision to forego such expert testimony, which is distinct from the circumstances in *McCann*.

police practices expert. Further, Plaintiff cites to the distant trial date for the proposition that there is no prejudice.

Defendants argue that additional expert discovery prejudices them because of the time and cost involved—both in briefing the instant motion, and the time and cost to engage in more expert discovery. Moreover, Defendants claim that they were surprised by Plaintiff's motion, because general expert discovery had closed nearly a year prior to the filing of the instant motion. Defendants claim that they heard nothing from Plaintiff about a police practices expert between the close of general expert discovery (April 2022), and a March 9, 2023, status hearing, when Plaintiff mentioned a desire to disclose such an expert. Defendants also claim surprise from Plaintiff's comments in the reply brief as to what the potential expert will opine on (which appears to differ from Plaintiff's representations at the March 9, 2023, status hearing in front of Judge Guzman). Lastly, Defendants claim that the delay of dispositive motion practice, and the addition of potential *Daubert* motion practice, is prejudicial.

The Court finds that Defendants are both prejudiced and surprised by Plaintiff's request to belatedly disclose a police practices expert. As we have already detailed (in painstaking fashion), this motion was brought nearly one year after general expert discovery had closed, and more than two months after the narrow DNA-related expert discovery closed. Further, as Defendants point out, Plaintiff made no mention of his desire to disclose a police practices expert until nearly a year after Plaintiff *purposefully* decided to forego a police practices expert. Plaintiff contends that Defendants should not have been surprised by the requested late disclosure given the distant trial date, but that fails to account for the substantial amount of time that passed without any reference to reopening expert discovery on the issue of police practices. Moreover, a distant (or unset) trial date is not a good reason to argue lack of prejudice. *See DR*

*Distributors, LLC v. Century Smoking, Inc.*, 513 F. Supp.3d 839, 973 (N.D. Ill. 2021) (Johnston, J.).

We also agree that the inherent time and cost of additional expert discovery prejudices Defendants. *See Webber v. Butner*, 2019 WL 6213143, at *2 (S.D. Ind. 2019).[13] Further, the Court agrees with Defendants that the delay in dispositive motion practice is prejudicial. *See id*. ("[P]arties and courts are prejudiced when discovery failures wreak havoc on dispositive motion deadlines[.]"). We could go on. In short, this extremely belated request to reopen expert discovery is both prejudicial and surprising to Defendants. This Rule 37(c) factor therefore weighs strongly against a finding of harmlessness.

### (2) Ability to Cure the Prejudice

Plaintiff briefly argues that there is no prejudice, but even if there was, the distant trial date cures the prejudice. We have already determined that there is significant prejudice to Defendants. Plaintiff's argument that a far-off trial date cures such prejudice (with no citation to authority) is unpersuasive. In addition to being underdeveloped (and therefore waived),[14] this argument is inconsistent with caselaw in this district: "late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery [before trial]." *Finwall v. City of Chicago*, 239 F.R.D. 494, 500 (N.D. Ill. 2006) (collecting cases). Thus, we find that a

---

[13] Plaintiff cites to *McCann* for the proposition that a party's need to evaluate an opposing expert and hire their own expert is not persuasive in terms of showing prejudice under Rule 37. However, in *McCann*, that proposition rested heavily on the court's additional finding that plaintiff's underlying request to disclose an expert came as no surprise to defendants. Indeed, on this point, Judge Johnston distinguished *McCann* from another case where the late expert disclosure came six months after the applicable deadline and came as a surprise to defendants—a case which is much more analogous to the circumstances here. *McCann* at *14 (distinguishing *Yeoman v. Ikea USA West, Inc.*, 2013 WL 3467410 (S.D.Cal. July 10, 2013)). Thus, we find that the time, money, and other burdens associated with the proposed expert discovery prejudice Defendants.

[14] *Shipley v. Chicago Bd. of Election Commissioners*, 947 F. 3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

distant trial date does nothing to cure the prejudice to Defendants. This Rule 37(c) factor weighs strongly against a finding of harmlessness.

(3) The Likelihood of Disruption to Trial

Plaintiff minimally analyzes this factor by stating that there is zero chance of any disruption to the trial, given that the motion was filed 480 days before the trial date. As of this writing, there is approximately one year (368 days) until the trial date. The delay in resolving this motion itself shows that Plaintiff's one-sentence argument is defective.[15] Even if we were inclined to allow this expert discovery to go forward, we certainly would not believe there was zero chance that the trial date would be disrupted. For example, Defendants have indicated that they intend to pursue dispositive and/or *Daubert* motion practice in this matter. The expert discovery contemplated by Plaintiff will surely delay such motion practice, which could plausibly disrupt the current trial date. In short, considering the history of this case, this factor weighs against a finding of harmlessness.

(4) Bad Faith or Willfulness

Because we do not believe (and Defendants do not argue) that Plaintiff demonstrated bad faith, our analysis is solely concerned with the "willfulness" component of this factor. Plaintiff argues that he did not willfully disregard any prior expert discovery deadlines. However, Plaintiff appears to conflate willfulness with bad faith. Indeed, Plaintiff does not cite to any cases for the proposition that "willfulness" is tied to a party's prior *disregard* of court orders. On the other hand, Defendants interpret willfulness based on a more standard reading. Defendants cite

---

[15]Due to judicial reassignments, it was not established that this Court would resolve this motion until June 23, 2023. ECF 387. Moreover, once the Court reviewed the briefing, it became clear that a sur-reply was required in light of Plaintiff's changed positions regarding Rule 16 and Rule 37. The Court requested the sur-reply on July 12, 2023 (ECF 398), and the sur-reply was officially filed on the docket on August 1, 2023 (ECF 404). These events, along with the contemptuous history of this litigation, indicate that Plaintiff's guarantee of no trial disruption is highly flawed.

to Black's Law Dictionary's definition of willful: "voluntary and intentional, but not necessarily malicious." Black's Law Dictionary (11th Ed. 2019). Under this reading, Plaintiff's decision to not disclose a police practices expert prior to the April 2022 deadline was willful because it was voluntary and intentional. As previously noted, Plaintiff believed a trial was imminent and thus made a "strategic" decision to not pursue police practices expert testimony. Black's Law Dictionary defines "strategic" as "decisions designed to create favorable impact on key factors to create a desired outcome. See tactical." Black's Law Dictionary (11th Ed. 2019). In other words, a strategic decision is one that is made voluntarily and intentionally to create desired results—it is, broadly speaking, a willful decision. Without any authority to support Plaintiff's interpretation of willfulness, we agree with Defendants that a standard definition should apply.

Thus, although there is no bad faith involved here, we find that Plaintiff willfully did not disclose a police practices expert in advance of the general expert discovery deadline, and similarly did not raise the issue again until many months later. *See J.F. by Sifuentes v. Abbott Laboratories, Inc*., 2017 WL 1050363, at *4 (S.D. Ill. 2017) ("Making the … request after such a long passage of time, combined with Plaintiff's failure to raise any similar concerns earlier when the opportunity was present, weighs against granting the expert substitution, even if the initial lack of disclosure in compliance with the Scheduling Order was not in bad faith."). This factor therefore weighs against a finding of harmlessness.

In short, the four-factor test under Rule 37 strongly supports a finding that Plaintiff's intended late disclosure of a police practices expert is *not* harmless. Thus, Plaintiff has failed to demonstrate that he is entitled to relief under Rule 37(c)(1).

### C. Whether Disclosure of a Police Practices Expert is Outcome Determinative

Our justice system prioritizes resolving cases on their merits. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004). In accordance with this ideal, we must evaluate alternative sanctions if denying Plaintiff's motion (and therefore excluding a police practices expert) would be outcome determinative. *Id*. at 760 (urging "district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative."). In *McCann*, for example, plaintiff argued that he could not prevail if the court precluded his experts, particularly because his case involved a deliberate indifference claim, which almost always requires expert testimony. *McCann* at *16. For that reason, Judge Johnston "reluctantly" did not preclude the expert testimony. *Id*. Rather, Judge Johnston awarded fees and costs to the defendants as an alternative sanction for the discovery violation. *Id*.

Here, Plaintiff does not specifically argue that a police practices expert is "outcome determinative." Instead, he opts for more vague language like "necessary" and "central to the parties' dispute." ECF 372 at pp. 9-10. Such language does not align with Seventh Circuit precedent holding that alternative sanctions are preferrable when the expert testimony at issue is outcome determinative. *See Musser*, 356 F.3d at 760. An expert who is "central" or strategically important does not meet this standard.

Further, even if Plaintiff argued that a police practices expert's testimony is outcome determinative for Plaintiff's case, Plaintiff's argument would be undermined by his earlier actions. ECF 356 at pg. 4 ("Plaintiff twice attempted to retain a police practices expert prior to the close of expert discovery…Plaintiff decided…to forego a police practices expert because it appeared that the case was advancing quickly toward trial."). It is illogical to conclude that a

police practices expert's testimony is outcome determinative when Plaintiff was previously willing to forego the expert testimony and proceed to trial.

The only way Plaintiff could avoid this logical trap is if he illustrated a prominent change in circumstances in the litigation that occurred between the expert discovery deadline (April 2022) and the filing of the instant motion (March 2023). Plaintiff fails to do so. He contends that his need for an expert became more significant "in light of this Court's recent rulings on Plaintiff's Motion for a Default Judgment against Defendant Cline and on Plaintiff's request for limited Monell discovery." ECF 372 at p. 9. However, neither Plaintiff's motion nor his reply demonstrates how these events resulted in drastically changed circumstances such that a police practices expert's testimony is now outcome determinative.

Accordingly, because we find that the underlying expert testimony is *not* outcome determinative, this final consideration does nothing to dissuade us from precluding a police practices expert from the case.

## Conclusion

For the above reasons, the Court denies Plaintiff's Motion to name an additional expert [356].

**SO ORDERED.**          **ENTERED:  August 14, 2023**


**M. David Weisman**
**United States Magistrate Judge**