IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**<u>DEFENDANTS' JOINT MOTION TO RECUSE</u>**

Defendants City of Chicago, Philip Cline, Detective Daniel McWeeny, Detective Steven Brownfield, Detective William Pedersen, Detective John Solecki, Detective Robert Dwyer, Estate of John A. Yucaitis, Estate of Robert Rice, and Estate of William Higgins, by their respective attorneys, and pursuant to 28 U.S.C. § 455(a) and, in the alternative, §455(b)(1), respectfully move Your Honor to recuse himself in this case. In support thereof, Defendants state as follows:

**INTRODUCTION**

As a private attorney before becoming a federal judge, Your Honor signed on to two separate but related reports in 2007 and 2008 that examined Special State's Attorney Edward J. Egan and Chief Deputy Special State's Attorney Robert D. Boyle's investigation into Jon Burge and officers under his command at Areas 2 and 3 in the City of Chicago. Only the 2007 report has been produced in this matter, but the 2008 report is relevant to mention as it served as a supplement to the 2007 Report asking for further action in line with the 2007 Report. These reports were critical of Egan and Boyle's investigation, and one report explicitly disagreed with Egan and Boyle's conclusion that the statute of limitations barred prosecution of Daniel McWeeny, a Defendant herein, for perjury and/or obstruction of justice. (Ex. B, at 7-8). Among other things, the reports credited the testimony of the individuals' making allegations of abuse over the testimony of the officers (*id.* at App. C, at 1-14), and

requested the City cease from defending officers under Burge's command. (*Id.* at 49 & n.27). The 2007 Report also concluded there was a "wealth of evidence establishing that there was a widespread and continuing cover-up of the torture scandal—a conspiracy of silence—implicating high officials of the City of Chicago [and] the Chicago Police Department . . . ." (*Id.* at 3).

Defendants respectfully seek recusal of Your Honor under 28 U.S. § 455(a), as a reasonable person may perceive an appearance of partiality based on the prior statements Your Honor endorsed in the two reports. In addition, and respectfully, recusal is appropriate under 28 U.S.C. § 455(b)(1). As set forth in section II, *infra,* Your Honor's endorsement of the statements contained in the reports exhibit bias or prejudice, in particular to the named Defendant Officers in this lawsuit whom the two reports directly, or indirectly, call into question their veracity, as well as reflect personal knowledge of disputed evidentiary matters in this proceeding.

## RELEVANT BACKGROUND

Plaintiff's lawsuit, which was filed on March 1, 2021, was initially assigned to Judge Guzman and Magistrate Judge Weisman. Dkt. 1. On May 12, 2023, this case was reassigned to Judge Alonso. Dkt. 378. Thereafter, following Your Honor's appointment as an Article III Judge, this case was reassigned to Your Honor on October 26, 2023. Dkt. 416. Pursuant to this Court's order requiring a reassignment joint status report, Defendants raised the issue of disqualification on November 9, 2023. Dkt. 418. Defendants now respectfully move for recusal pursuant to 28 U.S.C § 455.

### A. Report Of The Special State's Attorneys Edward Egan And Robert Boyle

In 2002, Special State's Attorneys Edward J. Egan and Robert D. Boyle were appointed "to investigate allegations of torture, perjury, obstruction of justice, conspiracy to obstruct justice, and other offenses <u>by police officers under the command of Jon Burge at Area 2 and Area 3 Headquarters in the city of Chicago during the period from 1973 to the present</u>." (emphasis in original) (Ex. A, at 3, July 2006 Report of the Special State's Attorneys (hereinafter "Egan-Boyle Report")).

2

The Egan-Boyle Report concluded that the evidence in the cases of Andrew Wilson, Alfonzo Pinex, and Phillip Adkins would be sufficient to establish guilt beyond a reasonable doubt against the accused officers. (Egan-Boyle Report, at 16). However, the report also concluded that the statute of limitations barred any criminal prosecution. (*Id.*). In addition, the Egan-Boyle Report found that there are "many other cases which lead us to believe or suspect that the claimants were abused, but proof beyond a reasonable doubt is absent." (*Id.*). The Egan-Boyle Report also concluded that there was "no evidence that would support a charge beyond a reasonable doubt of obstruction of justice (or 'cover-up') by any police personnel." (*Id.* at 17).

**B. Report On The Alleged Failure Of Special Prosecutors Edward J. Egan and Robert D. Boyle To Fairly Investigate Police Torture In Chicago.**

Thereafter, "a team of volunteer attorneys, researchers, and community activists was formed to respond" to the Egan-Boyle Report. On April 24, 2007, the "Report On the Failure of Special Prosecutors Edward J. Egan and Robert D. Boyle to Fairly Investigate Police Torture in Chicago" (hereinafter "2007 Report") was released. (See Ex. B). As a partner at Miner, Barnhill & Galland, Your Honor "endorsed" (*id.* at 2 & n.1, 52) and "submitted" (*id.* at 50, 52)[1] the 2007 Report, as part of "212 individuals and organizations active in the fields of human rights, criminal justice, civil rights, and racial justice" (*id.* at 2), but Your Honor was not on the team that participated in the "researching, writing, editing and producing" of the 2007 Report.

Among other findings, the 2007 Report concluded that Daniel McWeeny, a Defendant herein, denied "under oath, that he saw or participated in any acts of torture or abuse" and, as a result "could have been indicted for perjury for all of these acts and for obstruction of justice." (2007 Report, at

---

[1] Plaintiff's Response (dkt. 420, at 6) states that "Defendants erroneously wrote in the JSR that Your Honor 'submitted' the 2007 Shadow Report" and "[it] should have been apparent to Defendants" because there is no asterisk next to Your Honor's name. Defendants respectfully refer Your Honor (and Plaintiff) to page 50 of the 2007 Report, which states "Respectfully *Submitted By*" prior to listing the individuals and organizations. (2007 Report, Ex. B, at 50 (emphasis added)).

3

8). Appendix A provides a list of "potential criminal acts," that includes allegations of perjury and obstruction of justice by McWeeny, Yucaitis, and another Defendant in this case, Robert Dwyer. (*Id.* at 9 n.10; *id.* at Appendix A). The 2007 Report further stated high-ranking officials, including mayors for the City, "knew that prisoners were being tortured by Burge and his subordinates, and … had the power and duty to intervene to stop the torture…" (*Id.*, at 9-10).

In addition, the 2007 Report concluded that the Special Prosecutors, among other things:

- Did not bring criminal charges against members of the Chicago Police Department despite the apparent existence of numerous provable offenses within the statute of limitations.
- Ignored the failure of Cook County State's Attorney Richard M. Daley, State's Attorney Richard A. Devine, and various other high-ranking officials to investigate and prosecute police officers who engaged in a documented pattern of torture and wrongful prosecution of torture victims.
- Unfairly evaluated the credibility of the alleged torturers and of their victims and unfairly attempted to discredit torture victims who had pending civil or criminal cases.
- Conducted an investigation that was hopelessly flawed and calculated to obfuscate the truth about the torture scandal.
- Ignored a wealth of evidence establishing that there was a widespread and continuing cover-up of the torture scandal—a conspiracy of silence—implicating high officials of the City of Chicago, the Chicago Police Department, and the Cook County's State's Attorney's Office.

(*Id.* at 2-3). The 2007 Report also requested specific actions including the following:

- The U.S. Attorney for the Northern District of Illinois and U.S. Department of Justice conduct an independent investigation into all of the criminal conduct implicated by the evidence outlined [within the report]. . . .
….
- *The City of Chicago stop spending public funds to defend the torturers in civil cases.*

- The Illinois Attorney General agree to new criminal court hearings for persons behind bars who were convicted in whole or in part on the basis of confessions obtained by Burge and his subordinates.

(*Id.* at 49 & n.27 (emphasis added)).

## C. The 2008 Report Titled "Torture in Chicago: A supplementary report on the on-going failure of government officials to adequately deal with the scandal"

In 2008, a report titled "Torture in Chicago: A supplementary report on the on-going failure of government officials to adequately deal with the scandal" (hereinafter "Supplementary Report") was released. **(**Ex. C). As stated, this Supplementary Report was not produced in this case, but is relevant because of its relation to the 2007 Report. The Supplementary Report stated that there had been "some significant action taken in response to [the 2007 Report's] demands, the undersigned have concluded that those steps have been both inadequate and require additional action." (*Id.* at 5). Your Honor also "endorsed" and "submitted" this report. (*Id.*, at 5 n.3, 29, 31). Among other conclusions, the Supplementary Report found that "Burge's closest associates remain on the streets, as of yet uncharged and unprosecuted" and "Burge and his men continue to collect City pensions, and … receive free legal defense. (*Id.* at 28)." In addition, the Supplementary Report demanded (*id.* at 28-29) the following:

- That the United States Attorney obtain appropriate additional indictments, consistent with the evidence, for perjury, obstruction of justice, false statements and/or conspiracy against John Byrne, Peter Dignan, and, in his discretion, other implicated Area 2 and Area 3 officers;
- That the Chicago City Council immediately terminate the funding of the civil defense of Jon Burge and his men and reconvene hearings to consider the failure to settle the Darrell Cannon case, discontinuation of pension payments to Burge, and his men, and the establishment of a fund, comparable to the yearly pensions paid to Burge and his men, for compensation and treatment of torture victims who otherwise have no legal remedy.

## D.     Plaintiff's Allegations and the Discovery in this Case.

Plaintiff filed a complaint, an amended complaint, and a second amended complaint asserting, *inter alia*, Section 1983 claims against the City and nine former police officers from the Chicago Police Department ("CPD").[2] (Dkt. 82, Second Amended Complaint). Plaintiff's lawsuit arises from his

---

[2] Plaintiff's motion for leave to file a third amended complaint was denied. (Dkt. 142).

detention, arrest, prosecution, and conviction for the September 19, 1987 murders of Edith Yeager and Willie Bell Alexander. Plaintiff claims intentional misconduct by the individual Defendant Officers – he alleges they intentionally coerced his false incriminatory statement through physical and psychological abuse, withheld exculpatory evidence in order to frame him, and fabricated evidence that was used at trial to convict him. (Dkt. 82, ¶¶ 2; 162-63; 167; 170; 174; 178). Daniel McWeeny, the Estate of John Yucaitis, and Robert Dwyer are, among others, defendants in this matter and accused of misconduct that led to Plaintiff's alleged wrongful 1990 conviction for murder. Plaintiff alleges in his Second Amended Complaint that McWeeny Yucaitis, and Dwyer, as well as the other Defendant Detectives and then-Lt. Cline, are all "protegees" of Lt. Jon Burge. (*Id.* at ¶2). His *Brady* claim (Count III) and conspiracy claim (Count IV) both allege "systematic torture of persons in police custody at Area 2" as part of the evidentiary basis for these claims. Plaintiff has also alleged a *Monell* claim that the City had a de facto policy and practice of allowing the coercion of confessions through physical abuse. (*Id.* at ¶¶100-157, and Count VI).³

      Plaintiff filed a motion for partial summary judgment against the City as to the *Monell* claim on July 21, 2021. (Dkt. 60). To support that motion Plaintiff has relied on the 2007 Report as evidence supporting his motion for partial summary judgment. (*See* dkt. 65-2 Ex. 130). That motion was denied without prejudice on August 5, 2021, which the Court cited as premature. (Dkt. 75). Moreover, in response to the Defendant Detectives' Five Sets of Interrogatories, Plaintiff lists many of the individuals referenced in the 2007 Report as FRE 404(b) "torture victim" witnesses whom he intends to call at trial as evidence to support his claims, including but not limited to Melvin Jones, Stanley Howard, Aaron Patterson, Darrell Cannon, Madison Hobley, James Andrews, and Leroy Orange, all

---

³ Judge Guzman stayed *Monell* discovery pursuant to the City's motion. *See* dkt. 39, 75. The City recently filed a renewed motion to bifurcate Plaintiff's *Monell* claim for trial, which is pending. Dkt. 423.

of whom are listed as "known" Burge victims in Appendix C of the 2007 Report. (*See* Ex. D, at 2, 5-9, 12; 2007 Report, App. C at 3, 5-9, 11).

## DISCUSSION

### I. Your Honor Should Recuse Under 28 U.S.C. § 455(a)[4]

Section 455(a) "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might be questioned.'" 28 U.S.C. § 455(a). The purpose of the provision is to "promote public confidence in the integrity of the judicial process .... [which] does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989).

The standard in any case for a § 455(a) recusal is whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc., v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985); *see also U.S. v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) ("Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer." (emphasis in original)). This is an objective inquiry, *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996), and "simply requires the reasonable appearance of bias," *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). There is inherent difficulty in applying this standard as a judge is "both [ ] its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977). Observers outside of the

---

[4] Plaintiff's 15-page, unprompted response to Defendants' 3-paragraph statement in the required reassignment joint status report (dkt. 420) misstates the law regarding recusal. Specifically, Plaintiff asserts as follows: "[f]or a party to successfully obtain a judge's disqualification under Section 455(a) *or* the bias prong of Section 455(b)(1), that party must establish 'by compelling evidence' that a judge has 'negative bias or prejudice' against a party to the case and such bias or prejudice 'must be grounded *in some personal animus or malice that the judge harbors against* [*a party*]." (Response at 3) (initial emphasis added) (citing *Hook v. McDade*, 89 F.3d 350, 353-54 (7th Cir. 1996)). Plaintiff conflates these standards, as Section 455(a) "simply requires the reasonable appearance of bias." *Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 718 (7th Cir. 2004) *see also, United States v. Herrera-Valdez,* 826 F.3d 912, 917 (7th Cir. 2016) ("Under §455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer.") (emphasis in original). Plaintiff's submission is a decidedly incorrect statement of the law on recusal.

judiciary "are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *U.S. v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). "[W]here a judge's comments, writings, or rulings are the basis for a recusal request, our analysis assumes that a reasonable person is familiar with the documents at issue, as well as the context in which they came into being." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477-78 (7th Cir. 2010).

At issue is the appearance of impartiality from Your Honor's endorsement and submission of the 2007 Report and the Supplementary Report. Defendants recognize that Your Honor was not one of the individuals who participated in the "researching, writing, editing or producing" of the report. (2007 Report at 2 n.1). Nonetheless, recusal is appropriate under 28 U.S.C. § 455(a) because a well-informed, thoughtful observer might reasonably question Your Honor's impartiality in ruling on the admissibility or inadmissibility of evidence (as well as the discoverability of same) concerning both Plaintiff's case and the pattern and practice allegations and evidence involving Areas 2 and 3 in general.

Plaintiff has alleged that Yucaitis and McWeeny were "deeply involved with the torture of purported suspects at Area 2" and that "Dwyer is highly implicated in the torture of at least nine." (SAC, ¶¶101, 103, 106). Specifically, with respect to Defendant McWeeny, Plaintiff contends he was involved in torture of "Melvin Jones in February 1982; James Andrew and David Faultneroy [*sic*] in April 1983; Darrell Cannon in November 1983; Leroy Orange, Leonard Kidd, and Alex Moore in January 1984; Stanley Howard in November 1984; Aaron Patterson in April 1986; and Madison Hobley in January 1987." (SAC ¶103). Likewise, the 2007 Report, which Plaintiff has relied upon as evidence in this case, states that McWeeny "was named as a participant" in "a number of torture and abuse cases," including "Melvin Jones, Stanley Howard, Aaron Patterson, Darrell Cannon, Madison Hobley, James Andrews, L.C. Riley, and Leroy Orange." With respect to McWeeny, the 2007 Report concludes that he denied "under oath, that he saw or participated in any acts of torture or abuse" and,

8

as a result "could have been indicted for perjury for all of these acts and for obstruction of justice." (2007 Report, at 8).

Whether Plaintiff was beaten into falsely confessing to the murders (and therefore whether his constitutional rights were violated) will be at the heart of the trial. Your Honor will be called upon to rule on the admissibility of physical evidence and witness testimony, which centers on whether Plaintiff was physically tortured into confessing to the murders. At trial, the Defendant Officers, including McWeeny, will testify as to Plaintiff's arrest and prosecution. Given Your Honor's endorsement and submission of the 2007 Report, which requested the City "stop spending public funds to defend the torturers in civil cases" and concluded that McWeeny denied "under oath, that he saw or participated in any acts of torture or abuse" and, as a result "could have been indicted for perjury for all of these acts and for obstruction of justice" (*Id.*, at 8), a reasonable person might question Your Honor's impartiality as to the specific issues in this case.

In further support of his claims, Plaintiff has disclosed the testimony of the individuals listed above pursuant to Fed. R. Evid. 404(b). Defendants will likely oppose the admission of this testimony at trial. The same individuals listed in Plaintiff's complaint and referenced in his discovery responses were listed in the 2007 Report. Therefore, Your Honor will be called on to rule upon the admissibility of these individuals' testimony at trial, which the 2007 Report has accepted as truthful, where it lists them among the "107 Known Burge Area 2 and 3 Torture Victims." (2007 Report, Appendix C, at 1-14). This could lead a well-informed, thoughtful observer to reasonably question this Court's impartiality in this case, where Plaintiff's allegations mirror the 2007 Report's opinions, which Your Honor has "endorsed" and "submitted."

As mentioned above, Judge Guzman stayed *Monell* discovery pursuant to the City's motion, and the City recently filed a renewed motion to bifurcate Plaintiff's *Monell* claim for trial. Dkt. 39, 75, 423. Your Honor will be called upon to rule on the City's pending renewed motion to bifurcate

9

Plaintiff's *Monell* claim for trial, rule on the City's motion for summary judgment (if bifurcation is denied), and then preside over a *Monell* trial if necessary. A thoughtful observer may reasonably question this Court's impartiality in addressing *Monell* issues in light of the endorsement of the two reports in question.

Specifically, the 2007 Report concluded that Egan and Boyle "[i]gnored a wealth of evidence establishing that there was a widespread and continuing cover-up of the torture scandal—a conspiracy of silence—implicating high officials of the City of Chicago [and] the Chicago Police Department…." The 2007 Report further stated high ranking officials, including mayors for the City, "knew that prisoners were being tortured by Burge and his subordinates, and … had the power and duty to intervene to stop the torture…" (2007 Report, at 9-10). Plaintiff's *Monell* claim similarly alleges "the City and County's highest-ranking officials, including Daley, Brzeczek, Martin, Hillard, Shines, and Needham had consistently failed to intervene, discipline, and investigate Burge and other Area 2 Detectives' for their torture practices, and because the same high-ranking officials concealed and covered up the pattern of torture and abuse, Area 2 Detectives, including the Detective Defendants in this case, continued to torture African American suspects throughout the 1980s." (Dkt. 82, ¶156). Your Honor's endorsement of the 2007 Report, and the statements therein regarding the City's policies and practices, endorsed by Your Honor, parallel the allegations of Plaintiff's *Monell* claim, and is evidence Plaintiff intends to use to support his claim. Given the overlap regarding the particularized findings in the 2007 Report and specific allegations made by Plaintiff, a thoughtful observer might reasonably question Your Honor's impartiality in evaluating the *Monell* issues in this case.

Aside from *Monell*, Your Honor's impartiality may reasonably be questioned with respect to other matters in this litigation. Plaintiff specifically relied upon the claims of various individuals from Area 2 (identified above) as support for a theory of a pattern and practice at Area 2 of beatings and other forms of torture as a basis for having his conviction vacated and in seeking a Certificate of

10

Innocence ("COI"). Because Plaintiff alleges a claim for Malicious Prosecution and makes a claim of an unfair trial in violation of the 14th Amendment, the underlying evidence and arguments made by Plaintiff regarding the vacating of his conviction and obtaining a COI may become relevant separate and apart from the admissibility of evidence under Fed. R. Evid. 404(b) because they relate to a *prima facie* element of several of his claims.

For his Malicious Prosecution claim, Plaintiff must establish his prosecution terminated in his favor and was indicative of innocence. *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009); *Swick v. Liautaud*, 169 Ill.2d 504 (1996). Plaintiff presumably intends to introduce evidence of the vacatur of his conviction and the issuance of a COI in order to satisfy this element. Whether a disposition is truly "indicative of innocence" is a fact intensive inquiry. *See Bass v. Hansen*, 2011 WL 1337092, *2-3 (N.D. Ill. 2011). Defendants should be permitted to introduce evidence relating to the specific manner and theories on which the criminal termination was procured in order to rebut this element to show that the vacating of the conviction or the granting of a COI were procured on faulty bases, based on misstatements of evidence, misconduct of the accused or otherwise not truly a favorable termination under the circumstances. *See Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 97-98 (1st Dist. 2008) (modification of witness testimony from underlying criminal proceeding admissible in civil case); *see also Swick*, 169 Ill.2d at 513 (favorable termination does not exist if it is "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or impracticability of bringing the accused to trial."); *Payne v. Maher*, 2015 WL 4483954 (N.D. Ill. 2015). Similarly, for the purposes of a 14th Amendment claim, the totality of the criminal trial record must be examined to determine whether allegedly fabricated or suppressed evidence was material. *United States v. Agurs*, 427 U.S. 97, 114 (1976) (trial record and theories must be examined to determine materiality); *Jimenez v. City of Chicago*, 732 F.3d 710, 719 (7th Cir. 2013) (trial record of underlying prosecution relevant to due process claim).

In addition to evidentiary rulings, Your Honor ultimately will be called upon to decide summary judgment motions, which Plaintiff will likely oppose by referencing, *inter alia*, the 2007 Report and/or the Supplementary Report. Indeed, Plaintiff has already identified the 2007 Report as evidence supporting his motion for partial summary judgment. In these circumstances, a well-informed, thoughtful observer might reasonably question Your Honor's impartiality in ruling on the admissibility or inadmissibility of evidence, especially in light of the 2007 Report's conclusion that McWeeny denied "under oath, that he saw or participated in any acts of torture or abuse" and, as a result "could have been indicted for perjury for all of these acts and for obstruction of justice." (Ex. B, 2007 Report, at 8).

Even if a reasonable person would not question Your Honor's impartiality based on the above examples when considered individually, a thoughtful observer could come to the conclusion when those examples are considered together. For example, in *Fairley v. Andrews*, 423 F.Supp.2d 800 (N.D. Ill. 2006), Judge Castillo found that none of his "individual statements, when viewed in their proper context, warrant[ed] recusal under section 455(a)." *Id.* at 821. "However, in doing the required self-evaluation under this section," Judge Castillo also found "that all of this Court's statements and interactions with Defendants in this case, *taken together*, may give pause to a non-legal observer, not versed in the ways of the courtroom and the risks of litigation." *Id.* (emphasis added). Judge Castillo therefore concluded that "the reasonable person standard under section 455(a) has been satisfied and that this Court's recusal is required." *Id.* This was especially true where "reasonable minds may disagree as to whether recusal is appropriate in this matter under section 455(a)," because "'outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *Id.* at 820-21. These same considerations apply here. There is a reasonable basis to question the appearance of impartiality in ruling on issues relating to this Plaintiff's allegations and the evidence, based on Your Honor's endorsement and submission of the 2007 Report and the Supplementary Report.

## II. Alternatively, Your Honor Should Recuse Under 28 U.S.C. § 455(b)(1).

Under § 455(b)(1), a judge must recuse himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Like § 455(a), the inquiry under § 455(b)(1) is evaluated on an objective basis, *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000), and the inquiry to be made is "whether a reasonable person would be convinced the judge was biased." *Grove Fresh Dist., Inc. v. John Labatt, Ltd.,* 299 F.3d 635, 640 (7th Cir. 2002). "The bias or prejudice must be grounded in some personal animus or malice that the judge harbors... of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* Bias or prejudice means a wrongful or inappropriate negative disposition, such as one based on extrajudicial knowledge or opinions that have no place in a judicial proceeding, or one so extreme that fair judgment becomes impossible. *Liteky*, 510 U.S. at 540.

Objectively, based on Your Honor's endorsement and submission of the statements contained in the 2007 Report and the 2008 Supplementary Report, a reasonable person (whether accurate or not) may be convinced Your Honor is biased. Given Your Honor's endorsement of the 2007 Report's statement that Defendant McWeeny committed perjury in relation to testimony regarding torture and therefore should be indicted, a reasonable person would be convinced that "fair judgment becomes impossible." Such a conclusion is further bolstered by the 2007 Report's and 2008 Supplementary Report's statement that the City should cease payment of defense costs for individuals under Burge's command. This case involves that very circumstance. Moreover, the 2007 Report's findings that high-ranking officials, including mayors for the City, "knew that prisoners were being tortured by Burge and his subordinates, and … had the power and duty to intervene to stop the torture" directly parallel Plaintiff's allegations regarding his *Monell* claim. As a result of Your Honor's submission and endorsement of the two reports, Your Honor has obtained personal knowledge of disputed evidentiary facts concerning the proceeding which arise from "an extrajudicial source" under

13

455(b)(1). Your Honor has already expressed opinions in an extrajudicial capacity about the veracity of individuals being subjected to a wrongful conviction at the hands of Area 2 and 3 detectives, and the merits of the City defending lawsuits such as this. Thus, given the severity of such an allegation, a reasonable observer could find Your Honor unable to fairly and impartially preside over a case involving Defendant McWeeny, as well as the other Defendant Officers from Areas 2 and 3, making similar allegations. Thus, Your Honor's recusal is appropriate under 455(b)(1) as well.

## CONCLUSION

WHEREFORE for the reasons stated above, Defendants respectfully request Your Honor recuse himself from this case pursuant to 28 U.S.C. § 455(a) or, in the alternative, pursuant to 28 U.S.C. § 455(b)(1), and for whatever other relief this Court deems appropriate.

Respectfully submitted,

PHILIP CLINE
DANIEL MCWEENY
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
3333W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090
F: 312-429-0644
dnoland@reiterburns.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on **November 27, 2023**, I electronically filed the foregoing **Defendants' Joint Motion to Recuse** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

/s/ *Daniel M. Noland*