# TORTURE IN CHICAGO

## A supplementary report on the on-going failure of government officials to adequately deal with the scandal

**October 29, 2008**

EXHIBIT C

**TABLE OF CONTENTS**

                                                                                                        Page

INTRODUCTION ...................................................................................................    3

THE FEDERAL INVESTIGATION.....................................................................    5

ILLINOIS ATTORNEY GENERAL AND TORTURE VICTIMS WHO REMAIN
IMPRISONED..............................................................................................................    8

THE CITY OF CHICAGO..........................................................................................    10

    Compensation, Reparations, and Treatment for Torture Victims...........................    14

        The Darrell Cannon Case.........................................................................    14

        Reparations and Treatment..................................................................    18

COOK COUNTY AND THE COOK COUNTY STATE'S ATTORNEYS' OFFICE ...    20

INTERNATIONAL ACTIONS, HEARINGS AND REPORTS.............................    24

STATE AND FEDERAL LEGISLATION......................................................    26

THE FRATERNAL ORDER OF POLICE.......................................................    27

CONCLUSION AND CALL TO ACTION.....................................................    28

SIGNATURES........................................................................................    29

*I believe that were this to take place in any other city in America, it would be on the front page of every major newspaper. And this is obscene and outrageous that we're even having a discussion today about the payment that is due the victims of torture. I think in light of what has happened at Abu Ghraib, in Iraq with respect to torture victims, I am shocked and saddened at the fact that we are having to engage in hearings such as these . . . . We need to stop with this nonsense. I join with my colleagues in saying this has got to stop.*

**Alderman Sandi Jackson, Chicago City Council Hearing on Police Torture, July 24, 2007**
****

*This was a serial torture operation that ran out of Area 2...The pattern was there. Everybody knew what was going on. . . . [E]verybody in this room, everybody in this building, everybody in the police department, everybody in the State's Attorney's office, would like to get this anvil of Jon Burge off our neck and I think that there are creative ways to do that.*

**Alderman Thomas Allen, Chicago City Council Hearing on Police Torture, July 24, 2007**

**INTRODUCTION**

More than two years ago, on July 19, 2006, the Cook County Special Prosecutors, after a

four year investigation that cost the taxpayers approximately $7 million, failed to indict Jon

Burge or any other of the other alleged Chicago police torturers, but instead issued a thoroughly

inadequate report.[1] There was widespread community outrage, and in response, on April 24,

2007, a diverse group of more than 200 organizations and individuals, including torture victims

and their family members, attorneys, legal academics, civil and human rights, religious and

political leaders, and community activists, issued a "shadow" report entitled "Report on the

Failure of Special Prosecutors Edward J. Egan and Robert D. Boyle to Fairly Investigate

---

[1] The 292 page Report of the Special State's Attorney did make several significant findings, including that three torture victims were abused "beyond a reasonable doubt" by Jon Burge and several of his men; that Burge and his midnight crew abused suspects "with impunity;" and that the police superintendent, Richard Brzeczek, knew of the torture of Andrew Wilson in 1982 and should have acted to fire Burge at that time. Report of the Special State's Attorney, pp. 16-17, 86-88.

Systemic Police Torture in Chicago." (The "Shadow Report").[2] This Shadow Report documented

that the Special Prosecutors:

1.   Failed to bring criminal charges against members of the Chicago Police Department despite the apparent existence of numerous provable offenses within the statute of limitations.

2.   Ignored the failure of former Cook County State's Attorney Richard M. Daley, State's Attorney Richard A. Devine, and various other high-ranking officials to investigate and prosecute police officers who engaged in a documented pattern of torture and wrongful prosecution of torture victims.

3.   Did not document the systemic and racist nature of the torture and did not brand it as such in accordance with the international definition of torture.

4.   Unfairly evaluated the credibility of the alleged torturers and of their victims and unfairly attempted to discredit torture victims who had pending civil or criminal cases.

5.   Conducted an investigation that was hopelessly flawed and calculated to obfuscate the truth about the torture scandal.

6.   Ignored a wealth of evidence establishing that there was a widespread and continuing cover-up of the torture scandal - a conspiracy of silence - implicating high officials of the City of Chicago, the Chicago Police Department, and the Cook County State's Attorney's Office.

7.   Failed to document the role of judges of the Criminal Division of the Cook County Circuit Court in the torture scandal.

8.   Had appearances of a conflict of interest and bias in favor of those whom they had been appointed to investigate.

In conclusion, the Shadow Report made the following demands on the City of Chicago,

the County of Cook, the Illinois Attorney General, the U.S. Attorney's Office, and the U.S.

Congress:

---

[2] The entire Shadow Report is posted at:
http://www.law.northwestern.edu/macarthur/police/area2.html

4

1.      That the Cook County Board hold a public hearing to investigate the squandering of public resources by the Special Prosecutors on an investigation that appears to have been flawed by design.

2.      That the U.S. Attorney for the Northern District of Illinois and U.S. Department of Justice conduct an independent investigation into all of the criminal conduct implicated by the evidence outlined in the Shadow Report.

3.      That the City of Chicago and the County of Cook establish a fund to provide compensation and treatment for the more than one hundred victims of torture who may be barred from obtaining relief by the statute of limitations.

4.      That the City of Chicago stop spending public funds to defend the torturers in civil cases.

5.      That the Illinois Attorney General agree to new criminal court hearings for persons behind bars who were convicted in whole or in part on the basis of confessions obtained by Burge and his subordinates.

6.      That the U.S. Congress, the United Nations Committee Against Torture (CAT), and the Inter-American Commission on Human Rights continue to monitor the City, County and U.S. Government's responses to the above demands.

While there has been some significant action taken in response to these demands, the undersigned have concluded that those steps have been both inadequate and require additional action, as set forth in this Supplementary Report.[3]

**THE FEDERAL INVESTIGATION**

The Shadow Report was served on the U.S. Attorney for the Northern District of Illinois, Patrick Fitzgerald. Shortly thereafter, the County Board Resolution calling for a Federal investigation and prosecutions was passed. On September 20, 2007, five City of Chicago Aldermen, led by Alderman Ed Smith, delivered a letter to Mr. Fitzgerald that sought Federal prosecutions. The letter set forth the basis for the prosecutions:

We believe that federal prosecution of Burge and his men is possible and that the five-year Federal statute of limitations would not be a bar. Burge and the others could be prosecuted for perjury, for obstruction of justice and for an ongoing conspiracy to cover up their torture scheme. For example, in November 2003, Burge submitted sworn

---

[3] This Supplementary Report is endorsed by more than 260 organizations and individuals, including torture victims and their family members, attorneys, legal academics, civil and human rights, religious and political leaders, and community activists. See, pp. 29-40 *infra*.

interrogatory answers in the federal case of *Hobley v. Burge* in which he denied that he had witnessed or participated in any torture or abuse of suspects during his tenure in the Chicago Police Department. Recently numerous other Burge associates have given detailed sworn depositions in Federal Court where they have also denied any involvement or knowledge of torture at Area 2.These sworn statements are demonstrably false and could provide the basis for perjury, obstruction of justice, and conspiracy prosecutions.

*****

The Area 2 torture scandal continues to cast a long shadow over the Chicago Police Department and the Cook County criminal justice system. It is appalling that none of the offending police officers has ever been criminally charged. Most recently, the United Nations Committee Against Torture has expressed the same sentiment in a report that links Chicago with Abu Ghraib and Guantanamo. On behalf of our constituents, we urge you to take all possible action to prosecute Jon Burge and his men for their actions in the aftermath of their torture of African American men at Area 2 and Area 3 police headquarters. [4]

Since the systemic nature of Area 2 torture first became known in 1989, there had been repeated unsuccessful attempts to convince successive U.S. Attorneys and U.S. Attorney Generals to investigate and prosecute Burge and his men for violations of Federal law. Additionally, in May of 2006, the U.N. Committee Against Torture had cited its concern that the US Government was in violation of the Convention Against Torture with respect to the Chicago Police torture cases. Specifically, the U.N. Committee noted the limited investigation and lack of prosecution in the torture cases, and called on the U.S. Government to promptly, thoroughly and impartially investigate these cases and bring the perpetrators to justice.[5] Moreover, in 2007, the UN Special Rapporteur on Torture had addressed the U.S. State Department, requesting its response as to why the U.S. Government had not investigated or prosecuted those implicated in the Chicago Police Torture scandal.

On September 26, 2007, U.S. Attorney Fitzgerald announced that he was conducting an "active" and "serious" torture investigation:

---

[4] The letter, which was also signed by Aldermen Pat Dowell, Bob Fioretti, Billy Ocasio, and Helen Shiller, is attached as Appendix A.

[5] The U.N. CAT Conclusions and Recommendations are posted on the following website: http://www2.ohchr.org/english/bodies/cat/cats36.htm

The United States Attorney's Office is conducting an active criminal investigation into allegations of perjury, false statements, and obstruction of justice by officers who served in the Chicago Police Department in the 1980s in relation to currently pending federal civil lawsuits in which persons in Chicago Police department custody during those years allege they were abused.[6]

On June 11 2008, the *Chicago Sun Times* reported on its front page that five to ten former Area 2 detectives had been subpoenaed to a Federal Grand Jury, which "according to sources" is "a clear sign [that] a criminal investigation into Commander Jon Burge and others is ramping up."[7] The next day the *Sun Times* editorialized that "alleged torture by cops needs [a] thorough probe," and that "citizens can have confidence in their legal system only when they know that wrongdoers will be punished without favor," and further opined that:

We have full confidence in U.S. Attorney Patrick Fitzgerald's office running the investigation. Fitzgerald and his crack team seem, at times, to be the only ones around here who can figure out how to prosecute certain bad guys, whether its crooked cops or political players trading city jobs for campaign work. But for all of Fitzgerald's efforts, his investigation might be going nowhere were it not for principled people who shoved an unpopular issue uphill for many years. People such as journalist John Conroy, who wrote detailed and damning stories about police torture for the Chicago Reader before it became a hot issue. People such as Ald. Ed Smith who has been strident in his criticism at the city council. People such as the attorneys at the People's Law Office, who have been tough advocates for the men whose liberties were violated in the shadows of police interrogation rooms.[8]

On October 21, 2008, U.S. Attorney Fitzgerald announced a three count indictment against Jon Burge for perjury and obstruction of justice. The indictment alleged that Burge "was present for, and at times participated in, the torture and physical abuse of a person being questioned on one or more occasions."[9] In addition, the indictment alleged that Burge "was aware that detectives he was supervising engaged in torture and physical abuse of a person being questioned on one or more occasions." The indictment further alleged that by lying under oath in November of 2003 when asked if he had ever used, or was aware of the use of, torture

---

[6] The U.S. Attorney's Statement is attached as Appendix B.

[7] This *Sun-Times* news report is attached as Appendix C.

[8] This *Sun-Times* editorial is attached as Appendix D.

[9] The October 21, 2008 Indictment is attached as attached as Appendix E.

techniques during questioning, Burge committed the federal crimes of obstruction of justice and perjury.

While announcing the indictment, U.S. Attorney Fitzgerald stated that the "investigation is continuing," and that:

> The charges should serve as a warning to officers who worked for Burge . . . and if their lifeline is to hang on a perceived code of silence, they may be hanging on air . . . Anyone who thinks that they (sic) can safely lie in a grand jury, relying upon an unspoken conspiracy of silence, is taking a great risk.[10]

We are certainly heartened by the progress of the Federal investigation, and the indictment of Jon Burge. We urge City, County and Federal officials to continue to vigilantly monitor this investigation and to continue to urge the indictment and prosecution of those additional Burge confederates who can be shown to have been criminally involved in the torture. Similarly, we call on the U.S. Attorney to obtain appropriate additional indictments, consistent with the evidence, for perjury, obstruction of justice, false statements and/or conspiracy against John Byrne, Peter Dignan, and, in his discretion, other implicated Area 2 and Area 3 officers.

## THE ILLINOIS ATTORNEY GENERAL AND TORTURE VICTIMS WHO ARE STILL IMPRISONED

In April of 2003, the Presiding Judge of the Criminal Division of the Cook County Circuit Court recused Cook County State's Attorney Richard Devine and the State's Attorney's Office from all Area 2 torture criminal prosecutions on the basis of conflict of interest, and appointed the Illinois Attorney General's Office, headed by Attorney General Lisa Madigan, to represent the State in the continued prosecution of the 25 torture victims[11] who remain in prison on the basis of tortured confessions.[12] The Shadow Report was tendered to Attorney General

---

[10] The U.S. Attorney Press Release of October 21, 2008 is attached as Appendix F and the *Chicago Tribune*, article of October 21, 2008, entitled "Feds Catch up with Burge," is attached as Appendix G.

[11] A list of these imprisoned torture victims is attached as Appendix H.

[12] The motion to recuse had been brought by torture victims who were then on death row, and

Madigan, and the Cook County Board Resolution urging new hearings for these men soon followed. Since then, two imprisoned victims, James Andrews and Cortez Brown, have been granted Court ordered hearings, and Andrews has subsequently been released.[13] While Madigan has made many promises to act justly, both publicly and in meetings with attorneys, more than five years after she took over the cases, and more than two years after the release of the Special Prosecutor's Report, the remaining men languish in prison, many without remedies, unless the Attorney General acts. In contrast, in Los Angeles, during the Ramparts police scandal, the District Attorney dealt with 1500 cases that were tainted by 50 brutal and corrupt police officers, dismissing more than 100, in less than two years. Most recently, the Campaign to End the Death Penalty has led bi-monthly demonstrations in front of Madigan's office, calling for her to agree to new hearings for all of the torture victims still behind bars, but to which Madigan's office has made only this reply:

> [All Burge-related cases] are in various stages of the post-conviction process, [and] ethically, the attorney general is obligated to handle each case individually based on the facts and history of the case. No two cases are the same.[14]

---

who opposed the appointment of Madigan's office because several former Cook County assistant state's attorneys who had been supervisors in the SAO at the height of the torture scandal were, at the time of the Attorney General's appointment, serving as supervisors in the Attorney General's criminal division. At least one of those supervisors is now involved in representing the State in the cases of the imprisoned torture victims who seek new hearings.

[13] Andrews, who has consistently maintained his innocence, was granted a new trial after a Cook County Criminal Court Judge vacated his murder convictions, finding that he presented sufficient evidence to demonstrate he was coerced into confessing to both crimes by Area 2 detectives. The Attorney General subsequently dismissed Andrews' criminal cases because there was insufficient evidence linking him to either of the crimes without the coerced confessions. Cortez Brown was granted a new hearing on his claims of Area 3 coercion by the Illinois Appellate Court, and he now awaits his hearing in the trial court.

[14] Alternet, 7/23/08, "How Scores of Black Men Were Tortured Into Giving False Confessions by Chicago Police." This article, which discusses at length the case of one of the still imprisoned torture victims, Michael Tillman, is posted at:
http://www.alternet.org/rights/92374/how_scores_of_black_men_were_tortured_into_giving_fal
se_confessions_by_chicago_police/?page=entire. Another recent media report on the still imprisoned victims is posted at:
http://www.chicagopublicradio.org/Content.aspx?audioID=26951

It is clear that the use of a confession obtained by torture in a criminal proceeding against the torture victim not only violates the U.S. Constitution, but also is in violation of Article 15 of Convention Against Torture. We therefore call on the Attorney General to promptly agree to the grant of new hearings for all the remaining imprisoned torture victims at which they can present evidence that their confessions were coerced from them. We further urge the Attorney General to refuse to offer the testimony of Burge and his fellow officers at these hearings.

**THE CITY OF CHICAGO**

At the time of the release of the Shadow Report, the City of Chicago was embroiled in defending itself and numerous alleged torturers, including Jon Burge, in five civil law suits brought by exonerated torture victims Darrell Cannon, Leroy Orange, Madison Hobley, Stanley Howard, and Aaron Patterson. Months before, the City had agreed to settle three of the five cases for a total of $14.8 million, but had subsequently refused to finalize the agreement. Many Chicago City Council members had protested the City's failure to honor its settlement agreement and its continued defense of Burge and his men in the torture cases, which, at that time, had cost the City taxpayers nearly $10 million. The Shadow Report was served upon all 50 members of City Council, and, in response, City Council members introduced two resolutions. The first, introduced on May 19, 2007, and supported by a majority of Aldermen, called for hearings before the Council's Police and Fire Committee, at which the Special Prosecutors were asked to appear in order to explain their findings and failure to seek indictments. The second resolution, introduced on July 19, 2007 by thirteen City Council members, sought a hearing before the Council's Finance Committee and called on the Council to "swiftly approve a settlement in all outstanding cases which will end this shameful chapter in this City's history." The resolution further stated:

> WHEREAS, The undeniable atrocities of former Chicago Police Commander Jon Burge and his associates, substantiated by a report of the Special Prosecutor, have generated a

10

debt of an estimated $10 million in legal fees accumulated defending both the city and the accused officers involved; and

WHEREAS, The multiple private legal firms engaged in their defense are continuing to generate billable hours even though independent legal experts have proffered the opinion that the city's case is untenable; and

WHEREAS, The City of Chicago's insurance carrier will not cover any defense attorney's fees eventually leaving this mounting and unnecessary debt for the taxpayers for the city to pay; and

WHEREAS, It is in the City of Chicago's best interest to limit its exposure and ultimate liability by settling all the cases stemming from the wrongdoing of Burge and his cohorts. Each day that passes adds to the cost of this indefensible case and encourages the plaintiffs to increase their cash demands; and

WHEREAS, The Honorable Ed H. Smith and the Honorable Howard Brookins Jr. have informed this august body of this serious breach of fiduciary responsibility to the taxpaying public; now therefore

BE IT RESOLVED That we, the undersigned members of the City of Chicago City Council, assembled here this 19th Day of July, 2007 AD, do hereby exhort the City of Chicago's Corporation Counsel to cease and desist the continuing accumulation of attorney's fees in defense of Jon Burge and other officers who participated with him in these heinous and indefensible acts and instruct the legal counsel representing the city in this matter to fashion a settlement with all *Burge, et al* plaintiffs. Furthermore, we appeal to our colleagues on the Finance Committee to deny any more payments for outside legal counsel regarding defense of the Burge matter and swiftly approve a settlement in all outstanding cases that will end this shameful chapter in this city's history.[15]

That same day, Finance Committee Chairman Edward Burke declared that "the Burge situation of course is a tragedy for all of us. [It is] an embarrassment for the City, an embarrassment for the profession of law enforcement." On July 24, 2007, the City Council's Committee on Police and Fire held a public hearing on police torture pursuant to the May 19 resolution. A majority of the entire City Council attended, and highlights of the hearing included a video of three torture victims describing their torture, and Burge taking the Fifth Amendment when asked if he tortured these men.[16] The Special Prosecutors declined to appear. The

---

[15] This Resolution is attached as Appendix I.

[16] The video of Burge and his victims is posted at: http://video.google.com/videoplay?docid=-1740730225342200983&q=Jon+Burge+and+Chicago&ei=DUN2SLqkNYic4QKG5NiVCw&hl=en

overwhelming sentiment of the Aldermen in attendance concerning Burge and the police torture

cases was perhaps best captured by Committee Chairman Isaac Carothers, who stated:

> I think there's no doubt that everybody in the chamber, I believe everybody in this
> building, I believe in this city believes that certainly Burge committed these atrocities. I
> think we all know that. . . .You're preaching to the choir when you're talking about what
> Burge did because everyone believes and knows what Burge did.

Transcript of City Council Proceedings, July 24, 2007, pp. 34-35.[17]

Alderman Ed Smith, a ranking member of the Finance Committee and one of the co-

sponsors of the July 19, 2007 Settlement Resolution, re-emphasized that it was imperative for

City Council to remedy the injury that Burge and his men had wrought:

> I have seen a lot of disgraces in the police department since I have been in Chicago, but
> this is absolutely the worst that I have ever seen. . . . Now, these atrocities that were
> committed would not have been committed had someone not condoned it or either
> acquiesced when it was going on because apparently no one said anything and it just kept
> happening and because of that, a lot of people endured some abuse, severe pain and
> almost lost their lives because of this man. . . . Now, it is incumbent upon the City, it is
> incumbent upon us, everyone who has a concern about this to do something about it.[18]

Id. at 43-44, 46-47.

Alderman Bob Fioretti repeatedly called for the rapid settlement of all five of the

pending torture cases:

> As you know, I have been pushing globally for a settlement of all the cases . . . I do want
> to make sure that we resolve to settle these cases...We will have this body ask our
> Corporation Counsel to resolve these cases...You know what, they [Burge and his
> lawyers] will keep going on and litigating and litigating and litigating and we will never
> get to the end of these cases, and they have to come to an end. . . . so we can get the full
> total global picture to put an end to all these cases as soon as possible and quit dragging it
> out.

Id. at 95, 100-101.

---

[17] The video of the Aldermanic statements is posted at: http://video.google.com/videosearch?q=
burge+police+torture+hearings%3A+Public+Officials+Speak+out&hl=en&sitesearch=#
[18] Alderman Beale also echoed these sentiments: "When something like this hits us, that we see
that there is such a hole in our system, not only does the City Council have an obligation to
address it, the police department has an obligation to address it, federal prosecutors. . . . We just
cannot let this stand." Id. at 51-52.

Aldermen Allen asserted that City Council wanted "a change in the direction from the administration as to how we deal with Burge." (Id. at 33-34), and Committee Chairman Carothers closed the hearing by pledging further City Council action:

> As a result of these hearings I really believe that there will be other resolutions and possibly other ordinances coming forth as we deal with this very serious and important issue.

Id. at 225.

The City Council Finance Committee hearing on the City's continued defense of the torture cases and the failure to honor the settlements was set for October of 2007. In preparation, several Aldermen requested that a statistical expert project the range of exposure in additional attorney's fees, costs, and judgments for which the City could be liable in the five pending torture cases if the City persisted in defending them. The expert projected that the cases could cost the City taxpayers in the range of $96 to $195 million.[19] When this report was publicly released, the *Chicago Sun-Times* ran a September 25, 2007 editorial entitled "Stop the Financial Torture: Settle the Burge Lawsuits Now."[20] On the eve of the October hearing, the City announced that it had reopened negotiations, and the hearing was continued generally. In December of 2007, it was announced that an agreement to settle four of the five cases - - - Hobley, Orange, Howard and Patterson - - - for a total of $19.8 million had been reached. The settlement was heralded by the *Chicago Sun-Times* as the "end of a nightmare" and unanimously approved by City Council on January 9, 2008. Mayor Richard M. Daley was quoted as saying that it was the "end of a tragic chapter," but several City Council members, including Aldermen Brookins, Preckwinkle and Fioretti, noted that the City had made no effort to settle the Cannon

---

[19] This September 11, 2007 Report of the expert, Steven Whitman, Phd., is attached as Appendix J.

[20] The *Sun-Times* editorial is attached as Appendix K.

13

case, and called on the City to honor its pledge to settle all of the cases and thereby end its costly

defense of the torture cases.

**Compensation, Reparations, and Treatment for Torture Victims**

### The Darrell Cannon Case

In a recent interview, Darrell Cannon, whose case against the City still remains unsettled,

described his November 1983 torture as follows:

> They drove me to a site, where there's a big huge pipe you drive through. It was an isolated area. They told me nobody would hear or know anything about what happened to me. [Area 2 detective] Dignan got out a shot-gun and he said, "Nigger, look." And he showed me the shotgun shell. He said "Now, listen Nigger," then turned around and I thought he was putting the shell up in the shotgun because it sounded like that. Then he turned back around and he said, "Nigger, you going to tell us what we want to hear." When I replied "No," he shoved the shot gun in my mouth and he kept saying, "You're gonna tell me what I want to hear." And when I refused, one of the other [officers] told him, "Pull the trigger, blow that nigger's head off." And they pulled the trigger. They did this on three separate occasions. And the third time they did it, it seemed like when I heard the trigger click, that the back of my brains were being blown out. That's what my mind was telling me. I could feel my hair stand up on my head. . . . [Then Area 2 Sergeant] Byrne used the electric cattle prod on me . . . he stuck it to my testicles . . . and they kept hitting me with the cattle prod, telling me that, they knew what had happened, and they wanted me to confirm it. They were asking me questions about it. I refused to answer and they kept hitting me with that cattle prod. [Finally I said] "Ok, I'll tell you anything you want to hear. Anything." To get them to stop doing that.

In this interview, Cannon further described the racism which was so much a

part of his torture:

> You don't call me "Niggers" throughout the day unless you are racist, and they said it so downright nasty. So there's no doubt in my mind that racism played a huge role in what happened to me, because they enjoyed this. You know, this wasn't something that was sickening to them. . . .They laughed. They smiled, and that is why my anger has been so high, because I continuously saw how they smiled, how [they] enjoyed this. If I had been white, I doubt very seriously if I would have been treated that badly. But because of the fact that I am Afro-American, who's going to believe me? You know, in court --- nobody. I wasn't a human being to them. . . . I was just "a nigger" to them, that's it. They kept using that word like that was my name . . . they had no respect for me being a human being. . . . I [felt] anger, frustration, embarrassment, and all of those things still exist today. You know it hasn't changed. It's as if this was done to me yesterday. And those emotions I still feel. It's been 24 years and I've never . . . I have never been able to, to get over it. And I don't know if I will. I just don't know. . . . I've lost too much. You know,

14

my parents, my brother, my nephew, an adopted son. So I don't know. But I'll keep on going, and I'll continue to talk about it regardless of how it makes me feel.

As a result of his torture, Cannon gave a confession, was charged with being an accomplice to a murder on the basis of his confession, and was later convicted and given a life sentence. In 1986, Cannon, while serving his prison term, brought a *pro se* civil rights lawsuit alleging torture. Unaware of the evidence of systemic torture at Area 2 that had been covered up by Burge, Byrne, Dignan, the Police Department, and the City, Cannon reluctantly accepted a $3,000 settlement, of which his share was $1,243, in late 1987.

In 1992, the Police Department's Office of Professional Standards (OPS), pursuant to court order, released the Goldston Report, which found that Cannon's torture was part of "systematic" torture and abuse at Area 2 and that Byrne and Dignan, who were two of Burge's most trusted midnight crew operatives, were major "players" in this pattern of torture. As a result, the OPS reopened its investigation of Cannon's case, and OPS investigator Veronica Tillman, after an extensive re-investigation, found that Byrne and Dignan had repeatedly electric shocked Cannon, subjected him to a mock execution with a shotgun, and racially abused him, (January 31, 1994 OPS Report and Findings of Investigator Veronica Tillman) but OPS Director Gayle Shines secreted the file and findings in her office for more than four years while Cannon was re-convicted at a Court ordered re-trial, again without access to any of this evidence. In 1997, the Illinois Appellate Court granted Cannon a new motion to suppress hearing based on the newly discovered evidence, (*People v. Cannon*, 293 Ill. App. 3d 634 (1997)) and this hearing commenced in 1999. The State's Attorney's Office, rather than calling Byrne and Dignan to falsely deny the torture, instead dismissed his murder case in 2004, 21 years after he was convicted on the sole basis of his tortured confession.

Cannon filed suit in 2005, basing his claim on the newly discovered evidence and findings of systemic torture at Area 2, the City's admission that he was tortured, and his many

years in prison on the basis of his tortured confession. The City moved to dismiss Cannon's claim, arguing that the $3,000 settlement precluded his new case. Federal District Court Judge Amy St. Eve denied the City's motion and ordered that the case proceed, holding that Cannon's evidence of "fraud" by the Area 2 defendants and the City defeated the City's reliance on the paltry $3,000 settlement, and that the following language in the case of *Bell v. Milwaukee* applied with "equal force" to Cannon's case:

> The fraud in this case is sufficient to nullify an otherwise valid settlement and dismissal. This is not a case in which the defendant simply lied and thereby made the plaintiff's proof of his case difficult. Rather, this is a case of massive conspiracy by high ranking . . . officials to prevent the disclosure of the true facts. This conspiracy prevented the proper functioning of the judicial system.

*Cannon v. Burge*, 2006 U.S. Dist. LEXIS 4040 at *25 (N.D. Ill. 2006), *quoting Bell v. Milwaukee*, 536 F. Supp. 462, 465-66 (E.D. Wis. 1982), *affirmed*, 746 F.2d 1205 (7th Cir. 1984).

Despite City Council's asserted commitment to settle all of the torture cases, and Cannon's offer to settle for a similar amount to that accepted by each the other four torture victims, ($5 million), the City continues to refuse to negotiate with Cannon, who was finally released from prison, still suffering physically and psychologically, in April of 2007, and who has been a model citizen ever since. The sole basis offered by the City for its refusal to negotiate is its already defeated argument that it already settled Cannon's prior case for $3,000. The City has already expended approximately $870,000 defending Burge and his men in Cannon's case alone, has recently retained a fourth law firm to defend Area 2 witnesses who are invoking the Fifth Amendment,[21] and the expert's projections are that the City risks spending an additional

---

[21] Burge and his fellow Area 2 Defendants are represented by Sotos and Associates; the City and two other City Defendants are represented by Dykema Gossett; two other former high ranking police officials are represented by Greene and Letts; and the non-cooperating Area 2 witnesses are represented by Clausen Miller. In contrast, the African American Area 2 detectives who came forward and revealed that Burge's torture ring was an "open secret" at Area 2 are left to fend for themselves when they are grilled by this battery of City-financed lawyers at depositions.

$22.2 million to $55.2 million in attorneys' fees and judgment if it persists in refusing to settle Cannon's case.[22]

Most disturbingly, by continuing to defend Burge and his men in the Cannon case, the City is also *de facto* funding their civil lawyers' use of the civil discovery process to develop Burge and his men's defense to pending and potential future federal criminal charges - - - a result that directly contradicts the stated intent of City Council to obtain successful federal prosecutions of Burge and his men, undermines the only remaining avenue for terminating their pensions,[23] and is directly contrary to City Council ordinance. For example, a witness who had previously testified before the Federal Grand Jury that indicted Burge for perjury and obstruction of justice *in the civil torture cases* and continues to investigate whether Byrne, Dignan, and other Burge confederates have committed similar offenses, recently testified at a deposition in the *Cannon* civil case that an "intoxicated" Burge had made several inculpatory statements[24] as well as a "vile and vulgar" sexually harassing comment to her. Professing great fear and reluctance, she was cross examined by Burge's lawyer in an attempt to minimize her testimony. Similarly, Burge's lawyers have deposed and a large number of torture victims and African American detectives who are also potential witnesses against Burge and his men in any criminal prosecution brought against them, have scheduled depositions of many additional witnesses

---

[22] The projected Cannon breakdown in expert Whitman's September report was $3,273,930 in additional defense fees and costs, $13 million to $46 million in potential damages, and $5,907,563 in fees to Cannon's lawyers if he prevails at trial. See Appendix J. A breakdown of the fees already paid to private counsel in the Cannon case can be found in Appendix L.

[23] The City, which made no effort to revoke Burge's pension when he was fired in 1993, maintains that it must continue to pay his and his fellow officers' pensions absent criminal conviction.

[24] Burge told her that the Wilson brothers were beaten, that criminal defendants were "dogs," that if they did not commit the crime for which they were arrested, they committed other crimes, that the Fourth, Fifth and Fourteenth Amendments did not apply to them, and that criminal defense lawyers were the police's worst enemies.

adverse to Burge's criminal interests, and have continued to pursue Burge's defense even after his indictment.

The City's defense of Burge in the civil cases, which was discretionary with the Mayor and the Finance Committee before his indictment, is now expressly prohibited by the City of Chicago Municipal Code, Sec. 2-152-170,[25] which states as follows:

> If any claim or action, either civil or criminal in nature, is instituted against a current or former elected official, current or former appointed official or current or former employee of the city of Chicago or any agency of the city of Chicago where such claim arises out of any act or omission, made in good faith, occurring within the scope of such persons office or employment, the chairman of the committee on finance of the city council, with the approval and concurrence of the mayor, *may* at the request of such person appoint counsel to defend such person against any such claim or action. ***Provided, however, that no city funds shall be expended directly or indirectly for payment of legal services rendered on behalf of any person upon the charge of such person by criminal complaint, information or indictment in criminal proceedings, and any appointment of counsel shall terminate.*** Provided further, that upon the conclusion of the criminal proceedings such person may request reimbursement of legal expenses and costs pursuant to the procedures set out herein, if such person has been acquitted or found not guilty or if all charges against such person in the action have been dismissed.[26]

### Reparations and Treatment

The City has not only refused to settle the *Cannon* case, but has also failed to even consider establishing a fund for the compensation and treatment of torture victims who cannot seek compensation in the Courts due to a statute of limitations that bars any civil litigation brought on their behalf. Many of the men who were torture victims are no longer in prison, and have been left to deal with post-traumatic stress disorder, anger management, dependency problems, physical ailments, and joblessness without any aid whatsoever. These victims include

---

[25] A copy of the ordinance can be found in Appendix M.

[26] When pressed, the City has repeatedly claimed that it is required to continue defending Burge pursuant to the decision of the Seventh Circuit in *Wilson v. City of Chicago*, 120 F. 3d. 681 (7th Cir. 1997). In fact, as recognized by Alderman Helen Shiller at the July 24, 2007 City Council hearing, the *Wilson* case does not require the City to defend Burge and his men, but rather only to indemnify for any judgment obtained against them.

Anthony Holmes, Burge's first known electric shock victim, who was released from prison after thirty-three years without treatment or a legal remedy, [27] and Melvin Jones, who was a key witness for the City in its successful effort to fire Burge in 1993, and is now very ill and homeless.[28]

Recent figures obtained through FOIA requests show that the City has paid private lawyers $10,307,673 to defend Burge and the City in the civil torture cases, $527,464 to private lawyers to fire Burge, and at least $10.7 million in pensions, plus health benefits, to the twenty-six Area 2 defendants in the torture cases,[29] and $21,154,000 to nine of the torture victims and their lawyers. Hence, the City has already spent approximately $43 million in the Burge torture cases, and continues to financially compensate and provide legal defense to Burge, who now has been indicted, and numerous other alleged torturers who, like Burge, have been found to have violated state, federal and international law, while the vast majority of their victims remain without treatment or other compensation.

Rather than to continue to fund Burge's defense in the *Cannon* case, particularly now that Burge has been indicted, the City should immediately settle that case and, in accordance with its obligations under Article 14 of the United Nations Convention Against Torture (CAT),[30] create a fund, commensurate with the pensions and medical benefits paid to the alleged torturers, to

---

[27] A video of Holmes describing his torture can be viewed at :
http://video.google.com/videoplay?docid=-1740730225342200983&q=Jon+Burge+and+Chicago&ei=DUN2SLqkNYic4QKG5NiVCw&hl=en
[28] *Chicago Sun Times*, October 22, 2008, "Outrage Lies at the Heart of Burge Charges," attached as Appendix N and *Chicago Tribune*, October 23, 2008 "Chicago Torture Victims Face Uphill Legal Battle," attached as Appendix O.
[29] The total pension payments to these men per year are, when the 3% annual cost of living increase is considered, presently at least $1.25 million, plus health care benefits. A breakdown of all the taxpayer money, including pensions, paid to date by the City in the Burge torture cases can be found in Appendix L.
[30] Article 14 of the Convention Against Torture provides that "Each state party shall ensure in its legal system that the victim of an act of torture obtains redress and has an enforceable right to fair and adequate compensation, including the means for as full rehabilitation as possible."

compensate and provide treatment to all of the torture victims, such as Anthony Holmes and

Melvin Jones, who have no legal remedy, but have suffered, and continue to suffer, great

psychological harm as a result of their torture and its successful cover-up by police and City

officials. Additionally, we urge the City Council to promptly reconvene hearings to fully

investigate the continued use of taxpayer's money to fund the defense of the torture cases and to

pay the pensions of established police torturers.

**COOK COUNTY AND THE COOK COUNTY STATE'S ATTORNEYS' OFFICE**

The Shadow Report was highly critical of former Cook County State's Attorney Richard

Daley, present State's Attorney Richard Devine, the Cook County State's Attorneys' Office, and

the Cook County Special Prosecutors, and copies of the Report were therefore also served on the

Cook County Board of Commissioners. In response, seven Commissioners, led by the Chairman

of the Committee on Criminal Justice, Earlean Collins, introduced a Resolution which called for

a hearing:

> WHEREAS it has been acknowledged in opinions of the Illinois Appellate Court, the Illinois Supreme Court, the United States District Court, the United States Court of Appeals for the Seventh Circuit, the Chicago Police Department's own Office of Professional Standards, and elsewhere that Burge and his subordinates committed numerous acts of torture against African American men at Area 2 police headquarters;

> WHEREAS it is alleged that shortly after their appointment, special prosecutors Egan and Boyle were presented with indictable offenses committed by Burge and Area 2 detectives under his command and that such offenses had occurred within the three year statute of limitations; and

> WHEREAS special prosecutors Egan and Boyle sought no indictments at the conclusion of their investigation, claiming that the statute of limitations barred prosecution of any of the perpetrators of Area 2 torture; and

> WHEREAS more than 210 individuals and organizations active in the areas of human rights, criminal justice, civil rights and racial justice have prepared a Report entitled "Report on the Failure of Special Prosecutors Edward J. Egan and Robert D. Boyle to Fairly Investigate Systemic Police Torture in Chicago;"

> NOW THEREFORE BE IT RESOLVED that the Criminal Justice Committee of the Cook County Board of Commissioners conduct a public hearing on the investigation

conducted by Special States Attorneys Edward J. Egan and Robert D. Boyle.[31]

Commissioner Collins formally requested that Special Prosecutors Egan and Boyle, who had billed Cook County taxpayers approximately $7 million for their investigation, appear at the hearing to "speak and answer questions" about their Report, but they refused to do so, and instead ironically accused the signers of the Shadow Report of using the Board in an attempt to "gouge millions of dollars of public money from the County Board."[32] The hearing proceeded on June 13, 2007, and the witnesses included several torture victims, experts on torture, community activists, an international law expert, and a former Area 2 detective who walked in on a Burge torture scene.[33] In response to the hearing, the County Board, on July 10, 2007, passed three resolutions:

1. Resolution in Support of a Complete Investigation and Prosecution by the U.S. Attorney For the Northern District of Illinois of all Indictable Federal Crimes Committed by Jon Burge and His Men;

2. Resolution in Support of New Hearing for Police Torture Victims Wrongfully Convicted and Incarcerated;

3. Resolution in Support of State and Federal Legislative Action to Establish the Crime of Torture.[34]

A majority of the Board of Commissioners, highly disturbed by the evidence presented at the hearing, the Special Prosecutors' refusal to appear, and their assertion that they were writing a "Supplemental Report" that would attempt to rebut the findings of the Shadow Report, subsequently passed a fourth resolution, entitled "Suspension of Payments to Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney for any and all Future Investigative Services Pertaining to Commander Jon Burge and Men Under his

---

[31] This May 17, 2007 Resolution is attached as Appendix P.
[32] This June 11, 2007 letter from Special Prosecutor Egan is attached as Appendix Q.
[33] Excerpts from the Cook County Board hearing are posted at:
http://video.google.com/videosearch?q=
cook+county+board+torture+hearings&hl=en&sitesearch=#
[34] These Resolutions are attached as Appendix R.

21

Command."[35] After a closed door meeting with the Chief Judge who appointed the Special Prosecutors, the County Board subsequently agreed to continue payments after the Special Prosecutors assured them that their continuing work was limited to responding to subpoenas and other requests from the U.S. Attorney and other parties in criminal and civil litigation.[36]

A short time later, the Special Prosecutors issued an eighty-two page "Supplement to the Report of The Special State's Attorney." Rather than to objectively address the findings of the Shadow Report with additional investigation or analysis, the Supplement featured a wide ranging *ad hominem* attack on the signatories of the Shadow Report and members of the media, and a rambling attempt to justify the failures of the investigation and to explain away the Special Prosecutors' conflict of interest. Supplement, pp. 20, 22, 32.

The County Board hearing and resolutions, although significant, did not satisfy the County's obligations to address its significant role in the ongoing torture scandal. State's Attorney Devine and several former Assistant State's Attorneys have been named as Defendants in four of the five civil torture cases.[37] In these cases, Devine is alleged to have suppressed and covered up evidence of systemic torture and failed to investigate or prosecute Area 2 torturers from 1982 to the present, a twenty-six year period during which he served, consecutively, as State's Attorney Richard Daley's First Assistant, as a private lawyer whose firm defended Burge, Byrne, Dignan, and several other Area 2 officers in several civil torture cases, and as State's Attorney of Cook County.[38] Several former Assistant States Attorneys are accused of being

---

[35] This Resolution, dated September 6, 2007, is attached as Appendix S.

[36] *Chicago Sun-Times*, October 4, 2007; *Daily Herald*, October 11, 2007.

[37] The cases are *Orange v Burge*, *Howard v. City of Chicago*, *Patterson v. Burge*, and *Cannon v. Burge*.

[38] In *Orange*, the trial judge recently granted Devine's motion for summary judgment, finding that he was not directly involved in Orange's interrogation or prosecution, that the torture evidence that he allegedly suppressed was not sufficiently exculpatory to change the outcome of Orange's criminal prosecution, and that he was entitled to absolute prosecutorial immunity for

present when the Plaintiff-victims were tortured, participating in the coercing and manufacture of the Plaintiffs' false and coerced confessions, and perpetrating wrongful convictions and imprisonment by using these tortured confessions to prosecute the torture victims.[39] Moreover, Devine, unlike Mayor Daley, has refused to accept the findings of the Special Prosecutors that Burge and his men abused several torture victims "beyond a reasonable doubt," and that they abused suspects "with impunity." [40]

Additionally, unlike the City, the County has steadfastly refused to negotiate or settle with any of the four torture plaintiffs, and, to date, the County Board, which is ultimately responsible for settling County cases, has refused to independently and objectively review this position.[41] Moreover, the County has taken no other steps to accept any responsibility for the role of the State's Attorneys' Office in the torture scandal, or to compensate any of the other victims who have no civil claims due to the statute of limitations. We call on the County Board to hold new hearings, this time focused on the role of the State's Attorneys' Office in the torture scandal, and to contribute to a fund providing reparations to the torture victims.

---

refusing to investigate or prosecute Burge, and for continuing Orange's wrongful imprisonment. *Orange v. Burge*, 2008 U.S. Dist. Lexis 73528 (N.D. Ill. Sept. 29, 2008)

[39] Also in the *Orange* case, the trial Judge recently denied the summary judgment motion of former supervising Assistant State's Attorney and current Criminal Court Judge Dennis Dernbach, finding that the evidence, much of which was undisputed by his lawyer, concerning Dernbach's presence during Orange's interrogation, his contemporaneous knowledge that Orange and his co-defendant were being tortured by Burge and his men, his role in coercing and manufacturing Orange's false confession, and his false testimony about these events at Orange's criminal trial, was sufficient to require Dernbach to stand trial for these egregious constitutional violations. *Orange v. Burge*, 2008 U.S. Dist. Lexis 75103 (N.D. Ill. Sept. 29, 2008)

[40] After the Burge indictment was released, Daley refused to accept any responsibility for his well documented role in the torture scandal, particularly his refusal to prosecute Burge while State's Attorney of Cook County. See, *Chicago Sun Times*, October 21, 2008, "Daley Accepts no Responsibility for Burge Torture Cases," attached as Appendix T; Daley also sarcastically responded when asked to make good on a prior promise to apologize to the torture victims. October 24, 2008 *Chicago Sun Times*, "Daley's Mocking Burge Apology," attached as Appendix U.

[41] After rendering his summary judgment decisions, the trial Judge in the *Orange* case again "strongly encouraged" the parties to discuss settlement. *Orange* Order of Sept. 29, 2008.

23

## INTERNATIONAL ACTIONS, HEARINGS AND REPORTS

In the fall of 2005, attorneys, torture victim David Bates, and activists testified about Chicago police torture before the Inter American Commission on Human Rights in Washington, D.C. This was followed by a presentation to the U.N. Committee Against Torture, which, in a May 19, 2006 Report, linked Chicago police torture to the atrocities at Abu Ghraib and Guantanamo and further stated:

> The Committee is concerned with allegations of impunity of some of the State party's [U.S. Government's] law enforcement personnel in respect to acts of torture or cruel, inhuman or degrading treatment or punishment. The Committee notes the limited investigation and lack of prosecution in respect to the allegations of torture perpetrated in Areas 2 and 3 of the Chicago Police Department (article 12). The State party should promptly, thoroughly and impartially investigate all allegations of acts of torture or cruel, inhuman or degrading treatment or punishment by law enforcement personnel and bring perpetrators to justice, in order to fulfill its obligations under article 12 of the Convention. The State party should also provide the Committee with information on the ongoing investigations and prosecution relating to the above-mentioned case.[42]

This Report was followed in March of 2007 by a similar report by the U.N. Special Rapporteur on Torture, which also directly raised the issue that "at least 24 individuals are currently serving prison terms on the basis of confessions which may have been obtained by torture or ill-treatment."[43]

Also, shortly after Special Prosecutors Egan and Boyle released their Report, Black People Against Police Torture (BPAPT) began a campaign to raise the City's failure to fully address the torture question as a reason for opposing the selection of Chicago as the site for the 2016 Olympic Games. Former Olympian John Carlos, who is remembered for the black-power

---

[42] Conclusions and Recommendations of the U.N. Committee Against Torture, May 19, 2006, para. 25, p. 7, attached as Appendix V.
[43] March 20, 2007 Addendum to Report of the U.N. Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Manfred Nowak, attached in relevant part as Appendix W.

salute he and gold medalist Tommie Smith made from the winners' podium at the 1968 Olympic

Games, came to Chicago and became a spokesman for the protest:

> I want the mayor to get off his fanny and address this issue. He was the state's attorney
> when this torture was taking place. The mayor needs to step up to the plate and get this
> thing resolved. It's not even just about the Olympics coming to Chicago. It's for Chicago
> too. These individuals who tortured shed a bad light on many good police officers that
> they have in the city.[44]

BPAPT also sent a 250-page notebook filled with reports and newspaper clippings about the

Burge cases to the U.S. Olympic Committee in Colorado Springs, and when the committee came

to Chicago in March of 2007, several members of the group gathered in Washington Park in an

unsuccessful attempt to meet the Mayor and Olympic Committee when they toured the probable

location for the games.[45] BPAPT continues to raise the torture issue in the context of the 2016

Olympics, as reflected in a recent commentary in the *In These Times* magazine.[46]

In his statement to the Chicago City Council, Cook County Clerk and former Alderman

David Orr voiced similar concerns about the City's image around the world:

> This scandal has certainly created a bad shot for our City's image. It has drawn
> worldwide attention from organizations which oppose torture and human rights violations
> such as Amnesty International . . . This is not the kind of international attention that we
> want or need. We love our city, therefore, we have to make sure we correct this.

July 24, 2007 City Council Hearing Transcript, p. 57.

In May of 2008, the U.N. Special Rapporteur on Racism, law professor Dou Dou Diene

from Senegal, came to Chicago and conducted two days of hearings as part of a nationwide fact

finding mission. Among the featured topics at the hearing was Chicago police torture. Torture

---

[44] *Chicago Reader*, "Can Shame Stop the Games?" March 23, 2007.

[45] Police officers demanded that the BPAPT members leave the park as the Mayor and the
Committee members approached on a bus. When BPAPT demurred, arguing that it was a public
park, Daley and the Committee members decided to stay on the bus and abandon their tour of the
Park, purportedly because there was snow on the ground. *Chicago Reader*, "Can Shame Stop the
Games?" March 23, 2007.

[46] August 2008 *In Theses Times* "Chicago's Olympic Dreams Undeserved."

victims Darrell Cannon, Anthony Holmes and David Bates all testified, and the Rapporteur personally articulated his concern about this issue to the victims at the conclusion of the hearing.

It is clear that the international work that has been done has been instrumental in bringing national and international attention to the continuing Chicago police torture scandal, and has strengthened the demand for prosecutions. We urge all of the involved international bodies to continue their scrutiny and attention to the numerous issues that remain to be dealt with by the City of Chicago, Cook County, the Illinois Attorney General, the U.S. Attorney's Office, and State and Federal legislative bodies.

**STATE AND FEDERAL LEGISLATION**

Community groups, led by Black People Against Police Torture, have initiated a bill entitled "Illinois Torture Inquiry and Relief Commission Act" which was introduced as an amendment to House Bill 5032 and passed by the Illinois House in May of 2008.[47] This bill provides that any person convicted of a felony "asserting that he was tortured into confessing to the crime for which the person was convicted and the tortured confession was used to obtain the conviction and for which there is some credible evidence related to allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge" is entitled to a hearing before an independent eight member Commission comprised of a sitting Judge, a former prosecutor, a law school professor, a defense lawyer, a former public defender, and three laypersons. Amendment to House Bill 5032, 95th General Assembly, Sec. 25. The Commission shall "conduct inquiries into claims of torture with priority given to those cases in which the convicted person is incarcerated solely for the crime which he claims torture by Jon Burge or officers under his command," it shall investigate cases that it accepts for review, and, at the completion of each inquiry, it shall "prepare written reports outlining Commission

---

[47] The Amendment to House Bill 5032 is attached as Appendix X.

investigations and recommendations to the trial court." Id. The Bill will be considered by the Illinois Senate in November of 2008.

In September of 2007, U.S. Congressman Danny Davis (D-Il.), who had previously called on the City to "cease defending Burge and others involved in these illegal, immoral, repugnant activities,"[48] publicly pledged to introduce a bill in the U.S. House of Representatives that would make torture committed by law enforcement officials a federal crime, which, like genocide and war crimes, would not have a statute of limitations. Torture would be defined pursuant to international standards, and the statute would apply to local, state and federal law enforcement officials. This bill is in the drafting stage, and should be presented in the near future. No similar state law is presently under consideration in Illinois. We therefore urge the Illinois Senate to pass the torture Commission legislation, and further urge the U.S. Congress and the Illinois General Assembly to enact legislation that criminalizes torture by U.S., state and local law enforcement officials.

**THE FRATERNAL ORDER OF POLICE**

The Fraternal Order of Police (FOP) continues to staunchly defend Jon Burge and his fellow accused torturers. When the City moved to fire Burge in 1992, the FOP paid for Burge and his fellow officers' defense before the Chicago Police Board. In 1993, the FOP attempted to enter a float in support of Burge and his men in the annual St. Patrick's Day Parade. In 2004 and 2005, the FOP supplied lawyers to many of the Area 2 officers who took the Fifth Amendment before the Special Prosecutors' Grand Jury. Presently, the FOP is supplying lawyers to at least some of the Area 2 detectives who have appeared before the Federal Grand Jury, has criticized the Burge indictment as "political," and is contemplating providing Burge's criminal defense. While we have no quarrel with Burge and his men having competent counsel at their own

---

[48] July 24, 2007 City Council Hearing Transcript, pp. 60-61.

expense, we also strongly believe that the collaboration of the City of Chicago and the FOP to supply them with free counsel for more than 20 years at a cost well in excess of $10,000,000, has facilitated, and continues to facilitate, a conspiracy of silence in the torture cases. We call on the FOP, an organization that is required to fairly represent the interests of all law abiding Chicago officers below the rank of sergeant, regardless of race, to finally disassociate itself from further defense of Commander Burge, Sergeant John Byrne, Lieutenant Peter Dignan and any other implicated officer whom it is not contractually obligated to represent, so that they and their fellow officers, for the first time, will be required to hire their own counsel and to make their own individual decisions concerning whether to vitiate the police code of silence and cooperate with the ongoing federal investigation.[49]

## CONCLUSION AND CALL TO ACTION

While much has been accomplished since the Shadow Report was released, much is also left to be done. Burge's close associates remain on the streets, as of yet uncharged and un-prosecuted. While the City and County have already collectively expended more than $53,000,000 in the torture scandal, Darrell Cannon, Anthony Holmes, and numerous other torture victims remain uncompensated and untreated, more than a score languish in prison without hearings, the Cook County State's Attorney's Office refuses to accept any responsibility for its significant role in the torture scandal, and Burge and his men continue to collect City pensions, and to receive free legal defense, We therefore call for the following additional action:

---

[49] The FOP is mandated to represent Chicago police officers below the rank of sergeant only. Hence, three of the main targets of the U.S. Attorneys' investigation - - - Burge, Byrne and Dignan - - - should be outside of its coverage. Additionally, the FOP, like the City, has made no effort whatsoever to afford representation to African-American officers who have broken the code of silence and given damning testimony against Burge and his men to the Federal Grand Jury. Furthermore, according to the African American Police League, requests for FOP representation are normally rigorously evaluated before an FOP Board, which often denies the request.

I.    That the United States Attorney obtain appropriate additional indictments, consistent with the evidence, for perjury, obstruction of justice, false statements and/or conspiracy against John Byrne, Peter Dignan, and, in his discretion, other implicated Area 2 and Area 3 officers;

II.   That Illinois Attorney General Lisa Madigan agree to prompt hearings for all torture victims who remain in prison as a result of confessions allegedly tortured from them by Burge and his men, that she refuse to utilize the testimony of Burge and his confederates at the new hearings, and that she publicly support the bill establishing an independent torture Commission which is before the Illinois Senate;

III.  That the Chicago City Council immediately terminate the funding of the civil defense of Jon Burge and his men and reconvene hearings to consider the failure to settle the Darrell Cannon case, discontinuation of pension payments to Burge and his men, and the establishment of a fund, comparable to the yearly pensions paid to Burge and his men, for compensation and treatment of torture victims who otherwise have no legal remedy;

IV.   That the Cook County Board reconvene hearings to investigate the role of Cook County State's Attorneys Office in the torture scandal, and the failure of the County to accept moral or financial responsibility for the SAO's significant role in the scandal;

V.    That the County join with the City in establishing a fund for the purpose of making financial reparations to the torture victims;

VI.   That the Illinois General Assembly and the United States Congress pass statutes specifically establishing torture by law enforcement officers as a criminal offense without a statute of limitations.

VII.  That the Fraternal Order of Police immediately cease and desist from financing or otherwise providing for the criminal defense of Jon Burge, John Byrne, Peter Dignan, and any other implicated officer whom it is not contractually obligated to represent.

RESPECTFULLY SUBMITTED BY:                              October 29, 2008
(In Alphabetical Order)

**INDIVIDUALS\***

Rev. Ira Acree, Greater St. John Church

Albert Alschuler, Professor of Law, Northwestern University School of Law

Anthony Amsterdam, University Professor, New York University School of Law

* Organizations are listed in this Section for identification purposes only.

Russell Ainsworth, Civil Rights Attorney, Loevy and Loevy

Bill Allison, Clinical Professor of Law, University of Texas School of Law, and Director, Texas Center for Actual Innocence

David A. Ansell, MD, MPH, Chief Medical Officer, Rush University Medical Center

Professor Michael Avery, Professor of Law, Suffolk Law School, co-author, Police Misconduct: Law and Litigation; immediate past president, National Lawyers Guild

Sandra L. Babcock, Associate Clinical Professor and Clinical Director, Center for International Human Rights, Northwestern University School of Law

Julien Ball, Chicago Campaign to End the Death Penalty

Susan Bandies, Professor, DePaul University School of Law

Gregory Banks, Torture Victim

Rev. Willie Barrow, Chairman Emeritus, Rainbow Push Coalition

Cherif Bassiouni, Distinguished Research Professor of Law, DePaul University College of Law, President of the International Human Rights Law Institute; Co-chair, Committee of Experts on the Draft Convention on the Prevention and Suppression of Torture; United Nations Sub-Committee on the Prevention of Discrimination and Protection of Minorities

David Bates, Chicago Police Torture Victim

Kay Berkson, Board Member, Jewish Council on Urban Affairs

Adele Bernhard, Professor of Law, Pace Law School

Martha Biondi, Associate Professor of African American Studies, Northwestern University

Timuel Black, Professor Emeritus, Chicago City Colleges

Joel Bleifuss, Editor, In These Times

Jane Bohman, Executive Director, Illinois Coalition to Abolish the Death Penalty

Nancy Bothne, former Midwest Regional Director, Amnesty International

Walter Boyd, Director of Repatriate Opportunities, Protestants for the Common Good

Locke E. Bowman, Legal Director, MacArthur Justice Center

David Bradford, Partner, Jenner & Block

Wallace "Gator" Bradley, Urban Translator

Matt Brandon, retired Chicago Police Officer and Board Member, Citizens Alert

John C. Brittain, Chief Counsel and Senior Deputy Director, National Lawyers Committee for Civil Rights under Law; former Dean, Thurgood Marshall School of Law, Texas Southern University; Former President, National Lawyers Guild

Daryle Brown, Prison Ministry, Trinity United Church of Christ

Dorothy Brown, Circuit Court Clerk and recent candidate for Mayor of the City of Chicago

Nick Brustin, Civil Rights Attorney, Cochran, Neufeld and Scheck

Dr. Margaret Burroughs, founder, DuSable Museum

Darrell Cannon, Area 2 Police Torture Victim

Phillip J Carrigan, PhD, John Howard Association

Vickie Casanova, National Conference of Black Lawyers

Douglass W. Cassel, Director, Center for Civil and Human Rights, Notre Dame Law School

Leonard Cavise, Professor of Law, DePaul University College of Law

Mardge Cohen, MD, Department of Medicine, Stroger Hospital and Professor of Medicine, Rush University

Robert L. Cohen, MD, Federal Appointment Monitor, Prison Medical Care

Marjorie Cohn, International Human Rights Professor, Thomas Jefferson School of Law; President, National Lawyers Guild; U.S. representative to executive committee, American Association of Jurists

Cathryn Crawford, Attorney for Torture Victim Leroy Orange

Jerry Crawley, Former Chicago Police Officer, Guardians Police Organization

Jeffrey Cummings, partner, Miner, Barnhill & Galland

Dennis Cunningham, Civil Rights Attorney, San Francisco, California

Carl Davidson, Campaign to Stop Funding Torture in Iraq

Danny K. Davis, U.S. Representative, Seventh District of Illinois

Madeline DeLeone, Executive Director, The Innocence Project, Benjamin N. Cardozo School of Law

Rev. Martin Deppe, former Chairperson , Alliance to End Repression

Leon Despres, former Fifth Ward Alderman; Partner, Despres, Shwartz & Geoghehan; author, *Challenging the Daley Machine: A Chicago Alderman's Memoir*; and recipient, Benton Medal for Distinguished Public Service

Michael E. Deutsch, attorney for Palestinian-American torture victim Muhammad Salah

Bernardine Dohrn, Director, Children and Family Justice Center, Northwestern University School of Law

Steven A. Drizin, Clinical Professor of Law, Northwestern University School of Law, Legal Director, Center on Wrongful Convictions

Clarice Durham, Co-chairperson, National Alliance Against Racist and Political     Repression

J. Soffiyah Elijah, Deputy Director, Criminal Justice Institute, Harvard Law School

Bertha Escamilla, mother of brutality victim Nick Escamilla

Nick Escamilla, brutality victim

Mary Fabri, Director, Torture Treatment Services & International Training, Marjorie Kovler Center of Heartland Alliance

James Fennerty, Past President, Chicago Chapter, National Lawyers Guild

Kurt Feuer, Attorney for Madison Hobley

Belden Fields, Professor Emeritus of Political Science, University of Illinois, Champaign-Urbana

Rev. Cy Fields, New Landmark Church

Nathson Fields, former death row inmate

Keith Findley, Co-founder and Co-director, Wisconsin Innocence Project

Alison Flaum, Clinical Professor of Law, Northwestern University School of Law

Linda  Flores, mother of wrongfully convicted John Galvin

Rev. Paul Robeson Ford, Covenant United Church of Christ

Signe Waller Foxworth, Survivor of the 1979 Greensboro Massacre

Maxine Franklin, mother of Jerry Gillespie, wrongfully convicted brutality victim

Gerald Frazier, President, Citizens Alert

Barbara Frye, University of Minnesota Human Rights Program

Jim Fuerst, Author and Professor Emeritus, Loyola University, Chicago

Aviva Futorian, Chair, Long-Term Prisoner Policy Project

Craig Futterman, Clinical Professor of Law, Mandel Legal Aid Clinic, University of Chicago Law School

Dickey Gaines, former Death Row inmate, released after new trial

Jenni Gainsborough, Director, Washington Office, Penal Reform International

Thomas Geraghty, Director, Bluhm Legal Clinic, Northwestern University School of Law

Mark Godsey, Professor of Law, University of Cincinnati College of Law; Faculty Director, Ohio Innocence Project

William Goodman, Former Legal Director, Center for Constitutional Rights (CCR)

H. Candace Gorman, Human Rights Lawyer for Guantanamo Detainees

H. Michael Gray, filmmaker, author and screenwriter

Rev. Doris Green, Men and Women in Prison Ministries

Samuel R. Gross, Thomas and Mabel Long Professor of Law, University of Michigan Law School

Susan Gzesh, Director, Human Rights Program, University of Chicago

Ron Hampton, Executive Director, National Black Police Association

Mimi Harris, Board Member, Jewish Council on Urban Affairs

Rev. Marshall Hatch, New Mt. Pilgrim Baptist Church

Kenan Heise, Author and Journalist

Mildred Henry, mother of Area 3 torture victim Kilroy Watkins

Pat Hill, Executive Director, African American Police League

Pearl Hirshfield, Artist and Activist

Charles Hoffman, Board Member, Illinois Coalition to Abolish the Death Penalty

Jani Hoft, People's Law Office
Sidney Hollander, Former Board President, Jewish Council on Urban Affairs

Anthony Holmes, Chicago Area 2 Police Torture Victim

Sharon Howard, Black Student Psychological Association

State Representative Constance A. "Connie" Howard

Stanley Howard, Area 2 Police Torture Victim

Mary Howell, Civil Rights Lawyer, New Orleans, Louisiana

Reverend Jesse L. Jackson Sr., Founder and President, Rainbow PUSH Coalition

Jonathan L. Jackson, National Spokesman, Rainbow Push Coalition

Reverend Paul Jakes Jr., Pastor, Old St. Paul Missionary Baptist Church

Carolyn Johnson, mother of torture victim Marcus Wiggins, member Centennial Baptist Church,
Rainbow PUSH

Gloria Johnson, mother of Montell Johnson, victim of IDOC medical neglect

Mary Johnson, Named Petitioner, Motion for Appointment of a Special Prosecutor, and mother
of torture victim Michael Johnson

Scott Kamin, Attorney at Law

Michael Kanovitz, Civil Rights Attorney, Loevy and Loevy

Robin Kaufman, Campaign to End the Death Penalty

Lawrence Kennon, Named Petitioner, Motion for Appointment of a Special Prosecutor; Past
President, Cook County Bar Association

Rashid Khalidi, Edward Said Professor of Arab Studies, Middle East Institute, Columbia
University

Alice Kim, The Public Square, Illinois Humanities Council

Barbara S. Kirschner, M.D., Professor of Pediatrics, the University of Chicago, and wife of
Robert H. Kirschner, M.D., deceased

Richard Kling, Clinical Professor of Law, Chicago Kent College of Law

Jeanne Kracher, Executive Director, Crossroads Fund

Nancy Kurshan, MSW, Chicago Public Schools Social Worker

Maria Lahood, Attorney, Center for Constitutional Rights

Richard A. Leo, Associate Professor of Law, University of San Francisco School of Law

Doris Lewis, Black People Against Police Torture

Reverend Gregory Livingston, Rainbow PUSH Coalition

Jon Loevy, Attorney for Stanley Howard and Madison Hobley

Professor Jose E. Lopez, Executive Director, Puerto Rican Cultural Center.

Andrea Lyon, Dean, Clinical Studies, DePaul College of Law

Joseph Margulies, MacArthur Justice Center, Northwestern University School of Law; author, *Guantanamo, and the Abuse of Presidential Power*

Claude Marks, Freedom Archives

Lawrence C. Marshall, Associate Dean for Public Service and Clinical Education and Director of Clinical Education, Stanford Law School

Marlene Martin, National Director, Campaign to End the Death Penalty

Tonya McClary, Former Director, Criminal Justice Section, American Friends Service Committee

Catherine McMillan, RN, MHA, The Innocence Perspective Network

Sr. Mary Ellen Meckley, Sisters of Charity, BVM

Alan Mill, People's Law Center

Alejandro Molina co-coordinator, National Boricua Human Rights Network

Jonathan Moore, Civil Rights Attorney, New York, New York

Michelle Morales, co-coordinator, National Boricua Human Rights Network

Calvin S. Morris, Ph.D., Executive Director, Community Renewal Society; co-President, Justice Coalition of Greater Chicago

Michael McConnell, Regional Director, American Friends Service Committee (AFSC)

Jeanne Mirer, Secretary General, International Association of Defense Lawyers

Judson H. Miner, partner, Miner, Barnhill & Galland and former Corporation Counsel, City of Chicago

Joey L. Mogul,* attorney for Darrell Cannon and Leroy Orange

Clyde E. Murphy, Director, Chicago Lawyers Committee for Civil Rights Under Law

Prexy Nesbitt, Adjunct Professor, Columbia College

Peter Neufeld, Co-founder, Innocence Project, Benjamin N. Cardozo School of Law

Charles Ogletree, Harvard Law School Jesse Climenko Professor of Law, and Founding and Executive Director of the Charles Hamilton Houston Institute for Race and Justice

David Orr, Cook County Clerk

Peter Orris, MD, MPH, Professor and Chief of Service, Environmental and Occupational Medicine, University of Illinois at Chicago Medical Center

Amisha Patel, Coordinator, Grassroots Collaborative

Ted Pearson, Co-chairperson, National Alliance Against Racist and Political Repression

Rev. Michael L. Pfleger, Pastor, Faith Community of St. Sabina

Robin Phillips, Executive Director, Advocates for Human Rights

Matthew Piers, Partner, Hughes, Socol, Piers, Resnick & Dym, Ltd, and former Deputy Corporation Counsel for Litigation, City of Chicago

Melinda Power, Civil Rights Attorney, Chicago, Illinois

Mary Powers, Named Petitioner, Motion for Appointment of a Special Prosecutor

Jennifer Prestholdt, JD, MALD, Deputy Director, The Advocates for Human Rights

David Protess, Director, The Medill Innocence Project, Northwestern University

Coy Pugh, former Illinois State Representative

Gordon Quinn, Filmmaker, Kartemquin Films

Michael L. Radelet, Chairman, Department of Sociology, University of Colorado

Frank Ralph, attorney for Petitioners who Secured the Appointment of the Special Prosecutors

Vanessa Ramos, Secretary General of the American Association of Jurists

Jane Ramsey, Executive Director, Jewish Committee on Urban Affairs; co-President, Justice Coalition of Greater Chicago

Michael Ratner, President, Center for Constitutional Rights

Ahmed Rehab, Executive Director, Council on American-Islamic Relations (CAIR)-Chicago

Laurie Jo Reynolds, Tamms Year Ten Campaign

Andrea J. Ritchie, Attorney at Law, and Human Rights Activist, New York City

Don Rose, Political Consultant

Leonard S. Rubinowitz, Professor of Law, Northwestern School of Law

Bill Ryan, Publisher, Stateville Speaks newspaper and Citizens for Earned Release

Howard Saffold, founder, Positive Anti-Crime Thrust

Steven Saltzman, Editor, Civil Rights Litigation and Attorney Fees Annual Handbook

Reverend Dr. Al Sampson, Pastor, Fernwood United Methodist Church; President, Chicago Metropolitan Council of Black Churches, President, SCLC/MLK Chicago Chapter

Barry Scheck, Co-founder, The Innocence Project, Benjamin N. Cardozo School of Law; Past President, National Association of Criminal Defense Lawyers

Gordon Schiff, MD, Cook County Hospital, Professor of Medicine Rush University

Professor Lawrence Schlam, Attorney, DeKalb, Illinois

Ron Shansky, M.D. and former Medical Director, Illinois Department of Corrections

Brenda Shead, former Chicago Police Sergeant; President, The Guardians Police Organization

Dick Simpson, Chair, Department of Political Science, University of Illinois at Chicago; Former Alderman, Forty-fourth Ward

Tracy Siska, President, Chicago Justice Project

A.Sage Smith, Director of Client Services, Center on Wrongful Convictions, Northwestern University School of Law

Jean Maclean Snyder, Attorney at Law

Brian Spears, Civil Rights and Police Brutality Attorney, Atlanta

Robert Starks, Professor, Education and Development, Northeastern Illinois University

Burton Steck, Jewish Voice for Peace

Bryan Stevenson, Executive Director, Justice Initiative of Alabama

Randolph N. Stone, Clinical Professor of Law, University of Chicago Mandel Legal Aid Clinic; former Public Defender of Cook County

G. Flint Taylor Jr., Attorney for Andrew Wilson, Darrell Cannon, Leroy Orange, and Several Other Chicago Police Torture Victims

Lydia Taylor, Former Executive Director of the Justice Coalition of Greater Chicago

Studs Terkel, Author/Interviewer

Erica Thompson, People's Law Office, attorney for Palestinian Torture Victim Muhammad Salah

Jeanne Tillman, mother of Area 2 Torture Victim Michael Tillman

Doug Tjapkes, President, Humanity for Prisoners

Beauty Turner, Founder, Poor People's Millennium Movement

Rev. Larry E. Turpin , United Church of Hyde Park

Jeffrey Urdangen, Clinical Professor of Law, Northwestern University School of Law

Enrique Valdez, Area 3 Torture Victim

Rev. Oscar Walden, Torture Victim

Rob Warden, Executive Director, Center on Wrongful Convictions, Northwestern University School of Law

Roger S. Wareham, Esq., International Secretary-General of the International Association Against Torture

Steven Weinberg, Author of Center for Public Integrity Report on Prosecutorial Misconduct; Former Executive Director, Investigative Reporters & Editors

Giudi Weiss, Justice Coalition of Greater Chicago, Gray Panthers

Burns H. Weston, Bessie Dutton Murray Distinguished Professor of Law Emeritus and Senior Scholar, Center for Human Rights, The University of Iowa

Steve Whitman, PhD., Health Researcher

Standish Willis, National Conference of Black Lawyers

Rita Wilson, teacher, Pictou, Nova Scotia

Paul Wright, Editor Prison Legal News

Dr. Quentin Young, M.D., Chairman, Health & Medicine Policy Research Group; Former Medical Director, Cook County Hospital

Cliff Zimmerman, Dean of Students, Northwestern University Law School

Howard Zinn, Professor Emeritus, Department of Political Science, Boston University; Historian and author, *A People's History of the United States*

## ORGANIZATIONS

Advocates for Human Rights
African American Police League
American Association of Jurists
American Friends Service Committee, Chicago Chapter
Amnesty International, DePaul University Chapter
Black People Against Police Torture
Bluhm Legal Clinic, Northwestern University School of Law
Campaign to End the Death Penalty
Campaign to Stop Funding Torture in Iraq
Center on Wrongful Convictions
Center for Constitutional Rights (CCR)
Center for Justice in Capital Cases, DePaul University College of Law
Champaign Urbana Citizens for Peace and Justice
Chicago Coalition for Police Accountability
Chicago Committee Against Police Torture
Chicago Committee to Defend the Bill of Rights
Chicago Justice Project
Children and Family Justice Center, Northwestern University Law School
Christian Council on Urban Affairs
Citizens Alert
Citizens for Earned Release
Committee for the Defense of Human Rights
Community Renewal Society
Cook County Bar Association
Council on American-Islamic Relations (CAIR)-Chicago
The Council of Islamic Organizations of Greater Chicago (CIOGC)
Crossroads Fund
Eighth Day Center for Justice
Freedom Archives

Gray Panthers
Humanity for Prisoners
The Guardians Police Organization
Illinois Coalition to Abolish the Death Penalty
Illinois Prison Talk
The Innocence Project, Benjamin N. Cardozo School of Law
International Association Against Torture
Jewish Council on Urban Affairs
Justice Coalition of Greater Chicago
Leaders Network
Loevy and Loevy
MacArthur Justice Center
Mandel Legal Aid Clinic, University of Chicago
Midwest Coalition for Human Rights
National Alliance Against Racist and Political Repression
National Black Police Association
National Boricua Human Rights Network
National Conference of Black Lawyers
National Lawyers Guild
National Lawyers Guild, Chicago Chapter
National Police Accountability Project of the National Lawyers Guild
The Organization of Black Students (University of Chicago)
People's Law Office
Poor People Millennium Movement
Positive Anti-Crime Thrust (PACT)
Protestants for the Common Good
Rainbow PUSH Coalition
Stateville Speaks
Tamms Year 10

# TORTURE IN CHICAGO

## A supplementary report on the on-going failure of government officials to adequately deal with the scandal

## Appendix

**October 29, 2008**

# APPENDIX INDEX

APPENDIX A    September 20, 2007 Aldermanic Letter to United States Attorney

APPENDIX B    September 26, 2007 Statement of United States Attorney

APPENDIX C    June 11, 2008 *Chicago Sun Times,* "Retired Cops Subpoenaed, Alleged Torture Probe into Burge Ramping up"

APPENDIX D    June 12, 2008 *Chicago Sun Times* Editorial

APPENDIX E    October 21, 2008 Burge Indictment

APPENDIX F    October 21, 2008 United States Attorney Press Release

APPENDIX G    October 21, 2008 *Chicago Tribune* "Feds Catch up with Burge"

APPENDIX H    List of Imprisoned Torture Victims

APPENDIX I    July 19, 2007 City Council Resolution

APPENDIX J    September 11, 2007 Report of Steven Whitman, Phd

APPENDIX K    September 25, 2007 *Sun-Times* Editorial

APPENDIX L    Area 2 Defense Fees and Costs, Pensions, and Judgments Paid by City and County as of 9/1/08

APPENDIX M    City of Chicago Municipal Code, Sec. 2-152-170

APPENDIX N    October 22, 2008 *Chicago Sun Times* "Outrage Lies at the Heart of Burge Charges"

APPENDIX O    October 23, 2008 *Chicago Tribune,* "Chicago Torture Victims Face Uphill Legal Battle"

APPENDIX P    May 17, 2007 Cook County Board Resolution

APPENDIX Q    June 11, 2007 letter from Special Prosecutor Egan

APPENDIX R    July 11, 2007 Cook County Board Resolutions

APPENDIX S    September 6, 2007 Cook County Board Resolution

APPENDIX T   October 21, 2008 *Chicago Sun Times*, "Daley Accepts no Responsibility for Burge Torture Cases"

APPENDIX U   October 24, 2008 *Chicago Sun Times*, "Daley's Mocking Burge Apology"

APPENDIX V   May 19, 2006 Conclusions and Recommendations of the UN Committee Against Torture, para. 25, p. 7,

APPENDIX W   Excerpt from March 20, 2007 Addendum to Report of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Manfred Nowak

APPENDIX X   Amendment to Illinois House Bill 5032

# APPENDIX A

September 20, 2007

The Hon. Patrick J. Fitzgerald
United States Attorney
Northern District of Illinois
219 South Dearborn St.
Suite 500
Chicago, IL 60604

**Re:**     **Prosecution of Jon Burge and Chicago Police Officers under Burge's command**

Dear Mr. Fitzgerald:

      We are members of the Chicago City Council and we are writing to express our fervent hope that your office will investigate, indict and prosecute former Chicago Police Commander Jon Burge and other Chicago Police officers who served under Burge's command.

      There have been repeated acknowledgements by Chicago Police investigators, by judges in the Northern District of Illinois, the Seventh Circuit U.S. Court of Appeals, the Illinois Appellate Court and the Illinois Supreme Court; and, most recently by a Cook County Special Prosecutor appointed to investigate Burge and his men, that Burge and others under his command engaged systematically in the torture and other abuse of African American men at Area 2 (and, later Area 3) police headquarters during the 1970s, 1980s and early 1990s. The forms of torture were horrific, including electro-shock, suffocation and mock executions. Among the victims were four men who were sent to Death Row based on their tortured confessions and have subsequently been pardoned and released based on their innocence.

      Despite wide acknowledgement that Burge and his men did engage in torture at Area 2, none of the perpetrators has ever been brought to justice. The Cook County Special Prosecutor completed his investigation last summer without returning any indictments. He cited the Illinois statutes of limitations as a bar to any prosecutions.

      We believe that federal prosecution of Burge and his men is possible and that the five year Federal statute of limitations would not be a bar. Burge and the others could be prosecuted for perjury, for obstruction of justice and for an ongoing conspiracy to cover up their torture scheme. For example, in November 2003, Burge submitted sworn interrogatory answers in the federal case of *Hobley v. Burge* in which he denied that he had witnessed or participated in any torture or abuse of suspects during his tenure in the Chicago Police Department. Recently numerous other Burge associates have given detailed sworn depositions in Federal Court where they have also denied any involvement or knowledge of torture at Area 2. These sworn statements are demonstrably false and could provide the basis for perjury, obstruction of justice, and conspiracy prosecutions.

The Area 2 torture scandal continues to cast a long shadow over the Chicago Police Department and the Cook County criminal justice system. It is appalling that none of the offending police officers has ever been criminally charged. Most recently, the United Nations Committee Against Torture has expressed the same sentiment in a report that links Chicago with Abu Ghraib and Guantanamo. On behalf of our constituents, we urge you to take all possible action to prosecute Jon Burge and his men for their actions in the aftermath of their torture of African American men at Area 2 and Area 3 police headquarters.

Sincerely,

*Ed Smith*

Alderman Ed Smith
Alderman Pat Dowell
Alderman Bob Fioretti
Alderman Billy Ocasio
Alderman Helen Shiller

# APPENDIX B



**U. S. Department of Justice**

United States Attorney
Northern District of Illinois

---

Patrick J. Fitzgerald
United States Attorney

Federal Building
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

FOR IMMEDIATE RELEASE
WEDNESDAY SEPTEMBER 26, 2007
www.usdoj.gov/usao/iln

PRESS CONTACT:
Randall Samborn
(312) 353-5318

## STATEMENT OF UNITED STATES ATTORNEY PATRICK J. FITZGERALD

CHICAGO – Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, today made the following statement confirming the existence of two separate federal criminal investigations:

> "The United States Attorney's Office is conducting an active criminal investigation into allegations of perjury, false statements, and obstruction of justice by officers who served in the Chicago Police Department in the 1980s in relation to currently pending federal civil lawsuits in which persons in Chicago Police Department custody during those years allege they were abused.
>
> The investigation is being conducted together with the Chicago Office of the Federal Bureau of Investigation."

Regarding a separate matter, Mr. Fitzgerald said:

> "The United States Attorney's Office, working with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), is conducting an arson/murder investigation into the events surrounding the January 6, 1987, fire at 1121-1123 East 82nd St., Chicago, which resulted in seven deaths and numerous injuries."

Mr. Fitzgerald emphasized that federal authorities will not comment further or prejudge the outcome of either investigation, adding only that both are active and involve serious allegations.

While it is rare for federal authorities to confirm the existence of investigations, in both instances, Mr. Fitzgerald noted the recent comments that have been made indicating the existence of both investigation by interested, non-federal officials and private attorneys. In addition, he noted that both investigations involve matters of substantial public interest, which have generated widespread publicity, resulting in a need to assure the public that investigations have been undertaken by appropriate law enforcement agencies.

It is especially important, Mr. Fitzgerald said, in confirming investigations in which no federal charges have been filed, that the public be reminded that the investigations involve mere allegations and that no specific individuals stand accused of any criminal wrongdoing.

# # # #

2

# APPENDIX C

Click here: Retired cops subpoenaed, alleged torture probe into Burge ramping up :: CHICAGO
SUN-TIMES :: Metro & Tri-State

## Retired cops subpoenaed, alleged torture probe into Burge ramping up

June 10, 2008

BY CAROL MARIN AND FRANK MAIN Staff Reporters
Retired detectives named in a decades-old Chicago Police torture scandal have been subpoenaed
by a federal grand jury -- a clear sign a criminal investigation into former Cmdr. Jon Burge and
others is ramping up, sources said today.
Five to 10 detectives received subpoenas last week to appear June 19 before the grand jury. The
probe is headed by Sergio Acosta, civil rights coordinator in the U.S. attorney's office in Chicago,
the sources said.

» Click to enlarge image

Former Chicago Police Cmdr. Jon Burge, shown outside a 1992 Chicago Police Board hearing.
(Brian Jackson/Sun-Times)

A spokesman for the U.S. attorney's office declined to comment, but pointed to a statement U.S.
Attorney Patrick Fitzgerald made last September announcing his office is engaged in a criminal
investigation into the matter.
In February, the city approved a nearly $20 million settlement with four former Death Row
inmates who claimed Burge and more than 20 officers who worked with him in the 1970s and
1980s coerced murder confessions from them.
A special Cook County prosecutor investigated the torture claims, but in a controversial final
report found Burge and other detectives could not face criminal charges in state court because the
statute of limitations expired.
Federal investigators stepped in. They are focused on sworn statements Burge and other
detectives made in 2003.
If they can show those statements are false, authorities could charge the retired officers with
obstruction of justice, sources said. The federal statute of limitations does not expire until
November — five years after the sworn statements were made, the sources said.
Burge denied any torture took place in written answers to questions submitted to him in 2003 in a
lawsuit filed by one of the Death Row inmates, Madison Hobley.
Hobley is the subject of a separate federal investigation into a fatal 1987 fire that led to his
conviction in state court. He spent 16 years on Death Row for the crime, but was pardoned in
2003 by then-Gov. George Ryan because of the torture allegations.
Retired Chicago Police Detective William Pedersen, one of the defendants in a torture lawsuit
brought by former Death Row inmate Aaron Patterson, said he was not one of the officers who
received a federal subpoena last week.
But he heard that other retired detectives were subpoenaed to appear before a federal grand jury.
"When is this going to end?" said Pedersen, who denies he tortured Patterson.
As usual, Burge politely answered a reporter's call today, but would not comment beyond a few

pleasantries.

"Carol, number one, you know I can't talk to you and I've told you that 28 times before. So no comment," he said.

Asked how he was doing, Burge joked, "I never had a bad day in my life, though I've been know to fib occasionally."

Flint Taylor, one of the attorneys representing the Death Row inmates in lawsuits against the city, said "we're very pleased to hear" about the subpoenas.

He said federal investigators are doing a comprehensive investigation into the torture allegations and he hopes it will lead to the indictment of Burge and the other officers.

Attorney Joseph Roddy confirmed he was hired to represent retired detectives who received federal subpoenas. He would not comment further.

Fraternal Order of Police President Mark Donahue also declined comment.

# CHICAGO SUN-TIMES

## STEP IT UP, SOUTH SIDE'

Cubs fans are running away with our hottest fans contest. Send us your pictures — and vote — at **suntimes.com**

50¢ CITY & SUBURBS • $1 ELSEWHERE | SPORTS FINAL
WEDNESDAY, JUNE 11, 2008 | suntimes.com | WOO! | 83° 64° Page 48





**SUN-TIMES/NBC5 EXCLUSIVE**

## FEDS SUBPOENA UP TO 10 CHICAGO COPS TO FIND OUT

# THE TRUTH ABOUT TORTURE

BY CAROL MARIN AND FRANK MAIN
Staff Reporters

Retired detectives named in a decades-old Chicago Police torture scandal have been subpoenaed by a federal grand jury — a clear sign a criminal investigation into former Cmdr. Jon Burge and others is ramping up, sources said Tuesday.

Five to 10 detectives received subpoenas last week to appear June 19 before the grand jury. The probe is headed by

Sergio Acosta, civil rights coordinator in the U.S. attorney's office in Chicago, the sources said.

A spokesman for the U.S. attorney's office declined to comment, but pointed to a statement U.S. Attorney Patrick Fitzgerald made last September announcing his office is engaged in a criminal investigation into the matter.

CONTINUED ON PAGE 8

"I never had a bad day in my life, though I've been known to fib occasionally." RETIRED POLICE COMMANDER JON BURGE

# FEDS TURN UP HEAT



CONTINUED FROM PAGE 1

## OBSTRUCTION OF JUSTICE? | Officials look into whether commander, cops lied under oath

In January, the city approved a nearly $20 million settlement with four former Death Row inmates who claimed Burge and more than 20 officers who worked with him in the 1970s and 1980s coerced murder confessions from them.

A special Cook County prosecutor investigated the torture claims, but in a controversial final report found Burge and other detectives could not face criminal charges in state court because the statute of limitations expired.

Federal investigators stepped in. They are focused on sworn statements Burge and other detectives made in 2003.

If they can show those statements are false, authorities could charge the retired officers with obstruction of justice, sources said. The federal statute of limitations does not expire until November — five years after the sworn statements were made, the sources said.

Burge denied any torture took place in written answers to questions submitted to him in 2003 in a lawsuit filed by one of the Death Row inmates, Madison Hobley.

Retired Chicago Police Detective William Pedersen, one of the defendants in a torture lawsuit brought by former Death Row inmate Aaron Patterson, said he was not one of the officers who received a federal subpoena last week.

But he heard that other retired detectives were subpoenaed to appear before a federal grand jury.

"When is this going to end?" said Pedersen, who denies he tortured Patterson.

As usual, Burge politely answered a reporter's call today, but would not comment beyond a few pleasantries.

"Carol, number one, you know I can't talk to you, and I've told you that 28 times before. So no comment," he said.

Asked how he was doing, Burge joked, "I never had a bad day in my life, though I've been known to fib occasionally."

Flint Taylor, one of the attorneys representing the Death Row inmates in lawsuits against the city, said "we're very pleased to hear" about the subpoenas.

He said federal investigators are doing a comprehensive investigation into the torture allegations and he hopes it will lead to the indictment of Burge and the other officers.

Attorney Joseph Roddy confirmed he was hired to represent retired detectives who received federal subpoenas. He would not comment further.

Fraternal Order of Police President Mark Donahue also declined comment.

### SUN-TIMES NBC 5 EXCLUSIVE

### THE BURGE FILE

What's happened with all the cases against Jon Burge?

**DEPARTMENT:** He was fired for alleged abuse of a suspect who said Burge and others punched, smothered and shocked him.

**LAWSUIT:** City agreed to pay nearly $20 million to 4 alleged torture victims.

**STATE CRIMINAL PROBE:** Special prosecutors found evidence of brutality under Burge but couldn't bring charges because of statute of limitations.

**FEDERAL CRIMINAL PROBE:** It appears to be ramping up.

# APPENDIX D

CHICAGO SUN-TIMES    THE PROGRESSI

# WE THINK

Cyrus F. Freidheim Jr. · Publisher | Michael Cooke · Editor in Chief
Tom McNamee · Editorial Page Editor | Don Hayner · Managing Editor

# Alleged torture by cops needs thorough probe

It's easy to brush off the torture allegations involving former Chicago Police Lt. Jon Burge and the cops he oversaw.

After all, the whole thing happened decades long ago.

And the statute of limitations for state charges has expired.

And the rogue cops are retired, their names already sullied.

And weren't a lot of those torture victims criminals anyway?

It's so easy to sweep it all aside — so easy and so wrong.

The horrible stain on Chicago law enforcement has not faded, though many powerful people in this city wish it would, thanks to a few tenacious critics.

This week, Chicago Sun-Times reporters Carol Marin and Frank Main broke the news that prosecutors are calling as many as 10 retired cops before a federal grand jury investigating whether Burge and others obstructed justice when they indicated in sworn statements that the Chicago Police did not engage in torture. That would be a federal crime for which Burge and his henchmen could still be charged.

We have full confidence in U.S. Attorney Patrick Fitzgerald's office running the investigation. Fitzgerald and his crack team seem, at times, to be the only ones around here who can figure out how to prosecute certain bad guys, whether it's crooked cops or political players trading city jobs for campaign work.

But for all Fitzgerald's efforts, his investigation might be going nowhere were it not for the principled people who shoved an unpopular issue uphill for many years.

People such as journalist John Conroy, who wrote detailed and damning stories about police torture for the Chicago Reader, long before it became a hot issue.

People such as Ald. Ed Smith, who has been strident in his criticism in the City Council.

People such as the attorneys at the People's Law Office, who have been tough advocates for the men whose liberties were violated in the shadows of police interrogation rooms.

Issues of morality aside, recall that this scandal has cost taxpayers tens of millions of dollars in legal fees and settlements.

Citizens can have confidence in their legal system only when they know that wrongdoers will be punished without favor, whether the wrongdoer is a gang-banger or the cop beating a confession out of him.

# APPENDIX E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )
   )
      v.   )
   )   Violations: Title 18, United
JON BURGE   )   States Code, Sections 1512(c)(2) and 1621(1)

**COUNT ONE**

The SPECIAL FEBRUARY 2008-2 GRAND JURY charges:

1.    At times material to this indictment:

      a.    During the period from approximately 1970 to approximately 1993, defendant JON BURGE was a Chicago Police Officer.

      b.    The Chicago Police Department assigned its detectives to different geographical divisions known as "Areas," which were based at different police stations.

      c.    Area Two was located on the south side of Chicago. Until approximately 1983, it was located at 9059 S. Cottage Grove Ave. in Chicago. Since 1983, it has been located at 727 E. 111th Street in Chicago.

      d.    From approximately 1972 to 1974, defendant JON BURGE worked as a detective assigned to Area Two. From approximately 1977 to 1980, JON BURGE held the rank of sergeant and was assigned to Area Two. From approximately 1981 to 1986, JON BURGE held the rank of Police Lieutenant, and was assigned as the supervisor of detectives assigned to the Violent Crimes Unit in Area Two.

2.    At all times material to the indictment, federal law (including the United States Constitution as well as various federal statutes), Illinois law (including the Illinois constitution), and

Chicago police regulations prohibited torture, physical abuse, and other use of excessive force by police officers.

3.     During the time that defendant JON BURGE was assigned to Area Two, JON BURGE was present for, and at times participated in, the torture and physical abuse of a person being questioned on one or more occasions. In addition, during the time he worked as the lieutenant supervising Area Two Violent Crimes detectives, JON BURGE was aware that detectives he was supervising engaged in torture and physical abuse of a person being questioned on one or more occasions.

4.     After 1991, a series of civil lawsuits were filed in Chicago alleging that defendant JON BURGE and other police officers who were or had been under his command participated in acts of torture and physical abuse of people in custody.

5.     One of those lawsuits, filed in 2003, in the United States District Court in Chicago, was entitled *Hobley v. Jon Burge, et al.*, No. 03 C 3678. The lawsuit included allegations that Madison Hobley had been tortured and abused by police officers at Area Two in January 1987 in order to coerce a confession, including an allegation that police officers had placed a plastic bag over Hobley's head until Hobley lost consciousness. The lawsuit claimed that defendant JON BURGE was aware of a pattern of torture and abuse at Area Two.

6.     As part of civil discovery in the *Hobley* case, written interrogatories were served upon defendant JON BURGE. It was material to the outcome of the civil lawsuit whether in fact JON BURGE knew of or participated in torture and physical abuse of persons in Chicago Police Department custody. JON BURGE provided written answers to the interrogatories.

2

7.     On or about November 12, 2003, defendant JON BURGE submitted "Defendant Jon

Burge's Answers to Plaintiffs' [sic] First Set of Interrogatories," which included certain answers,

to wit:

QUESTION #13:     State whether you have ever used methods, procedures
or techniques involving any form of verbal or physical coercion of suspects while in
detention or during interrogation, such as deprivation of sleep, quiet, food, drink,
bathroom facilities, or contact with legal counsel and/or family members; the use of
verbal and/or physical threats or intimidation, physical beatings, or hangings; the use
of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use
of photographs or polygraph testing; and the use of physical objects to inflict pain,
suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or
machines that deliver an electric shock. For each such use of verbal or physical
coercion identify the detainee(s) and/or suspects(s), any other officers or individuals
involved, the date of the incident, the specific conduct in which you or any other
officer engaged, and whether you or any other officer was the subject of any
complaint or discipline as a result of said conduct.

ANSWER:     Defendant objects to Interrogatory no. 13 because said
question is overly broad, unduly vague, ambiguous and calls
for a legal conclusion. Subject to and without waiving said
objection, *I have never used any techniques set forth above as
a means of improper coercion of suspects while in detention
or during interrogation.*

QUESTION # 14:     State whether you were aware of any Chicago Police
Officer, including but not limited to officers under your command, ever using
methods, procedures or techniques involving any form of verbal or physical coercion
of suspects while in detention or during interrogation, such as deprivation of sleep,
quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family
members; the use of verbal and/or physical threats or intimidation, physical beatings,
or hanging; the use of racial slurs or profanity; the use of physical restraints, such as
handcuffs, the use of photographs or polygraph testing; and the use of physical
objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter
covers, radiators, or machines that deliver an electric shock. For each such use of
verbal or physical coercion of which you were aware identify the detainees(s) and/or
suspect(s), any other officers or individuals involved, the date of the incident, the
specific conduct in which you or any other officer engaged, and whether you or any
other officer was the subject of any complaint.

ANSWER:     Defendant objects to Interrogatory no. 14 because said
question is overly broad, unduly vague, ambiguous and calls

3

for a legal conclusion. Subject to and without waiving said objection, *I am not aware of any.*

8.    The italicized portion of these answers were false, for in truth and fact, as defendant JON BURGE then and there well knew, he had participated in one or more incidents of physical coercion of suspects while the suspects were in detention and/or were being interrogated, and was aware of one or more other such events involving the abuse or torture of people in custody.

9.    On or about November 12, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE,

defendant herein, did corruptly obstruct, influence, and impede an official proceeding, and attempt to do so, in that the defendant signed answers containing false statements in response to interrogatories in the case of *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and caused them to be served upon counsel for the plaintiff;

In violation of Title 18, United States Code, Section 1512(c)(2).

4

## COUNT TWO

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1.    The allegations of Paragraphs 1 through 6 of Count One of this indictment are hereby realleged and incorporated herein as if fully set forth herein.

2.    On or about November 25, 2003, defendant JON BURGE submitted "Defendant Jon Burge's Answers to Plaintiff's Second Set of Interrogatories," which included certain answers, to wit:

> QUESTION # 3:      Is the manner in which Madison Hobley claims he was physically abused and/or tortured as described in Plaintiff's Complaint (including, for example, the allegation of "bagging" with a typewriter cover) consistent with any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2 which you observed or have knowledge of? Please explain your answer and identify any other instances or examples of the same or similar physical abuse and/or torture.

> ANSWER    *I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2.*

3.    The italicized portion of this answer was false, for in truth and fact, as defendant JON BURGE then and there well knew, he had observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse of a person by "bagging."

4.    On or about November 25, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE, ·

defendant herein, having taken an oath to testify truthfully before a competent officer, or person, in a case in which a law of the United States authorizes an oath to be administered, subscribed to sworn

answers to Plaintiff's Second Set of Interrogatories in *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and willfully and contrary to such oath stated and subscribed to the material matter set forth above in his answer to Question 3 which he did not believe to be true, when in truth and fact, as defendant JON BURGE then and there well knew, he had observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse of a person by "bagging";

In violation of Title 18, United States Code, Section 1621(1).

6

## COUNT THREE

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1.     The allegations of Paragraphs 1 through 3 of Count Two of this indictment are hereby realleged and incorporated herein as if fully set forth herein.

2.     On or about November 25, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE,

defendant herein, did corruptly obstruct, influence, and impede an official proceeding, and attempt to do so, in that the defendant signed answers containing false statements in response to interrogatories in the case of *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and caused them to be served upon counsel for the plaintiff;

In violation of Title 18, United States Code, Section 1512(c)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

7

# APPENDIX F



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | |
|---|---|
| *Patrick J. Fitzgerald*<br>*United States Attorney* | *Federal Building*<br>*219 South Dearborn Street, 5th Floor*<br>*Chicago, Illinois 60604*<br>*(312) 353-5300* |

FOR IMMEDIATE RELEASE
TUESDAY OCTOBER 21, 2008
www.usdoj.gov/usao/iln

PRESS CONTACTS:
AUSA Jeffrey Cramer          (312) 886-7631
AUSA Barry Miller            (312) 886-1325
AUSA Sergio Acosta           (312) 353-1415
Randall Samborn              (312) 353-5318

## U.S. INDICTS FORMER CHICAGO POLICE CMDR. JON BURGE ON PERJURY, OBSTRUCTION OF JUSTICE CHARGES RELATED TO ALLEGED TORTURE AND PHYSICAL ABUSE BY BURGE AND OTHER OFFICERS

CHICAGO – Former Chicago Police Commander **Jon Burge** was arrested today at his home in Florida on federal obstruction of justice and perjury charges for allegedly lying about whether he and other officers under his command participated in torture and physical abuse of one or more suspects in police custody dating back to the 1980s. Burge was charged with two counts of obstruction of justice and one count of perjury in a three-count indictment that was returned under seal by a federal grand jury last Thursday and unsealed today following his arrest by FBI agents from Chicago and Tampa.

The charges allege that Burge lied and impeded court proceedings in November 2003 when he provided false written answers to questions – known as interrogatories – in a civil lawsuit alleging that he and others tortured and abused people in their custody.

Burge, 60, of Apollo Beach. Fla., near Tampa and formerly of Chicago, was expected to appear later today in U.S. District Court in Tampa. He will appear at a later date in U.S. District Court in Chicago, where he will face prosecution.

The arrest and indictment were announced today by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois; Grace Chung Becker, Acting Assistant Attorney General for the U.S. Justice Department's Civil Rights Division; Robert D. Grant, Special Agent-in-Charge of the Chicago Office of the Federal Bureau of Investigation; and Steven E. Ibison, Special Agent-in-Charge of the FBI's Tampa Field Division.

"There is no place for torture and abuse in a police station. There is no place for perjury and false statements in federal lawsuits," Mr. Fitzgerald said. " No person is above the law, and nobody – even a suspected murderer – is beneath its protection. The alleged criminal conduct by defendant Burge goes to the core principles of our criminal justice system," he added.

"Throughout this nation, law enforcement officers make daily sacrifices in the pursuit of justice," said Acting Assistant Attorney General Grace Chung Becker. "It is imperative that we take these charges seriously but also bear in mind they do not reflect upon the conduct of the vast majority of law enforcement officers."

Mr. Grant said: "Everyday Chicago Police Officers execute their sworn duties lawfully with great skill, courage and integrity. Sometimes they do so with great peril, as we have been sadly reminded in recent weeks and months. But police officers have a special duty which is underscored by today's announcement. Police officers don't serve the public as judge and jury and they have a special responsibility to care for those within their custody, regardless of their alleged crimes. Today's announcement brings great shame on the career of retired Commander Jon Burge."

The investigation is continuing, the officials said.

According to the indictment, Burge was a Chicago Police Officer from 1970 to 1993. He was a detective at Area Two police headquarters on the city's south side from 1972 to 1974, and an Area Two sergeant from 1977 to 1980. From approximately 1981 to 1986, he was a lieutenant and supervisor of detectives working in the Area Two violent crimes unit. Subsequently, he was

commander of the Bomb and Arson Unit and, later, commander of Area Three detectives. Burge was suspended by the Chicago Police Department in 1991 and fired in 1993.

The indictment alleges that, on one or more occasions during the time that Burge worked in Area Two, Burge was present for, or participated in, the torture and physical abuse of persons in police custody. The indictment also alleges that during the time he worked as the lieutenant supervising Area Two violent crimes detectives, Burge was aware that detectives he supervised, on one or more occasions, engaged in torture and physical abuse of people in their custody.

Chicago Police Department regulations, as well as state and federal law, prohibited torture, physical abuse and other use of excessive force by police officers, the indictment states.

After 1991, a series of police brutality civil lawsuits were filed alleging that Burge and other detectives and police officers under his command participated in torture and abuse of suspects. One such case, *Hobley v. Burge, et al.*, 03 C 3678, was filed in 2003 in U.S. District Court in Chicago. The lawsuit alleged that plaintiff Madison Hobley was tortured and abused by police officers at Area Two headquarters in January 1987 in order to coerce a confession. The Hobley lawsuit included a specific allegation that police officers had placed a plastic bag over Hobley's head until he lost consciousness.

The Hobley lawsuit claimed that Burge was aware of a pattern of torture and abuse at Area Two police headquarters. The indictment does not, however, allege that Hobley was tortured or abused.

As part of the discovery process in Hobley's lawsuit, his attorneys served Burge with written interrogatories and Burge, in turn, provided written answers. It was material to the outcome of the case whether in fact Burge knew of or participated in torture and physical abuse of any person or persons in Chicago Police custody, the indictment states.

Count One charges Burge with obstruction of justice on Nov. 12, 2003, for allegedly corruptly obstructing, influencing and impeding an official proceeding by signing answers containing false

statements in response to two interrogatories in the Hobley litigation. According to the indictment, one question asked:

> whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hangings; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock ....

While objecting to the question as overly broad, vague, ambiguous and calling for a legal conclusion, Burge answered:

> *I have never used any techniques set forth above as a means of improper coercion of suspects while in detention or during interrogation.*

The indictment states that another question asked whether Burge was aware of any Chicago Police Officer, including but not limited to officers under his command, ever using any of the methods, procedures or techniques that he was asked about in the previous question. Burge also objected to this questions and answered:

> *I am not aware of any.*

The indictment alleges that the italicized portion of these answers were false, as Burge well knew that he had participated in one or more incidents of physical coercion of suspects while the suspects were in detention and/or were being interrogated, and was aware of one or more other such events involving the abuse or torture of people in custody.

Count Two charges Burge with perjury on Nov. 25, 2003, for allegedly lying in sworn answers to a second set of interrogatories in the Hobley lawsuit. The indictment states the following question was asked:

Is the manner in which Madison Hobley claims he was physically abused and/or tortured as described in Plaintiffs Complaint (including, for example, the allegation of "bagging" with a typewriter cover) consistent with any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2 which you observed or have knowledge of?

Burge answered:

*I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2.*

The italicized portion of this answer was allegedly false, as Burge well knew that he had observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse (suffocation) of a person by "bagging."

Count Three of the indictment charges Burge with obstruction of justice on Nov. 25, 2003, for allegedly corruptly obstructing, influencing and impeding an official proceeding by signing the answer that forms the basis of the perjury charge in Count Two.

The Government is being represented in court by Assistant U.S. Attorneys Jeff Cramer, Barry Miller and Sergio Acosta and Civil Rights Division Trial Attorney Betsy Biffl.

If convicted, Burge faces a maximum penalty of 20 years in prison on each count of obstruction of justice and 5 years in prison for perjury, and a $250,000 fine on each count. The Court, however, would determine the appropriate sentence to be imposed under the advisory United States Sentencing Guidelines.

The public is reminded that an indictment contains only charges and is not evidence of guilt. The defendant is presumed innocent and is entitled to a fair trial at which the government has the burden of proving guilt beyond a reasonable doubt.

# # # #

5

# APPENDIX G

chicagotribune.com

Feds catch up with Burge
Notorious ex-Chicago commander charged with lying about torture

By Steve Mills and Jeff Coen
Tribune reporters
October 22, 2008

More than three decades after allegations surfaced that Chicago police detectives routinely tortured murder suspects, retired Cmdr. Jon Burge was arrested Tuesday at his Florida home on charges that he testified falsely about the brutality.

The perjury and obstruction of justice counts against Burge mark the first criminal charges in the long-running scandal. But a20dozen or more officers once under Burge's command who have denied under oath taking part in the alleged torture could be in legal peril as well.

The indictment of the 60-year-old Burge breathes new life into a scandal that has had a stubborn hold on the Police Department and the city and involves claims of abuse—electric shock, Russian roulette and suffocation with bags and typewriter covers. The allegations continue to figure prominently in the appeals of dozens of inmates.

Much of the scandal grew out of some of the most brutal crimes. Andrew Wilson was allegedly tortured after his arrest for the murder of two Chicago police officers in 1982. Madison Hobley made similar allegations after he was charged in a 1987 arson that killed his wife, young child and five others. Hobley was sentenced to Death Row, but was pardoned and set free by Gov. George Ryan.

The allegations also raised questions about the conduct of Mayor Richard Daley, who was Cook County state's attorney in the 1980s when much of the alleged torture took place, and current State's Atty. Richard Devine, whose office continued to oppose the inmates' allegations of torture.

It has cost taxpayers nearly $30 million in lawsuit settlements and legal fees paid by the city to numerous lawyers who have represented the police officers.

The indictment comes two years after a special Cook County prosecutor, following a lengthy and expensive investigation, concluded that Burge and his officers20coerced dozens of confessions by torturing criminal suspects. But they held that no one could be criminally charged because statutes of limitations for the abuse had long passed.

But federal authorities charged Burge for his denials of the torture, not the decades-old torture itself. In written answers he submitted in November 2003 as part of a federal lawsuit filed by Hobley, Burge denied he took part in torture or knew of physical violence by officers under his command in the 1980s at Calumet Area headquarters on the South Side. That amounted to

perjury and obstruction of justice, prosecutors contend.

For years, Burge and those officers had asserted their 5th Amendment rights, refusing to answer questions. But the responses by Burge in 2003—and potentially those by other officers more recently—have given prosecutors the window of opportunity to bring criminal charges.

U.S. Atty. Patrick Fitzgerald likened the strategy to the prosecution of Al Capone, the legendary Chicago mob boss who was never convicted of gangland murders but went to prison for tax evasion.

"If people commit multiple crimes, and you can't prosecute them for one, there's nothing wrong with prosecuting them for another," Fitzgerald said at a news conference to announce the charges against Burge. "If Al Capone went down for taxes, that was better than him going down for nothing."

Fitzgerald made it clear, though, that prosecutors believe Burge engaged in torture. The charges should se rve as a warning to officers who worked for Burge, he said.

"If their lifeline is to hang on a perceived code of silence, they may be hanging on air," Fitzgerald said. "Anyone who thinks that they can safely lie in a grand jury, relying upon an unspoken conspiracy of silence, is taking a great risk."

Attorney James Sotos, who is representing Burge in a lawsuit filed by former inmate Darrell Cannon, declined to comment on why Burge answered the questions in the lawsuit in 2003.

The other officers who have more recently dropped their 5th Amendment rights to deny the torture allegations in court papers may have done so because the special county prosecutor declared that it was far too late to bring criminal charges.

Flint Taylor, who has pursued police torture cases for more than two decades and represents Cannon in a lawsuit, said that the court responses have proved to be a crucial error, opening up Burge and the other officers to criminal prosecution.

"I imagine that, if he could take that back, he would," Taylor said about Burge.

Taylor, who conducted many of the depositions since 2006 in which Burge's officers denied torture, said he is hopeful more indictments will be forthcoming.

"It's a gratifying day but not the end of this long struggle to bring justice in the police torture cases," he said. "I would expect and hope that a broader indictment—like a conspiracy to obstruct justice—would come."

Cannon, 57, said he was awakened by a telephone call with the news after working the midnight shift as a construction site security guard.

"I jumped straight up. I was reinvigorated," said Cannon, who alleges that torture by Burge and his officers led to his conviction for a 1983 drug-related murder and 24 years in prison. "It's long overdue."

A Vietnam War veteran, Burge joined the Police Department in 1970. He worked as a detective and in supervisory jobs at Calumet Area headquarters through the mid-1980s, but allegations of torture surfaced early. In 1973, Anthony Holmes alleged he was electric shocked and "bagged" after his arrest for murder, according to Taylor. Holmes, who was paroled after 33 years in prison, has maintained his innocence. Burge was suspended in 1991 and fired in 1993 by the Chicago Police Board for the torture of cop-killer Wilson.

Daley said he bore no responsibility for what happened inside the Police Department.

"I was very proud of my role as a prosecutor. I was not the mayor. I was not the police chief. I did not promote this man in the '80s," he said. "So let's put everything in perspective."

During an initial appearance in U.S. District Court in Tampa, Burge was released on $250,000 bail, secured by his home. He was ordered to surrender his passport, hand over his weapons to a friend and report to court officials in Florida twice a week. Jeffrey Cramer, a federal prosecutor in Chicago, said Burge is scheduled to be arraigned Monday in federal court here.

Fitzgerald said the government had witnesses to prove that Burge engaged in and knew of the torture of suspects. Prosecutors will have to prove the torture allegations to win convictions on the obstruction of justice and perjury charges. But even if the suspects had been involved in committing horrible crimes, that did not give Burge and his officers license to torture them, Fitzgerald said.

"Some of them may have been guilty of awful crimes, but that is no excuse," he said.

WEDNESDAY, OCTOBER 22, 2008
CHICAGO SUN-TIMES | **COMMENTARY** | 33

**CHICAGO SUN·TIMES** · THE PROGRESS

# WE THINK

Cyrus F. Freidheim Jr. · Publisher
Tom McNamee · Editorial Page Editor

Michael Cooke · Editor in Chief
Don Hayner · Managing Editor

# Burge indictment is a good day for justice

Jon Burge, the former Chicago Police commander with a reputation for torturing suspects, was arrested Tuesday.

It was a good day for justice, for the rule of law, for Chicagoans from Rogers Park to Hegewisch and — best of all — for the Chicago Police.

You might not know that by some of the comments posted at *www .suntimes.com* after our reporter, Natasha Korecki, broke the story of Burge's arrest.

One writer called Burge's critics "police haters."

Another writer called him an "American hero."

A third writer thanked Burge for saving us money. "All Burge did was save the taxpayers from the costs of long trials by forcing some confessions," the writer said. "It's not

### *It should have happened long ago.*

like he was torturing Boy Scouts. These were lowlifes."

But Jon Burge was none of the above — not a victim of police haters, not an American hero, not the taxpayer's friend. He was, as established by civil suits and a special prosecutors' report, a rogue cop who tortured criminal suspects over two decades.

Not *criminals,* we feel we must emphasize. But criminal *suspects.*

The only shame in Burge's arrest was that it should have happened long ago.

As early as 1982, public officials got wind of rumors of Burge's torture tricks in the basement of a South Side police station. Richard Brzeczek, who was police superintendent, informed Richard M. Daley, who was Cook County state's attorney, in writing that there was credible evidence Burge and his men had tortured a suspect.

But Daley looked away. Brzeczek did not follow up. Burge remained on the police force for another 11 years, ushered into retirement only after the mounting evidence of torture became impossible to ignore.

By the time a special prosecutors' report in 2006 confirmed the allegations of torture, time had run out on charging Burge, because of the statute of limitations.

Again, what a shame. Had Burge,

victed of torture, he could have been sentenced to decades in prison. As it is, he was indicted Tuesday by a federal grand jury of trying to cover up the crime — by lying under oath — rather than for the crime itself. If found guilty, he faces 20 years or more in prison, but likely would get less.

You'll have to forgive us, then, for saying Tuesday was a good day for justice and then lamenting how much better it could have been. It's just that we couldn't help notice that it took the U.S. attorney's office to do what City Hall, the Chicago Police Department and the Cook County state's attorney's office should have done years ago.

The sad truth is that Burge was allowed to skate because too many Americans care more about catching bad guys than about protecting our rights and liberties. And too many cops turn a blind eye when a fellow officer crosses the line. They forget that their devotion to the law should be as great as their devotion to each other.

We pay a practical price: Suspects who are innocent, forced into false confessions, may go to prison. Suspects who are guilty, able to prove they were tortured, may be set free.

We pay a financial price: Last year, the city paid $20 million to settle four civil suits lodged by men who claimed they had been tortured by Burge.

We pay a public relations price: For all the excellent work the Chicago Police Department does every day, one brute like Burge can destroy the department's reputation.

And we pay a moral price: We lower ourselves.

It takes courage to stand up for the rights of the most powerless and despised among us, such as those handcuffed suspects — many of them no doubt guilty — who were abused in Burge's basement.

But a handful of principled men and women did stand up. Among them were five aldermen who wrote a letter last year to U.S. Attorney Patrick Fitzgerald urging him to prosecute Burge for obstruction of justice — exactly what he now has done.

Those aldermen are Bob Fioretti (2nd), Pat Dowell (3rd), Billy Ocasio (26th), Ed Smith (28th) and Helen Shiller (46th).

# APPENDIX H

## PEOPLE STILL IN PRISON AS A RESULT OF CONFESSIONS ALLEGEDLY TORTURED FROM THEM BY BURGE AND HIS MEN AT AREA 2 AND 3 POLICE HEADQUARTERS FROM 1972 THROUGH 1991

1. Ronald Kitchen
2. Edward James
3. Derrick King
4. Reginald Mahaffey
5. Jerry Mahaffey
6. Franklin Burchette
7. Tyshaun Ross
8. Michael Tillman
9. Tony Anderson
10. Stanley Wrice
11. Leonard Kidd
12. James Lewis
13. Leonard Hinton
14. Lavert Jones
15. Eric Johnson
16. Eric Caine
17. Grayland Johnson
18. Victor Saffold (Cortez Brown) **Granted a new hearing by the Illinois Appellate Court in 2008**
19. Keith Walker
20. David Fauntleroy
21. Johnny Plummer
22. Javan Deloney
23. Clarence Trotter
24. Demond Weston
25. Vincent Wade

## IN PRISON ON OTHER CHARGES THAT WERE PREMISED ON OR ENHANCED BY THEIR PRIOR CONVICTIONS WHICH WERE THE RESULT OF ALLEGEDLY TORTURED CONFESSIONS

1. Stephen Cavanero
2. Eric Smith
3. Jerry Thompson
4. Marcus Wiggins

Additionally there are a number of torture victims, including Anthony Holmes, George Powell, Alonzo Smith and L.C. Riley, who are on parole in cases where confessions were allegedly tortured from them and used to convict them. There are others, including Lee Holmes, Sylvester Green, and Lawrence Poree, who died before they could seek new hearings on their torture claims.

# APPENDIX I

## RESOLUTION CONDEMNING POLICE TORTURE

WHEREAS, Two special prosecutors appointed by the Presiding Judge of the Criminal Division of the Circuit Court of Cook County have amply documented cases of torture at the hands of some members of the Chicago Police Department in the 1970s and 1980s; and

WHEREAS, These officers are beyond the reach of the law, either for lack of federal or state legislation applicable to torture or by reason of the three-year statute of limitation under the Illinois Criminal Code for the crime of battery; and

WHEREAS, The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishment" while the Fifth amendment provides that "no person shall ... be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law"; and

WHEREAS, Section 10 of the State of Illinois Constitution's Bill of Rights states that "no person shall be compelled in a criminal case to give evidence against himself" and, furthermore provides that "no person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of law"; and

WHEREAS, The United States has ratified the United Nations Convention Against Torture, Cruel, Inhuman or Degrading Treatment or Punishment but has not enacted federal implementing legislation applicable to the various states; and

WHEREAS, The United States has ratified the United Nations' International Covenant on Civil and Political Rights that prohibits subjecting anyone to torture or to cruel, inhuman or degrading treatment or punishment and is required, under Article 4, to "...ensure that all acts of torture are offences under its criminal law"; now, therefore

BE IT RESOLVED, That we, the undersigned members of the City Council of the City of Chicago, gathered here this 12th Day of March, 2008 AD, do hereby condemn the use of torture as being inherently offensive to human dignity and in violation of the Constitution of the United States, the Constitution of the State of Illinois, and international law and urge the Legislature of the State of Illinois to include torture as a crime in the Illinois Criminal Code, defining it in the same manner as it is defined in the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, without being subject to any statute of limitations.

BE IT FURTHER RESOLVED That the Independent Police Review Authority include a special section in its reports to the City Council that enumerates all allegations of torture being investigated as well as the outcome of said inquires and results of the referral of those outcomes to the State's Attorney's Office of Cook County.

BE IT FURTHER RESOLVED That suitable copies of this resolution be prepared and presented to the Chicago Police Superintendent, the Independent Police Review Authority, the Chicago Police Board and the Cook County States Attorney.

ED H. SMITH
Alderman – 28th Ward

JO ANN THOMPSON
Alderman – 16th Ward

ROBERT W. FIORETTI
Alderman – 2nd Ward

# APPENDIX J

PROJECTED POTENTIAL FUTURE EXPOSURE OF THE CITY OF CHICAGO FOR
ATTORNEYS' FEES, LITIGATION COSTS AND DAMAGES IN THE FIVE PENDING BURGE
TORTURE CASES

To:     Aldermen Ed Smith, Toni Preckwinkle, Howard Brookins, Ricardo Munoz and Joe
        Moore; and Counsel for Torture Plaintiffs Orange, Hobley, Howard, and Cannon

From:   Steven Whitman, Ph.D.

Date:   September 10, 2007

You asked me, as a statistician,[1] to project attorneys' fees, damages and litigation costs that
would and/or could accrue to the City of Chicago for continuing to defend Jon Burge, the City, and
related other City officials in the five pending police torture cases.  Here are some relevant
observations about my methodology:

1. I used the August 30, 2007 letter to me from Plaintiffs' counsel, and its Exhibits, which are
attached hereto as Appendix B, for all estimates of hours, hourly rates, litigation costs and
expenses, damages, etc.

2. Whenever a range was specified, I used the average.  Thus, when it was estimated that a
trial would take 6 to 8 weeks, I used 7 weeks in my calculations.  I also did what we call a
"sensitivity analysis" to determine if altering such numbers (i.e., using 6 or 8 instead of 7)
would change the results in any substantial way.  It never did.

3. When law firms were involved, I used the average of all the hourly rates listed for the
lawyers of a given firm to determine the hourly rate that I employed for the lawyers of that
firm.

4. All of the data were entered into Excel spreadsheets and I did all calculations using this
software program.

5. In only one circumstance did I not use the average of a range.  When calculating potential
damages, the letter specified a range of $500,000 to $2,000,000 for each year wrongfully spent
in prison.[2]  Since a sensitivity analysis did reveal big differences in the use of these two
numbers, I did the calculations twice: once for the smallest end of the range ($500,000) and
once for the highest end ($2,000,000).

6. In determining the projected hours for the Hobley depositions, I added 75 potential
depositions, which is the average of the 50-100 range set forth in the letter, to the seven certain
depositions that are also listed.

As requested, I calculated, given a probability that each trial would result in a verdict for the
plaintiff to be 0.5 or 50%, the probability that 0 of the 5 would result in a plaintiff's verdict, 1 of the 5,

---

[1] My expertise is as an epidemiologist - - - i.e. applying statistics to public health, and I served as
the Chief Epidemiologist for the City of Chicago at the City Department of Public Health from
1991 to 2000. My Curriculum Vitae is attached as Appendix C.
[2] This range is drawn from the damages section of the attached letter at pp. 10-11 and Exhibit K
thereto, wherein a survey of comparable torture and wrongful conviction verdicts and
settlements, both locally and across the country, is relied upon to establish the range.

1

etc. The answer, using the binomial theorem, is as follows:

$$0/5 = 3.1\%; 1/5 = 15.6\%; 2/5 = 31.3\%; 3/5 = 31.3\%; 4/5 = 15.6\%; 5/5 = 3.1\%$$

Note that these add up to 100%, as they must. Said differently, there is a 97% chance that the City would lose at least one case; an 81% chance that they will lose at least 2 cases; and a 50% chance that they will lose at least 3 cases.

In summary, my calculations establish the following. First, the estimate for projected future defense attorneys' fees and litigation costs is $15,950,745.[3] Second, the potential damages, if all five cases are won, would be, under the minimum assumption of $500,000 a year, $47,875,000. Under the maximum assumption of $2,000,000 a year, the total damages would add up to $146,875,000. Third, the projected attorneys' fees and litigation costs that would be due to the plaintiffs' lawyers if they won all five cases, would be $32,398,299.

Even if the City were to win all five cases, a highly improbable event, they would nonetheless expend from July 1, 2007 forward, a projected amount of $15,950,745 in additional defense attorneys' fees and litigation costs to obtain those verdicts. If the City were to lose at least one case, a highly likely event, it would be responsible, depending on which case it lost, for an additional projected minimum of $10,715,206 to a maximum of $51,907,563 in plaintiff damages, attorneys' fees and costs. Hence, if the City takes all five cases to trial, it will expend nearly $16 million in future defense fees and costs, and have a 97% chance of losing one case, with an additional potential exposure of another $10.7 to $51.9 million in damages, fees and costs to the winning plaintiff and his lawyers.

If the City were to lose the three cases that it allegedly agreed to settle for $14.8 million,[4] the projected total unpaid cost to the City would be a minimum of $55,872,670 and a maximum of $108,372,670. Under a worst case scenario for the City - - - it loses all five of the pending torture cases, it could be responsible for a total of $96,224,044 to $195,224,044 in unpaid defense fees and costs, damages, and plaintiff's fees and costs. Please also note that there are no projections for appeals and re-trials because no hours were supplied for those possible events. A further summary, by case, follows, with the itemized spreadsheets attached as Appendix A:

|  | Def. Fees & Costs | Potential Damages | Pl. Fees & Costs | Total[5] |
|---|---|---|---|---|
| Hobley | $2,330,696 | $9.5 to $33.5 million | $6,883,932 | $18.7 to 42.7 million |
| Orange | $3,819,077 | $11 to $39.5 million | $8,286,866 | $23.1 to 51.6 million |
| Howard | $3,336,893 | $5.875 million | $4,840,206 | $14.1 million |
| Cannon | $3,273,930 | $13 to $46 million | $5,907,563 | $22.2 to 55.2 million |
| Patterson | $3,190,149 | $8.5 to $22 million | $6,479,732 | $18.2 to 31.7 million |
| Totals | $15,950,745 | $47.875 to $146.875 million | $32,398,299 | $96.2 to $195.2 million |

---

[3] This is in addition to the $8.138 million already paid out. Hence the City will expend a total of $24,088,745 in defense fees and costs if it takes all five cases to trial.

[4] These cases are Orange, Hobley and Howard, which, according to plaintiffs' lawyers, they and the City agreed to settle last November.

[5] These totals are rounded to the nearest $100,000.

# APPENDIX K

# CHICAGO SUN-TIMES

THE PROGRESSIVE, INDEPENDENT CONSCIENCE OF THE CITY

# WE THINK

Let's get into it.

JOHN CRUICKSHANK • Publisher | MICHAEL COOKE • Editor in Chief | CHERYL L. REED • Editorial Page Editor | DON HAYNER • Managing Editor | TUESDAY, SEPTEMBER 25, 2007 | PAGE 29

# STOP THE FINANCIAL TORTURE

## Settle Burge lawsuits now



KURT MITCHELL–SPECIAL TO THE SUN-TIMES

Chicago just can't seem to wash its hands of former police Lt. Jon Burge. Not only is Burge still getting a pension more than a decade after he was fired in 1993 for torturing African-American suspects, but also taxpayers

*The bill could be $96 million to $195 million, according to a study by five men suing Burge.*

continue to foot his legal bills in lawsuits filed by his alleged victims. If the city insists on taking those cases to court — which sure looks like a losing strategy — the bill could be $96 million to $195 million,

according to a study by five men suing Burge.

We've already urged the city to do whatever it takes to find a way to cut off Burge's $2,500 monthly pension. Now we're urging the city to settle those cases, and settle them quickly, to close an ugly chapter in its history.

Lawyers for three of the men who claim Burge tortured them — Leroy Orange, Madison Hobley and Stanley Howard — thought they had negotiated a $14.8 settlement of their lawsuits late last year. The men, who were freed from prison after their confessions were found to have been coerced, now say that the city inexplicably decided to not send that agreement to the City Council for approval. Chicago officials insist that no settlement was ever reached.

Lawyers for the men are asking a

federal judge to order the city to honor its commitment to refer the matter to the City Council. As part of their campaign, the lawyers and five aldermen asked a statistics expert to estimate how much the city would end up spending if it took those three cases and two others to trial.

The report estimated that if the five men won their cases, a jury would likely award each $500,000 to $2 million for every year they spent wrongfully imprisoned. Add in legal fees and other costs and the worst-case scenario would be $96 million to $195 million in total, the report concluded.

There is only a 2 percent chance that the city would win every lawsuit, the report estimated. But even in that best-case scenario, taxpayers would still be on the hook for $16 million in fees to Burge's

lawyers.

Those numbers have to be taken with a grain of salt, since they come from the men's legal team. But we can't argue with the premise that the city is betting millions on what looks like a losing hand. A $7 million report by special prosecutors last year concluded that Burge tortured suspects but that it was too late to prosecute him.

Chicago is in the unusual position of paying to defend a former cop who was fired for misconduct. City officials say the police union contract and an opinion from the 7th Circuit Court of Appeals leave little doubt that Chicago is responsible

for funding the legal defense of workers accused of wrongdoing while on the job.

Asked about the report over the weekend, Mayor Daley said, "Sure you have to settle, but you have to have a reasonable settlement."

Aside from the economics of settling, these victims deserve justice. And even though nobody wants to pay another dime in defense of Burge, taxpayers are on the losing end no matter what the outcome.

Case 1:21-cv-01159 Document # 422-2 Filed 11/27/23 Page 85 of 141 PageID #:8213

CHICAGO **SUN-TIMES**  A PROGRESSIVE, INDEPENDENT VOICE FOR THE CITY THAT WORKS

# WE THINK

Let's get
into it.

JOHN CRUICKSHANK • Publisher  |  MICHAEL COOKE • Editor in Chief  |  CHERYL L. REED • Editorial Page Editor  |  DON HAYNER • Managing Editor          THURSDAY, JULY 26, 2007  |  PAGE 29

## IN OUR OPINION

# PULL HIS PENSION

## City needs to find way to stop paying ex-cop accused of torture

The quicker the city can pull the pension of former Chicago Police Lt. Jon Burge, the better. At least that would deliver a small measure of justice in the slippery case that has left a lasting stain on the Police Department.

After reliving the details in a hearing Tuesday, aldermen were incensed at the thought of Burge, now retired in Florida, receiving his $2,500 pension every month. One after another vowed to pursue any and all legal avenues — including a possible perjury prosecution — to cut off Burge's pension. Godspeed.

Tuesday's six-hour hearing churned up all the old laundry. Aldermen watched videotapes of victims telling how Burge and his thugs at Area 2 administered electric shocks to their genitals, smothered them with plastic bags and typewriter covers, beat them and handcuffed them to hot radiators until they confessed to crimes they did not commit.

They also watched a videotape of Burge repeatedly invoking the Fifth Amendment in a deposition taped

in 2004 for a federal civil case. He took the Fifth when asked what he did to the people he arrested. He took the Fifth when asked whether he dumped a crude shock machine into Lake Michigan from his boat. The one question he answered directly was whether he received a

*Never convicted of a crime, Burge sits in the Florida sun and collects his pension.*

city pension.

Aldermen fumed at the millions the city has spent defending civil suits brought by alleged victims, some of whom were on Death Row when their convictions were overturned. The city paid $2.04 million in Burge-related legal fees in 2006 alone and an additional $399,416 in the first five months of this year. Add to the total $7 million for a re-

port by special prosecutors last year that concluded that yes, there was evidence of police torture in the 1970s and 1980s. The state's attorney at the time was Richard M. Daley.

Twenty years later, Daley is mayor, and the statute of limitations on Burge's alleged police abuse is long up. Never convicted of a crime, Burge sits in the Florida sun and collects his pension. For now.

Smarting from barroom brawls involving off-duty police officers and the subsequent resignation of Police Supt. Phil Cline, the city is taking action to restore public confidence. The mayor last week severed the Office of Professional Standards from the Police Department and appointed an outsider from Los Angeles as its independent watchdog.

The unresolved Burge case eats at our sense of justice, taking a terrible toll on the public trust. Aggressively seeking new legal avenues to bring it to some degree of closure is one small step toward resolving the past.



JEFF SZUC–SPECIAL TO THE SUN-TIMES

# APPENDIX L

# AREA 2 DEFENSE FEES AND COSTS, PENSIONS, AND JUDGMENTS PAID BY CITY AND COUNTY AS OF 9/1/08[1]

## I. Pending Area 2 Torture Cases

| Hobley | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | Totals |
|---|---|---|---|---|---|---|---|
| Sotos | 2,924 | 447,562 | 445,255 | 332,067 | 270,195 | 3,436 | 1,501,439 |
| Dykema | | 305,228 | 503,190 | 306,430 | 158,665 | 13,821 | 1,287,334 |
| Hinshaw | | 277,553 | 48,313 | | | | 325,866 |
| Outside Costs | | 35,575 | 13,870 | | | | 49,445 |
| | **2,924** | **1,065,918** | **1,010,628** | **638,497** | **428,860** | **17,256** | **3,164,084** |
| **Orange** | | | | | | | |
| Freeborn | | 20,789 | 82,445 | 366,761 | 41,847 | | 511,842 |
| Dykema | | 60,118 | 73,738 | 178,671 | 25,032 | 71,705 | 409,264 |
| Greene | | 8,346 | 15,566 | 79,188 | 9,203 | 1,757 | 114,060 |
| | | **89,253** | **171,749** | **624,620** | **76,082** | **73,461** | **1,035,166** |
| **Howard** | | | | | | | |
| Freeborn | | 38,468 | 124,256 | 144,677 | 71,277 | 4,679 | 383,357 |
| Dykema | | 83,459 | 99,913 | 34,598 | 18,412 | 19,442 | 255,824 |
| Greene, Letts | | 17,650 | 18,362 | 18,960 | 8,924 | 390 | 64,286 |
| Hinshaw | | 93,228 | | | | | 93,228 |
| | | **232,805** | **242,531** | **198,235** | **98,613** | **24,510** | **796,694** |
| **Patterson** | | | | | | | |
| Freeborn | | 377,629 | 342,869 | 266,954 | 313,972 | 13,837 | 1,315,261 |
| Dykema | | 135,741 | 353,158 | 109,040 | 176,400 | 46,263 | 820,602 |
| Greene | | 128,627 | 100,153 | 39,540 | 59,040 | 1,186 | 328,546 |
| Hinshaw | 7,497 | 174,596 | | | | | 182,093 |
| Outside Costs | | 2,343 | | | | | 2,343 |
| | **7,497** | **818,936** | **796,180** | **415,534** | **549,412** | **61,286** | **2,648,848** |
| **Cannon** | | | | | | | |
| Sotos | | | 14,998 | 113,308 | 120,866 | 172,561 | 421,733 |
| Dykema | | | 49,484 | 92,962 | 114,263 | 74,103 | 330,812 |
| Greene, Letts | | | 5,888 | 19,143 | 20,220 | 70,963 | 116,214 |
| Outside Costs | | | | | 235 | | 235 |
| | | | **70,370** | **225,413** | **255,584** | **317,627** | **868,994** |
| | **10,421** | **2,206,912** | **2,291,458** | **2,102,299** | **1,408,551** | **494,140** | |
| | | | | | | | **$8,513,786** |

---

[1]The defense fees and costs are calculated from Freedom of Information Act documents obtained from the City of Chicago, and Cook County, and the pensions are calculated from City of Chicago/Chicago police department pension standards and court records.

1

|  | 2004 | 2005 | 2006 | 2007 | 2008 | Total |
|---|---|---|---|---|---|---|
| **II Federal Investigation** | | | | | | |
| Mayer Brown | | | | | 35,084 | **35,084** |

**III. Special Prosecutor Burge Investigation**

|  | 2004 | 2005 | 2006 | 2007 | 2008 | Total |
|---|---|---|---|---|---|---|
| Dykema | | 74,857 | 72,945 | 7,065 | 649 | 155,516 |
| Hinshaw | 96,000 | 441 | | | | 96,441 |
| Jones/Day | 77,042 | 37,754 | | | | 114,796 |
| | **173,042** | **113,052** | **72,945** | **7065** | **649** | **366,753** |
| | | | | | **Costs:** | **9,703** |
| | | | | | **SubTotal:** | **376,456** |

**IV Earlier Area 2 Civil Torture Cases**

**Wilson v. City of Chicago (1988-1996)**

| Kunkle, Devine | 851,765 |
|---|---|
| Joseph Roddy | 2,021 |
| Hazel, Thomas | 2,011 |
| Reilly | 4,179 |
| Mahoney (Ferro) | 3,231 |
| Fees: | 863,207 |
| PartialCosts: | 91,408 |
| | **954,615** |

**Wiggins v. Burge (1993-1996)**

| Kunkle, Devine | 68,490 |
|---|---|

**Banks v. Burge (1991-1993)**

| Kunkle, Devine | 23,440 |
|---|---|

**Santiago v. Marquez (1996-1998)**

| Hinshaw | 94,236 |
|---|---|
| **Fees and Partial Costs** | **1,140,771** |

**V. Area 2 Post Conviction and Habeas Torture Cases (2000-2003)**

**People v Howard**

| Hinshaw | 5,780 |
|---|---|

**People v.Patterson**

| Hinshaw | 181,485 |
|---|---|

**People v. Orange**

| Hinshaw | 4,929 |
|---|---|

**Maxwell v. Gilmore**

| Hinshaw | 18,738 |
|---|---|

**People v. Kitchen**

| Hinshaw | 3,747 |
|---|---|

**People v. Hope**

| | |
|---|---|
| Hinshaw | 23,118 |
| **People v. King** | |
| Hinshaw | 13,779 |
| **Subtotal: Fees:** | **241,576** |

**VI. Police Board Prosecution of Burge and on Appeal of Police Board Decision: (1992-1995)**

| | |
|---|---|
| Jones Day | 527,464 |
| Subtotal: Fees | **527,464** |

**VII. Settlements and Judgments Paid by City in Burge Civil Cases:**

| | |
|---|---|
| 1987: Cannon | 3,000 |
| 1992 Banks | 92,000 |
| 1996 Wiggins | 93,000 |
| 1996 Bates | 66,000 |
| 1997 Wilson | 1,100,000 |
| 2008 Orange | 5,500,000 |
| Patterson | 5,000,000 |
| Howard | 1,800,000 |
| Hobley | 1,000,000 |
| | **14,654,000** |
| Due: 2009: Hobley | 6,500,000 |
| | **$21,154,000** |

**VIII. Pensions Paid to 26 Area 2 and 3 Defendants in Civil Torture Cases[2] (Thru 9/1/08)[3]**

| | Approximate Yearly Pension | Total Thru 9/1/08) |
|---|---|---|
| Commander Jon Burge[4] | $36,000 per year since 1997 | $396,000 |

---

[2] The torture victim Plaintiffs in the nine cases, all of which have been settled by the City except Cannon's pending case, are Darrell Cannon, Leroy Orange, Madison Hobley, Stanley Howard, Aaron Patterson, Andrew Wilson, Marcus Wiggins, Gregory Banks, and David Bates.

[3] To calculate the total years during which each Defendant has collected his pension, the year that the Defendant began to draw his pension and the year 2008 are counted as one total year, making some amounts slightly lower, and some slightly higher, than the actual total amounts, depending on when during the first year the Defendant began to draw his pension.

[4] Burge was fired for physically abusing Andrew Wilson, and was found by the Special Prosecutor to have tortured Andrew Wilson "beyond a reasonable doubt," and to have also committed perjury and obstruction of justice.

Sgt. John Byrne[5]                    36,000 per year since 1996              432,000

| | Approximate Yearly Pension | Total Thru 9/1/08 |
|---|---|---|
| Peter Dignan[6] | 65,000 per year since 2002 | 390,000 |
| Det. James Lotito[7] | $55,000 per year since 2001 | 385,000 |
| Det. Ronald Boffo[8] | 25,000 per year since 1987 | 525,000 |
| Det. Anthony Maslanka[9] | 42,000 per year since 2005 | 126,000 |
| John Yucaitis (deceased)[10] | 42,000 per year since 1998 | 420,000 |
| Charles Grunhard (deceased)[11] | 39,000 per year since 1990 | 702,000 |
| Det. Daniel McWeeny[12] | 32,000 per year since 1996 | 384,000 |
| Det. Robert Flood[13] | 48,000 per year since 2000 | 384,000 |
| Lt. Dennis McGuire | 68,000 per year since 2004 | 272,000 |
| Det. John Paladino | 54,790 per year since 2003 | 273,950 |
| Det. James Pienta | 49,000 per year since 1999 | 441,000 |

_____

[5] Chicago Police OPS Investigators found that he tortured and physically abused Cannon, Howard, Banks, and Lee Holmes.

[6] Chicago Police OPS Investigators found that he tortured and physically abused Cannon, Howard, Banks, Lee Holmes, and Thomas Craft.

[7] Found by the Special Prosecutor to have committed aggravated battery against Philip Adkins "beyond a reasonable doubt."

[8] Also found by the Special Prosecutor to have committed aggravated battery against Philip Adkins "beyond a reasonable doubt."

[9] Found by the Special Prosecutor, together with Det. Michael McDermott, who is not a Defendant in any of the civil cases, to have committed aggravated battery against Alphonso Pinex, as well as perjury and obstruction of justice, "beyond a reasonable doubt."

[10] Found by the Chicago Police Board to have participated with Burge in the physical abuse of Andrew Wilson; suspended for 15 months as a result.

[11] Found by OPS to have participated in the torture of Darrell Cannon

[12] Named by torture victim Melvin Jones, along with Burge and Robert Flood, as participants in his torture; the City has judicially admitted that Jones was tortured with electric shock and the Special Prosecutor also found Jones' testimony to be credible.

[13] Also named by torture victim Melvin Jones, along with Burge and McWeeny, as participants in his torture; the City has judicially admitted that Jones was tortured with electric shock and the Special Prosecutor also found Jones' testimony to be credible.

4

| | | |
|---|---|---|
| Det. David Dioguardi | 36,000 per year since 1991 | 612,000 |
| Det. Ray McNally | 48,000 per year since 1998 | 480,000 |
| Det. William Marley | 39,000 per year since 1993 | 585,000 |
| Det Ray Binkowski | 42,000 per year since 1999 | 378,000 |
| Det. Michael Bosco | 55,000 per year since 2005 | 165,000 |
| Det. Michael Kill | 50,000 per year since 1994 | 700,000 |
| Det. Leonard Bajenski | 36,000 per year since 1994 | 504,000 |
| Det. Frank Glynn | 40,000 per year since 1996 | 480,000 |

| | **Approximate Yearly Pension** | **Total Thru 9/1/08)** |
|---|---|---|
| Det. Patrick O'Hara (deceased) | 39,000 per year since 1994 | 546,000 |
| Det. Joseph Danzl | 48,000 per year since 2000 | 384,000 |
| Capt. Patrick Garrity | 75,000 per year since 2007 | 75,000 |
| Det. Robert Dwyer (disability pension) | 36,000 per year since 1991 | 612,000 |
| Sgt. Ray Madigan (still active) | 80,000 per year | 80,000 |
| | **Total: $1,215,790 per year[14]** | **$10,731,950** |

## IX. Recap of Fees, Costs, Judgments, Settlements and Pensions Paid by the City in the Burge Torture Cases Through September 1, 2008:

| | | |
|---|---|---|
| Defense in Five Recent Torture Cases: (*Cannon, Orange, Hobley, Patterson, Howard*) | Fees and Costs | **$8,513,786** |
| Defense in Earlier Torture Cases: (Wilson, Banks, Wiggins) | Fees and Partial Costs: | **1,140,771** |
| Dealing with Special Prosecutor: | Fees and Partial Costs: | **376,456** |
| Dealing with Federal Investigation | | **35,084** |
| Firing of Burge (prosecuting at Police Board) | Fees: | **527,464** |
| Representing City in Post Conviction Torture Cases: | Fees: | **241,576** |
| | **SubTotal** | **$10,835,137** |
| Pensions to 26 Area 2 and 3 Defendants in Civil Torture Cases | | **$10,731,950[15]** |
| Judgments and Settlements in Civil Torture Cases | | **$21,154,000** |
| | **City Total to Date:** | **$42,721,087** |

---

[14] This does not factor the 3% yearly cost of living increase which, on this amount, is an additional $36,473 per year, compounded, or health care costs, which are shared equally between the City and the retiree.

[15]Exclusive of cost of living increase and health care costs.

## COOK COUNTY PAYMENTS TO SPECIAL PROSECUTOR, OUTSIDE LAWYERS, AND CIVIL TORTURE CASE DEFENDANTS TO DATE

Special Prosecutor:                                                                          **$7,000,000**

Outside Counsel and Litigation Costs in 4 Torture Cases Pending Against         **550,000**
SA Devine and County (Orange, Howard, Patterson and Cannon)
    Patricia Bobb:                                      $200,000 (approximate)
    Figuilo                                                $50,000 (approximate)
    Litigation Costs                                   $300,000 (approximate)

Approximate salaries and pensions to retired Area 2 and 3 Defendants          **$2,472,000**
whom the County has subsequently employed:
    Dignan ( Sheriff's Officer since 2003)                                  $350,000
    McWeeny (State's Attorney's Investigator since 1998)                     550,000
    Dioguardi ( Sheriff's officer since 1991)                               612,000
    Bajenski ( State's Attorney's Investigator-two years)                    110,000
    Marley (State's Attorney's Investigator since 1993)                      900,000
                                                                        **$2,472,000**

                                                        **Total, County:**   **$10,022,000**
              **Grand Total, City and County, to Date:**   **$52,743,087**

6

# APPENDIX M

Chicago Municipal Code § 2-152-170

1 of 1 DOCUMENT

MUNICIPAL CODE OF CHICAGO

* THIS DOCUMENT IS CURRENT THROUGH COUNCIL JOURNAL 1-11-06, P. 68384 *

TITLE 2. CITY GOVERNMENT AND ADMINISTRATION
DIVISION III. ETHICS AND EMPLOYMENT POLICIES
CHAPTER 2-152. OFFICERS AND EMPLOYEES
ARTICLE I. GENERAL PROVISIONS

*Chicago Municipal Code § 2-152-170*

§ 2-152-170 Legal representation for city employees and agencies.

If any claim or action, either civil or criminal in nature, is instituted against a current or former elected official, current or former appointed official or current or former employee of the city of Chicago or any agency of the city of Chicago where such claim arises out of any act or omission, made in good faith, occurring within the scope of such persons office or employment, the chairman of the committee on finance of the city council, with the approval and concurrence of the mayor, may at the request of such person appoint counsel to defend such person against any such claim or action. Provided, however, that no city funds shall be expended directly or indirectly for payment of legal services rendered on behalf of any person upon the charge of such person by criminal complaint, information or indictment in criminal proceedings, and any appointment of counsel shall terminate. Provided further, that upon the conclusion of the criminal proceedings such person may request reimbursement of legal expenses and costs pursuant to the procedures set out herein, if such person has been acquitted or found not guilty or if all charges against such person in the action have been dismissed.

**HISTORY:** Prior code § 25-13.1; Amend. Coun. J. 4-12-91, p. 32835

# APPENDIX N

WEDNESDAY, OCTOBER 22, 2008
CHICAGO SUN-TIMES | **COMMENTARY** | 33

# Outrage lies at heart of Burge charges



**CAROL MARIN**

cmarin@suntimes.com

Justice for Melvin Jones is coming late.

Jones is dying. In and out of consciousness, according to his lawyers, it's possible he doesn't yet know the big news that broke Tuesday. That former Chicago Police Cmdr. Jon Burge, the man he met in an interrogation room years ago, heard a loud federal knock on the door of his lovely home nestled beside a boat dock in Florida early Tuesday morning.

Arrested and cuffed, Burge is now charged with perjury and obstruction of justice, and he was ordered to appear in federal court Monday in Chicago.

It took too long — 26 years. And it took the intervention of the feds.

That's because neither the Chicago Police Department nor the Cook County state's attorney's office nor Mayor Daley, who once served as state's attorney, nor a court-appointed special prosecutor had the courage or the political will to stand up against the shame that Burge brought upon this city.

It's not that Melvin Jones is a sympathetic character. He is a career criminal I met nine years ago in state prison. But the story he told then — the one he never wavered from — was chilling. And corroborated, by the way, by attorneys for the city of Chicago. It's not something they've ever wanted to talk about.

Here's the story.

And here's why it should outrage every one of us who sends a nickel in tax money to city or county officials.

In 1982, Melvin Jones was picked up on suspicion of murder. He was taken to Area 2 police headquarters on the South Side. That's where he met the infamous Jon Burge.

In a 1999 interview for CBS' "60 Minutes II," Jones quoted Burge as saying, "You only have two rights when you come in here, and that's to confess or get your ass kicked."

Jones said he refused to confess to a crime he didn't commit. That's when, he told me, Jon Burge and two other officers brought out a small hand-cranked electrical device with alligator clips. He saw it spark, then felt a shock as they touched his foot with the clip, and then his inner thigh. And then, Jones said Burge told him, "I'm going to put it on your testicles." Jones said he was in tears, "Trying to holler as loud as I can. . . . I was begging them to stop."

They didn't until Jones confessed. Convicted by one court, Jones was ultimately freed by another.

In 1993, when the heat on the city was too great, Burge was finally fired for the torture of murder suspect Andrew Wilson. Little-noticed at the time was that city attorneys admitted in court that Wilson wasn't Burge's only victim. The city acknowledged, "Burge electro shocked Melvin Jones on the genitals and thigh and threatened him with a gun."

The same city officials who until that point defended Burge, deserted him, offering not a shred a public explanation. But they continued to pay for his defense in all the civil suits that would follow. As a result, you and I are still paying: $20 million in just four cases.

Seven million for one investigation. Uncounted millions in outside legal counsel for Burge and his band of officers.

Jack Byrne is one of them.

A decorated sergeant, he is now retired and working as a private detective.

Reached by phone Tuesday, Byrne said, "I feel very bad for Jon Burge. I've known him all my life. I don't believe these charges. And I stand by all my statements that I never tortured anyone."

Byrne said one more time, "I feel bad for Jon."

I don't. I feel bad for the suspects — 122 of them by one count — who were tortured.

I feel sorry for Melvin Jones. A thug and crook, you bet. Even he admitted police had a good reason to question him.

"I'm a prime candidate," he told me. "But I also could be innocent."
*Comment at suntimes.com.*

# APPENDIX O

chicagotribune.com
Chicago torture victims face uphill legal battle
By MICHAEL TARM
Associated Press Writer
7:15 PM CDT, October 22, 2008
CHICAGO

Melvin Jones says he screamed and begged for mercy as Chicago police touched metal clips to his feet and thighs, churned a hand-cranked device and sent shock waves of electricity through his body more than 25 years ago.

Today, Jones is homeless -- one of dozens alleged torture victims who have little hope of winning compensation, despite the federal indictment this week of a former police commander who officials say lied about overseeing the abuse.

Some of the men already served prison time for crimes they claim they confessed to only after police beat or electrocuted them. More than 20 remain in prison.

But lawyers say the city's resistance, inaction by the state attorney general's office and the statute of limitations mean Jon Burge's indictment -- while a moral victory -- is unlikely to change victims' circumstances any time soon.

"There hasn't been much courage shown by high political officials," Flint Taylor, who spent years on the issue and is Jones' attorney, said Wednesday. "That's something that needs to be changed before this nightmare can end."

Burge, 60, was charged with lying in a civil rights lawsuit when he said he and detectives never engaged in activities such as "bagging" -- covering a suspect's head with a typewriter cover until he couldn't breathe.

Jones, who is currently in a hospital, claims Burge told him on that day in 1982 that he had just two choices -- to confess to murder or continue being tortured, Taylor said.

Some alleged victims said they were heartened by Burge's indictment, even though it came decades after the alleged acts.

"I'm proud to be American," David Bates said. "I feel a part of the justice right now, and this is how we are going to be made whole."

Many victims say they still suffer psychologically -- some say they have regular nightmares. But fewer than 10 of the alleged victims have received monetary claims.

Then-Gov. George Ryan pardoned four Death Row inmates who were convicted on evidence gathered by Burge and detectives under him. The four recently reached a $20 million settlement with the city.

Legally speaking, the deck seems stacked against most of the men.

Taylor partly blames Illinois Attorney General Lisa Madigan for what he says has been a lack of action in getting new trials for everyone whose convictions were based solely or primarily on coerced confessions.

"That ball is in Madigan's court," he said. "She has sat on this for five or six years -- with the exception of one or two cases."

Madigan's office said that's not true.

Out of 25 cases of alleged torture that attorney general's office took on in 2003, eleven have already been resolved, her office said, including three pardons and two cases where a judge ordered the men free.

Several of the 14 other cases were put off because defense attorneys wanted to wait for the long-delayed publication of a special prosecutor's report that came out only in 2006, said Madigan spokeswoman Robyn Ziegler.

"There has been no delay attributed to the attorney general's office," she said, adding the office is "acting as quickly and as diligently as possible."

Statutes of limitations mean men who served time or are still in prison can only sue if the governor or courts exonerate them -- including by granting pardons or agreeing they deserve new trials, Taylor said.

Despite legal obstacles to new lawsuits, Taylor said "the claim for reparations is one of moral and political righteousness," noting Burge and his subordinates collect pensions.

"If you're gonna pay $1.25 million a year in pensions to these guys, you should pay some money to the men who were victimized regardless of whether you have a legal obligation to do so," he said.

A main thrust of Taylor's legal efforts now is getting new trials for alleged victims still in prison.

Taylor said new trials would not necessarily mean anyone actually guilty of crimes would walk free, but he said that was a possibility if prosecutors can't produce evidence other than the forced confessions.

"If all you've got is a confession, well, sorry, but in this country, under this Constitution, you don't go to prison under a coerced confession -- certainly not a tortured one," Taylor said.

Time could run out for some alleged victims, including Jones, who Taylor said is too ill to speak with reporters. Taylor and Jones declined to disclose Jones' illness.

"But he was tortured by our government and under our laws he should be compensated," Taylor said. "But for a successful cover up by the city, he would have gotten compensation a long time ago."

# APPENDIX P

COMMISSIONERS

EARLEAN COLLINS 1st DISTRICT
ROBERT STEELE 2nd DISTRICT
JERRY BUTLER 3rd DISTRICT
WILLIAM M. BEAVERS 4th DISTRICT
DEBORAH SIMS 5th DISTRICT
JOAN PATRICIA MURPHY 6th DISTRICT
JOSEPH MARIO MORENO 7th DISTRICT
ROBERTO MALDONADO 8th DISTRICT

COMMISSIONERS

PETER N. SILVESTRI 9TH DISTRICT
MIKE QUIGLEY 10TH DISTRICT
JOHN P. DALEY 11TH DISTRICT
FORREST CLAYPOOL 12TH DISTRICT
LARRY SUFFREDIN 13TH DISTRICT
GREGG GOSLIN 14TH DISTRICT
TIMOTHY O. SCHNEIDER 15TH DISTRICT
ANTHONY J. PERAICA 16TH DISTRICT
ELIZABETH ANN DOODY GORMAN 17TH DISTRICT



OFFICE OF THE

# BOARD OF COMMISSIONERS OF COOK COUNTY, ILLINOIS

118 NORTH CLARK STREET #567
CHICAGO 60602
(312) 603-6398

TODD H. STROGER
PRESIDENT

MATTHEW B. DeLEON
SECRETARY TO THE BOARD

### JUNE 7, 2007

### REVISED NOTICE

### PUBLIC HEARING NOTICE

There will be a public hearing meeting of the **Criminal Justice Committee** of the Board of Commissioners of Cook County on **Wednesday, June 13, 2007** at the hour of **10:30 A.M.** in the Board Room, Room 569, County Building, 118 North Clark Street, Chicago, Illinois to consider the following:

286858     RESOLUTION REGARDING THE REPORT OF SPECIAL PROSECUTORS EDWARD J. EGAN AND ROBERT D. BOYLE (PROPOSED RESOLUTION). Submitting a Proposed Resolution sponsored by Earlean Collins, Forrest Claypool, Joan Patricia Murphy, Anthony J. Peraica, Mike Quigley, Deborah Sims and Larry Suffredin, Cook County Commissioners.

#### PROPOSED RESOLUTION

**REPORT OF SPECIAL PROSECUTORS EDWARD J. EGAN AND ROBERT D. BOYLE**

**WHEREAS,** Cook County is a home rule unit of local government pursuant to Article VII Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS,** on April 24, 2002, The Hon. Paul Biebel, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, appointed Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney to investigate allegations that Area 2 Violent Crimes Commander Jon Burge and Chicago Police officers under his command had systematically tortured scores of African American citizens at the Area 2 police headquarters; and

**WHEREAS,** any special prosecutor appointed to investigate a matter of significant concern in the Cook County criminal justice system shoulders a grave responsibility to discharge his duties with dispatch, independence and with appropriate zeal in order that the laws may be enforced and public confidence in the justice system affirmed; and

**WHEREAS,** the investigation conducted by special prosecutors Egan and Boyle consumed over four years and cost the tax payers of Cook County $7 million; and

**WHEREAS,** it has been acknowledged, in opinions of the Illinois Appellate Court, the Illinois Supreme Court, the United States District Court for the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, the Chicago Police Department's own Office of Professional Standards, and elsewhere that Burge and his subordinates committed numerous acts of torture against African American men at Area 2 Police headquarters; and

**WHEREAS,** it is common knowledge that African Americans represent approximately 70% of the population in Illinois prisons, jails and the Cook County Juvenile Temporary Detention Center; and

**WHEREAS,** Egan and Boyle themselves acknowledged in a written report that there was evidence beyond a reasonable doubt that certain individuals had been abused by Burge and Area 2 detectives under his command, and that there was reason to believe that abuse occurred in "many other cases,"; and

**WHEREAS,** it is alleged that shortly after their appointment special prosecutors Egan and Boyle were presented with evidence of indictable offenses committed by Burge and Area 2 detectives under his command and that such offenses had occurred within the three year

**WHEREAS**, special prosecutors Egan and Boyle sought no indictments at the conclusion of their investigation, claiming that the statute of limitations barred prosecution of any of the perpetrators of Area 2 torture; and

**WHEREAS,** more than 210 individuals and organizations active in the areas of human rights, criminal justice, civil rights and racial justice have prepared a report entitled *Report On The Failure Of Special Prosecutors Edward J. Egan And Robert D. Boyle To Fairly Investigate Systemic Police Torture In Chicago* which requests a hearing on these issues.

**NOW, THEREFORE, BE IT RESOLVED**, that the Criminal Justice Committee of the Cook County Board of Commissioners conduct a public hearing on the investigation conducted by Special State's Attorney's Edward J. Egan and Robert D. Boyle.

**\*Referred to the Committee on Criminal Justice 05/17/07.**

287223    PROGRESS REVIEW OF THE COOK COUNTY JUVENILE TEMPORARY DETENTION CENTER (PROPOSED RESOLUTION).   Submitting a Proposed Resolution sponsored by Earlean Collins, County Commissioner.

<u>PROPOSED RESOLUTION</u>

**PROGRESS REVIEW OF THE COOK COUNTY
JUVENILE TEMPORARY DETENTION CENTER**

**WHEREAS**, Cook County is a home rule unit of local government pursuant to Article VII, Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS**, on June 15, 1999 juveniles detained at the Cook County Juvenile Temporary Detention Center ("JTDC") filed suit against Cook County seeking declaratory and injunctive relief under 42 U.S.C. § 1983 to redress violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and

**WHEREAS**, on December 20, 2002 Cook County entered into a Memorandum of Agreement ("MOA") in which they agreed to create and implement a plan to house residents of the JTDC in an environment that, at a minimum, is safe and clean, is free from excessive and unfair discipline, and provides adequate care and services, including adequate food, shelter, medical services, mental health care, and provides an adequate environment for educational services, including security and transportation services; and

**WHEREAS**, the court appointed Michael J. Mahoney and Charles A. Fasano as monitors to oversee the implementation of the MOA; and

**WHEREAS**, over a three year period neither monitors, experts or other officials have been able to satisfy the conditions as set forth in the MOA; and

**WHEREAS**, with additional allegations of abuse the FBI and Attorney General Lisa Madigan announced that they were conducting investigations of the JTDC; and

**WHEREAS**, on November 8, 2005 plaintiffs, unsatisfied with the progress being made towards complying with the MOA, filed a Petition to Enforce Cook County to fulfill the terms of the MOA; and

**WHEREAS**, on May 18, 2006 both parties again entered into an Agreed Supplemental Order ("ASO") in which the court monitors and their designees (Dr. David Roush, Carl Sanniti, Dr. Louis Kraus and Dr. Michael Cohen) would present a Modified Implementation Plan ("MIP"), to Cook County, designed to bring the JTDC into substantial compliance with the MOA within six (6) months of its approval; and

**WHEREAS**, on June 6, 2006 U.S. District Judge John Nordberg appointed Brenda Welch to oversee changes at the JTDC; and

**WHEREAS**, subsequently, Brenda Welch has reported that the JTDC has not fully complied with the MIP and that the staff appears resistance to reform and new ideas and that the JTDC has failed to follow up on accusations of abuse and that alleged abuse by staff members persisted after retraining; and

# APPENDIX Q

## OFFICE OF THE SPECIAL PROSECUTOR
221 N. LA SALLE STREET, SUITE 607
CHICAGO, ILLINOIS 60601-1235
(312)696-0330
(312)696-0220 FAX

June 11, 2007

Commissioner Earlean Collins
Cook County Board of Commissioners
County Building
118 North Clark Street, 5th Floor, Room 567
Chicago, Illinois 60602-1304

Dear Commissioner Collins:

Patrick Driscoll has forwarded to us your letter to him requesting our appearance before the County Board to "speak and answer questions" about our report. In the interest of maintaining the good relations we have had with the County Board, we deem it appropriate to respectfully decline to appear and to explain the reasons for our declination.

The most fundamental precepts of our governments, national or local, are based on what is called the separation of powers, exercised by the executive, legislative and judicial branches of government.

The County Board represents the legislative branch of county government and the State's Attorney the executive branch. Neither may impinge on the decision-making discretion of the other. To illustrate, we could not serve a grand jury subpoena on members of the County Board and seek to compel them to explain the reasons they may have voted for a particular matter before them. Similarly, the County Board could not seek to compel Mr. Devine to explain why he did or did not indict someone. We stand in the same position as Mr. Devine. We conclude it would be contrary to law and would set a very bad precedent if we were to subject our office to such questioning as may be submitted to us by the members of the County Board. Consequently, we will not attend your public meeting. We are sure your legal adviser, Patrick Driscoll, will be able to advise you of the applicable law.

We know that your meeting has been called at the suggestion of persons who have recently circulated a document criticizing our report, including individuals who are suing the County and the City of Chicago for money damages in the Federal District Court. We are of the firm opinion that you are being used by those persons in their attempts to

gouge millions of dollars of public money from the County Board. We are in the process of preparing a response to that document. When we complete that response, we will include it in a supplemental report to Judge Biebel. Copies of that supplemental report will, as a matter of courtesy, be provided to the County Board, as were copies of our original report. We are confident that some of the questions you might raise now will be answered in our supplemental report.

Sincerely,

Edward J. Egan
Special State's Attorney

Robert D. Boyle
Deputy Special State's Attorney

EJE/dn
cc: Mr. Patrick T. Driscoll, Jr.
    Commissioner Peter N. Silvestri

# APPENDIX R

07-R-288
**RESOLUTION**

Sponsored by

THE HONORABLE EARLEAN COLLINS, COUNTY COMMISSIONER

Co-Sponsored by

THE HONORABLE FORREST CLAYPOOL, JOAN PATRICIA MURPHY, MIKE QUIGLEY,

DEBORAH SIMS, ROBERT B. STEELE, LARRY SUFFREDIN, JERRY BUTLER

AND ANTHONY J. PERAICA, COUNTY COMMISSIONERS

IN SUPPORT OF A COMPLETE INVESTIGATION AND PROSECUTION BY THE UNITED
STATES ATTORNEY FOR THE NORTHERN DISTRICT OF ILLINOIS OF ALL
INDICTABLE FEDERAL CRIMES COMMITTED BY JON BURGE AND HIS MEN

**WHEREAS**, Cook County is a home rule unit of local government pursuant to Article VII, Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS**, on April 24, 2002, the Honorable Paul Biebel, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, appointed Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney to investigate allegations that former Area 2 Violent Crimes Commander Jon Burge and Chicago Police officers under his command had systematically tortured scores of African-American citizens at Area 2 and 3 police headquarters; and

**WHEREAS**, the investigation conducted by Special Prosecutors Egan and Boyle consumed over four years and cost the taxpayers of Cook County $7 million dollars; and

**WHEREAS**, Egan and Boyle acknowledged at the conclusion of their investigation that there was evidence beyond a reasonable doubt that certain individuals had been physically abused by Burge and Area 2 and 3 detectives under his command and that there was reason to believe that abuse occurred in "many other cases"; and

**WHEREAS**, special prosecutors Egan and Boyle sought no indictments in a State court at the conclusion of their investigation, claiming that the Illinois statute of limitations barred prosecution of any of the perpetrators of Area 2 and 3 abuse; and

**WHEREAS**, in May of 2006, the United Nations' Committee Against Torture noted "the limited investigation and lack of prosecution" in the Chicago Police torture cases and recommended the United States Government "thoroughly and impartially investigate all allegations" of torture and seek to bring the perpetrators to justice in compliance with the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment and Punishment.

**NOW, THEREFORE, BE IT RESOLVED,** that the Cook County Board of Commissioners fully support any action taken by the United States Attorney's of the Northern District of Illinois in the investigation and prosecution of any and all federal crimes allegedly committed by Burge and his men.

Approved and adopted this 10th day of July 2007.

TODD H. STROGER, President
Cook County Board of Commissioners

Attest: DAVID ORR, County Clerk

07-R-289
## RESOLUTION

### Sponsored by

**THE HONORABLE EARLEAN COLLINS, COUNTY COMMISSIONER**

#### Co-Sponsored by

**THE HONORABLE FORREST CLAYPOOL, JOAN PATRICIA MURPHY,**

**MIKE QUIGLEY, DEBORAH SIMS, ROBERT B. STEELE, LARRY SUFFREDIN,**

**TODD H. STROGER, PRESIDENT, WILLIAM M. BEAVERS, JERRY BUTLER,**

**JOHN P. DALEY, ELIZABETH "LIZ" DOODY GORMAN, GREGG GOSLIN,**

**ROBERTO MALDONADO, JOSEPH MARIO MORENO, ANTHONY J. PERAICA,**

**TIMOTHY O. SCHNEIDER AND PETER N. SILVESTRI, COUNTY COMMISSIONERS**

### IN SUPPORT OF STATE AND FEDERAL LEGISLATIVE ACTION TO ESTABLISH THE CRIME OF TORTURE

**WHEREAS,** Cook County is a home rule unit of local government pursuant to Article VII, Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS,** on April 24, 2002, the Honorable Paul Biebel, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, appointed Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney to investigate allegations that Area 2 Violent Crimes Commander Jon Burge and Chicago Police officers under his command had systematically tortured scores of African-American citizens at the Area 2 and 3 police headquarters; and

**WHEREAS,** the investigation conducted by Special Prosecutors Egan and Boyle consumed over four years and cost the taxpayers of Cook County $7 million dollars; and

**WHEREAS,** Egan and Boyle acknowledged at the conclusion of their investigation that there was evidence beyond a reasonable doubt that certain individuals had been abused by Burge and Area 2 and 3 detectives under his command and that there was reason to believe that abuse occurred in "many other cases"; and

**WHEREAS,** special prosecutors Egan and Boyle sought no indictments at the conclusion of their investigation, claiming that the statute of limitations under Illinois barred prosecution of any of the perpetrators of Area 2 and 3 abuse; and

**WHEREAS,** an act of torture is not only a crime but a serious international human rights violation that breaches several international human rights treaties and customary laws that honor basic tenets of decency and respect for human dignity; and

**WHEREAS,** acts of torture not only cause excruciating physical pain but also cause long lasting detrimental psychological effects to the victim; and

**WHEREAS,** the act of torture is not explicitly proscribed as a crime under the laws of the State of Illinois or the United States; and

**WHEREAS,** although an act of torture may be criminally prosecuted under various laws of the State of Illinois and the United States, such a prosecution is limited by the respective statute of limitations; and

**WHEREAS,** the United States has an obligation under Article IV of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment and Punishment to "ensure that all acts of torture are offences under its criminal law" and to "make these offences punishable by appropriate penalties which take into account their grave nature"; and

**WHEREAS,** the crime of torture, similar to the crime of murder, should have no statute of limitations due to the grave nature of the offense and the importance of deterring others from committing these crimes and human rights violations; and

**WHEREAS,** the crime of torture is defined under Article I of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment and Punishment as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

**NOW, THEREFORE, BE IT RESOLVED,** that the Cook County Board of Commissioners recommends to the legislature of the State of Illinois and the Congress of the United States the passage of legislation explicitly proscribing the crime of torture as defined by Article I of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment and Punishment and provide that there be no statute of limitations for this crime.

Approved and adopted this 10th day of July 2007.

TODD H. STROGER, President
Cook County Board of Commissioners

Attest: DAVID ORR, County Clerk

07-R-290
**RESOLUTION**

Sponsored by

**THE HONORABLE EARLEAN COLLINS, COUNTY COMMISSIONER**

**Co-Sponsored by**

**THE HONORABLE FORREST CLAYPOOL, JOAN PATRICIA MURPHY, MIKE QUIGLEY,
DEBORAH SIMS, ROBERT B. STEELE, LARRY SUFFREDIN, JERRY BUTLER
AND ANTHONY J. PERAICA, COUNTY COMMISSIONERS**

**IN SUPPORT OF NEW HEARING FOR CHICAGO POLICE TORTURE VICTIMS
WRONGFULLY CONVICTED AND INCARCERATED**

**WHEREAS**, Cook County is a home rule unit of local government pursuant to Article VII, Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS**, on April 24, 2002, the Honorable Paul Biebel, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, appointed Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney to investigate allegations that former Area 2 Violent Crimes Commander Jon Burge and Chicago Police officers under his command had systematically tortured scores of African-American citizens at Area 2 and 3 police headquarters; and

**WHEREAS**, the investigation conducted by Special Prosecutors Egan and Boyle consumed over four years and cost the taxpayers of Cook County $7 million dollars; and

**WHEREAS**, Egan and Boyle acknowledged at the conclusion of their investigation that there was evidence beyond a reasonable doubt that certain individuals had been abused by Burge and Area 2 detectives under his command and that there was reason to believe that abuse occurred in "many other cases"; and

**WHEREAS**, it has been acknowledged, in opinions of the Illinois Appellate Court, the Illinois Supreme Court, the United States District Court for the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, the Chicago Police Department's Office of Professional Standards and elsewhere that Burge and his subordinates committed numerous acts of torture against African-American men at Area 2 and 3 Police headquarters; and

**WHEREAS**, the Report of the Special State's Attorney states that the acts of abuse committed by Burge and detectives under his command included electrically shocking individuals on their genitals, lips and ears with an electric shock box or cattle prod; suffocating individuals with plastic bags; subjecting individuals to mock executions with guns; physical beatings with telephone books and rubber hoses; and other forms of physical and psychological abuse; and

**WHEREAS**, Burge and his men committed these acts of abuse to extract confessions from the victims which were subsequently admitted as evidence against them in their criminal prosecutions resulting in their convictions; and

**WHEREAS,** at least twenty-six African-American men remain behind bars as a direct result of convictions which were based in whole or in part on their confessions that were allegedly elicited by abuse committed by Burge and his men; and

**WHEREAS,** the use of physical force to gain a confession as well as the admission of such a confession in a criminal court proceeding violates state, federal and international laws; and

**WHEREAS,** the twenty-six victims who remain behind bars are therefore entitled to new hearings to determine if their confessions were coerced by Burge and his men, and, if so, to new trials at which the unlawfully coerced confessions are not used as incriminating evidence against them.

**NOW, THEREFORE, BE IT RESOLVED,** that the Cook County Board of Commissioners recommends that the Illinois Attorney General initiate new hearings for the twenty-six Chicago Police torture victims who were wrongfully convicted and remain incarcerated in the State of Illinois.

Approved and adopted this 10th day of July 2007.

TODD H. STROGER, President
Cook County Board of Commissioners

Attest: DAVID ORR, County Clerk

# APPENDIX S

07-R-342
**RESOLUTION**

**Sponsored by**

**THE HONORABLE EARLEAN COLLINS, COUNTY COMMISSIONER**

**Co-Sponsored by**

**THE HONORABLE FORREST CLAYPOOL, MIKE QUIGLEY, DEBORAH SIMS,**
**ROBERT B. STEELE, LARRY SUFFREDIN, JERRY BUTLER AND ANTHONY J. PERAICA**
**COUNTY COMMISSIONERS**

**SUSPENSION OF PAYMENTS TO EDWARD J. EGAN AS SPECIAL STATE'S ATTORNEY**
**AND ROBERT D. BOYLE AS CHIEF DEPUTY SPECIAL STATE'S ATTORNEY**
**FOR ANY AND ALL FUTURE INVESTIGATIVE SERVICES PERTAINING TO**
**COMMANDER JON BURGE AND MEN UNDER HIS COMMAND**

**WHEREAS,** Cook County is a home rule unit of local government pursuant to Article VII, Section 6(a) of the 1970 Illinois Constitution, and as such may exercise any power and perform any function pertaining to its government and affairs; and

**WHEREAS,** on April 24, 2002, the Honorable Paul Biebel, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, appointed Edward J. Egan as Special State's Attorney and Robert D. Boyle as Chief Deputy Special State's Attorney to investigate allegations that Area 2 Commander Jon Burge and Chicago Police officers under his command had systematically tortured scores of African-American citizens at Area 2 and 3 police headquarters; and

**WHEREAS,** the investigation conducted by Special Prosecutors Egan and Boyle consumed over four years and cost the taxpayers of Cook County approximately $7 million dollars to date; and

**WHEREAS,** in July 2006 Egan and Boyle submitted their investigative Report to the Cook County Board of Commissioners and concluded that although their investigation justified seeking indictments that they were barred from doing so by the Illinois statute of limitations; and

**WHEREAS,** the Cook County Board of Commissioners is accountable to taxpayers for the expenditure of their funds and at the last County Board Meeting of June 5, 2007 the County was still making court ordered payouts to the Special Prosecutors; and

**WHEREAS,** on June 13, 2007 the Criminal Justice Committee of the Cook County Board of Commissioners held a public hearing to discuss issues raised regarding their report; and

**WHEREAS,** the Chairman of the Criminal Justice Committee requested the appearance of Special Prosecutors Egan and Boyle at the June 13, 2007 public hearing and in a letter dated June 11, 2007 Special Prosecutors Egan and Boyle declined to appear; and

**WHEREAS,** it is unnecessary and futile to continue to utilize taxpayer funds for a supplemental report which would not lend itself to additional substantial information for the purpose of remedying the wrongs done by Commander Burge and those working under his command.

**NOW, THEREFORE, BE IT RESOLVED,** that the Cook County Board of Commissioners discontinue any future payments after July 10, 2007 to Special Prosecutors Egan and Boyle for any and all expenses incurred for the investigation of allegations of abuse by Commander Jon Burge and men under his command.

Approved and adopted by poll August 3, 2007 and ratified this 6th day of September 2007.

TODD H. STROGER, President
Cook County Board of Commissioners

Attest: DAVID ORR, County Clerk

# APPENDIX T

**Daley accepts no responsibility for Burge torture cases**

October 21, 2008

BY FRAN SPIELMAN City Hall Reporter
Two years ago, Mayor Daley accepted his share of responsibility and offered to
"apologize to anyone" for the torture of suspects by Jon Burge — even as he
argued that the ultimate responsibility rests with the Chicago Police
Department.

On Tuesday, the mayor changed his tune.

Hours after Burge was arrested in Florida and charged with perjury and
obstruction of justice, Daley refused to accept even an ounce of responsibility
for one of the ugliest chapters in the history of the Chicago Police Department.

Never mind that a $ 7 million report by special prosecutors faulted Daley, who
served as state's attorney during the 1980's, for failing to follow up on a 1982
letter from then-Police Supt. Richard Brzeczek that strongly suggested abuse in
the case of accused cop killer Andrew Wilson.

"I was very proud of my role as prosecutor. I was not the mayor. I was not the
police chief. I did not promote this man in the '80's," Daley said Tuesday.

"Brzeczek ran against me in '84. He was the head of the Police
Department....The Police Department cleared him and they promoted him in
the `80's. I was not the mayor then."

Daley said there is "no room whatsoever for any type of torture" and he's
pleased that a "20-year-long" federal investigation of Burge has "finally"
culminated in an indictment. Since Burge is facing criminal charges, it means
Chicago taxpayers who have spent millions to defend Burge in civil cases will
no longer have to pay his legal fees.

But the mayor said he feels no accountability whatsoever for Burge's decades-
long reign of terror.

"I just don't...I was state's attorney. I had 700, 800 prosecutors under me. It would be like [holding] you [accountable] for some of the headlines you write about me. I don't hold you accountable...You can't hold me responsible," Daley said.

He added, "Looking back, you could do a lot of things [differently]. But you don't look back. You look forward."

In the 1982 letter, Brzeczek passed along explosive information he had received from Dr. John Raba, medical director of Cermak [Prison] Health Services.

Raba had examined Wilson and found: multiple bruises, swelling and abrasions on his face and head; a battered right eye; linear blisters on his thigh, cheek and chest "consistent with radiator burns." Raba also reported Wilson's claim that electric shock had been administered to his gums, lips and genitals.

"There must [be] a thorough investigation of this alleged brutality," Raba wrote.

Brzeczek tossed the political hot potato to Daley, who referred it to his Special Prosecutions Unit for further investigation. Nothing ever came of the investigation.

It wasn't until the early 1990's that the Police Board finally got around to firing Burge.

The mayor's response Tuesday was in sharp contrast to his contrite tone in July, 2006, when Daley was gearing up for his 2007 re-election campaign and was concerned the special prosecutor's report could come back to haunt him in the African-American community.

On that day, Daley accepted his share of responsibility for what he called "this shameful episode in our history....I'll take responsibility for it. I'll apologize to anyone....It should never have happened....Everybody should be held accountable...The system could have broken down."

But Daley categorically denied he deliberately looked the other way to avoid jeopardizing either his political ambitions or the prosecution of an accused cop killer.

"Do you think I would sit by, let anyone say that police brutality takes place, I know about it, that I had knowledge about it and I would allow it? Then you don't know my public career. You don't know what I stand for...I would not

allow anything like this," the mayor said then.

On Tuesday, Daley was asked if the Burge nightmare could ever happen again. His answer was hardly reassuring.

"Anything could happen again. You try to do a lot of preventions….But individuals could do something outrageous any time," the mayor said.

"We have good police officers. I know you want to beat them all up all the time. But we have good men and women in the Police Department," he said, adding that "90.9 percent are hard-working men and women who want to do the job" the right way.

# APPENDIX U

# Daley's mocking Burge apology

## 'I APOLOGIZE TO EVERYBODY' | Mayor's tone enrages lawyer for alleged torture victims



Mayor Daley notes Thursday that he wasn't the mayor or police chief when former Chicago Police Cmdr. Jon Burge allegedly tortured suspects in the 1980s. | BRIAN JACKSON~SUN-TIMES

**BY FRAN SPIELMAN**
City Hall Reporter
fspielman@suntimes.com

Mayor Daley on Thursday issued a sarcastic blanket apology for the alleged torture of suspects by former Police Cmdr. Jon Burge.

"The best way is to say, 'OK. I apologize to everybody [for] whatever happened to anybody in the city of Chicago.' . . . So, I apologize to everybody. Whatever happened to them in the city of Chicago in the past, I apologize. I didn't do it, but somebody else did it. Your editorial was bad. I apologize. Your article about the mayor, I apologize. I need an apology from you because you wrote a bad editorial," Daley said, laughing.

"You do that, and everybody feels good. Fine. But I was not the mayor. I was not the police chief. I did not promote him. You know that. You've never written that, and you're afraid to. I understand."

Attorney Flint Taylor, who has spent 21 years representing alleged torture victims, was outraged.



Jon Burge faces federal charges of perjury and obstruction of justice.

"It is disgraceful and remarkably disrespectful to say that when he's asked to make good on an apology to the victims of the most heinous kind of police abuse and torture in the history of Chicago," Taylor said.

"Particularly when he and his first assistant, Richard Devine, were responsible over 25 years ago for not taking Burge off the street and prosecuting him. . . . Daley repeatedly sided with Burge and against the victims of torture in Scores of cases."

Two years ago, Daley —

who was Cook County state's attorney in the 1980s — accepted his share of responsibility and offered to "apologize to anyone" for Burge's reign of terror, even as he argued that the ultimate responsibility rests with the Police Department.

Earlier this week, the mayor changed his tune. Hours after Burge was arrested in Florida, Daley refused to accept even an ounce of responsibility.

The mayor's flippant tone Thursday — and Taylor's response — prompted mayoral press secretary Jacquelyn Heard to try to clarify Daley's remarks.

"Mayor Daley has, on more than one occasion, expressed regret for what were clearly horrific acts and a regrettable time in our city's history," she said.

"His remarks today reflect his frustration that those sentiments are routinely lost in the media with certain key points. Namely, the fact that it wasn't until he became mayor that Burge was fired." We we

**Comment at suntimes.com.**

# APPENDIX V

Distr.
GENERAL

CAT/C/USA/CO/2
18 May 2006

Original: ENGLISH

# ADVANCE UNEDITED VERSION

COMMITTEE AGAINST TORTURE
36th session
1 – 19 May 2006

## CONSIDERATION OF REPORTS SUBMITTED BY STATES PARTIES UNDER ARTICLE 19 OF THE CONVENTION

### Conclusions and recommendations of the Committee against Torture

### UNITED STATES OF AMERICA

1.    The Committee against Torture ("the Committee") considered the second report of the United States of America (CAT/C/48/Add.3/Rev.1) at its 702nd and 705th meetings (CAT/C/SR.702 and 705), held on 5 and 8 May 2006, and adopted, at its 720th and 721st meetings, on 17 and 18 May 2006 (CAT/C/SR.720 and 721) the following conclusions and recommendations.

### C. Principal subjects of concern and recommendations

25.    The Committee is concerned with allegations of impunity of some of the State party's law enforcement personnel in respect of acts of torture or cruel, inhuman or degrading treatment or punishment. The Committee notes the limited investigation and lack of prosecution in respect of the allegations of torture perpetrated in areas 2 and 3 of the Chicago Police Department. (article 12)

> **The State party should promptly, thoroughly and impartially investigate all allegations of acts of torture or cruel, inhuman or degrading treatment or punishment by law enforcement personnel and bring perpetrators to justice, in order to fulfill its obligations under article 12 of the Convention. The State party should also provide the Committee with information on the ongoing investigations and prosecution relating to the above mentioned case.**

# APPENDIX W

**UNITED
NATIONS**





**General Assembly**

Distr.
GENERAL

A/HRC/4/33/Add.1
20 March 2007

Original: ENGLISH / FRENCH /
SPANISH

Human Rights Council
Fourth session
Agenda item 2

## IMPLEMENTATION OF GENERAL ASSEMBLY RESOLUTION 60/251 OF 15 MARCH 2006 ENTITLED "HUMAN RIGHTS COUNCIL"

**Report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment, Manfred Nowak**

**Addendum**

**Summary of information, including individual cases, transmitted to Governments and replies received***

---

* The present document is being circulated in the languages of submission only as it greatly exceeds the page limitations currently imposed by the relevant General Assembly resolutions.

GE.07-12041

| Para | Country | Date | Type | Mandate | Allegations transmitted | Government Response |
|------|---------|------|------|---------|-------------------------|---------------------|
|  |  |  |  |  | assurances by the Indian Government. Moreover, the police officers implicated in the torture of Mr Barapind have escaped liability, and some have even been promoted. |  |
| 321. |  | 10/07/06 | AL | TOR; | At least **135 African American men** in Chicago, Illinois. During the period from 1972 to 1991, at least 135 African-American detainees were subjected to torture or ill-treatment while they were detained at the Area 2 and Area 3 Police Headquarters in Chicago, Illinois. The detainees were subjected to techniques including electrically shocking men's genitals, ears and lips with a cattle prod and an electric shock box, suffocating individuals with plastic bags, mock executions and beatings with telephone books and rubber hoses. These acts were carried out with the aim of extracting confessions. The names of the alleged perpetrators are known to the Special Rapporteur. In 1990, Michael Goldston, an investigator with the Chicago Police Department's Office of Professional Standards concluded that systematic abuse occurred in Area 2 and Area 3 over a ten year period. He concluded that the type of abuse was not limited to beating, but also included psychological techniques and planned torture. Despite these findings and specific admissions, in |  |

A/HRC/4/33/Add.1
Page 322

| Para | Country | Date | Type | Mandate | Allegations transmitted | Government Response |
|------|---------|------|------|---------|------------------------|---------------------|
| | | | | | some cases, by the City of Chicago that crimes had been committed by its police officers, nobody was prosecuted for the alleged crimes. In 2002, a Special Prosecutor was appointed to further investigate allegations of torture and ill-treatment at the Area 2 and Area 3 Police Headquarters. However, the Special Prosecutor indicated in May 2006 that no prosecutions would likely be brought due to the application of the statute of limitations to the alleged crimes. Furthermore, the only officer to be subjected to internal disciplinary procedures in relation to the acts described above was the Commander, who was fired in 1993 due to evidence of the abuse of one detainee, Andrew Wilson. Andrew Wilson was suffocated with a plastic bag, shocked on his genitals, ears and lips with an electric shock box, burned with cigarettes, beaten and handcuffed across a hot radiator while being interrogated. In that case, Dr. John Raba, the Medical Director of Cermak Health Services at Cook County Jail examined Wilson after his interrogation and, taking note of the injuries, he requested the Chicago Police Superintendent to carry out an investigation. However, no action was taken. There are further concerns that a number of those individuals may have been convicted partly or solely on the basis of confessions obtained by torture or ill-treatment. In particular, at least 24 individuals are currently serving prison terms on the basis of confessions which may have been obtained by torture or ill-treatment. The names of these individuals are **Ronald Kitchen, James Andrews, Edward James, Eric Smith,** | |

| Para | Country | Date | Type | Mandate | Allegations transmitted | Government Response |
|------|---------|------|------|---------|-------------------------|---------------------|
| | | | | | **Derrick King, Reginald Mahaffey, Jerry Mahaffey, Franklin Burchette, Tyshaun Ross, Michael Tillman, Tony Anderson, Stanley Wrice, Leonard Kidd, James Lewis, Howard Collins, Leonard Hinton, Lavert Jones, Steven Cavernaro, Eric Johnson, Eric Caine, Andrew Maxwell, Greyland Johnson, Cortez Brown and Keith Walker.** | |
| 322. | | 24/08/06 | UA | TOR; | **Bekhzod Yusupov,** an Uzbek national, detained at Pike County Prison, Milford, Pennsylvania. He has been detained for two years and is currently at risk of imminent forcible return to Uzbekistan following an unsuccessful bid to seek asylum in the United States. He entered the US in 1999 and learned in January 2000 that he was sought by the Uzbek authorities on suspicion of involvement in activities in support of "illegal religious extremist movements". An FBI investigation found on his shared computer downloaded video files of speeches by known terrorists, such as Osama Bin Laden, Ayman Al-Zawahiri, and Shamil Basayev, which depicted bombings and other acts of violence. In June 2003 he was convicted of falsely representing himself as a US national. US Immigration and Customs Enforcement is seeking diplomatic assurances from the Government of Uzbekistan that Mr Yusupov will not be tortured upon his return. | By letter of 23/01/07, the Government reported that it has not sought and does not intend to seek assurances from the Government of Uzbekistan that Mr Yusupov would not be tortured upon his return, as was conveyed to Mr. Yusupov and the Federal District Court hearing his petition for a writ of habeas corpus on 6 October 2006. Whereas the United States does not agree with the non-binding opinion of the Human Rights Committee that Article 7 of the International Covenant on Civil and Political Rights creates a non-refoulement obligation on States Parties, or share the Special Rapporteur's view that diplomatic assurances are never reliable or effective in protecting against torture, it does not believe that diplomatic assurances are appropriate in every case or that they could serve as a substitute for a case by case analysis of whether US obligations under Article 3 of the Convention Against Torture and Other Cruel, Inhuman orDegrading Treatment or Punishment would be met. The US employs properly tailored diplomatic assurances related to torture that it deems credible from foreign |

# APPENDIX X

**Judiciary II - Criminal Law Committee**

**Filed: 5/7/2008**


09500HB5032ham001                          LRB095 19342 RLC 49374 a


1                    AMENDMENT TO HOUSE BILL 5032

2         AMENDMENT NO. _____. Amend House Bill 5032 by inserting

3    after the title the following:

4         "WHEREAS, Factual claims of torture, which are determined

5    to be credible, can most effectively and efficiently be

6    evaluated through complete and independent investigation and

7    review of the same; therefore"; and

8    by replacing everything after the enacting clause with the

9    following:

10        "Section 1. Short title. This Act may be cited as the

11   Illinois Torture Inquiry and Relief Commission Act.

12        Section 5. Definitions. As used in this Act:

13        (1) "Claim of torture" means a claim on behalf of a living

14   person convicted of a felony in Illinois asserting that he was

15   tortured into confessing to the crime for which the person was


09500HB5032ham001          - 2 -          LRB095 19342 RLC 49374 a


1    convicted and the tortured confession was used to obtain the

2    conviction and for which there is some credible evidence

3    related to allegations of torture committed by Commander Jon

4

Burge or any officer under the supervision of Jon Burge.

5      (2) "Commission" means the Illinois Torture Inquiry and
6  Relief Commission established by this Act.

7      (3) "Director" means the Director of the Illinois Torture
8  Inquiry and Relief Commission.

9      (4) "Victim" means the victim of the crime, or if the
10  victim of the crime is deceased, the next of kin of the victim.

11      Section 10. Purpose of Act. This Act establishes an
12  extraordinary procedure to investigate and determine factual
13  claims of torture related to allegations of torture that shall
14  require an individual to voluntarily waive rights and
15  privileges as described in this Act.

16      Section 15. Commission established.
17      (a) There is established the Illinois Torture and Relief
18  Inquiry Commission. The Illinois Torture Relief Inquiry
19  Commission shall be an independent commission under the
20  Administrative Office of the Illinois Courts for
21  administrative purposes.
22      (b) The Administrative Office of the Illinois Courts shall
23  provide administrative support to the Commission as needed. The
24  Director of the Administrative Office of the Illinois Courts

09500HB5032ham001          - 3 -          LRB095 19342 RLC 49374 a

1  shall not reduce or modify the budget of the Commission or use
2  funds appropriated to the Commission without the approval of
3  the Commission.

4      Section 20. Membership; chair; meetings; quorum.
5      (a) The Commission shall consist of 8 voting members as
6  follows:
7          (1) One shall be a Circuit Court Judge, with 10 years
8      or less seniority.
9          (2) One shall be a former prosecuting attorney.
10          (3) One shall be a law school professor.
11          (4) One shall be engaged in the practice of criminal
12

defense law.

13     (5) Three shall be members of the public who are not
14     attorneys and who are not officers or employees of the
15     Judicial branch.
16     (6) One shall be a former public defender.
17     The Commission shall be appointed as follows:
18         2 members appointed by the Governor;
19         2 members appointed by the President of the Senate;
20         One member appointed by the Minority Leader of the
21     Senate;
22         2 members appointed by the Speaker of the House of
23     Representatives; and
24         One member appointed by the Minority Leader of the
25     House of Representatives.


09500HB5032ham001            - 4 -            LRB095 19342 RLC 49374 a

1      After an appointee has served his or her first 3-year term,
2      the subsequent appointment or reappointment may be by the
3      initial appointing authority.
4      (a-1) The appointing authority shall also appoint
5      alternate Commission members for the Commission members he or
6      she has appointed to serve in the event of scheduling
7      conflicts, conflicts of interest, disability, or other
8      disqualification arising in a particular case. The alternate
9      members shall have the same qualifications for appointment as
10     the original member. In making the appointments, the appointing
11     authority shall make a good faith effort to appoint members
12     with different perspectives of the justice system. The
13     appointing authority shall also consider geographical
14     location, gender, and racial diversity in making the
15     appointments.
16     (b) The judge who is appointed as a member under subsection
17     (a) shall serve as Chair of the Commission. The Commission
18     shall have its initial meeting no later than January 31, 2009,
19     at the call of the Chair. The Commission shall meet a minimum
20     of once every 6 months and may also meet more often at the call
21

'of the Chair. The Commission shall meet at such time and place

22    as designated by the Chair. Notice of the meetings shall be

23    given at such time and manner as provided by the rules of the

24    Commission. A majority of the members shall constitute a

25    quorum. All Commission votes shall be by majority vote.


09500HB5032ham001        - 5 -        LRB095 19342 RLC 49374 a


1      Section 25. Terms of members; compensation; expenses.

2      (a) Of the initial members, 2 appointments shall be for

3    one-year terms, 3 appointments shall be for 2-year terms, and 3

4    appointments shall be for 3-year terms. Thereafter, all terms

5    shall be for 3 years. Members of the Commission shall serve no

6    more than 2 consecutive 3-year terms plus any initial term of

7    less than 3 years. Unless provided otherwise by this Act, all

8    terms of members shall begin on January 1 and end on December

9    31.

10      Members serving by virtue of elective or appointive office,

11    may serve only so long as the office holders hold those

12    respective offices. The Chief Judge of the Cook County Circuit

13    Court may remove members, with cause. Vacancies occurring

14    before the expiration of a term shall be filled in the manner

15    provided for the members first appointed.

16      (b) The Commission members shall receive no salary for

17    serving. All Commission members shall receive necessary

18    subsistence and travel expenses.


19      Section 30. Director and other staff. The Commission shall

20    employ a Director. The Director shall be an attorney licensed

21    to practice in Illinois at the time of appointment and at all

22    times during service as Director. The Director shall assist the

23    Commission in developing rules and standards for cases accepted

24    for review, coordinate investigation of cases accepted for

25    review, maintain records for all cases investigations, prepare


09500HB5032ham001        - 6 -        LRB095 19342 RLC 49374 a

Case: 1:21-cv-01159 Document #: 436-3 Filed: 11/27/23 Page 135 of 141 PageID #:8263

```
 1    reports outlining Commission investigations and
 2    recommendations to the trial court, and apply for and accept on
 3    behalf of the Commission any funds that may become available
 4    from government grants, private gifts, donations, or bequests
 5    from any source.
 6        Subject to the approval of the Chair, the Director shall
 7    employ such other staff and shall contract for services as is
 8    necessary to assist the Commission in the performance of its
 9    duties, and as funds permit.
10        The Commission may meet in an area provided by the
11    Administrative Office of the Illinois Courts. The
12    Administrative Office of the Illinois Courts shall provide
13    office space for the Commission and the Commission staff.

14        Section 35. Duties. The Commission shall have the following
15    duties and powers:
16        (1) To establish the criteria and screening process to
17    be used to determine which cases shall be accepted for
18    review.
19        (2) To conduct inquiries into claims of torture with
20    priority to be given to those cases in which the convicted
21    person is currently incarcerated solely for the crime to
22    which he or she claims torture by Jon Burge or officers
23    under his command, or both.
24        (3) To coordinate the investigation of cases accepted
25    for review.
```

09500HB5032ham001            - 7 -            LRB095 19342 RLC 49374 a

```
 1        (4) To maintain records for all case investigations.
 2        (5) To prepare written reports outlining Commission
 3    investigations and recommendations to the trial court at
 4    the completion of each inquiry.
 5        (6) To apply for and accept any funds that may become
 6    available for the Commission's work from government
 7    grants, private gifts, donations, or bequests from any
```

Case: 1:21-cv-01159 Document #: 436-3 Filed: 11/27/23 Page 136 of 141 PageID #:8264

8      source.

9      Section 40. Claims of torture; waiver of convicted person's
10     procedural safeguards and privileges; formal inquiry;
11     notification of the crime victim.

12     (a) A claim of torture may be referred to the Commission by
13     any court, person, or agency. The Commission shall not consider
14     a claim of torture if the convicted person is deceased. The
15     determination of whether to grant a formal inquiry regarding
16     any other claim of torture is in the discretion of the
17     Commission. The Commission may informally screen and dismiss a
18     case summarily at its discretion.

19     (b) No formal inquiry into a claim of torture shall be made
20     by the Commission unless the Director or the Director's
21     designee first obtains a signed agreement from the convicted
22     person in which the convicted person waives his or her
23     procedural safeguard and privileges, agrees to cooperate with
24     the Commission, and agrees to provide full disclosure regarding
25     inquiry requirements of the Commission. The Waver under this

09500HB5032ham001        - 8 -         LRB095 19342 RLC 49374 a

1      subsection does not apply to matters unrelated to a convicted
2      person's claim of torture. The convicted person shall have the
3      right to advice of counsel prior to the execution of the
4      agreement and, if a formal inquiry is granted, throughout the
5      formal inquiry. If counsel represents the convicted person,
6      then the convicted person's counsel must be present at the
7      signing of the agreement. If counsel does not represent the
8      convicted person, the Commission Chair shall determine the
9      convicted person's indigency status and, if appropriate, enter
10     an order for the appointment of counsel for the purpose of
11     advising on the agreement.

12     (c) If a formal inquiry regarding a claim of torture is
13     granted, the Director shall use all due diligence to notify the
14     victim in the case and explain the inquiry process. The
15     Commission shall give the victim notice that the victim has the
16     right to present his or her views and concerns throughout the

17    Commission's investigation.
18        (d) The Commission may use any measure provided in the Code
19    of Civil Procedure and the Code of Criminal Procedure of 1963
20    to obtain information necessary to its inquiry. The Commission
21    may also do any of the following: issue process to compel the
22    attendance of witnesses and the production of evidence,
23    administer oaths, petition the Circuit Court of Cook County or
24    of the original jurisdiction for enforcement of process or for
25    other relief, and prescribe its own rules of procedure. All
26    challenges with regard to the Commission's authority or the


      09500HB5032ham001          - 9 -          LRB095 19342 RLC 49374 a


1     Commission's access to evidence shall be heard by the
2     Commission Chair in the Chair's judicial capacity, including
3     any in camera review.
4         (e) While performing duties for the Commission, the
5     Director or the Director's designee may serve subpoenas or
6     other process issued by the Commission throughout the State in
7     the same manner and with the same effect as an officer
8     authorized to serve process under the laws of this State.
9         (f) All State discovery and disclosure statutes in effect
10    at the time of formal inquiry shall be enforceable as if the
11    convicted person were currently being tried for the charge for
12    which the convicted person is claiming torture.
13        (g) If, at any point during an inquiry, the convicted
14    person refuses to comply with requests of the Commission or is
15    otherwise deemed to be uncooperative by the Commission, the
16    Commission shall discontinue the inquiry.

17        Section 45. Commission proceedings.
18        (a) At the completion of a formal inquiry, all relevant
19    evidence shall be presented to the full Commission. As part of
20    its proceedings, the Commission may conduct public hearings.
21    The determination as to whether to conduct public hearings is
22    solely in the discretion of the Commission. Any public hearing
23    held in accordance with this Section shall be subject to the
24    Commission's rules of operation.

25          (b) The Director shall use all due diligence to notify the


09500HB5032ham001        - 10 -        LRB095 19342 RLC 49374 a


1    victim at least 30 days prior to any proceedings of the full
2    Commission held in regard to the victim's case. The Commission
3    shall notify the victim that the victim is permitted to attend
4    proceedings otherwise closed to the public, subject to any
5    limitations imposed by this Act, If the victim plans to attend
6    proceedings otherwise closed to the public, the victim shall
7    notify the Commission at least 10 days in advance of the
8    proceedings of his or her intent to attend. If the Commission
9    determines that the victim's presence may interfere with the
10   investigation, the Commission may close any portion of the
11   proceedings to the victim.
12          (c) After hearing the evidence, the full Commission shall
13   vote to establish further case disposition as provided by this
14   subsection. All 8 voting members of the Commission shall
15   participate in that vote.
16          If 5 or more of the 8 voting members of the Commission
17   conclude there is sufficient evidence of torture to merit
18   judicial review, the case shall be referred to the Chief Judge
19   of the Circuit Court of Cook County by filing with the clerk of
20   court the opinion of the Commission with supporting findings of
21   fact, as well as the record in support of such opinion, with
22   service on the State's Attorney if another State's Attorney is
23   appointed other than Richard Devine in non-capital cases and
24   service on both the State's Attorney and Attorney General in
25   capital cases.
26          If less than 5 of the 8 voting members of the Commission


09500HB5032ham001        - 11 -        LRB095 19342 RLC 49374 a


1    conclude there is insufficient evidence of torture to merit
2    judicial review, the Commission shall conclude there is
3    insufficient evidence of torture to merit judicial review. The

4   Commission shall document that opinion, along with supporting
5   findings of fact, and file those documents and supporting
6   materials with the court clerk in the circuit of original
7   jurisdiction, with a copy to the State's Attorney and the chief
8   judge.
9       The Director of the Commission shall use all due diligence
10  to notify immediately the victim of the Commission's conclusion
11  in a case.
12      (d) Evidence of criminal acts, professional misconduct, or
13  other wrongdoing disclosed through formal inquiry or
14  Commission proceedings shall be referred to the appropriate
15  authority. Evidence favorable to the convicted person
16  disclosed through formal inquiry or Commission proceedings
17  shall be disclosed to the convicted person and the convicted
18  person's counsel, if the convicted person has counsel.
19      (e) All proceedings, of the Commission shall be recorded
20  and transcribed as part of the record. All Commission member
21  votes shall be recorded in the record. All records and
22  proceedings of the Commission are confidential and are exempt
23  from public record and public meeting laws except that the
24  supporting records for the Commission's conclusion that there
25  is sufficient evidence of torture to merit judicial review,
26  including all files and materials considered by the Commission


09500HB5032ham001        - 12 -          LRB095 19342 RLC 49374 a


1   and an full transcript of the hearing before the Commission,
2   shall become public at the time of referral to the court.
3   Commission records for conclusions of insufficient evidence of
4   torture to merit judicial review shall remain confidential,
5   except as provided in subsection (d).

6       Section 50. Post-commission judicial review.
7       (a) If the Commission concludes there is sufficient
8   evidence of torture to merit judicial review, the Chair of the
9   Commission shall request the Chief Judge of the Circuit Court
10  of Cook County for assignment to a trial judge for
11  consideration. The court may receive proof by affidavits,

12   depositions, oral testimony, or other evidence. In its
13   discretion the court may order the petitioner brought before
14   the court for the hearing. If the court finds in favor of the
15   petitioner, it shall enter an appropriate order with respect to
16   the judgment or sentence in the former proceedings and such
17   supplementary orders as to rearraignment, retrial, custody,
18   bail or discharge as may be necessary and proper.
19       (b) The State's Attorney, or the State's Attorney's
20   designee, shall represent the State at the hearing before the
21   Assigned judge.

22       Section 55. No right to further review of decision by
23   Commission; convicted person retains right to other
24   postconviction relief.


09500HB5032ham001          - 13 -          LRB095 19342 RLC 49374 a


1    (a) Unless otherwise authorized by this Act, the decisions
2    of the Commission are final and are subject to further review
3    by appeal, certification, writ, motion, or otherwise.
4        (b) A claim of torture asserted through the Commission
5    shall not adversely affect the convicted person's rights to
6    other post conviction relief.

7        Section 60. In order to allow staggered terms of members of
8    the Illinois Torture Inquiry and Relief Commission, the
9    Commission members identified in paragraphs (1), (2), and (4)
10   of subsection (a) of Section 20 shall be appointed to initial
11   terms of 2 years, the Commission members identified in
12   paragraph (5) of subsection (a) of Section 20 shall be
13   appointed to initial terms of 3 years, and the Commission
14   members identified in paragraph (3) and (6) of subsection (a)
15   of Section 20 shall be appointed to initial terms of one year.

16       Section 65. Beginning January 1, 2010, and annually
17   thereafter, the Illinois Torture and Inquiry Relief Commission
18   shall report on its activities to the General Assembly and the
19   Governor. The report may contain recommendations of any needed
20

21  legislative changes related to the activities of the
22  Commission. The report shall recommend the funding needed by
23  the Commission, the State's Attorneys, and the Department of
24  State Police in order to meet their responsibilities under this
    Act. Recommendations concerning the State's Attorneys or the

09500HB5032ham001          - 14 -          LRB095 19342 RLC 49374 a

1   Department of State Police shall only be made after
2   consultations with the Illinois State's Attorneys Association
3   and the Attorney General.

4       Section 70. The Administrative Office of the Illinois
5   Courts shall report to the General Assembly and the Chief
6   Justice no later than December 31, 2011, and no later than
7   December 31 of every third year, regarding the implementation
8   of this Act and shall include in its report the statistics
9   regarding inquiries and any recommendations for changes. The
10  House of Representatives and the Senate shall refer the report
11  to the appropriate committees for their review.

12      Section 75. The initial members of the Illinois Torture
13  Inquiry and Relief Commission shall be appointed not later than
14  October 1, 2008. No claims of torture may be filed with the
15  Commission until November 1, 2008.

16      Section 80. This Act applies to claims of torture filed on
17  or before December 31, 2013.

18      Section 99. Effective date. This Act takes effect upon
19  becoming law.".