IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Smith Jr., | ) | Case No. 21 C 1159 |
| Plaintiff, | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| The City of Chicago, et al., | ) | Magistrate Judge M. David Weisman |
| | ) | |
| Defendants. | ) | |

### RESPONDENT ROBERT SMITH'S OPPOSITION TO PETITIONERS' MOTION TO STAY PROCEEDINGS

Plaintiff Robert Smith Jr. respectfully opposes Defendants' Motion to Stay Proceedings, Dkt.463 ("Stay Motion"). Defendants' purported ground for a stay is the "Mandamus Petition" that they intend to file in the court of appeals "on or before June 27, 2024." Stay Motion, Dkt. 463, at 1 ¶ 5.

Defendants' Stay Motion is legally and factually frivolous because Defendants do not have a Mandamus Petition to file in the Court of Appeals. Defendants, who are relying on recusal and mandamus law *from 1986*, fail to acknowledge that in 2016, 2020, and 2023, the Seventh Circuit completely changed its mandamus rules as they relate to a Court Order denying a motion for a judge to recuse him- or herself under 28 U.S.C. § 455. In its simplest terms, there simply is no longer a pathway of mandamus when a district judge, such as Your Honor, has denied a motion under Section 455. Under the new rules, Defendants must wait until the case ends and this Court enters a Final Judgment Order before they may appeal Your Honor's ruling. The court does not have jurisdiction over such an interlocutory order. *See* 28 U.S.C. §§ 1291, 1292. Because this change in the law is dispositive, before turning to the numerous *additional reasons* why this Court should deny Defendants' Stay Motion, Plaintiff sets out the *current* controlling Seventh Circuit law on mandamus in response to a district judge denying a recusal motion.

1

I. **THE SEVENTH CIRCUIT LACKS JURISDICTION OVER THE MANDAMUS PETITION THAT DEFENDANTS "INTEND TO FILE."**

In *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir.1985), the Seventh Circuit held that a party may *only* challenge a district court's judge's refusal to recuse him- or herself under Section 455(a) *through a mandamus petition*. *Id*. at 1204-05. *See also*, *e.g.*, *United States v. Towns*, 913 F.2d 434, 443 (7th Cir. 1990) ("this court has consistently held that to preserve a recusal motion under section 455(a), a defendant must immediately move for a writ of mandamus," and collecting cases). In contrast, the Court held that a party may challenge a district court judge's refusal to recuse him- or herself under Section 455(b) after the Court had entered a final judgment, without a mandamus petition. *See Towns*, 913 F.2d at 443 (unlike a denial of a section 455(a) motion, a denial of a section 455(b) "actual bias" motion may be reviewed on direct appeal without a mandamus petition). That was the law in the Seventh Circuit for more than 30 years, from 1985 to 2016.

In 2016, however, in *Fowler v. Butts*, 829 F.3d 788, 793 (7th Cir. 2016), the Seventh Circuit expressly overruled *Balistrieri*, holding that "*Balistrieri* and its successors must be overruled to the extent they hold that arguments under § 455(a) cannot be raised on direct appeal." *Id*. at 791. The Court explained that the Seventh Circuit was a complete outlier from every other circuit in the nation, that the court had created a system of recusal that had no statutory foundation, and that in any event, it was a system of recusal review that was not working successfully. *Id*. at 791-93. The panel therefore overruled 30 years of precedent and held that the rights of a party seeking recusal can be fully vindicated in a post-judgment appeal. *Id*. at 793. The Easterbrook-Kanne-Sykes panel was fully aware of the magnitude of the change it was making. Judge Easterbrook, writing for the panel explained, "Because this opinion overrules two lines of decisions in this circuit [the second one not being relevant to this Motion], it was circulated before release to all judges in active

service. See Circuit Rule 40(e). *None of the judges favored a hearing en banc.*" *Id*. at 795 (emphasis added).

As Your Honor is about to see, over the next seven years, the Seventh Circuit built on its holding in *Fowler* to the point where the new rule is that the Seventh Circuit does not have jurisdiction to hear mandamus petitions from denials of recusal motions under Section 455. Three years after *Fowler*, in *In re Gibson*, 950 F.3d 919 (7th Cir. 2019), the Seventh Circuit reiterated *Fowler*'s overruling of *Balistrieri*, explaining it this way:

> We have long recognized that a petition for writ of mandamus is an appropriate method to seek recusal of a district judge under 28 U.S.C. § 455(a). See *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117–18 (7th Cir. 1977). For over thirty years we held that a denied § 455(a) motion could be reviewed *only* by mandamus petition, whereas § 455(b) denials could also be reviewed on direct appeal after final judgment. See *United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir. 1985), *overruled on this point* by *Fowler v. Butts*, 829 F.3d 788, 793 (7th Cir. 2016). As we explained in *Fowler*, though, our position on § 455(a) was unique among the circuits and lacked statutory support. *Id*. at 791–92. We now permit review of a denied recusal motion—under any provision of § 455—through appeal of the final judgment. *Id*. at 793.

*Id*. at 922 (italics the Court's). The Court in *Gibson* went on to hold that a mandamus petitioner challenging a denial of a motion to recuse under 28 U.S.C. § 455(a) must show: "(1) that review after final judgment will not provide an adequate remedy for the appearance of partiality; (2) the objective appearance of partiality is "clear and indisputable"; and (3) mandamus is otherwise appropriate under the circumstances." *Id*. at 923. As set forth below in Section II of this Opposition, Defendants cannot meet any of these three elements even though in order to obtain mandamus, Defendants are required to establish *all three*.

The Seventh Circuit did not stop with *Gibson*. By 2023, the implications of the Court's new rule had become clear. In *Doe v. Purdue Univ.*, No. 23-2764, 2023 WL 9551017 (7th Cir. Nov. 6, 2023), *cert. denied,* 144 S. Ct. 1131 (2024), whose mandamus posture was the same as in this case, the Seventh Circuit held that because this court now "permits review of a denied recusal motion — under any provision of 28 U.S.C. § 455 — through

3

appeal of the final judgment, . . . [a]ny alleged harm caused by the denial of [Petitioner]'s motion to recuse *can be addressed on appeal from a final decision.*" *Id.* (emphasis added). The Court therefore concluded that because the "collateral order doctrine does not allow review of a recusal order, . . . this appeal is **DISMISSED** for lack of jurisdiction." *Id.* at 1 (emphasis in original) (citation omitted).[1]

In other words, now that the losing party on a recusal motion was permitted to challenge the recusal denial *in an appeal from the final judgment*, the losing party could no longer bring a mandamus petition on two grounds: first, a mandamus petition on a recusal motion would be treated no differently than any other interlocutory appeal over which the Court had no jurisdiction; second, a mandamus petition challenging a recusal denial similarly could no longer meet the very first element for mandamus, *that the party has no other adequate remedy* other than mandamus. Now the losing party on a recusal motion had an adequate remedy – appealing from the final judgment. As the Seventh Circuit has previously stated in another context, this "adequate remedy" requirement for mandamus is "a condition designed to ensure that the [mandamus] writ will not be used *as a substitute for the regular appeals process.*" See *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 997 (7th Cir. 1980) (emphasis added).

The Court's opinion in *Doe* closed the circle on what is left of mandamus petitions from denials of recusals: the Seventh Circuit will no longer assert jurisdiction over such

---

[1] Although not a denied recusal case, *United States v. Henderson*, 915 F.3d 1127 (7th Cir. 2019) is to the exact same effect as *Doe*. In *Henderson*, the Seventh Circuit rejected a shackled prisoner's mandamus petition because he could not establish that his appeal after a final judgment was insufficient to protect his personal interests in remaining unshackled. The Court held: "We're left with an interlocutory appeal that does not fall within the collateral-order doctrine. We therefore DISMISS the appeal for lack of jurisdiction." *Id.* at 1133 (emphasis in original). *See also* Id. at 1132-33 (mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes," and "only exceptional circumstances amounting to a judicial usurpation of power . . . or a clear abuse of discretion . . . will justify the invocation of this extraordinary remedy").

mandamus petitions (or if they ever will, it will only be in the most unusual and extreme circumstances, of which this is not one). Once the Court removed the mandamus *requirement*, it soon realized that it no longer may hear such mandamus challenges because it does not have jurisdiction over them under 28 U.S.C. § 1291 (final judgments), 28 U.S.C. § 1292 (injunctions, receivership, and admiralty claims), or under the collateral order doctrine. As the Seventh Circuit held in *J. H. Cohn*,

> Mandamus relief is reserved for extreme situations. It does not serve as a substitute for appeal even though delay may result in inconvenience and added expense. . . . The writ of mandamus is reserved for extraordinary situations because of the interest in discouraging piecemeal appeals, which is in line with the congressional judgment that, as a general rule, appellate review should await the entry of final judgment by the trial court.

*Id.* at 997, *quoting Kerr v. United States District Court*, 426 U.S. 394, 403 (1976).[2]

Here, just as in *Fowler*, *Gibson,* and *Doe*, any appellate review of this Court's recusal denial must await this Court's entry of final judgment. One of two things is happening here: either (1) Defendants do not know that the mandamus rules have changed so dramatically, and their Motion to Stay is premised on a soon-to-be-filed mandamus petition *that they have not yet, in fact, researched* (in which case they should simply admit that they were unaware of this massive change and withdraw their Stay Motion), OR (2) Defendants are fully aware that the rule has significantly changed and even in the teeth of knowing their mandamus petition will be summarily dismissed after a week or so in the Seventh Circuit, they are nevertheless trying to obtain a stay of the district court proceedings for no other purpose than to cause further delay (in which case, the Court should deny the motion on that basis).

Because any Seventh Circuit mandamus petition Defendants were to file would be dismissed for lack of jurisdiction, Defendants have provided no basis to grant a stay.

---

[2] The Court in *Gibson* cited *Hampton v. City of Chicago*, 643 F.2d 478, 480 (7th Cir. 1981) to explain why the collateral order doctrine does not apply. That page, 480, provides a detailed explanation of why it does not.

## II. DEFENDANTS DO NOT ESTABLISH ANY OF THE DISCRETIONARY ELEMENTS NECESSARY TO OBTAIN A STAY.

If the Court agrees (1) that the Seventh Circuit's opinions in *Fowler*, *Gibson*, and *Doe* so significantly changed the Seventh Circuit's response to recusal-denial-mandamus petitions, and (2) that the Seventh Circuit will promptly dismiss any such petition, then the Court should simply deny the Stay Motion. Controlling Seventh Circuit case law dooms Defendants' Stay Motion from the start.

Nevertheless, in an abundance of caution, Plaintiff will also explain that the three discretionary factors this court is to consider in evaluating a stay do not support Defendants' request for a stay. *See* Stay Motion at 2, ¶ 7 (correctly citing the three discretionary elements to be considered).

First, contrary to Defendants' assertion in paragraph 8 of their Stay Motion, the stay they seek *will* unduly prejudice the non-movant Smith. This is so for all the reasons Smith stated to the Court in his April 3, 2024 Status Report (Dkt.453) and at the Court-convened April 5, 2024 Status Conference (the transcript of which was ordered by Defendants and is lodged at Dkt.456). Because this Court is already aware of these reasons (and/or can review them again in Dkts.453, 456), Smith will not repeat them here. Suffice it to say that each day that goes by that this Court has not ruled on Defendants' two outstanding motions is unduly prejudicial to Mr. Smith. Every day in which Mr. Smith's case does not get closer to a firm trial date is unduly prejudicial to Mr. Smith.

Second, contrary to Defendants' suggestion in paragraph 9 of their Stay Motion, a stay will in no way streamline the trial or simplify any currently open issues. The sole streamlining or simplification that Defendants suggest is a quote from the Seventh Circuit's 1986 *Union Carbide* case that discusses "a shadow" that a substantial challenge to a judge's impartiality casts over both the individual litigation and the federal judicial process. See Stay

6

Motion at 3, ¶ 9. Defendants assert that the Seventh Circuit's authoritative judgment about Defendants' challenge to your impartiality will "dispel that shadow." *Id*. This argument fails, however, because it relies on the law in the Seventh Circuit as of *1986*, not as of *2024*. There is no dispute that in 1986 the Seventh Circuit was focused on promptly addressing "the shadow cast over the proceedings." By 2024, however, the Court has held unequivocally that any past interest it had in "dispelling shadows" is no longer a basis to assert interlocutory jurisdiction over recusal denials, when no such jurisdiction in fact exists.

There are two other reasons Defendants' assertion of "dispelling the shadow" is illusory. One is factual and one is legal.

A. Your Honor's detailed opinion has already removed any doubt about the controlling facts related to recusal and therefore already dispelled the shadow. Perhaps at the time Defendants filed their recusal motion before Your Honor, Defendants did not have all the facts related to Your Honor's extremely limited role with respect to the 2007 Shadow Report and the 2008 Supplemental Report. See Memorandum Opinion and Order (hereafter, "Opinion"), Dkt.459, at 3-11. See especially *Id*. at 9, 9-10, and 11. Now that Your Honor has provided that factual information in your detailed written opinion – now that Defendants have all that information – any continued challenge to your ruling would be factually frivolous. To obtain a writ of mandamus, Defendants must prove that recusal is *required* by "clear and indisputable" evidence. *See supra* at 3, *quoting Gibson,* 950 F.2d at 923 (mandamus element #2 ). Defendants have not presented a single fact that contradicts the facts this Court outlined in its Opinion, nor may they now, given that the record is closed. *Compare* Defendants' Recusal Motion, Dkt.436, at 2, 3, and 3 n.1 *with* the Court's Opinion, Dkt.459, at 9. 9-10, 11. For all these reasons, Defendants cannot *factually* meet the second "clear and indisputable" requirement for mandamus.

7

B.  Finally, the passage on which Defendants rely from the Seventh Circuit's 1986 *Union Carbide* opinion presupposes that Defendants have made a "substantial challenge" to the Court's partiality or at least to *the appearance* of the Court's partiality. For all the *legal* reasons stated in the Court's Opinion, Dkt.459, at 11-35, however, Defendants have failed to make a "substantial challenge." To the contrary, for the reasons this Court explained in detail, Defendants' legal challenge is extremely weak; it is simply not supported by any of the controlling case law issued by the U.S. Supreme Court or the Seventh Circuit. *Id.*[3]

For these reasons, Defendants have failed to identify any current disputed issue in this case that will be "streamlined" or "simplified" by staying this proceeding.

The third factor that a court considers when contemplating a stay also does not support Defendants' position. Contrary to Defendants' suggestion in paragraph 10, a stay will not reduce the burden of litigation on either this Court or the parties. Defendants urge this Court to consider the "economy of time and effort for itself and the parties" and to consider whether "a stay will reduce the burden of litigation on the parties and the court." *See* Stay Motion at 3-4. Defendants then ask this Court to simply *presume* an economy of time without ever explaining what economies would actually be achieved. In reality, any

---

[3] *See especially Id.* at 11-16 (no extrajudicial personal knowledge of disputed evidentiary facts); *Id.* at 16-18 (no extrajudicial personal knowledge of facts related to *this case*); *Id.* at 18-19 (no virulent personal bias against attorneys, and even if there was, not a basis for recusal); *Id.* at 19-20 and 27-28 ("credibility choices are not disputed facts," and this Court will not be deciding the credibility of any witness in any event); *Id.* at 22-26 (neither a preconceived view of the law, nor even a preconceived view of disputed facts, requires recusal); *Id.* at 28 (there is nothing remotely similar in this case to the recusal in *Fairley v. Andrews* (and any similar case) where a judge had "negative interactions" with defense counsel and made "unfortunate" and "unusually harsh" comments in responding to and ruling upon motions); *Id.* at 30-33 (Defendants' inconsistent positions in relation to recusal by different judges cautions against the "reasonable perception that §455(a) can be abused to have an impartial judge replaced for strategic reasons" and that a party can "manipulate the system to replace an impartial judge with one it prefers"); *Id.* at 33-35 ("the passage of time defeats any appearance of partiality").

8

mandamus petition that Defendants were to file has zero chance of being granted. To obtain a writ of mandamus, Defendants are required to meet all three elements outlined in *Gibson*, and for reasons already stated above on pages 2-5 and 7-8, they cannot meet *any*.

Therefore, granting the stay will do nothing to reduce the Court's burden, its effort, or its economy of time. If the Court were to halt the progress it is making on Defendants' Motion to Bar Smith's Deposition Testimony (Dkts. 426, 431, 446, 461), that motion will still be sitting in the exact same spot – with the exact same amount of work remaining – when the Seventh Circuit denies mandamus and this Court lifts the stay. There will be no economies of time; there will be no duplication of work, or avoidance of duplication of work.

This is doubly true for the time, effort, and energy to be expended by the parties. *See* Stay Motion at 4, ¶ 10 ("[a]ny resources expended absent a stay will have to be duplicated by the parties"). This is a canard because the parties are not expending *any resources at this time*. All fact discovery, expert discovery, and dementia discovery have ended. *See* Joint Status Report, Dkt.450, at 1, ¶ 3 ("Fact discovery closed on January 20, 2022. Expert discovery closed on January 20, 2023. Competency discovery closed on November 6, 2023.").

Therefore, until the Court rules on either Defendants' Motion to Bar Smith's Deposition Testimony, Dkts. 426, 431, 446, 461, or Defendants' Renewed Motion to Bifurcate Smith's *Monell* Claim Against the City, Dkts.423, 432, 441, the parties are simply in a holding pattern, not expending *any* resources on this case, let alone *"duplicating"* those resources. In sharp contrast, once the Court rules on those motions (or even just the Motion to Bar), the Court will then be in a position to (a) determine the degree to which it will or will not consider purported dispositive motions, (b) set firm dates for the trial and pretrial conference and due dates for witnesses, exhibits, jury instructions, and motions in limine; and (c) resolve Defendants' Motion to Bifurcate. In sum, a stay will not *reduce* this Court's or the parties'

9

burdens; it will just *delay* them. Delay continues to be an enemy in this case, not a friend.

Because Defendants have failed to establish that the stay factors to be considered in fact favor a stay, Plaintiff requests this Court to deny Defendants' Stay Motion.

**III. THE COURT SHOULD DO THE EXACT OPPOSITE OF STAYING THE PROCEEDINGS; THE COURT SHOULD EXPEDITE THE PROCEEDINGS.**

Not only does Plaintiff oppose a stay of these proceedings, Plaintiff advocates for speeding them up. Plaintiff requests the Court to keep the pedal to the metal, put on the afterburners, or engage in any other cliché that the Court prefers. Instead of spending yet more unnecessary time on Defendants' current stay motion (which is based on a frivolous mandamus petition, *not yet filed* and apparently, *not yet researched*), Plaintiff requests this Court to deny it summarily and instead expedite its ruling on Plaintiff's Motion to Bar.[4]

Neither Defendants' Stay Motion, nor any realistic fear that the Seventh Circuit will disqualify Your Honor and transfer this case to another judge, nor the current equities in this case, support a stay of these proceedings. Plaintiff Smith therefore respectfully requests this Court to summarily deny Defendants' Stay Motion in its entirety.

Dated: June 12, 2024

                                        Respectfully submitted,

                                        *PLAINTIFF ROBERT SMITH JR.*

                              By:    */s/ Stuart J. Chanen*

---

[4] In 2021, Judge Guzman stated that he would set a dispositive motion schedule once fact discovery closed. Fact discovery closed in January 2022. *See* Dkt.120 (Guzman, J.); Dkt.214 (Weisman, J.: "Fact discovery closed on January 20, 2022"); Dkt.450 (same). That was almost 2-1/2 years ago – and no dispositive motion schedule has yet been set. That is because Defendants have told Judge Guzman, Judge Alonso, and now Your Honor that they cannot craft their dispositive motion or motions without a ruling on the Motion to Bar. This is the unduly prejudicial delay to which Plaintiff refers above. Plaintiff is extremely skeptical of Defendants' assertion that their dispositive motions turn on the admissibility or inadmissibility of Robert Smith's November 11, 2021 deposition testimony (given that he said the exact same thing in numerous other admissible documents). That, however, is an issue for another day.

Stuart J. Chanen | Ariel Olstein
Chanen & Olstein LLC
7373 N. Lincoln Ave. Suite 100
Lincolnwood, IL 60712
(847) 469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com