IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
|       Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
|       Defendants. | ) | |

**SMITH'S MOTION IN LIMINE #5 TO BAR AN UNSUPPORTED
ALLEGATION THAT ROBERT MADE UNAUTHORIZED ATM WITHDRAWLS**

Plaintiff Robert Smith respectfully moves this Court to bar any reference, testimony, or argument at trial that Plaintiff withdrew money from Edith Yeager's ATM account. In support, Plaintiff states as follows:

**INTRODUCTION**

Defendants have suggested, either directly or by implication, that Plaintiff withdrew cash from the decedent Edith Yeager's ATM account without permission in the month before her death. There is no evidence to support this allegation whatsoever. Only two documents from the homicide investigation, both containing multiple layers of hearsay, raise the ATM issue. It first appears in a GPR of an interview with David Yeager, one of the sons /grandsons of the victims, written by Defendant Detectives Brownfield and Yucaitis on September 19, 1987. In the GPR, attached as Exhibit A, David purportedly says that his mother told him that in August 1987, the month before the murders, somebody withdrew $100 and then $50 from her ATM account. The GPR goes on to say that because Yeager still had her

ATM card in her possession, the bank allegedly had told her that it was a family member that made the withdrawal.

The second reference to the ATM withdrawals is in a Supplementary Report written on the same date by the same Defendant Detectives, relating their interview with Diane Smith, Plaintiff's ex-wife and the daughter/granddaughter of the victims. According to that report, attached as Exhibit B, while back at the crime scene with the Defendant Detectives, Diane allegedly told them of the same two unauthorized withdrawals using her mother's ATM card. According to Diane, the bank said that someone with access to the card had to have made the withdrawals. Diane stated that she had a card of her own but did not know if her husband, Robert, knew the pin.

That is the extent of the evidence in the record regarding the bank withdrawals. No party or witness to this litigation ever contacted the bank to ascertain where or when the unauthorized withdrawals took place, whether video existed of the person making the withdrawal, or any other fact that supports the false allegation that is what Robert Snith that had done so.

I. **There is No Evidence to Support the Allegation that Robert Made the Withdrawals, or That the Withdrawals Were Linked to the Homicides**

The assertion that Plaintiff withdrew funds from Yeager's ATM account is pure speculation. "Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). There is no documentary evidence – such as eyewitness testimony, ATM surveillance footage, actual bank records, or any other

2

forensic or circumstantial evidence – that establishes that Robert was associated with these two transactions in any way. Indeed, there is not even a witness that has testified that Robert knew the "pin number" to either his mother-in-law's or wife's ATM card to that account. There was also no investigation into whether other people might have had access to Yeager's ATM card and/or her pin number, where the ATM cards were kept, and who might have had the opportunity to remove them and replace them unnoticed.

In sum, any suggestion to the jury that Plaintiff withdrew funds from Yeager's account is unsupported by the record and would be purely speculative.

Even if such reference were marginally relevant—which it is not—any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Federal Rule of Evidence 403 permits the exclusion of evidence when its probative value is substantially outweighed by these risks. "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *Morgan v. City of Chicago*, 822 F.3d 317, 339 (7th Cir. 2016) (citation omitted). Here, the jury may assume that if Robert stole money from Yeager's account, he also may have killed her. The probative value of such a theory, particularly when it is not supported by any evidence, creates a genuine risk of prejudice.

Allowing the jury to hear that Plaintiff may have withdrawn funds from the victim's account would invite them to improperly infer a motive for the crime or

3

financial exploitation, despite the absence of any evidentiary foundation. Such inferences would be highly prejudicial and would undermine Plaintiff's right to a trial that is based solely on competent, admissible evidence.

Furthermore, there is no evidence suggesting that the withdrawal of ATM funds is connected to the underlying murders. Such an inference is belied by the evidence in the case, which demonstrates that nothing of value was taken from the house on the night of the murders, other than a .22 caliber handgun that Yeager had, and her set of keys to the house (keys were needed to unlock the doors to get in and out of the house).

Finally, the reports that contain the information about the ATM withdrawals are riddled with hearsay that do not qualify as an exception to the hearsay rules and are therefore inadmissible. The GPR of the interview of David Yeager has four levels of hearsay: the report is itself hearsay; David's statements to the police are hearsay; Edith's statement to David are hearsay; and the banks' statements to Edith are hearsay. The same levels of hearsay apply equally to the Supplemental Report related to Diane and the ATM card, and while Diane might be able to testify as to what she said to the officers, it cannot include the bank hearsay, and there is no probative value in her purported statement that *she did not know* if Robert knew the "pin" to her ATM card.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order barring Defendants from introducing any evidence, argument, inference, or

4

suggestion that Plaintiff withdrew cash from Edith Yeager's ATM account, and precluding any mention of such allegation in the presence of the jury.

## Local Rule 37.2 Certification

Pursuant to this Court's Standing Order, Plaintiffs' counsel conferred with Defendants' counsel on April 16, 2025, and the Parties could not reach an agreement to avoid this Motion.

Dated: April 23, 2025

Respectfully submitted,

*PLAINTIFF ROBERT SMITH JR.*
By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Rd., Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5469
Nicole.auerbach@elevate.law