## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## SMITH'S MOTION IN LIMINE #16 TO BAR
## DAVID AND DERRICK YEAGER
## <u>FROM TESTIFYING ABOUT THREE SPECIFIC TOPICS</u>

Plaintiff Robert Smith Jr. ("Smith" or "Robert") respectfully moves to bar David and Derrick Yeager from testifying about three specific topics:

A. Their *disapproval* of Robert's marriage to Diane, including their *belief* that Robert only married Diane "to prop himself up in life" and that Robert "was only in the marriage as a front, and a fake to further and enhance his own life." Exhibit 1, at 1.

B. Their other negative *opinions* of Robert and their dislike, if not outright hatred, for him, including their claims that Robert has a "rather nefarious past," is a conman who attended church with Diane and only did things for her mother because he wanted to portray a "fake life" and further himself "without having to actually work," and that Robert is a "proven alcoholic" and "prolific abuser of hard-core drugs." *Id*.

C. Their *belief* that Robert must have committed the murders because the murders, in their opinion, were "clearly an inside job" and because they don't believe the murders were part of any robbery or burglary, as such crimes, they speculate, did not occur in the middle of the night in the Roseland Area during the late 80s. *Id*. at 1-2.

## FACTUAL BACKGROUND

Both Plaintiff and Defendants have identified David and Derrick Yeager as potential witnesses. David and Derrick are Diane Yeager Smith's brothers and the sons/ grandsons of murder victims Edith Yeager and Willie Bell Alexander. Notably, David and Derrick did not testify at Smith's criminal trial and were never deposed in this case. Nonetheless, when Special State's Attorney Myles O'Rourke opposed Smith's April 20, 2020 Illinois Clemency Petition, he attached a letter David had prepared and Derrick had joined, which is attached as Exhibit 1. (Although only David signed the April 26 Letter, he represented in its body that Derrick "agrees with everything" stated in the letter and is in "lockstep" with David's positions. *Id*. at 2.)

Smith anticipates that when David and Derrick are called as witnesses, they will be asked about the three topics identified on page 1. All such testimony should be excluded under Federal Rules of Evidence 401 and 402 (relevance), 404 (improper character evidence), 608 (improper reputation testimony), 602 (lack of personal knowledge), 701 (improper lay opinion), 802 (hearsay), and 403 (unfair prejudice).

Without waiving any objection, Smith does not move to bar David and Derrick from testifying about other relevant topics with respect to which they have personal knowledge, including, as just one example, their personal interactions with the police during the homicide investigation. In support, Smith states as follows:

## ARGUMENT

**I.    Derrick and David's Opinions Relating to Robert's Marriage to Diane, Topic A, Should be Barred.**

First and foremost, the Court should bar David and Derrick from testifying about Topic A on relevance grounds. Rule 401 states that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id*. Rule 402, in relevant part, provides that "[i]rrelevant evidence is not admissible." In the simplest terms, David and Derrick Yeager's opinions relating to their disapproval of Robert's marriage to Diane, and their speculation that Robert married Diane for nefarious reasons, are simply not relevant to this case.

In fact, even if the Yeager brothers were correct (they are not) that Robert married Diane as part of a secret ploy to "enhance his own life" and avoid having to work for a living (an odd accusation against someone who enlisted to fight in the Vietnam War and served for four years), that still doesn't make any fact at issue in this case more or less probable. Such testimony is simply not relevant to whether the Defendant Officers beat and abused Robert during his interrogation, coerced a false confession from him, fabricated evidence against him, and/or suppressed exculpatory evidence. The testimony simply does not move the needle, not even in the slightest, on any issue or fact pertinent to this case.

Moreover, even if somehow relevant, David and Derrick cannot provide any testimony on Topic A because they lack the personal knowledge required under Rule 602 to provide such testimony. Rule 602 provides that "[a] witness may testify to a matter *only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id*. (emphasis added). We know,

however, that David and Derrick lack personal knowledge with respect to Topic A and are instead relying on inadmissible (triple) hearsay, because they state so in the April 26 Letter. *See* Exhibit 1, at 1 (explaining that their position in this regard was learned from their allegedly "horrified" aunt, who purportedly heard from her son, who was allegedly in jail with Robert in the mid-80s, as to what the son purportedly overheard Robert say).

Nor should David and Derrick be permitted to testify about Topic A under the guise of providing lay opinion testimony. Under Rule 701, lay opinion testimony must be: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. David and Derrick, however, for all the same reasons already stated above, cannot meet any one of these three requirements, let alone all three. They cannot provide opinions based on *perceptions* with respect to Robert's motivation for marrying Diane, nor would such testimony help clarify any testimony or determine any facts at issue in this case. They are also not marriage counselors, psychologists, or psychiatrists qualified to give expert opinions on any marriage related topics and have certainly never been disclosed as experts in this case.

Further, to the extent that David and Derrick's Topic A testimony can somehow be characterized as character or bad acts evidence that supports their belief that Robert committed the murders, as the April 26 Letter suggests, that too is strictly prohibited under Rule 404. *See* Rule 404(a)(1) (prohibiting such character

evidence with certain inapplicable exceptions); Rule 404(b)(1) (also prohibiting character evidence relating to specific bad acts and wrongs).

Nor can the Yeager brothers' testify about Topic A pursuant to Rule 608, allowing reputation testimony for purposes of attacking a witness's credibility. Rule 608(a) specifically states that such reputation testimony is only permitted when it relates to "the witness's reputation for having a character for truthfulness or untruthfulness." *Id.* Here, however, the Topic A testimony does not relate to any conduct that is probative of Robert's character for truthfulness or untruthfulness. Rather, it merely relates to Robert purportedly having self-serving and ulterior motives for marrying Diane, which is not only wholly irrelevant, but also a far cry from the type of bad acts courts have held are probative of truthfulness under Rule 608 (fraud, bribery, embezzlement, and the like). *See U.S. v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005) ("It is improper to impeach a witness by presenting evidence that he has engaged in criminal or otherwise illegal or socially reprobated behavior unless the evidence undermines the credibility of his testimony."). *See also U.S. v. Devery*, 935 F. Supp. 393, 407 (S.D.N.Y. 1996), *aff'd sub nom. U.S. v. Torres*, 128 F.3d 38 (2d Cir. 1997) ("the loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling."); *U.S. v. Nosov*, 221 F. Supp. 2d 445, 449 (S.D.N.Y. 2002), aff'd, 119 Fed. Appx. 311 (2d Cir. 2004) (unpublished) (immoral acts may be properly excluded as not probative of a witness's veracity).

Moreover, even with respect to permitted attacks on a witness's character for truthfulness, Rule 608(b) prohibits, with certain inapplicable exceptions, evidence

relating to specific instances of conduct, which means that the Yeager brothers cannot testify about any specific conduct relating to Robert's marriage to Diane. *See id.* ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.").

Lastly, as the Court can see for itself from the April 26 Letter, even if the Yeager brothers' testimony on Topic A did not run afoul of Rules 401, 402, 602, 802, 701, 404, and 608, the testimony should still be barred under Rule 403 since its probative value (which is nil) is substantially outweighed by the danger of unfair prejudice to Smith. In this regard, Smith respectfully submits that his ex-brothers-in-law, who clearly despised him from the moment they met him, and who demanded that he "not be allowed to see the light of day outside of prison as a free man," *see* Exhibit 1 at 2, should not be allowed to testify about their opinions of his marriage because such inflammatory testimony is precisely what Rule 403 was designed to exclude.

The Court should not permit the Topic A testimony.

## II. Derrick and David Yeager's Derrick and David's Opinions Relating to Robert's Supposed "Nefarious Past," "Fake Life," and Drug and Alcohol Abuse, Topic B, Should Be Barred.

For the same reasons stated in Section I, the Court should not permit David and Derrick Yeager to testify about Topic B. In their April 26 Letter, David and Derrick assert that Robert has a "nefarious past," ostensibly a reference to the fact that Robert was convicted of other (all non-violent) crimes prior to being wrongfully convicted for the Yeager/Alexnader murders. David and Derrick further speculate

that anything good that Robert did, including "sporadically attending church," was part of a "front and fake life [that] Robert was attempting to portray," and they describe Robert as a "proven alcoholic" and "prolific abuser of hard-core drugs." As with Topic A, none of the Topic B testimony is admissible.

This proffered testimony is clearly not based on any personal knowledge but rather inadmissible hearsay or just speculation. *See* Rules 401, 402, 602, and 802. There is nothing in the record that suggests or even hints that David and Derrick have any personal knowledge relating to Robert's prior convictions (which are also inadmissible under Rule 609, as Smith explains in a separate motion *in limine*), nor is there anything that suggests they have any personal knowledge of Robert's alcohol and drug habits (it is fairly clear that they were not partying with Robert or his drinking buddies).

In addition, Smith is fairly confident that neither David nor Derrick possess psychic, telepathic, or mind reading powers enabling them to magically determine his motivations for attending church, or for helping Edith Yeager with household chores, or for engaging in any other good and kind acts. *See* Dkt. 502, Plaintiff's Statement of Additional Material Facts, at ¶8 (citing Diane's testimony that "Robert did things for my mother and grandmother like painting the house, mowing the lawn, fixing things around the house"); *Id.* (Judge Savage stating at Robert's September 28, 1990 Sentencing Hearing that "the evidence shows that the man loved his mother-in law and his grandmother-in-law") (internal citations omitted).

Moreover, for all the same reasons stated in Section I above, any Topic B testimony that David and Derrick can provide constitutes improper lay opinion under Rule 701, improper character evidence under Rule 404, improper reputation testimony under Rule 608, and should also be barred under Rule 403, as such testimony is clearly intended as an unfairly prejudicial attempt to assassinate Robert's character.

The Court should not allow the Topic B testimony.

## III. Derrick and David Yeager's Speculative Opinion That Robert Committed The Murders, Topic C, Should Be Barred.

The Court should also not permit David and Derrick Yeager to testify that Robert committed the murders because, as with Section I and II above, this testimony is not based on any personal knowledge. As stated in the April 26 Letter, David and Derrick Yeager *believe* and are in fact "100% convinced" that Robert committed the murders because they always disliked and distrusted him and because, in their view, the murders were "clearly an inside job" and not part of any robbery or burglary, which they say didn't not occur in the middle of the night in the Roseland Area during the late 80s. Exhibit 1, at 1-2.

Such testimony, however, is clearly not based on personal knowledge and consists of mere speculation, driven purely by bias. David and Derrick do not claim to have first-hand knowledge about who committed the murders, and they are most certainly not qualified as experts on the types of crimes that occurred in the 80s in the Roseland Area, nor have they been disclosed as such.

Moreover, such testimony is precisely what Rule 701's limitations on lay opinion testimony prohibit. *See* Fed. R. Evid. 701(a), (b) (Advisory Opinion) (explaining that "Limitation (a) is the familiar requirement of first-hand knowledge or observation" and that Limitation (b) warrants exclusion when "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides"); *United States v. Conn*, 297 F.3d 548, 553-54 (7th Cir. 2002) (explaining that lay witness opinion testimony is only relevant when based upon first-hand knowledge).

Smith further submits that all witnesses should be barred from commenting on their beliefs regarding his guilt or innocence and not be permitted to comment on the credibility of any other witnesses. This Circuit's "precedent makes clear that assessing the credibility of a witness's testimony is the job of the jury," and it is improper to ask a witness to comment on the veracity of another witness. *See U.S. v. Nunez*, 532 F.3d 645, 652 (7th Cir. 2008) (citing *United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006); *United States v. McKee*, 389 F.3d 697, 699 (7th Cir. 2004). Asking a witness to comment on the veracity of another witness's testimony or statements impermissibly usurps the jury's role and improperly influences the jury about which evidence to believe and which to disregard. *Id.*; *Thomas*, 453 F.3d at 846. *See also United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006) (such questions "force a witness to testify as to something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal").

In sum, David and Derrick should not be permitted to testify about Topic C because their opinions of Robert's guilt are not based on personal knowledge, constitute improper lay opinion, and would impermissibly usurp the jury's role to assess the credibility of the witnesses and otherwise weigh the evidence in this case.

**Local Rule 37.2**.

Smith has conferred with Defendants, and Defendants have indicated that they do intend to offer the evidence this Motion seeks to bar; therefore, the ruling sought is actually in dispute.

WHEREFORE, Plaintiff Smith respectfully requests that this Court grant this motion *in limine* to bar David and Derrick Yeager from testifying about Topics A-C, as set forth above.

Dated: April 23, 2025

Respectfully submitted,

*PLAINTIFF ROBERT SMITH JR.*

By: _/s/ Ariel Olstein_

Ariel Olstein
Stuart J. Chanen
CHANEN & OLSTEIN
8822 Niles Center Rd. Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law