IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| Robert Smith Jr., ) | | |
|                Plaintiff, ) | No. 21-cv-1159 | |
| v. ) | | |
| ) | Honorable Jeffrey I. Cummings | |
| The City of Chicago, et al. ) | | |
| ) | | |
|                Defendants. ) | | |

**SMITH'S MOTION IN LIMINE NO.18 TO BAR WITNESSES WITH NO PERSONAL KNOWLEDGE AND NO EXPERTISE FROM TESTIFYING THAT THE KNIFE FOUND AT THE MURDER SCENE WAS "UNRELATED" TO THE MURDERS**

Plaintiff Robert Smith respectfully moves this Court to preclude any witness who lacks (1) sufficient personal knowledge and/or (2) expert qualifications from offering testimony or opinions that the 12-inch knife found at the murder scene (the "Knife") was unrelated to the murders. Such testimony would be speculative, lacking in foundation, and inadmissible under Federal Rules of Evidence 602 and 702. In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

While at the crime scene, several Chicago Police Department ("CPD") officers, detectives, and Fire Department personnel observed the Knife on the floor of the crime scene. One of these individuals photographed the Knife where it was spotted, and later, CPD Detectives recovered and removed the Knife and submitted it to the Chicago Crime Lab for testing. Five months after it was submitted – but before numerous necessary tests were undertaken, and before the Knife was provided to Smith's defense counsel, who had requested it – CPD destroyed the Knife. Most

significantly, CPD destroyed the Knife without leaving even a trace as to *who had authorized its destruction*.

The Inventory Report related to the Knife was never produced prior to or during Smith's criminal trial.  The Evidence Report related to the Knife was never produced prior to or during Smith's criminal trial.  No Photograph of the Knife was ever produced prior to or during Smith's criminal trial.  All three were never produced to Smith during Smith's post-conviction proceedings.  Neither the Evidence nor Inventory Reports were produced during discovery in this case.  PSOF78.

Certain witnesses have testified or implied that this Knife was unrelated to the homicides, without the appropriate foundation to do so.  These include former CPD Serologist Christine Anderson, Former Chicago Fire Marshall Jack Lumdsen, and Former CPD Bomb & Arson Detective Lawrence Gates.  None of these witnesses (and no other witness that Defendants have identified) have any first-hand knowledge of how the Knife came to be on the floor of the dining room of the murder scene, near where the two murder victims had had their throats slashed.

Of these three, only Anderson has been offered as an expert witness, and the testing she did as a serology (blood) expert does not qualify her to make a determination about whether the Knife found at the crime scene was related to, or unrelated to, the murders.  The other two witnesses also lack the education, training or experience to qualify as expert witnesses on the issues of weapon analysis, forensic analysis, or police practices, but they have not been identified as

experts in any event. Thus, no witness should be able to testify that the Knife was "unrelated" to the underlying murders.

I. **Witnesses Cannot Testify to Matters Outside Their Personal Knowledge.**

Under Federal Rule of Evidence 602, a witness may testify to a matter only if that the witness has personal knowledge of the matter. It is undisputed that none of the witnesses intending to offer the "unrelated to the crime" testimony were at the scene when the crime occurred, saw anyone introduce the Knife into the crime scene, or can attest to whether the Knife was used to murder the victims based on first-hand knowledge. Any testimony suggesting the Knife was "unrelated" to the murders necessarily involves speculation beyond the scope of admissible first-hand knowledge.

II. **Anderson Did Not Include the "Knife Was Unrelated" Opinion in Her Expert Report and Did Not Conduct Enough Testing to Allow Her to Provide Such an Expert Opinion.**

Anderson was disclosed as a defense expert witness in the area of serology. In her expert report, she disclosed the opinions she intends to give in this case. That the knife was "unrelated to the crime" was not one of them.

Anderson has testified that based on her Lab Report, she performed only a "*preliminary* chemical test for blood" on "an *extract* taken from the knife." PSOF79. While that "preliminary" test did in fact yield "negative results," Anderson conceded that, prior to CPD destroying the Knife, she conducted no further testing on any other parts of the knife, nor did she send the Knife for any chemical testing, as she had done with several other pieces of evidence related to the case. *See* PSOF79. Most significantly, the knife was never subjected to any fingerprint testing nor was

3

it subjected to any ligature comparison testing, which may have determined if the Knife matched the wounds on the victims' throats. PSOF79.

To come to the ultimate conclusion of "unrelatedness," Anderson opines without foundation that she does not believe that the Knife was cleaned or washed prior to being submitted to her Lab. She does not know that for a fact, but believes that likely to be the case because some white ash from the fire remained on parts of the Knife when she tested it. Anderson Dep. At 119:9-13. As noted above, Anderson did not send the knife for chemical testing at all and the *preliminary* serology test she performed on one extract of the knife is insufficient to demonstrate whether the Knife was cleaned or not prior to being sent to her Lab. Anderson also appears to claim that the power hoses used by the Chicago Fire Department ("CFD") would not have washed away blood or traces of blood on the Knife, although she has no basis to provide such an opinion, as she is not an expert on fire hoses or the strength of the water emitted from the ones CFD used at the scene. Apparently, Ms. Anderson based that contention on the fact that "the knife looks like it has a lot of crevices. . . . I would believe that the wooden handle probably had a lot of wear into it where blood could seep into it, that not everything would have been washed away." *Id* at 105:15-21. Once again, Anderson is not an expert in Knives or wood, and more particularly, this specific Knife. She did no tests to determine the "wear and tear" of the knife, the nature of the "crevices," or the type of wood used for the handle. Nor did she make notes any of these aspects of the Knife in her 1987 Lab Report.

4

Thus, while Anderson can certainly testify about the preliminary serology test she conducted and the results of *that test*, she cannot, based on that preliminary test alone, make the ultimate determination that the knife was "unrelated to the crime." To allow her to do so would be a violation of Fed. Rule 702 and would be highly prejudicial under Fed. Rule 403, as a jury is likely to give more weight to a witness qualified as an expert, even if the opinion is not within her area of expertise or the scientific methods she used to come to that conclusion do not support the opinion. To allow her to testify in this manner would be unduly prejudicial.

III. **Lumdsen and Gates May Not Provide Expert Opinions Under Rule 702.**

Former CFD Fire Marshall Lumdsen and former Bomb and Arson Detective Gates were never identified as expert witnesses. This standing alone is a reason on which they may not purport to give the expert opinion as to whether the Knife was or was not related to the victims' murder. Nor, however, would either witness qualify as experts on whether the Knife was or was not used in the murder.

As is well-known to this Court, Federal Rule of Evidence 702 requires that expert testimony be based on sufficient facts or data, the product of reliable principles and methods, and offered by a qualified expert on the relevant subject matter. Lumsden, the former CPD Fire Marshall, was at the scene trying to determine the cause and origin of the fire. (He also noted in his report that the victims had had their throats slit with a knife.) In the course of his investigation, he took photos. Lumsden did not provide any testimony at Smith's Suppression

5

Hearing, Criminal Trial, or in his post-conviction proceedings. He gave a deposition in this case about his role as Fire Marshall and the cause and origin of the fire, but he is now deceased.

At his deposition, Lumsden testified that the knife was "unrelated" to the underlying murders. Lumdsen Dep. 143:3-5. Lumsden based this assertion on the purported fact that he had taken some pictures of the same floor area before he took the picture of the Knife (the "Lumsden Knife Photo"), and, the Knife had not appeared in the earlier photos. From this, he surmised, "I expect that somebody may have retrieved a knife from the kitchen to cut the carpeting on the floor." *Id*. at 15-17. When asked if he was merely guessing that this is what occurred, he responded, "I'm assuming that the knife is there because it was used for something, certainly that it was used to cut out the carpeting." *Id*. at 144:1-11. Lumdsen denied that *he personally* retrieved the Knife from the kitchen, that *he personally* had used it to cut carpeting, or that he had observed any other person retrieving the Knife or cutting carpeting with it. *Id*. 19:-24. (He nevertheless had no trouble "assuming" that was the case.)

Later, when pushed by Defendants' counsel (including the City of Chicago defense counsel who was representing him as a witness), Lumsden went further. Under defense questioning, he surmised that the person who introduced the Knife into the crime scene must have been Bomb & Arson Detective Lawrence Gates. Lumsden made this assertion based on a 38-year old recollection that neither he nor Gates had a sharp instrument to cut samples of carpet near the fire origin. *Id*. at

6

145:12-15.  When pressed further though, Lumdsen stated, "I was aware, you know, that Detective Gates was using a sharp instrument, but I had no idea where the knife came from, nor did I have any idea why he left it there." *Id*. at 156:6-9. He then further testified:

> Q. So you have no personal knowledge the knife was used to collect evidence?
>
> A: I don't recall Detective Gates actually physically using that knife to cut the carpeting from the floor.  However, it's obvious to me after the fact when I see this photo that the knife ***may have been used*** by Detective Gates.

*Id*. at 156:14 -23 (emphasis added).  In other words, Lumsden has no personal knowledge of where the Knife came from or whether Gates used it or not.  Although purely speculative, he has no trouble asserting that it "was unrelated to the murders" that occurred.  Any such testimony must be barred.

Notably, Lumdsen also never told a single other person or wrote in any report that he prepared that:

> (a) a knife had been introduced into the scene;
> (b) a knife was used to cut a carpet sample;
> (c) he had photographed a knife at the scene; or that
> (d) a knife used to cut a carpet sample had been left at the scene.

For his part, Bomb and Arson Detective Gates initially testified at his deposition that he "believes" that he and Lumsden "most likely" used the knife to remove a carpet sample from the scene.  PSOF90.  But Gates then testified he:

7

(a) has no memory that he or Lumdsen retrieved a knife from the crime scene;
(b) has no memory that he or Lumdsen used a knife to cut out a carpet sample at the scene;
(c) is not even sure whether he or Lumsden had actually used a knife, as opposed to a different sharp instrument, to cut a sample from the carpet at the scene;
(d) was unable to say if the knife depicted in the photos on the floor of the crime scene was in fact the tool that either he or Lumsden used to cut the carpet at the scene; and
(e) admits that he never mentions in any of his reports that either he or Lumsden or anyone else had retrieved a knife from the crime scene, nor that a knife was used to cut out a carpet sample at the scene.

PSOF90. In fact, when Gates was specifically asked about his earlier statement that he "believes" it is "most likely" that the knife was used to cut carpet, Gates admitted, "I am speculating" that either he or Lumsden had retrieved a knife from the crime scene to cut out a carpet sample. PSOF91

Allowing such speculative expert-style opinions would circumvent the requirements of Rules 601 and 702 and improperly mislead the jury.

## CONCLUSION

For all these reasons, Plaintiff respectfully requests this Court to bar Defendants from introducing any testimony or argument that the Knife found and photographed at the murder scene was unrelated to the murders.

### Rule 37.2 Certification

Per the Court's Standing Order regarding Pretrial Issues, the parties met and conferred on April 16, 2025, and were not able to agree on a resolution that would prevent this Motion.

Dated: April 23, 2025

8

          Respectfully submitted,

          *PLAINTIFF ROBERT SMITH JR.*
          By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Rd., Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5469
Nicole.auerbach@elevate.law