IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Robert Smith Jr.,                          )
                          Plaintiff,       )      No. 21-cv-1159
v.                                          )
                                            )      Honorable Jeffrey I. Cummings
The City of Chicago, et al.                )
                                            )
                          Defendants.      )

**SMITH'S MOTION IN LIMINE #21 TO BAR THE LUMSDEN PHOTOGRAPH
AND IMPROPER ARGUMENT ABOUT THE LUMSDEN PHOTOGRAPH**

Defendants wish to use a photograph in this case that was never produced to Smith during his criminal case and was never produced to Special Prosecutor Myles O'Rourke ("Special Prosecutor") during Smith's post-conviction case even though the Special Prosecutor issued a May 16, 2019 document subpoena to the CPD that expressly asked for the *complete investigation file* for the Yeager/Alexander deaths, including expressly, all "photographs." Exhibit A (copy of Special Prosecutor subpoena). The City responded to that subpoena by producing 140 pages of documents, *none of which included any Chicago Police Department* ("CPD") *or Chicago Fire Department photographs.*

Nevertheless, on June 4, 2021, as part of the City's *initial disclosures* in this case, the City produced what it represented to be the complete (325-page) "Chicago Police Department investigative file," which included Chicago Fire Department photographs allegedly taken at the scene of the murders in the course of the criminal investigation. This production included 24 photographs purportedly taken by a Chicago Fire Department Marshall, Jack Lumsden, including one which Defendants now claim is a picture of Smith's blue underwear on the top stair

leading to the basement (hereafter the "Lumsden Photos" and the "Lumsden Underwear Photo"). The Lumsden Photos are attached as Exhibit B and the City's now enlarged version of the Lumsden Underwear Photo as Exhibit C.

First, Smith moves to bar the use of the Lumsden Underwear Photo on the ground that the City cannot benefit from having intentionally withheld these photos during Smith's post-conviction case (probably because the photos included the picture of the knife, attached as Exhibit D), but then decide that they now want to produce and use the Lumsden underwear photo to their advantage in Plaintiff's civil rights case.

Second, Smith seeks to bar Defendants' from making an improper argument about the Lumdsen Underwear Photo. Defendants asserted on summary judgment (and will undoubtedly attempt to repeat at trial) that in reaching decisions regarding Smith's post-conviction claims, both the TIRC and the Special Prosecutor erroneously relied on "_faulty representations_" that "no photograph of the [allegedly bloody and inculpating] underwear existed." *See* Dkt.494, at 9. They further argue that "had the Special Prosecutor known of the [Lumdsen] underwear  photograph," then "[i]t is possible that . . . the State would not have agreed to vacate Smith's conviction." *Id.* at 9-10, *citing* Exhibit 68, at 62-65 (the "O'Rourke Dep. Testimony"). We refer to this argument below as the "Potentially-Different-Result Argument."

## ARGUMENT

### I.     The Court Should Bar the Use of the Lumsden Underwear Photo.

The Court should not permit Defendants to benefit from the City's intentional wrongdoing in withholding the Lumsden Photos for more than 33 years –  during the

2

criminal case and the post-conviction case, *to the disadvantage of Smith*, and then try to selectively use it to Defendants' benefit in this case.

Now that Defendants are in the crosshairs for numerous civil rights violations that cost Smith 33 years of his life, Defendants cannot be allowed to benefit from their own misconduct during the intervening 30 years. At a minimum, the Lumsden Photos should have been produced in the underlying criminal proceeding, but unequivocally the City had a duty to comply with any subpoena issued to it decades later as Smith was fighting for his freedom in the post-conviction proceeding.

The Lumsden Photographs were never produced to Smith and his counsel prior to the criminal trial, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Had the Photos been produced at that time, including the exculpatory photos in Lumsden's set, such as Exhibit D, Smith might have been able to develop evidence relatively contemporaneously with the alleged crimes rather than learn for the first time that these photos had been taken 33 years earlier. That constitutional violation was then compounded by the City's intentional decision to not produce these same Lumsden photographs – photographs that the Special Prosecutor specifically asked for – during the post-conviction proceedings. Now they attempt to turn that violation into a frivolous argument that the entire post-conviction proceedings should be re-opened.

The City should not be able to capitalize on its unlawful conduct in failing to produce the photos earlier. *See Stewart v. Eiler,* No. 08-1033, 2009 WL 1650087, at *2 (C.D. Ill. June 8, 2009) ("The court cannot force defendants to provide a document they claim they do not have, but the defendants will not be allowed to use evidence that they failed to provide in response to a relevant discovery request"); *U.S.A. v. McCollom*, No.

86 CR 410, 1987 WL 15387, at *6 (N.D. Ill. Mar. 5, 1987) ("Obviously, the government cannot later introduce recordings which it had an obligation to disclose and did not."). While it is true that both *Stewart* and *McCollom* involved documents that were not produced in that *direct litigation*, the same "unclean hands" principle should apply equally here, where the criminal and civil cases are inextricably linked.

## II. Defendants Should Not Be Allowed to Argue the Conviction Was Vacated Because Either TIRC or the Special Prosecutors Were "Misled."

It takes a lot of chutzpah to assert that TIRC and the Special Prosecutor were provided so-called "faulty representations" about the non-existence of such a photograph when the so-called "faulty representation" was a direct result of the City's intentional refusal and failure to produce the Lumsden Underwear Photo. The City failed to produce it even in the face of a mandatory and unambiguous subpoena that required it to do so. Allowing Defendants to use the Lumsden Photo now would be akin to a Court extending leniency to a child who has killed his or her parents on the ground that the child *is now an orphan*.

If the Court allows the City to withhold documents during the criminal defendants' post-conviction proceedings but then allows Defendants to assert – based on their own failure – that the prosecutors were operating with *incomplete information*, then there will never be an incentive for the City to respond appropriately to subpoenas during criminal or post-conviction proceedings. If the Court admits the Lumsden Underwear Photo or allows the Potentially Different Result Argument, it sends a clear signal that there are no consequences to the City or its agencies for withholding documents when it matters *to the criminal defendant*. And further, it suggests that it is

not only okay to withhold evidence in that manner, but further that courts will still permit the belated production of the withheld documents in subsequent civil rights litigation – solely because now the City perceives that it is in its interest to produce, instead of withhold, the documents. This Court should not permit Defendants to rely on documents or arguments on which the City has such blatantly unclean hands.[1]

The second reason the Court should not permit Defendants' Potentially Different Result Argument is that it is not supported by the other evidence that exists. Defendants have not and cannot present any good faith basis to argue that even if the City had produced the Lumsden Underwear Photo when it was supposed to, it would have had any material effect on the decision of the Special Prosecutor. Although Defendants cited O'Rourke's deposition testimony in this case at 62-65 (which we attach as Exhibit E), those pages do not support Defendants' argument. Although the City's counsel, Dan Noland, repeatedly badgered O'Rourke to confirm that he would have reached a different conclusion; O'Rourke would not bite. O'Rourke repeatedly responded that while he certainly would have taken such a photograph "into consideration", he could not say what "would have happened," other than it was an additional "piece of the puzzle" that was "relevant." *Id*. At 63-64 When Noland pressed him for the fifth time as to whether it is "possible" it "might have changed" the "ultimate decision to vacate the case," O'Rourke responded that "anything is possible." *Id*. at 65.

---

[1]    The City cannot avoid responsibility for the failure to produce the Lumsden Photos in response to the Special Prosecutor's subpoena because both the Chicago Police Department and the Chicago Fire Department are considered the same legal entity as the City. *See Stevanovic v. City of Chicago*, 896 N.E.2d 355, 356 (Ill. Ct. App. 2008) (noting that the Chicago Fire Department "is not a legal entity separate from the City").

There is one final basis upon which this Court may and should bar Defendants from arguing what may, might, or could have happened in the post-conviction proceedings: Judge Guzman's words in *Patrick v. City of Chicago*, which are discussed extensively in Smith's MIL #4. As noted there, Judge Guzman clearly articulated the problems that arise when the Detective Defendants' misconduct is supposed to be at center stage of the civil rights trial, but that stage is highjacked by re-litigating the underlying post-conviction and Certificate-of-Innocence proceedings. Although his comments were primarily directed at using those proceedings for witness "impeachment," the Court's sentiments apply equally to trying to undermine those proceedings in other ways. As Judge Guzman himself held,

> [My concern about improper impeachment and argument applies equally to the post-conviction] proceedings to obtain exoneration and certificates of innocence. I find questions and comments about what went on during those proceedings . . . to be more and more disturbing because of all of the different reasons [defendants have used to attack those proceedings, such as] the length of the [innocence] hearing, whether there was live testimony or not. Most of those things are not in the control of any of the parties, [either] the [defendant] police officers or the plaintiff in this case. And to use those proceedings as impeachment against either side is, I think, not warranted.

*Patrick v. City of Chicago*, April 3, 2017 Trial Transcript, Dkt.263-1, at 3130. Here, Defendants are attempting to relitigate the post-conviction proceeding – and using the City's own unclean hands (failure to produce the Lumsden Photos) as a basis to relitigate something the City itself *caused*. Defendants also want to trot in the Special Prosecutor, apparently to assert that he might have reached a different result. Such "Potentially-Different-Result Argument" should be barred for all three of the reasons set forth in this Section. *See also* Smith's MIL #4.

### Local Rule 37.2 Certification

Per the Court's Standing Order, the parties met and conferred on April 16, 2025, and were not able to agree on a resolution that would prevent this Motion.

For these reasons, Smith respectfully requests this Court to bar the Lumsden Underwear Photo and to bar Defendants' Potentially Different Result Argument.

Dated: April 23, 2025

Respectfully submitted,

*PLAINTIFF ROBERT SMITH JR.*
By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Rd. Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law