IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., | ) |
|              Plaintiff, | ) ) Case No. 21 C 1159 |
| v. | ) ) Judge Jeffrey I. Cummings |
| The City of Chicago, et al., | ) ) Magistrate Judge M. David Weisman |
|              Defendants. | ) |

**DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO BAR EVIDENCE OR ARGUMENT REGARDING ALLEGATIONS OF MISCONDUCT BY NON-DEFENDANTS**

Defendants, by their undersigned counsel, respectfully move *in limine* to bar evidence or argument of allegations of misconduct by non-defendant officers/employees of the City.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763 776 (7th Cir. 2008). Plaintiff must demonstrate a "causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Based on this well-established case law, evidence or argument of misconduct against non-defendant officers or employees of the City should be barred because it would be irrelevant under Rules 401 and 402 and, even if marginally relevant, unfairly prejudicial, misleading and confusing under Rule 403. Accordingly, Defendants move to bar any evidence or argument of misconduct against non-defendants.

Without limiting the generality of the foregoing, Defendants expect Plaintiff to attempt to introduce evidence and argument relating to the following allegations against non-defendants: (1)

fire investigators Gates and Lumsden for failing to properly conduct or document their investigation; (2) CPD record-keepers, crime lab personnel, or others for not preserving the inventory slips that were created for the underwear, knife, or perhaps other reports; (3) the CPD for not protecting the scene after the initial investigation was concluded and allowing friends of the victims' family to remove the washer on the evening of the murders; (4) the CPD for destroying the knife in 1988 and blue sheet in 1997; (5) non-defendant Detective Ronald Gaines was sued by the federal government for fraud in connection with an application for student college aid for his son; (6) non-defendant Officer Martin Rios who Plaintiff alleges kicked him in the chest was convicted of indecency with a child under 13 years old in 1994; and (7) allegations against former CPD and Illinois State Police crime lab analyst Pam Fish.

**(1) Fire Investigation and Destruction of the Knife:** Non-defendants Fire Marshal Jack Lumsden and Bomb & Arson Detective Larry Gates each conducted a cause and origin investigation of the fire. Plaintiff may attempt to criticize their investigations, such as by suggesting that Det. Gates should not have utilized a knife from the kitchen to cut a carpet sample form the areas of origin to determine if it contained evidence of an accelerant, by not inventorying that knife, by failing to state in their reports that a knife from the kitchen was so utilized, and because the CPD did not preserve the knife. The knife is the subject of Defendants' motion for summary judgment and other motions *in limine*, and we will not repeat the arguments raised in those motions. Since there is no evidence that the Defendant Officers had any role in the use, recovery, or destruction of the knife, evidence or argument that there was some act of misconduct committed in connection with the knife should be barred.

**(2) Preservation of CPD Paperwork**: Defendant Officers are not CPD record keepers and there is no evidence they had any responsibility to preserve any CPD paperwork generated in

2

connection with this case. Their role was to submit relevant paperwork generated or received in their investigation of the murders for inclusion into the Investigative File. (Ex. A, Detective Division Special Order 86-3, CITY-RS-24919-21). Certain paperwork from the investigation no longer exists, such as the inventory slips created for the underwear and knife, and perhaps other documents Plaintiff may identify at trial. However, there is no evidence of anything sinister with respect to the non-existence of these pieces of paper and there is no evidence the Defendant Officers were responsible for preserving these documents or any other part of the CPD files in this case. As a result, Plaintiff should not be permitted to sow the seeds of conspiracy by introducing evidence that this or any other CPD paperwork cannot be located and/or insinuate that there was any misconduct with respect to the absence of those documents today. In *Patrick v. City*, 14 C 3658, Judge Guzman barred the plaintiff from introducing evidence that the CPD could not locate the entirety of its original Records Division file and Investigative File for the murders in that case, finding any such evidence would lead to an unnecessary and prejudicial "satellite litigation," had no appreciable relevance without speculating, would waste time, and would unduly prejudice the Defendant Officers. (Ex. B, Judge Guzman's oral ruling *in limine* in *Patrick* at 51-52). Defendants submit this Court should reach the same result with respect to any now-missing pieces of CPD paperwork in this case pursuant to Rules 401, 402, and 403.

**(3) Protection of the Crime Scene:** A GPR in the Investigative File reflects that the police encountered Harvey King and Harold Jones at the house in the late afternoon or evening of the murders removing the washing machine and in possession of keys to the house. (Ex. C, 9/19/87 GPR, 3d watch, CITY-RS-000122). According to these men, Sgt. Wilson had told the victim's family it was ok to remove items from the house before they were stolen. (*Id*.) At her deposition, Diane Yeager Smith testified that Harvey King was a neighbor and good friend of the family and

she recalled having family members take furniture from the home. (Ex. D, Diane Yeager-Smith dep at 125-26). Regardless of the propriety of allowing the victim's family to enter the house and remove items the evening after the murders, Plaintiff should not be permitted to argue that any Defendant Officer did anything improper therewith. Sgt. Wilson, who apparently authorized the family to remove the items, is not a defendant and there is no allegation Defendants in this case were consulted with respect to that decision, had any role in allowing the removal of the property, or otherwise did anything wrong in connection with that activity. While Plaintiff's bloody underwear was found in the evening on the first step leading from the kitchen to the basement, Lumsden's photo proves those underwear were present on the first step when the first responders arrived early that morning, proving that neither Harvey King, Harod Jones, or anyone else (including the police) planted the underwear. Plaintiff should therefore be precluded from arguing that there was any impropriety or deviation from police practices in failing to protect the crime scene and allowing the removal of items since it is irrelevant to any fact at issue and could only serve to mislead and confuse the jury, and prejudice the Defendants.

**(4) 1988 Destruction of Knife and 1997 Destruction of Blue Sheet**: Defendants address the destruction of the knife in their motion for summary judgment and in other motions *in limine*. For the reasons explained therein, Plaintiff should be barred from arguing that the knife was the murder weapon, referencing that it was destroyed, and/or otherwise arguing that Defendant Officers had any role in its destruction.

As to the blue sheet, it was destroyed in 1997, roughly seven years after Plaintiff's criminal trial and 10 years after the murders. As of 1997, there is no evidence Plaintiff or his attorneys had made any effort to conduct any forensic testing on the blue sheet. There also is no evidence the blue sheet was destroyed due to any action or inaction of the Defendant Officers. Instead, the

4

records reflect that it was destroyed by the Evidence and Recovered Property Section of the CPD in 1997 after a form was checked by non-defendant Det. Leracz stating "DISPOSE ACCORDING TO LAW" and "Check This Box to Authorize Confiscation/Disposition Of This Property." (Ex. E, CITY-RS-027488-89). Accordingly, Plaintiff should be barred from arguing that there was any misconduct in connection with the destruction of the blue sheet because there is no evidence of any misconduct and, even if there was, there is no evidence the Defendant Officers had any role in any such misconduct.

**(5) Non-Defendant Ronald Gaines** – Former Det. Gaines may testify at trial as he was involved in the investigation of the murders, including interviewing two individuals Plaintiff told other detectives he was with on September 18, 1987 and/or September 19, 1987, Sally Atkins Paine and Michael Santee. At his deposition, Plaintiff's counsel questioned Det. Gaines about a civil complaint filed by the United States against Gaines and his wife in connection with an application for student college aid (a Pell Grant) for one of their children. The lawsuit was settled for $4,970 without an admission of liability, wrongdoing, or guilt on the part of any party. (Ex. F, May 29, 2002 settlement agreement in *U.S. v. Gaines*, 02 C 2117). Neither the Government's complaint nor the settlement of this civil claim relating to student aid has anything to do with this lawsuit. Nor is it relevant or admissible to challenge Det. Gaines's credibility because it is not a criminal conviction or even a civil finding of any wrongdoing against him: it was an allegation regarding student aid that was settled without an admission of wrongdoing 23 years ago that is not probative of Gaines' truthfulness under Rule 608(b) or any other rule. It should be barred.

**(6) Non-defendant Officer Martin Rios**: During his 1989 motion to suppress testimony, Plaintiff alleged that one of the two uniformed police officers who transported him to the police station was left alone with him and kicked him in the chest. (Ex. G at SMITH-003559-60). Officer

5

Rios then testified that he was the uniformed transport officer who stayed with Plaintiff in an interview room upon arriving at the police station, but he denied kicking or otherwise physically abusing Plaintiff. (Ex. G at SMITH-003634-37).

In 1994, Rios was convicted of indecency with a child under 13 years old and received a three-year sentence and he resigned his employment with CPD as a result. (Ex. H, Rios deposition at 24-25). Rios's conviction is presumptively inadmissible under Rule 609(b) because he was released from confinement more than 10 years ago (indeed, more than 25 years ago). *United States v. Jackson*, 546 F. 3d 801, 819 (7th Cir. 2008). And Rule 404(b) bars introduction of the crime and his employment separation as impermissible evidence of a prior bad act. Nor can Plaintiff show that the probative value of Rios's prior conviction is substantially outweighed by its prejudicial effect. Accordingly, if Rios is called to testify, his conviction and resignation from CPD as a result should be barred.

**(7) Non-Defendant Dr. Pam Fish**: Dr. Pam Fish is a former Chicago Crime Lab scientist who conducted electrophoresis testing of certain of the evidence in this case, which in general was a process using electricity to separate out different components in blood. (Ex. I, Fish deposition at 113). According to her report, Fish was unable to detect much enzyme activity in this case and she was not called as a witness at Smith's trial by either the prosecution or defense. The parties have identified her as a may call witness in this case and it is unclear at this point if she will testify at trial.

At her deposition, Plaintiff's counsel questioned Dr. Fish about a series of allegations made involving the integrity of her scientific work against her in other cases. (Ex. I, Fish deposition at 147-176). However, any such questioning should be barred at trial. There are no allegations of misconduct against Fish in this case, so any allegations of misconduct against her in other cases is

6

irrelevant under Rules 401 and 402. In addition, no court has made any finding of misconduct against her and none of the allegations have otherwise been sustained by any tribunal. As a result, the allegations are inadmissible under any other rule of evidence, including but not limited to Rules 404(b) and Rule 608(b). And even if there was some limited probative value, the allegations against Fish should be barred under Rule 403 as they are substantially outweighed by the danger of unfair prejudice that the jury could infer wrongdoing against the Defendant Officers for something Fish may or may not have done in some other case. Thus, the allegations against Dr. Fish from other cases should be barred.

### Local Rule 37.2 Compliance Certification

The undersigned has conferred with counsel for Plaintiff regarding this motion *in limine*. Based upon that conference, the undersigned has determined that the matter at issue in this motion *in limine* is actually in dispute and a ruling is necessary.

Respectfully submitted,

PHILIP CLINE
DANIEL MCWEENY[1]
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.

Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F:  312-494-1001
sbenjamin@rfclaw.com

T: 312-982-0090
F: 312-429-0644
dnoland@burnsnoland.com