IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 18 TO BAR REFERENCE, EVIDENCE, OR ARGUMENT AS TO DIANE YEAGER-SMITH'S GUARDIANSHIP OR ROLE AS SPECIAL REPRESENTATIVE OF ROBERT SMITH, AND TO BAR HER PRESENCE FROM THE COURTROOM[1]**

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000

*Attorneys for Defendants Philip Cline, Daniel McWeeny, Steven Brownfield, William Pedersen, John Solecki, Robert Dwyer, Estate of John Yucaitis, Estate of Rice, and Estate of William Higgins*

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090

*Attorneys for Defendant City of Chicago*

---

[1] Plaintiff and Defendants have reached an agreement to exclude every non-party witness except for Diane Yaeger-Smith.

Diane Yeager-Smith ("Yeager-Smith") is the daughter and granddaughter of the murder victims Edith Yeager and Willie Bell Alexander, respectively, and former spouse and current guardian of Robert Smith. Due to Robert Smith's incompetency and over Defendants' objection, she was substituted under Fed. R. Civ. P. 25(b) as Robert Smith's representative.[2] Dkt. 296.

Generally, a representative is "a nominal party 'effectively filing suit on behalf'" of another. *Platcher v. Health Professionals, Ltd.*, 2006 WL 1980193, at *7 (C.D. Ill. July 12, 2006) (quoting *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (Ill. 2002)). But Yeager-Smith is not an ordinary representative serving as a nominal party. She is a material witness in this case for both Plaintiff and the Defense. She was present with Robert Smith after he committed the murders. She will testify as to Robert Smith's interactions with the decedents and will provide detailed testimony as to the events of September 18 and 19, 1987 involving Robert Smith. In light of her significant involvement, as set forth in greater detail below, allowing Plaintiff's counsel to reference, present evidence, or argue that Yeager-Smith is the guardian and representative of Robert Smith is irrelevant, would confuse the issues, mislead the jury, and is unfairly prejudicial. Fed. R. Evid. 401, 402, 403.

Yeager-Smith testified that Robert Smith was "capable" of murdering her mother and grandmother "if he was on something, not in his right mind." (Ex. E, Yeager-Smith dep at 68-69).

---

[2] Less than two weeks before filing this lawsuit, Robert Smith executed an Illinois Short Form Power of Attorney for Property ("POA") giving his attorney, Stuart Chanen, POA over matters including claims and litigation and financial transactions (Ex. A). In January 2022, Smith married his nursing home caregiver, Shalonda Batts. It is believed that this prompted Mr. Chanen, in February 2022, in his role as POA over claims and litigation, to obtain (or assist in obtaining) a psychiatric evaluation of Smith and then to secure probate attorneys for Yeager-Smith to assist with petitioning the Cook County Probate Court for temporary guardianship, which specifically included the authority to direct on-going litigation (this case) and investigate and safeguard assets from financial exploitation by Batts, based upon the diagnosis that Smith has been totally disabled since at least December 2021. (See Ex. B, Petition for Temporary Guardian of Alleged Person with a Disability, filed March 29, 2022, at RFC 5953-4.). Ultimately, the Probate Court annulled the marriage with Batts, and appointed Yaeger-Smith as permanent guardian on July 8, 2022. Dkt. 293, at 2; dkt. 296, at 1.

Yeager-Smith said that at times in her life she has believed Smith was guilty, and at other times she has believed he was innocent. (*Id*. at 45). According to Yeager-Smith, "when I did feel that he did it, I felt that he was not in his right mind." (*Id*.). Yeager-Smith had previously seen Smith "not in his right mind" when he was in Sally Atkins's neighborhood, which Yeager-Smith said was on 83rd, 84th, or 87th Streets. (*Id*. at 46). Sally Atkins was an individual with whom Smith said he was doing drugs with when the murders occurred. (Ex. C, 2/6/89 Transcript of hearing on Smith's Motion to Suppress in *People v. Smith*, 87 CR 15089 at SMITH 3458-60, and 2/8/89 Transcript of hearing on Smith's Motion to Suppress in *People v. Smith*, 87 CR 15089 at SMITH 3500-03). On one occasion, Yeager-Smith said "I can remember [Smith] walking down 87th Street, I think it was Racine, just shouting out. I remember that incident…. I was in the car following him." (Yeager-Smith dep at 46-48). Yeager-Smith said that in the months leading up to the murders, Smith would frequent Sally's area about four times a week. (*Id*. at 52-53: "He would frequent that area a lot. Maybe four times a week."). As for her knowledge of what Smith was doing in Sally's neighborhood, Yeager-Smith said "Well, I'll put it to you this way: Whatever is going on on 87th or 84th or 83rd, I did not have any part in that…. Did I have suspicions of things? I felt that it was no good, whatever it was, but I can't tell you the ins and outs of it." (*Id*. at 52).

Yeager-Smith also recalled other times when Smith was not in his right mind, including when he had an "outburst" in the basement of her mother's house (*id.* at 60), and after he was released from the hospital in July 1987 (two months before the murders) after being attacked with a hammer. (*Id*. at 61). Yeager-Smith specifically recalled Smith's "anger" and "shouting" after the hammer attack (61), and testified that he was "angry more" after that attack. (*Id*. at 65). Things were getting worse between Yeager-Smith and Smith in the weeks and months leading up to the murders (*id*. at 68), they frequently argued about him going to Sally's neighborhood (*id*. at 52),

and Yeager-Smith told Smith that he needed "to do something with your life" and that "things need to change." (*Id*. at 68).

Smith again failed to come home the night of Friday, September 18, 1987 after going to Sally's neighborhood to do drugs. (*Id*. at 82). Yeager-Smith's mother and grandmother's throats were slashed in the early morning hours of September 19, 1987, and police determined that there was no evidence of a forced entry and the killer had used the victims' washer and dryer to wash his bloody clothes in their basement. (Ex. D, CPD Supplementary Report). Phone records indicate that a call was placed from Sally's apartment to Yeager-Smith's home at 3:06 a.m. on September 19, 1987, time enough for Smith to have set the arson fire to cover up the murders and show up at Sally's, in wet clothes, to call Yeager-Smith. Yeager-Smith testified that Smith called in the middle of the night to ask for a ride home from Sally's, and said that he was "done, finishing something, and that he was washing something." (Ex. E, Yeager-Smith dep at 160). A police report reflects that Yeager-Smith told the police that Smith told her on that call that he was "counting money and cleaning up." (Ex. F, at CITY-RS 52-53 and CITY-RS-141-3).

In addition to corroborating Smith's guilt, Yeager-Smith undermines his claim of physical abuse. Though Smith claims he was physically mistreated all day at the police station, Yeager-Smith saw him at the police station later in the day and fails to corroborate the abuse claims. Specifically, Yeager-Smith testified that Smith did not look beaten, did not complain of abuse, and she did not see any injury. (Ex. E, Yeager-Smith dep at 135). In fact, Yeager-Smith did not see any evidence that Smith was beaten at the police station. (*Id*.).

Yeager-Smith testified that she suspected plaintiff of making withdrawals with Edith Yeager's ATM card in the weeks preceding the murders because "he had needed some money for something," and that she did not "fully believe" his denials." (Ex. E, Yeager-Smith dep at 107).

3

Indeed, there existed only two ATM cards for Edith Yeager's account: one in Edith's possession and the other in Yeager-Smith's possession. (*Id.* at 106). Yeager-Smith did not make the withdrawals (*id.* at 106), and since Edith didn't make them either, Smith is the likely suspect. And this would not have been the first time that Smith had surreptitiously obtained money from Yeager-Smith. (*Id.* at 108). As Yeager-Smith explained, Smith would write checks from the middle of her checkbook so she would not know of the withdrawal "until it comes back." (*Id.* at 108).

As this testimony demonstrates, Yeager-Smith is not merely a nominal party serving as a representative for another individual for purposes of maintaining a lawsuit. Rather, she is a crucial witness to the events of September 18 and 19, 1987, especially considering Robert Smith's incompetence. Given the significance of her role as a witness in this case and Plaintiff's counsel's intention to explore at trial how Yaeger-Smith "came to be Robert [Smith's] Guardian, Special Representative, and what she does in those roles" (dkt. 550, at 2), Plaintiff's counsel will seek to improperly bolster testimony in favor of Smith and minimize her negative testimony against him based on her role now as his guardian and representative. Specifically, Defendants believe Plaintiff's counsel will argue or insinuate that because Yaeger-Smith is serving as guardian and representative for the person accused of murdering her mother and grandmother, Yaeger-Smith must believe that Robert Smith is innocent of the murders. And because Yaeger-Smith is the daughter and granddaughter of the victims, any inferred belief in Robert Smith's innocence by her role as guardian would overshadow her testimony and the evidence presented at trial and leave the jury to speculate about matters outside of matters that will be properly before them. Allowing Plaintiff's counsel to engage in this type of irrelevant argument or inference would mislead the jury, confuse the issue, and unfairly prejudice defendants. Fed. R. Evid. 401, 402, 403.

Moreover, even if plaintiff does not explicitly make that argument, the jury's knowledge of

4

her role as the plaintiff, special representative and/or guardian will lead the jury to insinuate that she believes Robert Smith is innocent.[3] And it appears plaintiff's counsel recognizes the power that a family members' testimony regarding Robert Smith's guilt or innocence possesses, as counsel intends to move *in limine to* bar David Yeager and Derrick Yeager, the victims' sons and grandsons, respectively, from testifying as to Robert Smith's guilt. Therefore, it is unnecessary for the jury to know Yeager-Smith's litigation role, or for Yaeger-Smith to be present in the courtroom since, as plaintiff readily recognizes (dkt. 545), Yaeger-Smith is not a party. See Fed. R. Evid. 615 (parties should not be excluded). A trial judge possesses "broad power to sequester witnesses before, during, and after their testimony." *Geders v. U.S.*, 425 U.S. 80, 87 (1976); *see also* Fed. R. Evid. 615 (witnesses can be excluded "so that they cannot hear other witnesses' testimony."). Given the unique circumstances involving Yaeger-Smith, this Court should exercise its broad power and bar Yaeger-Smith's presence from the courtroom except when she is testifying. If the Court disagrees, Yeager-Smith should at least be barred until after she testifies, and when present in the court be required to sit in the gallery and not counsel table, to avoid the unfair prejudice to Defendants.

      WHEREFORE, Defendants respectfully request this Court bar reference, evidence, or argument as to Diane Yeager-Smith's guardianship or role as special representative of Robert Smith, and to bar her presence from the courtroom, and for whatever other relief this Court deems appropriate.

---

[3] It is noteworthy that other family members believe Smith committed the murders. Specifically, David Yeager and Derrick Yeager, the victims' sons and grandsons, respectively, and Diane Yeager-Smith's brothers, submitted statements in opposition to Smith's petition for executive clemency. (Ex. G attached hereto). It would be fundamentally unfair for the jury to draw the inference that the victims' daughter/granddaughter thinks Smith is innocent when the victims' sons/grandsons thinks he is guilty.

**Local Rule 37.2 Compliance Certification**

The undersigned has conferred with counsel for Plaintiff regarding this motion *in limine*. Based upon that conference, the undersigned has determined that the matter at issue in this motion *in limine* is in dispute and a ruling is necessary.

Dated: April 23, 2025

PHILIP CLINE
DANIEL MCWEENY[4]
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

Respectfully submitted,

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090
F: 312-429-0644
dnoland@burnsnoland.com

---

[4] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.