**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

## DEFENDANTS' *DAUBERT* MOTION TO BAR PLAINTIFF'S EXPERT JAMIE MCALLISTER

Defendants, by their respective undersigned counsel, move to bar the opinions of plaintiff's retained expert, Jamie McAllister. In support thereof, Defendants state as follows:

Plaintiff retained Jamie McAllister, a Fire Protection Engineer and Toxicologist, to, as McAllister describes, analyze the "scientific validity" of certain statements of Robert Smith, Jr. that are reflected in the General Progress Reports and his confession "by studying photographic documentation of physical evidence from the scene, *e.g.*, fire patterns and decedent thermal injuries, and well-known principles of fire dynamics." *See* McAllister Report, at 1 (attached as Exhibit A). In other words, McAllister attempts to discredit statements that detectives attributed to Smith through her scientific findings relating to the origin and spread of the fire. McAllister's opinions should be barred because her scientific conclusions are not in dispute and, in fact, are consistent with the fire investigation conducted by the City. As such, the opinions are not relevant to any fact at issue. Instead, they are merely a means to have an expert, with the imprimatur of science, tell the jury that the statements in Smith's confession must be false.

## LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 imposes a special obligation upon a trial judge, acting as a gatekeeper, to "ensure that any and all scientific testimony ... is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

Rule 702, which was recently amended, provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The party offering the expert testimony bears the burden of demonstrating by a preponderance of the evidence that the proposed testimony satisfies Rule 702 and *Daubert*. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014); *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019); *see* Fed. R. Evid. 702, Committee Notes, 2023 Amendments ("the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.").

**ARGUMENT**

**I.     McAllister's Opinions Regarding the Origin and Spread of the Fire Do Not Assist the Jury as to Any Fact at Issue and Improperly Sort Out Inconsistencies that the Jury is Capable of Assessing on Its Own.**

McAllister analyzes the following statements attributed to Smith in the General Progress Reports and confession:

- that he "poured gas in the house & lit it," "threw the gas around the house, "spread the gas all over," "spread gasoline all over the house," and "threw a book of matches into the gasoline in the dining room."
- That "the gasoline blew up" or that he struck a match and threw it on the gasoline and "[i]t blew up in flames."

Report, at 7. McAllister argues that the physical evidence from the fire, which shows localized damage near the hide-a-bed that was in the dining room, is inconsistent with Smith having spread gasoline "all over the house." *Id.* at 7-17. She also claims, citing the Oxford Dictionary, that Smith's comment that the flames "blew up" must have been intended to mean "exploded," and there was no evidence of an explosion. *Id.* at 18.

The City's investigation, conducted immediately after the fire occurred, came to the same conclusions that McAllister did as to the fire's origin and spread and the lack of any explosion. Defendants do not contend that the evidence is consistent with gasoline having been poured all over the house (*i.e.*, from the dining room into adjacent hallways and other rooms) or that it is consistent with an explosion. Defendants submitted the following evidence in the Individual Defendants' Local Rule 56.1 Statement of Facts: "Based upon their observations and investigations, FM Lumsden and Det. Gates concluded that the fire originated on a hide-a-bed sofa and that a flammable liquid was poured on the sofa and floor to start a fire." Dkt. 495, at ¶ 13, *citing* Gates Dep. at 107-08, 142-43; 8/28/90 Trial Trans. At B91, 106, 112-23; Lumsden Dep. at 34-35. When asked at his deposition, FM Lumsden, who was present at the scene to investigate, affirmed that "the fact the fire remained localized to the area of the hide-a-bed indicate[s] that

gasoline was not spread all over the house." Lumsden Dep. 177-17-178:1 (Exhibit B). Lumsden further stated, as McAllister also opines, that the burns on the victim were not consistent with flammable liquid but instead were caused by radiant heat or lying close to the area of origin, which was the hide-a-bed. *Id.* at 178:2-179:24. Lumsden also agreed that the physical evidence was not consistent with any explosion. Lumsden Dep. 179:4-180:9.

As such, there is no fact at issue that McAllister serves to assist the jury with. Her sole purpose would be to improperly tell the jury, based on scientific facts that are not in dispute, that Smith's statement that he spread gas "all over" or that the flames "blew up" could not be true (and, therefore, must have been coerced). Experts' opinions regarding whether they believe or disbelieve certain witness testimony "are clearly inadmissible." *Jordan v. City of Chicago*, 2012 WL88158, at *4 (N.D. Ill. Jan. 11, 2012). The jury can sort out any perceived inconsistencies between the undisputed facts regarding the origin and spread of the fire and Smith's statements without expert assistance. (*Loury v. City of Chicago*, 2019 WL 1112260, at *4 (N.D. Ill. Mar. 11, 2019) (stating that it is not the role of an expert witness to sort out possible conflicting testimony or to argue the implication of those inconsistencies). Moreover, McAllister has no basis, beyond her own review of the dictionary, to contend that when Smith said the flames "blew up," he meant that there was an explosion.

Because McAllister's testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue," it should be barred. *See* Fed. R. Evid. 702. Further, her testimony should be barred under Rule 403 because she would be telling the jury, under the cloak of scientific expertise, not to believe that certain admissions by Smith are true.

**II.    McAllister's Opinion as to Whether Detective Gates and FM Lumsden Violated Protocol by Using the Kitchen Knife to Collect a Carpet Piece Does Not Assist the Jury With Any Fact Issue.**

4

McAllister also offers the following opinion: "It would be inappropriate for a fire investigator to utilize a knife from a residence to collect evidence as it could contaminate the evidence." Report, at 20. McAllister opines that it was against the applicable standards for Detective Gates or FM Lumsden to use a knife from the kitchen at the home of the crime scene to collect a piece of the carpet to test for any accelerant. *See id.* at 19-20.

As an initial defect of this opinion, McAllister relies on NFPA standards from 2021 to reach her conclusion, without any showing that any similar standards were in place thirty-four years ago. *Id.* at 19. McAllister then refers to a Fire Investigation Handbook from the 1980s, but it states only, in relevant part, that contaminated evidence may be ruled inadmissible by the court and that carelessness with evidence should be avoided. *Id.* at 19-20.

Moreover, there is no proper purpose for plaintiff to admit this opinion. It would not assist the jury as to any fact at issue. If it is to show that Det. Gates and FM Lumsden failed to follow proper protocol in their fire investigation, that evidence or argument is not properly admissible and not relevant to plaintiff's claims against the defendants in this case. *See, e.g., Bruce v. City of Chicago*, 2011 WL 3471074, at * 3 (N.D. Ill. Jul. 29, 2011) (Dow, J.) (argument over compliance with an internal rule or policy has a high likelihood of confusing the issues and thereby unfairly prejudicing defendants). If it is to show that Detective Gates and/or FM Lumsden must be lying about their use of a kitchen knife because that practice would not have adhered to proper standards, that is speculative, unfairly prejudicial, and an improper use of expert testimony. *See Jordan*, *supra*, 2012 WL88158, at *4.

WHEREFORE, Defendants respectfully request this Court bar the testimony and opinions of plaintiff's expert, Jamie McAllister, and for whatever other relief this Court deems appropriate.

Dated: April 23, 2025                                    Respectfully submitted,

5

| | |
|---|---|
| PHILIP CLINE<br>DANIEL MCWEENY[1]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS<br><br>/s/ *Stacy A. Benjamin*<br>Special Assistant Corporation Counsel<br><br>Eileen E. Rosen<br>Stacy A. Benjamin<br>Andrew J. Grill<br>Brittany D. Johnson<br>ROCK, FUSCO & CONNELLY, LLC<br>333 W. Wacker, 19th Fl<br>Chicago, IL 60606<br>T: 312-494-1000<br>F: 312-494-1001<br>sbenjamin@rfclaw.com | MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: *s/ Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Paul A. Michalik<br>Daniel M. Noland<br>Katherine C. Morrison<br>Daniel J. Burns<br>Dhaviella N. Harris<br>Burns Noland LLP<br>311 S. Wacker Dr., Suite 5200<br>Chicago, IL 60606<br>T: 312-982-0090<br>F: 312-429-0644<br>dnoland@burnsnoland.com |

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.