IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | Case No. 21 CV 1159 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Jeffrey I. Cummings |
| v. | ) | |
| | ) | Magistrate Judge M. David Weisman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO BAR EVIDENCE OF PAUL WARD'S SUPPRESSION HEARING TESTIMONY**

Defendants, by their respective undersigned counsel, respectfully move in *limine* to bar Plaintiff from introducing as evidence Paul Ward's February 8, 1989 testimony at the combined hearing on Smith's pretrial motion to quash arrest and suppress evidence and motion to suppress statement ("MTQ/MTSS") as inadmissible hearsay. In support thereof, Defendants state as follows:

**BACKGROUND**

Paul Ward ("Ward"), the late uncle of Robert Smith, is long deceased. Plaintiff intends to introduce his 1989 pretrial testimony at trial. Ward testified on Smith's behalf at the MTQ/MTSS hearing. (Exhibit A, Feb. 8, 1989 MTSS Trans.). Just prior to his testimony, Smith's counsel represented to the court that Ward's testimony was intended to "corroborate the defendant's testimony that Robert entered by the back door." (Ex. A, 126:4-10). Ward's identity had not previously been disclosed to the prosecution, and over the prosecution's objection, he was allowed to testify after the prosecution was given "a few moments" to speak with Ward. (*Id.* at 125:14-126:24.) Ward then testified that while present at the scene of the murders he saw and spoke with Smith and Yeager-Smith at the front of the house. At some point, Smith and Yeager-Smith went to the back of the house and shortly thereafter, Smith emerged from the house in handcuffs. (Ex.

1

A, 127-129). Ward did not see what happened inside the house or in the back of the house prior to Smith being escorted from the house in handcuffs, nor does he know how long Smith and Yeager-Smith were at the house before he arrived. (Ex. A, 130-132). Ward testified that Smith appeared calm when escorted from the house. (Ex. A, 130).

Ward's testimony is inadmissible hearsay under Fed. R. Evid. 802. It also does not fall within the former testimony exception (Rule 804(b)(1)) because the prosecutors at Smith's criminal trial are not Defendants' predecessors in interest and possessed wholly different opportunities and motives than Defendants possess in defending against this civil action. Ward's testimony is also inadmissible under the residual hearsay exception (Rule 807) because it is untrustworthy and not probative.

## ARGUMENT

**I.  Ward's former testimony is inadmissible hearsay under Rule 804(b)(1) because the prosecuting attorneys are not Defendants' predecessors in interest.**

Ward's MTQ/MTSS testimony is hearsay – it was not made "while testifying at the current trial or hearing" and Plaintiff seeks to offer it into "evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(c), namely that Smith entered the house by the back door or that Smith appeared "calm" when he exited the house. Hearsay is presumptively unreliable and inadmissible under Rule 802, unless an exception provided in the Rules of Evidence applies. Plaintiff will argue that the former testimony of an unavailable witness exception set forth in Rule 804(b)(1) is the basis for admissibility. While there is no dispute that Ward, who is dead, is unavailable, his MTSS testimony does not meet the criteria for the admissibility of former testimony under Rule 804(b)(1). Plaintiff, as the proponent of the testimony, "bea[r]s the burden of demonstrating that each element [of an exception to the rule against hearsay] is satisfied." *United States v. Jackson*, 540 F.3d 578, 588 (7th Cir. 2008).

Rule 804(b)(1)'s former testimony exception allows for the admission of otherwise prohibited hearsay in limited circumstances where the proponent can show that the evidence "is now offered against a party…in a civil case, whose *predecessor in interest* had…an opportunity and *similar motive* to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B) (emphasis added). Here, the parties against whom the evidence will be offered are the Defendant Officers. The would-be predecessor in interest is the Cook County State's Attorney's Office ("CCSAO"), Smith's criminal prosecutors. While the Seventh Circuit has not addressed the issue of "predecessor in interest" in this context, several district courts have (two of the deciding judges now sit on the Seventh Circuit), concluding that criminal trial prosecutors are *not* predecessors in interest to police defendants in a §1983 action because they are too dissimilar.

In *Butler v. Indianapolis Metro. Police Dep't*, 2009 WL 2092416, *2 (S.D. Ind. July 13, 2009), Judge Hamilton ruled that the former testimony of an unavailable witness did not qualify for Rule 804(b)(1) admission, explaining that the different stakes faced by civil municipal defendants and criminal prosecutors inherently lead to divergent motives:

> The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident. The police officer faces the prospect of personal liability, particularly for punitive damages, which may not be the subject of any indemnity agreement with the local government, as well as the prospect of harm to professional reputation that may result if a court or jury finds a violation of constitutional rights. The police officer has powerful financial and professional motives to pursue the reasons for the complaining witness's change of story and to attack the witness's credibility. The city has similar financial and reputational motives. Those differences between the prosecutor's and the police officer's and city's motives weigh heavily against using Rule 804(b)(1) to allow plaintiff to use in his civil trial the deposition of [a witness] taken in the criminal prosecution.

Judge Hamilton juxtaposed these stakes with those of the prosecutor, stating:

> "[p]rosecutors in criminal trials…usually have their hands full trying to protect the public and secure a just result in the criminal prosecution." *Id*. "Under [plaintiffs'] theory here, those busy prosecutors would also need to think and act as surrogate

defense counsel for future civil rights lawsuits against officers who are not their clients. (Put aside for the moment the complications presented when more than one police officer might face a future lawsuit.) At the risk of stating the obvious, even those prosecutors who might have the needed knowledge to take on these additional responsibilities would rarely have the time or inclination to do so." *Id*. Thus, the "differences between the prosecutor's and the police officer's and city's motives weigh heavily against using Rule 804(b)(1) to allow [a] plaintiff…to use in his civil trial the [testimony] of [a witness] taken in the criminal prosecution." *Id*.

Judge St. Eve, relying heavily on *Butler,* came to a similar conclusion in *Hill v. City of Chi.*, where a §1983 plaintiff sought to introduce his former criminal co-defendant's criminal testimony at his civil trial because the co-defendant was deceased. 2011 WL 3876915, *2–4 (N.D. Ill. Sept. 1, 2011) (St. Eve, J.). The defendant officers moved *in limine* to bar it, arguing that the prosecutors did not share a similar motive to develop the underlying testimony with the defendant officers, such that the prior testimony exception did not apply. *Id*. Judge St. Eve barred the testimony, agreeing that:

> Defendant Officers in this civil litigation were not parties to the criminal proceedings against [plaintiff]. Instead, the Cook County State's Attorney's Office prosecuted [plaintiff] at his criminal trial and "it is well-settled that strategies for civil and criminal trials may differ greatly." Indeed, prosecutors in criminal cases are not ordinary parties to a lawsuit, but represent the sovereign, in this case—the People of the State of Illinois. *Id.*, at *3 (quoting *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985), *abrogated on other grounds by United States v. Rojas-Contreras*, 474 U.S. 231 (1985).)

Judge St. Eve found that "Judge Hamilton's opinion in *Butler* is persuasive and consistent with Seventh Circuit precedent." *Hill*, 2011 WL 3876915 at *3 (*Butler* is in line with *Feldman*, where "the Seventh Circuit concluded that…the motives for cross-examination were not similar in the criminal and civil cases…because in the criminal proceeding defendant's personal liberty was at stake" and that "a prosecutor's strategies vary significantly from a civil rights defendant's strategies.")

4

More recently, in *Andersen v. City of Chicago*, No. 16-cv-01963, Dkt. 685 (N.D. Ill. Nov. 17, 2020 (attached as Exhibit B), Judge Kendall granted a defense motion to bar a §1983 plaintiff from using the criminal transcripts of unavailable witnesses at his civil trial. Relying on *Feldman*, *Butler*, and *Hill*, Judge Kendall concluded that:

> In this case, the defendant officers were not a party in the criminal trial. The Cook County State's Attorney prosecuted the case. During that criminal trial, the motivation of the ASA is to present evidence to prove his case beyond a reasonable doubt. He is not in a position to be thinking of defending an officer witness as a future defendant in a wrongful conviction case. Also, the motive of an ASA in directing or cross-examining a witness is entirely different than defending that witness in a civil rights case. The ASA is concerned with presenting the building blocks of his case to establish guilt. The civil defense attorney is concerned with showing that the officer's actions were appropriate, legal, constitutional and fair under the circumstances. The civil defense attorney must have a much broader understanding of the actions of the officer in terms of civil liability which is not at all the focus of the ASA in the criminal trial. *Andersen,* No. 1:16-cv-01963, Dkt. # 685 at p. 1 (N.D. Ill. Nov. 17, 2020).

The instant case presents the same issue conclusively decided in *Butler, Hill*, and *Anderson,* and there is no reason this Court should stray from the conclusions reached in each of those cases. Ward testified at a criminal pretrial hearing over three decades ago that sought to quash Smith's arrest and suppress evidence obtained after his arrest. The CCSAO's motivation in cross-examining Ward who was offered solely to establish that Smith entered the home through the back door to support Smith's MTQ/MTSS is not sufficient to establish the prosecutor was a predecessor in interest to Defendant Officers here who are being sued for civil damages in this §1983 action. Further, Ward was not even disclosed to the CCSAO until "moments" before he testified to the limited purpose of "corroborating [Smith's] testimony that [he] entered by the back door" (Ex. A at 126:4-10), resulting in just nine questions on cross-examination by the prosecutors. There is nothing about the facts in this case that warrant a departure from *Butler, Hill*, and *Anderson* which are in line with *Feldman*, "the motives for cross-examination [are] not similar …because in the

5

criminal proceeding Smith's personal liberty was at stake" and "[the] prosecutor's strategies vary significantly from [Defendant Officers] strategies." *Hill*, 2011 WL 3876915 at *3

The purpose of Ward's testimony in the criminal case, and the substance of the cross-examination in this civil case would be wildly different. For example, in this civil case, had Defendant Officers been able to question Ward to defend their interests, their inquiry would have included questions about Ward's bias, his ability to recall the events that he testified to as well as his ability to recall other events that he did not testify to, particularly against the backdrop of learning his sister and mother had just been murdered, the state of Smith's clothing when he saw him, whether it appeared that Smith was still high on drugs or alcohol or if his behavior appeared odd in any way, how Ward came to arrive at the scene of the murders and who notified him of the murders, whether the information contained in the police reports regarding their discussion with Ward at the scene is accurate, and any inconsistencies between his account and Smith's and/or Yeager-Smith's accounts. The prosecution was not motivated to explore these issues. In fact, because Ward's testimony was presented solely in support of Smith's MTQ/MTSS, the prosecutors did not have the ability to explore any of these issues.

Moreover, the stated purpose of Ward's testimony - to corroborate that Smith entered through the back door – was not a central issue in Smith's MTQ/MTSS hearing. *See Pacelli v. Nassau Cnty. Police Dep't*, 639 F. Supp. 1382, 1386 (E.D.N.Y. 1986) (former criminal trial testimony inadmissible against police officer in civil action because issues central to civil litigation were collateral to the prosecutor's case). It was the circumstances inside house that were at issue in determining the legality of Smith's arrest. Given the stark differences between the posture of the matter at issue for the prosecution in the criminal case and the matters at issue over three decades later here in this civil case, there is no basis to "claim that the questioner had a similar

motive at both proceedings to show that the fact had been established (or disproved)." *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir.1993) (en banc) (no similarity of motive under Rule 804(b)(1) where "a fact is critical to a cause of action at a second proceeding but the same fact was only peripheral[]…at a first proceeding").

Thus, like in *Butler*, *Hill* and *Anderson,* this Court should conclude that Ward's former testimony does not fall under Rule 804(b)(1)'s hearsay exception and should bar the use of the transcript. *See also Annunziata v. City of N.Y.*, No. 06 Civ. 7637(SAS), 2008 WL 2229903, at *9 (S.D.N.Y. May 28, 2008) (criminal trial testimony inadmissible in § 1983 action against police officers because prosecutor did not have same motive to cross examine regarding coercion).

**II.     Ward's testimony is inadmissible under the Rule 807 residual exception.**

The only other conceivable way around Rule 802 would be for Plaintiff to introduce Ward's hearsay testimony under Rule 807, the residual exception, which provides that a hearsay statement need not be excluded if two conditions are met:

> (1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

Courts use the 807 residual exception sparingly. "As the Seventh Circuit has explained, 'in applying this rule, we have heeded congressional guidance to construe these conditions narrowly so that the residual exception does not swallow the rule against hearsay." *Bewley v. Turpin*, 2022 WL 2317426, *8 (S.D. Ind. June 27, 2022) (quoting *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019)); *see also Stolarczyk v. Senator International Freight Forwarding, LLC*, 376 F. Supp. 2d 834 (N.D. Ill. 2005) ("In addition to the presumption of unreliability afforded to

hearsay statements, Plaintiff also faces the Seventh Circuit's repeated 'emphasis on narrowly construing the residual provision.'") (quoting *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998)).

The residual exception should not be allowed here. First, Ward's testimony is unsupported by sufficient guarantees of trustworthiness. With just nine questions asked on cross-examination, little to nothing was done by the prosecution to probe the veracity of the testimony. Instead, the focus was on Ward not seeing what occurred in the house, a matter undisputed in this case. As discussed above, his bias was not explored nor were various other issues germane to this litigation. For example, the police reports indicate that Ward told police he was already present at the scene when Yeager-Smith and Smith arrived, (Ex. C, 1987 09 21 Supplementary Report, CCSAO SMITH 391), yet he testified at the hearing that Yeager-Smith and Smith were already outside in front of the house when he arrived. (Ex. A, 130-131). In addition, police reports indicate that Yeager-Smith told Ward the police called her and told her about her mother, (Ex. C, CCSAO 391), contradicting both Smith and Yeager-Smith's testimony. These factors weigh against finding a sufficient guarantee of trustworthiness to Ward's "limited purpose" testimony.

Second, Ward's testimony is not the "most" probative evidence on whether Smith at some point entered the house through the back door. Ward admitted he did not go into the backyard, so he did not even see how or when Smith entered the home. At best, Ward's hearsay testimony is cumulative of Smith and Yeager-Smith's testimony that Smith was arrested following his entry from the back door, not the front door as McWeeny testified. A "fact" further corroborated by at least one police officer who testified "I believe it was" the rear kitchen door that Smith entered. (*See* Ex. D, Officer Hughes Dep. at 68). And to the extent Plaintiff intends to offer this testimony as to Ward's observations that Smith was "calm" after he was escorted from the house, it would

8

be irrelevant to whether Smith was combative inside the house leading to his arrest and Smith himself admits that he struggled with police officers inside the house and even as they were escorting him to the door. (Ex. E, Smith Dep. at 153).

Accordingly, the sparingly used residual hearsay exception does not apply here, where there are insufficient guarantees of trustworthiness to Ward's testimony and it is not the most probative evidence on any matter at issue in this case.

WHEREFORE, Plaintiff should be barred from introducing Paul Ward's prior testimony because it is inadmissible hearsay for which no exception applies.

## Local Rule 37.2 Compliance Certification

The undersigned has conferred with counsel for Plaintiff regarding this motion *in limine*. Based upon that conference, the undersigned has determined that the matter at issue in this motion *in limine* is actually in dispute and a ruling is necessary.

PHILIP CLINE
DANIEL MCWEENY
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill

Respectfully submitted,
MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090

---

Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.

Brittany D. Johnson  F: 312-429-0644
ROCK, FUSCO & CONNELLY, LLC  dnoland@burnsnoland.com
333 W. Wacker, 19th Fl
Chicago, IL 60606
 T: 312-494-1000
 F:  312-494-1001
 sbenjamin@rfclaw.com