IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 21 C 1159 |
| v. | ) |
| | ) Judge Jeffrey I. Cummings |
| The City of Chicago, et al., | ) |
| | ) Magistrate Judge M. David Weisman |
| Defendants. | ) |

**DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 11
TO BAR INTRODUCTION OF 404(b) EVIDENCE**

Defendant Officers[1], by their undersigned counsel, respectfully move in *limine* to bar Plaintiff from introducing any FRE 404(b) evidence at trial. In support, they state as follows:

**INTRODUCTION**

This motion seeks to bar Plaintiff from introducing evidence or otherwise putting before the jury "other acts" evidence. Plaintiff's trial witnesses include six may call witnesses - Madison Hobley, Darrell Cannon, Kevin Bailey (or Corey Batchelor), Gregory Banks (or David Bates), and Anthony Holmes - to testify about their "personal experience relating to his torture and abuse at Area 2 and their wrongful conviction, including the fact that one or more of the Detective Defendants in this case participated in such police misconduct, and the fact that the same Detective or Detectives had the opportunity, intent, participation, planning, and knowledge to engage in such misconduct." Plaintiff lists the prior testimony of three deceased individuals – Melvin Jones, Eric Caine, and Phillip Adkins – for the same purpose. Defendants further anticipate exhibits and cross-examination of Defendant Officers about other acts, based on complaints, investigations, and lawsuits. None of this evidence is admissible and should be barred under Rules 404(b) and 403.

---

[1] Defendant City joins in the relief request in this this motion.

**ARGUMENT**

Other acts evidence is inadmissible character evidence, pursuant to Fed. Rule Evid. 404(b) ("Rule 404(b)"). "The purpose of Rule 404(b) is to exclude a type of evidence – evidence that the defendant had previously engaged in a broadly similar [wrongful] activity – which has some probative value but the admission of which would tend as a practical matter to deprive a person" of a fair trial." *United States v. Wright*, 901 F. 2d 68, 70 (7th Cir. 1990). In the past, other acts evidence has been too readily admitted where the proponent named a non-propensity purpose which may be applicable, without consideration of the "legitimacy of the purpose for which the evidence is to be used and the need for it." *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (*en banc*). The standard adopted in *Gomez* abandons the previous multi-factor analysis in favor of a rules-based approach. *Id.*

"To overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez*, 763 F.3d at 860. Further, "relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id.*; *citing United States v. Miller*, 673 F.3d 688, 696 (7th Cir. 2012).

Even if this initial burden of establishing relevance is met, the evidence of other acts is not admissible "unless the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed." *Gomez,* 763 F.3d at 854. In addition, pursuant to Rule 403, the evidence must be further evaluated to ensure that the probative value is not outweighed by its prejudicial effect, "tak[ing] account of the extent to which the non-propensity fact for which the

evidence is offered actually is at issue in the case." *Id*. at 856-57. Given these rigid standards, Plaintiff cannot establish the admissibility of any other acts evidence in this case.

**I. Other acts evidence is not relevant to any non-propensity purpose.**

Rule 404(b) prohibits admission of other acts evidence to show character or a propensity to behave in a certain manner but allows that other acts evidence "may be admissible for another purpose." Fed. R. Evid. 404(b); *accord Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir.1989). Whether other acts are relevant to a non-propensity purpose is a two-part inquiry: 1) the court determines whether and to what extent the proposed purpose is at issue; and 2) the court must determine whether the other acts evidence is actually relevant, in that it is probative of the stated purpose and does not rely on a propensity inference to establish relevance. *Miller*, 673 F.3d at 697-98. "If evidence is not direct evidence of the [tort] itself, it is usually propensity…" *United States v. Gorman*, 613 F.3d 711, 718 (7th Cir. 2010). "Unless there is a persuasive and specific answer to the question, 'How does this evidence prove [the identified purpose]?' then the real answer is almost certainly that the evidence is probative only of propensity." *Miller,* 673 F. 3d at 699. In this case, none of the extrinsic allegations of police misconduct Plaintiff seeks to introduce pass this two-part relevance inquiry.

The following is a summary relating to each anticipated live witness[2]:

- Madison Hobley (McWeeny and Dwyer):

Hobley was convicted by a jury in 1990 of setting a fire that killed seven people, including his wife and baby. In 1994, the Illinois Supreme Court affirmed his conviction (*People v. Hobley,* 637 N.E.2d 992 (Hobley I), *cert denied Hobley v. Illinois,* 513 U.S. 1015 (1995)) and on post-conviction denied his claim of ineffective assistance of counsel for failure to discover and introduce evidence that other persons had alleged torture by the same officers as Hobley. *People v. Hobley*, 696 N.E.2d 313 (1998) (Hobley II). Then-governor Ryan pardoned Hobley in 2003, and Hobley filed a §1983 civil suit against Dan McWeeny, Robert Dwyer and other Area 2

---

[2] The other 404(b) witnesses – Jones, Caine and Adkins are deceased. Plaintiff seeks to introduce their prior testimony in other matters. In addition to being impermissible under Rule 404(b), these materials are all inadmissible hearsay for which no exception applies. FRE 802, 803, 804, 807. Defendants further reserve their right to make specific objections once Plaintiff designates the testimony he seeks to introduce.

3

detectives, as well as Jon Burge, who he sued under a theory of supervisory liability. (*See* Ex. A Hobley Amended Complaint at ¶¶ 30-32.) Hobley claims to have never confessed, and that Dwyer, McWeeny and other detectives (Garrity and Lotito, who are not involved in Smith's case) fabricated his confession and physically abused him in a failed attempt to extract a confession. (*Id.*, *see also*, Ex. B, Egan-Boyle Rpt. at 183-216.) The City of Chicago settled Hobley's lawsuit during discovery for $7.5 million after federal prosecutors did not indict Hobley on the matter. Hobley's allegations have never been proven in a court of law, and the Special Prosecutor concluded Hobley's testimony of abuse was uncorroborated (Ex. B at 192-193), and did not find sufficient credibility in Hobley's account to warrant any prosecutions. (*Id.* at 183-216.) McWeeny and Dwyer deny the allegations. (*See* Dkt. 97 ¶¶ at 103, 106.)

- Darrell Cannon (McWeeny):

Cannon, while on parole for a gang murder, was charged with another murder in 1983 under an accountability theory for providing another with a gun used in a gang-related murder. *See Cannon v. Burge*, 752 F.3d 1079, 1081 (7th Cir. 2014). Cannon claims Sgt. Byrne and Dets. Dignan and Grunhard (none of whom are involved in Smith's case) arrested him, took him to a remote location (not Area 2) where they abused him, (including shoving a gun in his mouth and using a cattle prod to his testicles) to coerce his confession. (Ex. C; Cannon MTSS Transcript at 93-114.) Cannon does not claim he was abused by McWeeny, instead encountering him at an auto pound after the alleged abuse where he viewed the shooter's car and confessed to McWeeny based on the earlier abuse and what he was told by others about the crimes, and then again back at Area 2 when Cannon gave a signed confession to an Assistant State's Attorney. (*Id.* at 59, 93, 114, 118-120 .) Cannon was convicted and two years later filed a §1983 civil suit while in prison alleging mistreatment by Bryne, Dignan and Grunhard that was settled for $3,000 in 1988 and was also awarded $100,000 in reparations. *Cannon*, 752 F.3d at 1082-83. Cannon's allegations have never been proven in a court of law, and the Special Prosecutor concluded there was no evidence (medical or otherwise) corroborating his claims of abuse and that Cannon was not a credible witness. (*Id.* at 183-216.) McWeeny denies he engaged in misconduct in his interactions with Cannon. (Ex. D McWeeny Dep. at 96-99.)

- Kevin Bailey or Corey Batchelor:

Bailey and Batchleor were not disclosed in Plaintiff's 26(a) disclosures, in written discovery that specifically sought the identity of 404(b) witnesses, and are not mentioned anywhere in Plaintiff's 245 paragraph second amended complaint (dkt. 82). This alone should bar both from testifying at trial. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") Bailey and Batchelor were charged in the 1989 murder of a 69-year-old woman inside her garage and whose purse was recovered from nearby woods. They were brought to police attention a few days later by a man who overheard an inculpatory conversation between them. (*See* Maurice Possley, *Kevin Bailey,* THE NATIONAL REGISTRY OF EXONERATIONS, Jan. 24, 2022, https://exonerationregistry.org/cases/12375.) Both claimed their confessions were false and the result of abuse by detectives at Area 2, including Det. Rice. *Id.* According to police, Bailey confessed during his polygraph examination. *Id.* Their convictions were vacated by the special prosecutor after he determined the "evidence against Batchelor and Bailey does not meet the burden of beyond a reasonable doubt." *Id.* They sued various detectives

4

including Det. McWeeny and the Estate of Rice in 2019 and their consolidated cases settled for a total of $14 million. Their abuse allegations have never been proven in a court of law and Rice (during the criminal case) and McWeeny in the civil case denied the allegations or wrongdoing.

- Gregory Banks or David Bates (Dwyer):

Banks and Bates were convicted of a 1983 drug deal murder. Both claimed their confessions were the result of physical abuse by Detectives Dignan, Grunhard and Sgt. Byrne at Area 2. Det. Dwyer became involved in the case the following day and was present when Banks gave a court reported confession. Banks testified at his June 20, 1985 motion to suppress that Dwyer was not present during the physical abuse but did verbally threaten him before they met with the State's Attorney. (Ex. E, Banks MTSS Smith 7285-7318.) Bates had a similar account of abuse that did not involve Dwyer, but that Dwyer offered him leniency and that violence would continue if he did not talk to the State's Attorney. (Ex. F, Bates MTSS Smith 7508-7559.) Both were found guilty. The Illinois Appellate Court reversed Banks' conviction, and in doing so did not attribute any wrongdoing to Det. Dwyer. *People v. Banks*, 192 Ill. App. 3d 986, 993, (1st Dist. 1989). Banks filed a §1983 lawsuit in 1991 that was settled for $92,000 and he was awarded $7,500 in reparations. The appellate court found Bates' arrest was without probable cause (Dwyer was not involved) and it was suppressed following additional appellate review. *See People v. Bates*, 267 Ill. App. 3d 503, 504 (1st Dist. 1994). He too filed a §1983 suit that settled for a lesser amount than Banks'. Their allegations against Dwyer have never been proven in a court of law and Dwyer denies any misconduct relating to his involvement with Banks or Bates. (*See* Dkt. 97, ¶¶ at 106, 132, 157.)

- Anthony Holmes

Holmes was not disclosed in discovery as a 404(b) witness against any Defendant and the only reference to him in the complaint is as to Burge. (*See* Dkt. 82, ¶ 118.) Holmes, a convicted felon and gang member who went by the nickname "Satan" was arrested in May 1973 (14 years before the incident in this case) at his home for murder by Burge and other detectives. He testified at Burge's criminal trial in 2010 that he was questioned and abused by Burge, including repeated electrocution with a black box and suffocation with a plastic bag. (Ex.G, Holmes testimony *US v. Burge*, at 76-84.) Holmes gave a confession to a State's Attorney in the presence of Burge and Yucaitis. (*Id*. at 169). Holmes did not move to suppress his statements, he was convicted of the crime and served 30 years in prison. (*Id.* at 84-85, 182-83.) His conviction was never vacated and he has not filed any lawsuit but he was awarded $100,000 in reparations .

1. **Other acts are inadmissible to show intent, absence of mistake or lack of accident.**

Intent, absence of mistake and lack of accident are not at issue in this case because "proof of the proscribed act gives rise to an inference of intent." *Shackleford*, 738 F. 2d at 781 (reversible error to admit other acts to show general intent because such an exception "would virtually swallow the rule"). Thus, admitting other acts to show a general intent to commit the act charged

5

is merely disguised propensity evidence. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *5 (N.D. Ill. May 11, 2021) (Durkin, J.) (barring evidence of an officer's prior insubordination because it was being offered so that the jury would infer that the officer "engaged in misconduct on the night in question because he has allegedly done so on other occasions."). Unless a defense of unintentional action, such as mistake or accident, is raised, intent is not at issue. *Shackleford*, 738 F. 2d at 781 (intent not at issue where defendant "did not argue that his alleged threats were inadvertent or that he did not intend to threaten [the victim]. Rather, he consistently maintained throughout the trial that he never committed the acts alleged."). In this case, the Defendant Officers do not claim that they unintentionally, accidentally or mistakenly committed the acts alleged in the complaint – in fact they deny committing the acts. Because intent "is not meaningfully disputed by the defense, and the bad acts evidence is relevant to intent only because it implies a pattern or propensity to so intend," admission would be an abuse of discretion. *Miller,* 673 F. 3d at 697.

### 2. Opportunity is not a basis for admission of other acts evidence.

Similar to intent, opportunity could only be relevant to rebut a defense of lack of opportunity, such as a claim that Defendant Officers were not present for the events alleged in the Complaint, or that somebody else committed the acts alleged. *See Newsome v. James*, 2000 WL 1047822, at *6 (N.D. Ill. July 27, 2000) (opportunity not at issue where "[d]efendants do not claim that they lacked opportunity to frame [plaintiff]"); *J.K.J. v. Polk Cty*., 2017 WL 280827, at *5 (W.D. Wis. Jan. 20, 2017) (claim that other acts are relevant to show opportunity "makes no sense" where contact with the plaintiff was undisputed). The only Defendant Officer alleging that he was not present for any of the acts alleged against him is defendant Dwyer – whom Smith has never identified as abusing him. (*See* Dkt. 494 at 25-27; 535 at 39-42.) Thus, opportunity with respect to defendant Dwyer is not at issue. No other Defendant Officer has raised a defense that they were

6

not present for any of the acts alleged, or that somebody else committed such acts, therefore opportunity is not at issue in this case.

### 3. Other acts are not relevant to show motive or knowledge.

Motive and knowledge are not at issue in this case, and could not be established through other acts without an inference of propensity. An extrinsic act might be relevant to establish motive if it provided the incentive for a defendant to commit the wrongful conduct at issue. *See Shackleford*, 738 F. 2d at 782 (framing inquiry as "whether defendant's previous [act of extortion] could supply a reason why defendant might have used the threat of force to obtain payment for a drug debt owed by [victim]"); *citing United States v. Brooks*, 125 F.3d at 500 (evidence of prior drug use relevant to supply a motive to commit an armed robbery to support the drug habit). Similarly, an act may be relevant to show that an individual possessed specific knowledge implicated in the acts alleged. None of the other acts Plaintiff may seek to introduce serve this purpose, nor are they probative of the state of mind of any Defendant Officer. Moreover, none of these other acts can pass the relevance test of "'How does this evidence prove [motive or knowledge]?" *Miller,* 673 F. 3d at 699. There is no relationship between the other acts evidence and Smith's arrest and questioning for the murders of his in-laws that could have provided specialized knowledge or a reason for the alleged misconduct in this case. Any argument that a Defendant Officer was motivated or knew how to coerce a witness because he had done it before would improperly rely on propensity. *See Shackleford*, 738 F. 2d at 783. As a result, other acts evidence is inadmissible to show motive or knowledge.

### 4. Other acts are not probative of plan or preparation.

There is no indication that any Defendant Officers planned or prepared in advance to commit the acts alleged in the Complaint, thus plan and preparation are not at issue. *See Newsome*, 2000 WL 1047822, at *2 (plan not at issue where no evidence that there was an "overarching plan"

to frame the plaintiff for a given reason, e.g. to clear more cases and increase a crime solve rate). Even if plan and preparation were at issue, the relevant time period in which this planning or preparation would have taken place would be between the murders in September 1987 and the trial in 1990. All of the other act evidence falls far outside of this timeframe. There is also no evidentiary link or chain of reasoning between the relevance of other acts of misconduct and Plaintiff's arrest and prosecution. *See Gorman*, 613 F.3d at 718 ("If evidence is not direct evidence of the [tort] itself, it is usually propensity"); *Abdelal v. City of Chicago*, 2017 WL 1196977, at *6-7 (N.D. Ill. Mar. 31, 2017) (Pallmeyer, J.) (rejecting argument that subsequent allegation of police misconduct was probative of plan or knowledge in earlier incident). This evidence is related to plan and preparation only through a chain of reasoning relying on propensity – that there were other allegations of misconduct so the alleged mistreatment of plaintiff must have been part of a plan. *Gomez*, 763 F.3d at 860. As a result, it is inadmissible. *Miller*, 673 F.3d at 696.

### 5. Identity and *modus operandi* are not relevant issues.

Other acts evidence also cannot be admitted to show identity, or *modus operandi*. *Modus operandi* is not a means by which Plaintiff may establish a pattern of coerced confessions to demonstrate that certain Defendant Officers' conduct in this case conformed to that pattern. This would be propensity evidence. Rather, *modus operandi* is a means by which to establish identity and is relevant only if identity is at issue. *United States v. Simpson*, 479 F.3d 492, 498 (7th Cir. 2007). *Modus operandi* is inapplicable here because Plaintiff cannot establish that any of the proposed other acts evidence discussed above "bear[s] a singular strong resemblance to [a] pattern" so as to permit an inference of identity." *U.S. v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002). Moreover, identity is not at issue in this case because the Defendant Officers do not assert that someone else committed the acts. *See Okai v. Verfuth*, 275 F.3d 606, 613 (7th Cir. 2001) (officers' disciplinary history not admissible to show identity because "there was no question as to the

8

identity of the officers who allegedly assaulted [the inmate] – [defendants] never presented the defense that [the plaintiff] had mistaken them for other officers."); *see also Simpson*, 479 F.3d at 498 (the need to prove identity is not a "ticket to admission" of other acts evidence anytime a defendant denies committing the acts alleged). As a result, identity is not at issue and neither identity nor *modus operandi* are relevant bases for admission of other acts evidence.

**II.     The evidence of other acts is insufficient for a jury to find by a preponderance of evidence that Defendant Officers committed the acts alleged.**

Admission of other acts evidence requires not only a valid non-propensity purpose, but also a finding that the evidence is sufficient for a jury to find that the particular defendant committed the acts alleged. *Gomez,* 763 F.3d at 854; *citing Huddleston v. United States*, 485 U.S. 681, 689 (1988). This standard is not met here because either Defendant Officers were not involved in the alleged misconduct, there is insufficient evidence for the jury to conclude the acts occurred, or both.

None of the witnesses identified have had their abuse claims adjudicated against any Defendant in this case by a court of law (although some were awarded reparations by the City of Chicago). Testimony and/or cross-examination concerning other acts without corroborating evidence is insufficient for the jury to find that the acts occurred. *See* Fed. R. Evid. 608(b) (extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.) Further, in addition to being inadmissible hearsay, self-serving testimony of a criminal defendant at a motion to suppress hearing or unsworn statements are insufficient proof of physical abuse and coercion without some independent corroboration "such as eyewitness reports, medical records, and /or photographs, in support thereof." *Hinton v. Uchtman*, 395 F.3d 810, 819 (7th Cir. 2005). Plaintiff has no evidence corroborating these other allegations of physical abuse, nor the allegations of other misconduct. Settled civil lawsuits and vacated convictions do not meet his burden, nor can testimony be

bolstered with prior statements, prior testimony, medical records, or the investigation of the Office of Professional Standards ("OPS"), which are all inadmissible. Rules 801 through 804 would also bar hearsay statements made to OPS and the Special Prosecutor as well as medical records. Further, Rule 407 bars admission of any investigations by OPS, including but not limited to the Goldston Report and CR files. *Maddox v. Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident."); citing *Thompson v. City of Chicago*, 2004 U.S. Dist. LEXIS 31489, at *2-4 (N.D. Ill. July 6, 2004) (St. Eve, J.) (barring evidence of disciplinary action by OPS).

Finally, any reports of alleged abuses by investigating bodies are also not competent evidence, as they lack foundation and are hearsay, and in many cases double hearsay. This includes, but is not limited to, the Report of Special State's Attorney Edward J. Egan and the Goldston and Sanders Reports.

Since there is no admissible evidence to corroborate the 404(b) other act testimony, these allegations are insufficient for a jury to find that the incidents occurred. *See, e.g., Patterson v. City of Chi.*, 2017 WL 770991, at *13 (N.D. Ill. Feb. 28, 2017) (St. Eve, J.) (barring evidence of other lawsuits pursuant to Rule 403, in part because "the allegations have not been proven"). Thus, these other acts are inadmissible. *Gomez,* 763 F.3d at 854.

**III.     The prejudicial effect of other acts evidence far outweighs any probative value.**

The Seventh Circuit has long recognized that introducing evidence of other bad acts, even for a purpose enumerated in Rule 404(b), "inescapably creates a risk of the forbidden inference, that a person who violates the law at one time has a bad character and therefore violated the law at a different time." *United States v. Beasley*, 809 F. 2d 1273, 1278 (7th Cir. 1987). For this reason, courts "must . . . evaluate whether the evidence, although relevant and within the exception [to

Rule 404(b)], is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character." *Id*. at 1279.

As with all evidence, Rule 404(b) requires courts to analyze other acts evidence to ensure that the "probative value is not substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Gomez*, 763 F.3d at 856-57. Probative value is determined by looking at the relevance of the evidence, and the availability of "evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). As addressed above, other allegations of misconduct have little, if any, potential to resolve a genuine issue in this case, without reliance on propensity. Moreover, the availability of other less prejudicial evidence further minimizes any probative value of other acts evidence. *See United States v. Thomas*, 321 F. 3d 627, (7th Cir. 2003) (other acts evidence was properly excluded, pursuant to Rule 403, because it was unnecessary given there was other evidence to establish defendant's knowledge); *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989) (holding that "the prejudicial impact [of extrinsic acts evidence] was unfair because the incremental value of this evidence was minimal; the government had other direct evidence to prove [defendant's knowledge]."). Other acts evidence is least probative when eyewitness testimony on the issue is available. *United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002) (conviction for drug possession was not probative of intent where jury heard direct testimony regarding the drug sale from the buyer); *United States v. Merriweather*, 78 F. 3d 1070, 1077 (6th Cir. 1996) (reversible error to admit a prejudicial voice recording where direct testimony regarding the identity of defendant was available).

There is a real and virtually inevitable risk that the other acts evidence will lead to improper inferences of bad character, causing unfair prejudice to defendants. *Michelson v. United States*,

11

335 U.S. 469, 475-76; *accord Haywood*, 280 F. 3d at 723 (finding that other acts evidence "invited the jury to conclude that [defendant] is a 'bad person . . . and that if he did it once he probably did it again."(internal quotations omitted)); *United States v. Queen*, 132 F. 3d 991, 996 (4th Cir. 1997) (jurors hearing other acts evidence have "the tendency to condemn not because the accused is believed guilty of the present charge but because he has escaped unpunished from other offenses") (internal citation omitted). "[T]he likely effect of the evidence in poisoning [defendant's] character" in this case far outweighs any probative value of other acts evidence. *Beasley*, 809 F.2d at 1279; *accord Manuel v. City of Chicago*, 335 F. 3d 592, (7th Cir. 2003) ("labeling [plaintiff's supervisor] a 'racist' had the potential of being unfairly prejudicial to the [defendant's] case."). In addition to attacks on their character, Defendants risk a verdict based on conduct outside of this litigation. When faced with evidence of other bad acts, a jury has "the tendency to condemn not because the accused is believed guilty of the present charge but because he has escaped unpunished from other offenses." *Queen*, 132 F. 3d at 996 (internal citation omitted). A jury is also less likely to hold a plaintiff to his burden of proof on his case, even if it finds insufficient proof of plaintiff's allegations, if it believes the defendant committed other wrongs. *See Thomas*, 321 F. 3d at 635.

A verdict which punishes a defendant for acts outside of the litigation is never permissible. *See Phillip Morris USA v. Williams*, 549 U.S. 346, 356-357 (2007). Where there is a risk that a jury will base its verdict on harm caused to others, "a court, upon request, must protect against that risk." *Id*. at 357. This protection is necessary because permitting plaintiff to use this litigation to seek damages for wrongs to others violates Defendants' right to due process. *Id*. at 353. Most of the other acts witnesses have filed civil claims for the conduct they would testify about, which have been resolved. Permitting plaintiff to use these allegations as a basis for damages in the present action would violate defendants due process rights, a prejudice which warrants exclusion pursuant to Rule 403. Fed. R. Evid. 403.

Finally, jury confusion and judicial economy provide additional bases for barring the other acts evidence. Introduction of the other acts evidence will result in several mini-trials, distracting the jury's attention from the issues and expending a large amount of court time on collateral matters. *See Manuel*, 335 F.3d at 597 (mini-trials regarding other incidents of discrimination would have shifted the focus away from plaintiff's allegations, confusing the jury). The introduction of just one of these other acts evidence will be time consuming because, in addition to the testimony regarding the event, it involves cross-examination of the witness and presentation of rebuttal witnesses, in essence a "trial within a trial" for the jury to consider. *See Hammelmann*, 869 F. 2d at 1027.

## IV.  Cautionary instructions cannot remedy the prejudice inherent in this evidence.

The damage done by the introduction of other alleged misconduct cannot be prevented with a cautionary instruction to the jury. "Except in unusual circumstances, evidence of a defendant's bad acts are almost always suggestive of a defendant's propensity to commit other bad or criminal acts and tend to impugn his or her credibility, and errors in admitting such evidence consequently often go to the fundamental fairness of the trial." *Shackleford*, 738 F. 2d at 783 (admission of defendant's prior misconduct was reversible error despite cautionary instruction to jury). Even with a cautionary instruction, the other acts evidence would "be difficult to confine . . . to proper bounds" leading to jury confusion over the issues. *United States v. Rogers*, 587 F. 3d 816, 822 (7th Cir. 2009). Thus, a limiting instruction is not a "sure-fire panacea for the prejudice resulting from the needless admission of [other acts] evidence." *Haywood*, 280 F. 3d at 724 (admission of other crimes was reversible error despite jury instruction that evidence could be considered only as to intent); citing *Garcia-Rosa*, 876 F. 2d at 222 ("highly probable that the jury drew impermissible inferences" from the extrinsic acts evidence, despite the instruction to the jury to consider the evidence only as to knowledge). "[I]f limiting instructions could remedy all such errors, [a party]

13

would easily be able to circumvent Rules 404(b) and 403." *Id.* (reversible error to admit other acts evidence); *citing United States v. Jimenez*, 613 F.2d 1373, 1377 (5th Cir. 1980) ("Even the most careful of instructions, however, would not have sufficiently limited the prejudicial nature of the extrinsic offense evidence in this case.") In the present case, a limiting instruction will not adequately protect Defendants from the risk that the jury will improperly rule based on propensity, character, or conduct outside this litigation. As a result, all other "bad acts" evidence must be barred.

## Local Rule 37.2 Compliance Certification

The undersigned has conferred with counsel for Plaintiff regarding this motion *in limine*. Based upon that conference, the undersigned has determined that the matter at issue in this motion *in limine* is actually in dispute and a ruling is necessary.

Respectfully submitted,
 PHILIP CLINE
 DANIEL MCWEENY[3]
 STEVEN BROWNFIELD
 WILLIAM PEDERSEN
 JOHN SOLECKI
 ROBERT DWYER
 ESTATE OF JOHN YUCAITIS
 ESTATE OF RICE
 ESTATE OF WILLIAM HIGGINS

 /s/ *Stacy A. Benjamin*
 Special Assistant Corporation Counsel

 Eileen E. Rosen
 Stacy A. Benjamin
 Andrew J. Grill
 Brittany D. Johnson-Delgado
 ROCK, FUSCO & CONNELLY, LLC
 333 W. Wacker, 19th Fl
 Chicago, IL 60606
 T: 312-494-1000

---

[3] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.

14

F: 312-494-1001
sbenjamin@rfclaw.com