IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | Case No. 21 CV 1159 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Jeffrey I. Cummings |
| v. | ) | |
| | ) | Magistrate Judge M. David Weisman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 16 TO BAR ANY EVIDENCE OF A "PATTERN OR PRACTICE" AS A *BRADY* CLAIM OR FOR ANY OTHER PURPOSE

Defendant Officers[1], by their respective undersigned counsel, respectfully move in *limine* to bar any evidence of making arguments of a co-called "pattern or practice" of alleged abuse. In support thereof, Defendant Officers state as follows:

In this matter, Plaintiff bases his Fourteenth Amendment Due Process claim, in part, on an allegation that the Defendant Officers deliberately concealed the existence of a pattern and practice of abuse at Area 2 of the Chicago Police Department. Defendant Officers have moved for summary judgment on this claim. *See* Dkt. 494 at 33-38 (motion); Dkt. 535 at 27-37 (reply). This motion for summary judgment remains pending and Defendant Officers incorporate the arguments into this motion *in limine*. Further, the Court since the Court has bifurcated trial of the *Monell* claim, (dkt. it should likewise bar any evidence or argument or reference to any historical and unrelated misconduct allegations in Area 2 for the reasons discussed below. This information is

---

[1] [1] Defendant City joins in the relief request in this this motion.

1

not relevant to the claims Smith has alleged against Defendant Officers in this case and even if somehow relevant it should be barred under Rule 403.

I. **Allegations of unrelated misconduct by non-defendant police officers in Areas 2 and 3 is not relevant and runs afoul of Rule 403.**

    A.    Evidence of unrelated misconduct by non-defendant officers is not relevant to Plaintiff's claim that Defendant Officers violated Plaintiff's constitutional rights.

Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action. Fed.R.Evid. 401. Evidence that is not relevant to any fact of consequence in determining the action is not admissible. Fed.R.Evid. 402. Allegations of misconduct by non-defendant police officers in Areas 2 and 3 during the 1980s is not relevant to any fact the jury will need to determine and should be excluded.[2]

The issue before the jury is whether Defendant Officers violated Plaintiff's constitutional rights. Whether non-defendant police officers abused other suspects or committed misconduct in other cases has no tendency to make it more or less probable that Defendant Officers injured Plaintiff.[3] Rather, it is patently obvious that Plaintiff would seek to introduce evidence of allegations of unrelated misconduct by non-defendant officers as propensity evidence. This type of litigation tactic is precisely why Rule 403 exists: to preclude such improper evidence. Indeed, "[u]nrelated allegations and incidents of police misconduct possess minimal – if any – probative

---

[2] While such evidence may be relevant to a *Monell* pattern and practice claim, Plaintiff's *Monell* claim was bifurcated by the Court.

[3] At this time, Defendants are uncertain as to each item of "pattern and practice" evidence – if any – Plaintiff will seek to introduce. Specific Rule 404(b) evidence disclosed and anticipated at trial is addressed in Defendants' motion *in limine* no. 11. To that end, Defendants reserve the right to specifically argue as to why each allegation proffered by Plaintiff is prohibited for the reasons set forth in this overarching motion *in limine*.

2

value while carrying a great risk of prejudice to police officers." *Martin v. City of Chicago*, No. 15 CV 4576 2017 WL 2908770, at *6 (July 7, 2017).

As set forth in Defendant Officers' motion for summary judgment, *Brady* does not require Defendant Officers to disclose unrelated and unproven allegations of misconduct. *See* Dkt. 494 at 33-38 (motion); Dkt. 535 at 27-37 (reply); *Brady v. Maryland,* 373 U.S. 83 (1963); *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (*Brady* does not require police officers to disclose their misconduct whether that misconduct occurs in or out of the interrogation room); *Brown v. City of Chicago*, 633 F.Supp.3d 1122, 1163-64 (N.D.Ill. 2022) (under *Brady*, officers not required to disclose alleged coercive questioning of individuals who were not witnesses in the plaintiff's criminal trial); *see also Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), overruled in part on other grounds, *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006).

Indeed, although *Gauger* is frequently cited for the principle that information known to a plaintiff cannot be "suppressed" under *Brady*, the case actually stands for a broader and much more comprehensive principle of law: police officers do not have a *Brady* duty to tell the truth (*i.e.*, accurately disclose the results of their investigations) or to create truthful evidence by disclosing the truth (*i.e.*, that they allegedly abused other criminal suspects). *Gauger*, 349 F.3d 354, 360 ("Gauger wants to make every false statement by a prosecution witness the basis for a civil rights suit, on the theory that by failing to correct the statement the prosecution deprived the defendant of *Brady* material, that is, the correction itself."); *see also Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) ("Harris essentially seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is "suppressing" evidence of the truth by making the false statement. This court has already foreclosed this extension.").

The plaintiff in *Gauger* attempted to bring a *Brady* claim based on the defendant police officers' failure to tell the truth about his interrogation. *Gauger*, 349 F.3d at 360. The Seventh Circuit rejected the *Brady* claim stating:

> Gauger argues that *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a due process case that entitles criminal defendants to be shown any exculpatory evidence (including evidence usable to impeach a prosecution witness) in the possession of the prosecutors, required the detectives to give truthful versions of Gauger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial. *We find the proposed extension of Brady difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence.*"

*Id*. Thus, *Gauger* expressly identified and rejected the plaintiff's attempt to conflate the *Brady* duty to disclose exculpatory or impeaching evidence with a *Brady* duty to tell the truth about an investigation or create evidence for the criminal defendant. *Id.* To emphasize this point of law, the court observed that adopting the proposed extension of *Brady* would not benefit that particular plaintiff in any event: "Indeed [even if the court were to adopt the extension] the duty to disclose falls out, because Gauger knew what he had said at the interrogation." *Id*.

As such, *Gauger* does not merely stand for the principle that there is no *Brady* duty to disclose that which is known to a criminal defendant—this principle is a fundamental element of the claim itself and is neither new nor groundbreaking nor even clarifying. *Brady,* 373 U.S. at 87. Instead, *Gauger* rejects any attempt to conflate the *Brady* duty to disclose evidence (exculpatory or impeaching) with a duty to create such evidence by requiring police officers to "disclose" the truth and thus makes explicit the obvious corollary to the long-standing principle of law that the State has no duty to conduct an investigation or assist in the preparation of a defendant's case.[4]

---

[4] *See, e.g., United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."); *Harris*, 486 F.3d at 1015 (*Brady* "'does not

4

The corollary is that police officers do not have a *Brady* duty to tell the truth or to create truthful exculpatory or impeaching evidence. *Gauger*, 349 F.3d at 360; *Harris*, 486 F.3d at 1017. In short, allegations of police dishonesty do not state a claim under *Brady*. *Id.*; *Saunders-El v. Rohde*, 778 F.3d 556, 562 (*Brady* does not require police officers to disclose their misconduct whether that misconduct occurs in or out of the interrogation room). To the extent there could have been any question as to the holding in *Gauger*, that question was put to bed in *Saunders-El*. There, the plaintiff also attempted to base a *Brady* claim on allegations that the defendant police officers failed to disclose their misconduct (planting blood evidence at the crime scene to frame plaintiff for a crime he did not commit) in his criminal investigation to the prosecutor. 778 F.3d 556, 561. The plaintiff claimed "that the police officers' failure to admit their misdeeds to the prosecution amounts to a withholding of exculpatory evidence in violation of *Brady*." *Id.* The court rejected the claim explaining:

> We have dealt on several occasions with similar *Brady* claims concerning accusations of police dishonesty. In *Gauger v. Hendle,* for instance, we rejected the plaintiff's argument that *Brady* requires police to disclose truthful versions of statements made during interrogations, finding "the proposed extension of *Brady* ... difficult even to understand," since "[i]t implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." 349 F.3d 354, 360 (7th Cir. 2003), *overruled in part on other grounds by Wallace v. City of Chicago,* 440 F.3d 421, 423 (7th Cir. 2006). Later, in *Sornberger v. City of Knoxville,* we determined that *Brady* cannot "serve as the basis of a cause of action against [police] officers for failing to disclose [the circumstances surrounding a coerced confession] to [a] prosecutor...." 434 F.3d 1006, 1029 (7th Cir. 2006) (citation and internal quotation marks omitted).

*Id.* at 562. The court continued:

> Consequently, in *Harris v. Kuba,* 486 F.3d 1010, 1017 (7th Cir. 2007), we upheld the dismissal of a *Brady* claim premised on an argument "that an officer is

---

place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case.'" (internal citations omitted)).

'suppressing' evidence of the truth by making [a] false statement to a prosecutor,"
noting that "[t]his court has already foreclosed this extension" of *Brady.* In the end,
Saunders– El seeks to charge the officers with a *Brady* violation for keeping quiet
about their wrongdoing, not for failing to disclose any existing piece of *evidence*
to the prosecution. But our case law makes clear that *Brady* does not require the
creation of exculpatory evidence, nor does it compel police officers to accurately
disclose the circumstances of their investigations to the prosecution.

*Id.* (emphasis original). Thus, under *Saunders-El* and *Gauger*, a police officer's silence or dishonesty regarding his or her misconduct in an investigation is simply not a violation of *Brady*. All plaintiff alleges here is that Defendant Officers either were silent or lied about their alleged misconduct in his and other cases. Again, under Seventh Circuit precedent, *and consistent with their own constitutional rights under the Fifth Amendment*, "keeping quiet about their own wrongdoing" is not a violation of *Brady*. *Saunders-El*, 778 F.3d at 562. Nor is lying about it—even under oath. *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police officers testify *truthfully*." (emphasis original)). Whether in plaintiff's criminal case or others, defendants had no constitutional duty to disclose their misconduct hence any evidence of such alleged misconduct is not relevant to any *Brady* claim.

Defendant Officers also had no duty to investigate allegations of misconduct against *other* officers in *other* cases (assuming they even knew about them) because "[p]olice officers are not constitutionally mandated to conduct an investigation at all." *Bandari v. City of Chicago*, 2000 WL 89135, at *6 (N.D. Ill. 2000) (rejecting the allegation that defendants failed to conduct an investigation into alleged police misconduct, and noting that a failure to investigate "does not rise to the level of a constitutional violation"); *see also Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (N.D. Ill. 1993), *aff'd* 23 F.3d 410 (1994) (noting there is no federal constitutional mandate for police officer to conduct investigation into the plaintiff's assault claim). And even if Defendant Officers had conducted an investigation into allegations of misconduct against other officers or at

6

some point had become aware of the results of any such investigation, they had no constitutional duty to disclose the results. *See e.g.*, *Williams v. City of Boston*, 784 F.2d 430, 435 (1st Cir. 1986) (there is no constitutional duty to share the results of a police investigation with the public).

Thus, to read Plaintiff's pattern and practice allegations as anything other than a *Monell* claim, the Court must ignore *Gauger* and *Saunders-El* and extend *Brady* to require every police officer to contact every criminal defendant and disclose any misconduct he or she or any *other* police officer assigned to the same station has ever engaged in *or been accused of* just in case such disclosure might help that defendant's case. And if this new duty now applies to police, it would also apply to prosecutors—the original holders of the *Brady* duty. Yet the Seventh Circuit has found it does not. *See United States v. Dabney*, 498 F.3d 455, 459 (7th Cir. 2007) (Criminal defendant had no proof that "unsubstantiated complaint registers contained admissible impeachment evidence. Because extrinsic evidence cannot be introduced to prove specific conduct attacking a witness's credibility, FED. R. EVID. 608(b), the complaint registers would have been inadmissible to rebut the officers' denials of the allegations." citing *United States v. Veras*, 51 F.3d 1365, 1375 (7th Cir. 1995) (suppressed misconduct allegation against police officer witness was not material because inadmissible under Rule 608(b). If it were otherwise, prosecutors too then would be required to disclose to every criminal defendant every alleged instance of police misconduct they became aware of during the course of their daily practice just in case that alleged misconduct could be useful to that defendant. That sounds just like a duty to investigate and a duty to create evidence— duties that no circuit has ever found to exist under *Brady* indeed duties that our circuit has expressly rejected. Simply put, even if some of the allegations of torture at Area 2 and 3 were true, the shocking and appalling nature of those allegations cannot and should not be

used to create constitutional rights that simply do not exist or to implausibly expand rights that do exist.

Because failing to disclose their alleged misconduct is not a violation of *Brady*, the purported evidence of such misconduct is not relevant to whatever *Brady* claim the Court can glean from plaintiff's non-pattern and practice allegations and should be barred. Moreover, Plaintiff failed to establish that any Defendant Officer intentionally concealed evidence from Plaintiff. Indeed, even when responding to summary judgment, Plaintiff merely made vague allegations and constantly referred to "defendants" and that such impeachment evidence existed but has still never defined it. Dkt. 321 at 31-41. At no time did Plaintiff point to any act by any Defendant Officer to suppress this information.

Allowing Plaintiff to introduce evidence of unrelated misconduct by non-defendant officers will create a three-ring circus in the courtroom and undo what the Court sought to do when it bifurcated the *Monell* claim: focus the trial on the actions of the *Defendant Officers* and not the Chicago Police Department as a whole. Should such evidence be admitted a trial, Defendant Officers would be compelled to offer contrary evidence. In short, this would transform this single trial into a series of mini-trials; something that would confuse the issues and mislead the jury as to the actual issue before it. Accordingly, it should be precluded.

**II.     Allegations of unrelated misconduct by non-defendant police officers runs afoul of Rule 403.**

Additionally, these unrelated allegations of misconduct should be precluded under Rule 403. Unrelated allegations and incidents of police misconduct possess minimal – if any – probative value while carrying a great risk of prejudice to Defendant Officers. *See Martin v. City of Chicago*, No. 15-CV-04576, 2017 WL 2908770, at *6 (N.D. Ill. July 7, 2017); *see also Martinez v. City of*

8

*Chicago,* No. 14-cv-369, 2016 WL 35338823, at *10–11 (N.D. Ill. June 29, 2016); *Pierce v. Ruiz,* No. 13 CV 6824, 2016 WL 5912890, at *5 (N.D. Ill. Oct. 11, 2016); *Maldonado v. Stinar,* No. 08 C. 1954, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) ("[E]vidence of police conduct unrelated to the Defendant Officers in this case has only minimal probative value and is highly inflammatory and prejudicial."); *Saunders v. City of Chicago,* 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004) (barring evidence of other cases of police misconduct because it is "marginally probative at best, and ... highly inflammatory and prejudicial").

**III.     The Court should also bar any reference to the Sanders-Goldston Report, the Goldston Report, and the Special State's Attorney Report.**

It is also anticipated that Plaintiff will seek to introduce reports created *after* Smith's criminal trial such as the Sanders Report, the Goldston Report, and the Report of the Special States' Attorney. Notably, these reports are all addressed in the Complaint under the heading of "pattern and practice" evidence that the City "Ratified, Condoned and Facilitated". *See* Dkt. 82 at 30, ¶¶ 134-137, 152-155. Because these reports have to do with the purported policy of the City of Chicago, and the Court bifurcated Plaintiff's *Monell* claim, and they were all created *after* Smith's criminal trial it was not even possible for Smith to have obtained these reports in time for him to have used them at trial. These documents are simply not relevant to the claims Plaintiff has against the Individual Defendants. In addition, allowing Plaintiff to argue, reference, or otherwise introduce any evidence relating to these reports would undermine the Court's reasoning in bifurcating *Monell* – focusing the evidence at trial on the interaction between Plaintiff and Defendant Officers and not on unrelated allegations of misconduct.

**Local Rule 37.2 Compliance Certification**

The undersigned has conferred with counsel for Plaintiff regarding this motion *in limine*. Based upon that conference, the undersigned has determined that the matter at issue in this motion *in limine* is actually in dispute and a ruling is necessary.

Respectfully submitted,

PHILIP CLINE
DANIEL MCWEENY[5]
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

---

[5] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). No further action having been taken, counsel for the remaining individual defendants include his name here as a placeholder.