# Exhibit F

```
 1    STATE OF ILLINOIS    )
                           )  SS:
 2    COUNTY OF C O O K.   )

 3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE            )
 5    STATE OF ILLINOIS,           )
                                   )
 6                 Plaintiff,      )
                                   )
 7         vs.                     )  No. 87 CR 15089-01
                                   )
 8    ROBERT SMITH,                )
                                   )
 9                 Defendant.      )

10         REPORT OF VIDEO-CONFERENCE PROCEEDINGS at the

11    hearing of the above-entitled cause before the

12    HONORABLE ADRIENNE E. DAVIS, Judge of said Court, on

13    the 23rd day of October, 2020.

14         APPEARANCES:
           O'ROURKE & MOODY,
15         Appointed Special State's Attorney, by:
           MR. MYLES O'ROURKE and
16         MR. DEBORAH COHEN,
           Assistant Special State's Attorneys,
17              appeared, via Zoom,
                on behalf of the People;
18
19         CHANEN & OLSTEIN, by:
           MR. STUART CHANEN and
20         MR. ARIEL OLSTEIN,
                appeared, via Zoom,
21              on behalf of the Defendant.

22

23
      Mary Ellen Kusibab, Official Court Reporter
24    CSR License No. 084-004348
```

1

# EXHIBIT 2

```
1          THE COURT:  Counsel on Robert Smith, is Mr. Chanen
2     going to be joining?
3          MR. CHANEN:  I'm here, Your Honor.
4          THE COURT:  Okay.  You're right there.
5              I'm going to take you all into a breakout room.
6     I kind of think I know what's going on, but maybe I
7     don't.  I don't know.  So we're going to be in --
8              Mr. Chanen, Ms. Cohen, how long do you think
9     we're going to need?
10         MR. O'ROURKE:  Your Honor, I believe we'll
11    probably --
12             This is Special State's Attorney Myles
13    O'Rourke.
14             I believe we'll need five to ten minutes.
15         THE COURT:  That's what I thought.  That means ten
16    minutes for real.  We'll be in recess for about ten
17    minutes.
18                           (Whereupon, the following proceedings
19                            were held via Zoom conferencing but
20                            not broadcast.)
21         THE COURT:  All right. Counsels, can you make the
22    record.
23         MR. O'ROURKE:  Good morning again, Your Honor.  My
24    name is Myles O'Rourke; that's, O-'-R-o-u-r-k-e.  I'm
```

1   the Special State's Attorney in this matter.  And
2   together with me is an Assistant Special State's
3   Attorney -- my colleague, Deborah Cohen -- C-o-h-e-n --
4   for the record, Your Honor, for the People.
5       MR. CHANEN:  Stuart Chanen -- S-t-u-a-r-t;
6   Chanen -- C-h-a-n-e-n -- for Mr. Smith.
7       MR. OLSTEIN:  Ariel Olstein -- A-r-i-e-l,
8   O-l-s-t-e-i-n -- also for Mr. Smith.
9       THE COURT:  Just so the record is clear, we are in
10  a breakout room with the court reporter.  The parties
11  have advised me of developments in this matter.  We will
12  go back into the larger courtroom -- virtual courtroom
13  on YouTube Live.  But for purposes of this portion, we
14  are in a breakout room with the court reporter present.
15          Counsels.
16      MS. COHEN:  Would you like me to proceed, Myles?
17      MR. O'ROURKE:  Please do.
18      MS. COHEN:  Your Honor, this may be repetitive of
19  what we earlier discussed.  We, as the Special
20  Prosecution Office, have been reviewing -- both
21  individually and collaboratively -- all the transcripts,
22  reports, evidence, witness testimony, previous motions
23  and rulings, and any and all materials related to the
24  convictions of Robert Smith.  TIRC referred us to

1  consider the voluntariness not only of the confession
2  itself, they also invited us to look at the underlying
3  evidence separate and apart from the unsigned
4  confession.
5        Upon reviewing and reinvestigating this matter,
6  the State has formed an opinion that there are critical
7  issues with the evidence that was recovered, the
8  evidence that was never tested and the evidence that was
9  never sought to be tested or recovered.  In the interest
10 of justice, and at this time without further delay, we
11 hereby move to dismiss the charges of first degree
12 murder for which Robert Smith is serving his present
13 sentence.  And I will proceed by highlighting some of
14 the -- a few of the main key points we found in our
15 investigation.
16       Mr. Smith had no criminal --
17       Excuse me; strike that.
18       (Continuing.) -- had no violent history prior
19 to the crimes that he was convicted of.  The police
20 reports in Mr. Smith's case were absent of key reports
21 regarding the recovery of key evidence that was used to
22 convict Mr. Smith.  The previous testimony by officers
23 regarding this key evidence could not be validated by
24 police reports, nor did some of it make sense.  Many

1   items were missing from these police reports regarding
2   key evidence and other findings.
3   　　　　For instance, on the morning of September 19,
4   1987, at minimum, ten officers from the Chicago Police
5   Department, including technicians from the police crime
6   lab, investigated the scene of the crime for several
7   hours and took photos and collected relevant evidence.
8   One of the key pieces of evidence used against Mr. Smith
9   was a pair of bloody underwear that was not found,
10  recorded or listed by any of the original officers at
11  the scene, including the crime lab technicians.  This
12  underwear was allegedly discovered by different police
13  officers that had been questioning Mr. Smith at the
14  police station approximately some ten hours or so after
15  the scene had been thoroughly investigated by the
16  Chicago crime lab and other officers; and at which time
17  we do not even know the time of when this bloody
18  underwear was even recovered.
19  　　　　Additionally, the location in which the
20  underwear were found begs one to question the integrity
21  of the search.  Numerous technicians inspected the
22  stairs almost a half-day earlier and did not recover or
23  even record the existence of bloody underwear.  We have
24  the strange circumstance that two different sets of

1    detectives found an occasion to go back to the crime
2    scene, even though the mobile crime lab had been there
3    and recovered what they deemed to be as evidentiary.
4    There are no reports of these underwear, there are no
5    photographs of these underwear, there is no evidence of
6    this underwear and there was no testimony by who
7    allegedly found this underwear and the time of this --
8    of where it was recovered.
9            Police reports state that Mr. Smith used a
10   razor blade to murder both of the victims and further
11   put forward that Mr. Smith told the police officers that
12   he left the razor blade at the crime scene.  There is no
13   report, no testimony -- there is nothing -- that
14   addresses the police officers going back to the home to
15   search for the murder weapon.  There was no recovery of
16   this murder weapon.  And we noted that the house is an
17   approximately 1200 square foot home.  And at no time did
18   the officers review -- or go back to the scene to obtain
19   the murder weapon.
20           Those are some of the key points we address
21   with you, Your Honor.  If there's anything else, we're
22   happy to address it.
23       THE COURT:  Not for the Court.
24           Defense?

1    MR. CHANEN: Judge, we're -- we're thrilled to be
2 here today, and we're incredibly grateful to the
3 Special -- the Office of the Special Prosecutor for
4 torture cases, you know, especially Mr. O'Rourke and
5 Ms. Cohen. Bob Williams, as well, who worked on the
6 case. And I hope Bob a speedy recovery. We are fine
7 with -- if Your Honor is happy with that explication, we
8 are fine. We will stand on that. We stated some
9 additional reasons why we believe the evidence is faulty
10 in our summary judgment motion, but I don't feel for
11 purposes of this hearing that there's any value in going
12 piece by piece by piece of evidence. Certainly,
13 Ms. Cohen just explained quite clearly how the two major
14 pieces of evidence -- the purported murder weapon and
15 the bloody underwear -- that were clearly used against
16 Mr. Smith at his trial just cannot hold up. And I'm
17 happy to leave it there.
18    As a procedural matter, Your Honor, I would
19 only say that you need to also take the additional step
20 of vacating his conviction, obviously, before you go to
21 the step of dismissing the indictment. But, again,
22 we're grateful that they're both moving to vacate the
23 conviction and then choosing not to retry him, although
24 that follows logically from the reasons they're moving

7

```
 1    to vacate the conviction.
 2              One last procedural issue, Judge, is we have a
 3    clerk standing in the hallway with the proposed order in
 4    hand.  And the reason that's important --
 5        THE COURT:  Where are they in the hallway?  Tell
 6    him to come in.
 7        MR. CHANEN:  I think he's just standing outside
 8    506.
 9        THE COURT:  Tell him to come in.
10        MR. CHANEN:  We can't, Judge, because I came up
11    with this clever plan and he doesn't have a cellphone
12    because when he tried to get into the building --
13        THE COURT:  Deputy, can you get whoever is
14    wandering in the hallway.
15        MR. CHANEN:  His name is Josh Groza.
16        THE COURT:  We can go off the record for a second.
17                    (Discussion held off the record.)
18        THE COURT:  Back on the record.
19        MR. CHANEN:  There's one -- thank you, Your Honor.
20    There's one additional issue.  Under the torture -- the
21    next step for Mr. Smith, after you sign the order and
22    after he is released, is he will be seeking a petition
23    for certificate of innocence.  This allows him to
24    receive -- if he gets that granted, it allows him to
```

8

```
 1    seek some state funding made available by the State of
 2    Illinois through the Court of Claims for any person who
 3    can show that they were wrongfully incarcerated.  It's
 4    not a matter of civil rights; it's a matter of IDOC's
 5    policy.  We are going to file that motion with you
 6    today.  It's just been --
 7         THE COURT:  You file that in Room -- you file that
 8    in the presiding judge.
 9         MR. CHANEN:  With the presiding judge?  Okay.
10         THE COURT:  Those matters are heard in the
11    presiding judge.
12         MR. CHANEN:  All right.  That's what we'll do.
13    When Mr. -- that's great.
14         THE COURT:  And I would tell you the room, but I
15    always screw up the room.
16         MR. CHANEN:  No, no; it's 101.  It's 101.
17         THE COURT:  Okay, 101.
18         MR. CHANEN:  Actually, if you don't mind, Judge, I
19    apologize.  When the clerk comes in to take the order
20    from you --
21         THE COURT:  He's sitting right across from me.  He
22    can probably hear you.
23         MR. CHANEN:  Josh, you'll just file the motion in
24    101 instead of in front of Judge Davis in 506.
```

9

```
 1            THE COURT:  Did you hear him?
 2            MR. GROZA:  101 instead of with you?
 3            THE COURT:  Yes.  Sit tight; I'm not going to let
 4   you leave without those motions.
 5            Off the record.
 6                 (Discussion held off the record.)
 7                 (Whereupon, the following proceedings were
 8                  held via Zoom conferencing and the
 9                  broadcasting of these proceedings was
10                  resumed.)
11          THE COURT:  All right.  We are back on record in
12   the matter of People versus Robert Smith.
13            Special State?
14       MR. O'ROURKE:  Good morning again.  My name is
15   Myles O'Rourke -- that's, O-'-R-o-u-r-k-e -- here as
16   Special State's Attorney, together with my colleague --
17   Deborah Cohen -- C-o-h-e-n -- here for the People.
18       MS. COHEN:  At this time, Your Honor, we would be
19   asking on Mr. Smith's case for the convictions to be
20   vacated; the sentence to be vacated; and motion, State,
21   nolle on all counts.
22       THE COURT:  Counsel, I assume there's no objection.
23       MR. CHANEN:  No objection, Your Honor.
24       THE COURT:  So conviction vacated, sentence vacated
```

```
 1      at the request of the Special State's Attorney.
 2               Special State's Attorney, am I fair to say in
 3      the interest of justice?
 4         MS. COHEN:  Yes.
 5         MR. O'ROURKE:  In the interest of justice, Your
 6      Honor.
 7         THE COURT:  In the interest of justice.
 8               Motion, State, nolle all counts.  Defense
 9      has -- and defendant to be released this case only.
10      Released from IDOC, this case only.
11               The defense has tendered an order indicating
12      pursuant to State's motion to vacate Robert Smith's
13      August 1990 conviction and September 1990 sentence.  The
14      State's motion to dismiss the indictment of Mr. Smith in
15      its entirety and with prejudice, and the Court being
16      fully advised in all the premises, it is hereby ordered
17      that Mr. Robert Smith's conviction and sentence are
18      vacated.  The indictment against Mr. Smith is dismissed
19      in its entirety with prejudice.
20               Illinois Department of Corrections is directed
21      to release Robert Smith in coordination with Smith's
22      counsel as soon as reasonably practicable, consistent
23      with Coronavirus and other IDOC rules and regulations.
24               And I am going to add the language to it, this
```

1   case only.  I don't have any reason to believe that
2   Mr. Smith has any other matters, but in the abundance of
3   caution.
4           Is there anything else?
5      MR. CHANEN:  Judge, first of all, thank you, Your
6   Honor, for all the time that you've given to the
7   court -- to the case.  And we also want to thank
8   Mr. O'Rourke and Ms. Cohen.  Because even though the law
9   and the ethics and the rules require when you conclude
10  that someone -- that justice requires the release of a
11  convicted inmate, it's still a very hard thing to do.
12  We understand that.  And we're grateful for them for
13  looking closely at the evidence that we brought to their
14  attention and for their making this motion today.  I
15  think it's a great thing, and we're grateful for it.
16          If you could just tell our clerk, please, when
17  you hand him the order to please change your
18  courtroom -- to change your name and your courtroom to
19  Judge Martin's name and courtroom for the notice of
20  motion.  And then we will coordinate with Judge Martin's
21  chambers if that date and time did not work for them; we
22  chose when we knew you'd be available.  But we'll work
23  on it from there.  But at least before it goes out to
24  any interested parties -- the notice of motion -- we'd

12

```
 1    like to make sure it says the right courtroom.
 2          THE COURT:  Do you hear that, Josh?
 3          MR. GROZA:  I heard that.
 4          THE COURT:  Mr. Chanen, you want him to make sure
 5    he changes the name on the other document to Judge LeRoy
 6    Martin, Jr., in 101; is that right?
 7          MR. CHANEN:  That's correct, Judge.  Thank you.
 8    And if there are any issues, he can step out of the
 9    building, go to his car and call us if he has any
10    questions.  We appreciate it, Judge.  Obviously with
11    Coronavirus and needing to be on this Zoom call -- you
12    know, privates, States -- required us to send Mr. Groza
13    instead of being there ourselves.
14          THE COURT:  Not a problem.  Is there anything else
15    from the parties?
16          MR. O'ROURKE:  Thank you, Judge, for your time.
17          THE COURT:  Thank you all.
18          MR. CHANEN:  Thank you, Your Honor.
19          THE COURT:  And, Special State's Attorneys, thank
20    you.
21                         (Which were all the proceedings
22                          had in the above-entitled cause
23                          on this date.)
24
```

13

```
1   STATE OF ILLINOIS   )
                        )  SS.
2   COUNTY OF C O O K   )

3

4                I, MARY ELLEN KUSIBAB, an Official

5   Court Reporter for the Circuit Court of Cook County,

6   Illinois, County Department, Criminal Division, do

7   hereby certify that I reported in shorthand the

8   proceedings had on the hearing in the above-entitled

9   cause; that I, thereafter, caused the foregoing to be

10  transcribed into typewriting, which I hereby certify

11  to be a true and accurate transcript of the

12  proceedings.

13

14

                       _____
16                     Mary Ellen Kusibab
17                     C.S.R. No. 084-004348
                       Circuit Court of Cook County, IL
18                     County Department - Criminal Division

19

20

21

22
    Dated September 7, 2021.
23

24
```

14