IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
|          Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
|          Defendants. | ) | |

**SMITH's OPPOSITION TO DEFENDANTS' MIL #1 TO BAR
USING ROBERT SMITH's PRIOR SWORN TESTIMONY**

Defendants' Motion in Limine #1, Dkt.580 ("Motion") asserts that Robert Smith's 1989 Suppression Hearing Testimony and his 2021 Deposition Testimony are hearsay and that the Court should bar their introduction into evidence. The Court should deny the Motion on two grounds. First, it is barred by the doctrine of judicial estoppel. Second, the Motion misapplies Federal Rule of Evidence ("FRE") 804 and Federal Rule of Civil Procedure ("FRCP") 32, both of which permit the use of prior sworn testimony of witnesses who are unavailable at the trial due to infirmity.

**NECESSARY FACTUAL AND PROCEDURAL BACKGROUND**

On September 19, 1987, Plaintiff Robert Smith was seized by Chicago Police Detectives and forcibly transported to Area 2 Violent Crimes, the site where Jon Burge and the Detectives under his command, including at a minimum, Detective Defendants Dwyer, Pedersen, Solecki, Higgins, McWeeny, Rice, and Yucaitis, tortured more than 100 men and boys into confessing to crimes they did not commit.

On February 6, 1989, Plaintiff Robert Smith testified at a Suppression Hearing in support of his motions to suppress and to quash. The motions sought to bar a transcribed confession (which Smith refused to sign) and which Defendants had beaten out of Smith. Smith described his beating in detail during the Suppression Hearing. Notably, at the time Smith gave this testimony he (1) did not have any medical records to support that he had been

beaten (and which did not come into his possession for another approximately 30 years), and (2) neither he nor his lawyer were provided with the now widely known information about the systemic torture that was regularly occurring at Area 2.

On November 17, 2021, Defendants took Robert Smith's approximately nine-hour deposition. As the requesting party, the Defendants controlled every aspect of that deposition. They had it videotaped. They extensively cross-examined Smith. They had all the exhibits they wanted to use at their disposal.

On February 21, 2022, Dr. Steven Dinwiddie diagnosed Smith with Major Neurocognitive Disorder, more commonly referred to as dementia, likely vascular type. Dr. Dinwiddie concluded that Smith was "totally disabled" and "in need of guardianship."

In February 2022, Smith's counsel alerted Defendants' counsel of Smith's diagnosis. On March 29, 2022, Smith's counsel alerted Judge Weissman to Smith's dementia, and in April, 20022, Smith's counsel alerted Judge Guzman.

On April 4, 2022, Cook County Probate Judge Aicha Marie MacCarthy concluded that Smith needed a Guardian and appointed Diane Yeager Smith, Smith's ex-wife, to be Temporary Guardian. On July 8, 2022, Judge MacCarthy appointed Diane to be Permanent Guardian of Robert's person and estate under Sections 203 and 204 of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, 755 ILCS 8/203-204. The court concluded that Smith (a) was suffering from Major Neurocognitive Disorder; (b) was no longer capable of making "personal and financial decisions;" (c) had been the victim of financial exploitation; and (d) that a guardian was necessary to assist him in several aspects of his life, including to "direct ongoing litigation regarding his false imprisonment based on a forced confession." See Exhibit A.

On August 11, 2022, pursuant to Federal Rule of Civil Procedure 25(b), Judge Guzman appointed Diane to be Smith's Special Representative for this litigation.

**ARGUMENT**

**I.      Defendants' Motion is Barred by Judicial Estoppel.**

The equitable doctrine of judicial estoppel bars a party from taking one legal position in litigation, and later, when that legal position is no longer favorable for that party, attempt to reverse its position on the same issue. *See generally Looper v. Cook Inc.*, 20 F.4th 387, 398 (7th Cir. 2021); *McCurry v. Kenco Logistics Servs., LLC*, No. 19-CV-4067, 2022 WL 198889, at *3 (N.D. Ill. Jan. 21, 2022), *aff'd sub nom., McCurry v. Kenco Logistic Servs., LLC*, No. 22-1273, 2022 WL 4284222 (7th Cir. Sept. 16, 2022). This is precisely what Defendants have done in this Motion. As Defendants themselves concede, when they found out that Smith had dementia and would not be able to testify live at his own civil rights trial, they had an important decision to make. They could either (1) challenge the diagnosis that Smith had dementia and try to force him to testify live at trial; or (2) they could agree with the diagnosis that Smith had dementia and then insist, as Defendants repeatedly have, that his dementia barred him from testifying live in this case. Defendants chose to forego a mental status exam of Smith under FRCP 35, and immediately embraced and asserted the argument that Smith's dementia made him unavailable to testify live.

Indeed, as Defendants themselves concede in the opening paragraph of their current Motion, Defendants moved to bar Smith's November 17, 2021 deposition testimony (and certain Smith-verified interrogatory responses) on the grounds that "he was legally incompetent at the time he testified [in November 2021]" and that he currently had "Major Neurocognitive Disorder, likely vascular dementia, a condition that had likely been present for more than a year." Motion at 1. They further state that his dementia "had been present since at least December 2021 . . . Smith was totally disabled and in need of guardianship." *Id.*

On September 19, 2024, this Court denied Defendants' motion to bar Smith's Deposition on competency grounds because FRE 601 does not require any specific level of "competency" for

a witness to testify. Dkts.485, 487.

As the Seventh Circuit explained in *Looper*, the judicial estoppel doctrine "protect[s] the integrity of the judicial process" by "'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Looper*, 20 F.4th at 398, *quoting New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). That is exactly what Defendants have done in this Motion. When the issue of dementia was first raised, Defendants repeatedly took the position that Smith would be unable to testify at the trial as a result. Now they argue the exact opposite: Smith's dementia *no longer* makes him unable to testify. This argument must be rejected. The very purpose of judicial estoppel is to block parties from "playing 'fast and loose with the courts.'" *Looper*, 20 F.4th at 398. Defendants may not, simply because they no longer like the position that they took from February 2022 to September 2024, "assume a contrary position." *Id*.

## II. Smith Has Already Established That He Is Unavailable to Testify.

In their Motion, Defendants simply declare, without citation, that Plaintiff cannot rely upon Dr. Dinwiddie's February 2022 dementia diagnosis to establish Smith's unavailability. They never explain why. They do not attach any medical or legal authority that would undermine the use of Dr. Dinwiddie's prior diagnosis for purposes of evaluating Smith's current ability to testify. They make a passing reference to Smith being "the proponent of the evidence," but they don't cite to any case or provide any explanation for why being the evidence's proponent makes the Dr. Dinwiddie dementia diagnosis insufficient to establish that Smith is not able to testify at trial.

The central point that Defendants intentionally ignore is that vascular dementia is not reversible. *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/dementia/vasculardementia#:~:text=Vascular%20dementia%20can't%20be, of%20mental%20and%20physical%20abilities ("Vascular dementia can't be cured"); https://www.uclahealth.org/news/article/ask-the-doctors-what-is-vascular-dementia-and-can-it-

4

be-prevented#:~:text=At%20this%20time%2C%20vascular%20dementia,to%20develop%20well%20before%20then ("vascular dementia cannot be reversed"). In July 2022 when Judge MacCarthy held that Smith needs a Guardian due to his dementia, and in August 2022 when Judge Guzman appointed Diane Smith as his Special Representative for this litigation, the diagnosis was judicially acknowledged. Defendants assert no basis to argue that somehow that diagnosis has changed such that Smith, now that time has progressed, will suddenly be capable of competently testifying live at trial. Unless Defendants can show (after all, they carry the burden on this motion) that both Johns Hopkins and UCLA's Medical Centers are wrong about dementia, and dementia actually is *reversible*, then the judicial showing Smith made previously is sufficient. The Sixth Circuit address this precise issue in *United States v. Campbell*, 845 F.2d 1374, 1378 (6th Cir. 1988) and then again in *United States v. Mallory*, 902 F.3d 584, 590 (6th Cir. 2018), when it held that a court should not require the party moving under 804(a) "to disprove the possibility of a 'miraculous rejuvenation' in order to prove an elderly witness's unavailability on account of illness."[1]

### III.    FRE 804 and FRCP 32(a)(4) Allow Smith's Prior Testimony.

Defendants do not dispute that FRE 804(b) and FRCP 32(a)(4) allow hearsay testimony to be admitted when "the proffered witness is unavailable because of infirmity, mental or physical illness," s*ee* Motion at 2, and Smith easily meets all of the rules' elements. *See* FRE 804(a)(1), 804(b)(2), and FRCP 32(a)(4)(C).

---

[1] Defendants make an absurd argument that if Smith is sufficiently competent "to be present in court most of the trial," then he must be sufficiently healthy to testify from the witness stand. See Motion at 3, n.1. It appears that Defendants have learned nothing about dementia during the 3-1/2 years that the parties have been dealing with this issue. There is a canyon of difference between (a) being able to sit in a courtroom, and (b) getting on a witness stand and reliably articulating answers that are posed above events anywhere from 5 minutes ago ("you recall a few minutes ago when your counsel asked you x…" to 38 years ago. Defendants are only feigning an inability to understand the distinction, but Smith's ability to sit in his wheelchair throughout the proceedings clearly is not a basis to grant Defendants' Motion.

Under Federal Rule of Civil Procedure 32(a)(4)(C), the "deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . that the witness is unable to attend or testify because of . . . illness, infirmity . . . ." Fed. R. Civ. P. 32(a)(4)(C). This rule could not be more straightforward. Similarly, Federal Rule of Evidence 804(a) provides:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant: . . .
>
>> **(4)** cannot be present or testify at the trial or hearing because of . . . a then-existing infirmity, physical illness, or mental illness.
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness [under 804(a)(4)]:
>
>> **(1)** *Former Testimony.* Testimony that:
>> **(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>> **(B)** is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.[2]

FRE 804. Other than their incorrect assertion that Smith is "available" to testify, Defendants offer nothing to suggest that these rules do not allow his 1989 Suppression Hearing testimony and his 2021 Deposition testimony to be admitted.

Defendants make two more arguments, both of which should be rejected. First, *Hall v. Jaeho Jung*, 819 F.3d 378 (7th Cir. 2016), quoted in Motion at 3, simply held that the district court was within its discretion to deny plaintiff's motion to permit deposition testimony under Rules 804(b) and 32(a)(4)(C) because plaintiff had failed to get his witnesses to the trial. *Id.* at 384. While the Court indicated that a jury can assess credibility more easily through live testimony than having a transcript read to them, this is hardly a novel concept, nor is it

---

[2] Smith has laid out in detail why the State's Attorney who prosecuted the matter during the Suppression Hearing was a predecessor-in-interest and had a similar motive to Defendants when cross-examining Smith at that hearing. *See* Smith Response to Defendants' MIL #7; *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394 (N.D. Ill. Feb. 6, 2014) (Kennelly, J.) and *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 988 (N.D. Ill. 2015) (Shadur, J.).

applicable here where Smith's deposition will be presented by videotape.

Defendants' final argument appears to be that the jury will be unable to assess Smith's credibility from his video deposition. Motion at 3. They do not, however, provide any evidentiary rule, case law, or social science to support that proposition, and there is no reason to believe that a jury is incapable of judging a witness's credibility from a deposition that is videotaped, particularly in this age of zoom calls, remote work, FaceTime and Facebook Live.

Smith respectfully requests this Court to deny Defendants' Motion.

Dated: May 14, 2025

                                              Respectfully submitted,
                                              *PLAINTIFF ROBERT SMITH JR.*

                                              By:    */s/ Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN, LLP
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law