IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SMITH'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE # 7
TO BAR PAUL WARD'S FORMER TESTIMONY**

Defendants move *in limine* to bar Plaintiff, Robert Smith, from using Paul Ward's testimony at Smith's February 8, 1989 Motion to Quash Arrest/Suppress Evidence ("MTS") hearing on the ground that it is inadmissible hearsay that does not qualify under any hearsay exception. Dkt. 585 ("Motion" or "Mot.") at 1-2. Defendants are incorrect, as Ward's testimony is admissible under two exceptions to the hearsay rule, as stated below.

**ARGUMENT**

In 1987, at the time of the underlying crimes for which Smith was wrongfully convicted, Paul Ward—Smith's uncle—resided near the victims' home. Ward came to the scene in the early morning hours of September 19, 1987, where he observed Smith and Smith's wife, Diane Yeager Smith, outside the house. Ward testified at the MTS hearing under oath regarding his observations and was cross-examined by the State.[1] His testimony is crucial to proving that Defendant Detective Daniel McWeeny fabricated a completely false basis to illegally "arrest" Smith at the scene for supposedly rushing into the house and diving headfirst into a pool of blood.

---

[1] Although Defendants claim that Ward was not disclosed as a witness for the MTS hearing, the record reflects that Smith "reserved the right to call anybody named in the police reports," and Ward was so named. Exhibit A to Mot. at 127:6-16. The MTS judge gave the State a chance to interview Ward before his brief testimony and allowed the testimony.

**1. Ward's Testimony Is Admissible Under Rule 804(b)(1).**

Under Rule 804(b)(1), once a witness has been deemed unavailable, his former testimony may be admitted into evidence as long as the party against whom the testimony is admitted had an opportunity and a similar motive to develop the testimony. *United States v. Reed*, 227 F.3d 763, 767 (7th Cir.2000); see also *United States v. Salerno*, 505 U.S. 321–22 (1992). Defendants concede that "Ward, who is dead, is unavailable". Dkt. 585-2. Despite being unavailable, they contend his former testimony does not qualify under Rule 804(b)(1)(B) because the prosecutors at Smith's criminal trial were "not Defendants' predecessors in interest and possessed wholly different opportunities and motives than Defendants possess in defending against this civil action." *Id.*

There is a split in the district regarding whether prior testimony from an unavailable witness in a criminal proceeding is admissible in a later civil rights action against defendant police officers. Defendants rely on *Butler v. Indianapolis Metro. Police Dep't*, 2009 WL 2092416 (S.D. Ind. July 13, 2009), a case outside of this district and not binding on the Court. They also rely on *Hill v. City of Chicago*, 2011 WL 3876915 (N.D. Ill. Sept. 1, 2011) and *Andersen v. City of Chicago*, No. 16-cv-01963, Dkt. 685 (N.D. Ill. Nov. 17, 2020), both cases that are easily distinguishable from this case, as explained below.

In contrast, Smith relies on *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394 (N.D. Ill. Feb. 6, 2014) (Kennelly, J.) and *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 988 (N.D. Ill. 2015) (Shadur, J.), two cases decided **after** *Butler* and *Hill*, which found that the state prosecutors were in fact predecessors-in-interest to the civil rights defendant officers under the Rule. *See also United States v. Burge,* No. 08CR846, 2009 WL 1108488, at *12 (N.D. Ill. Apr. 23, 2009) (finding that disgraced Area 2 Chicago Police Commander had a "like motive" to

2

vigorously cross-examine the unavailable witness in a §1983 civil trial such that the witness' testimony was deemed admissible under Rule 804(b)(1)(B) in Burge's later criminal trial).

The predecessor-in-interest component of Rule 804(b)(1) "does not require privity or some other form of legal relationship; a ***like motive*** to develop testimony about the same material facts is sufficient." *Fields*, at \*8 (citations omitted, emphasis added). Circumstances which influence motive to develop testimony include: "(1) the type of proceeding in which the testimony [was] given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties." *Reed,* at 768 (internal quotations omitted). All factors that favor admitting Ward's testimony.[2]

In *Volland-Golden*, a §1983 action, Judge Shadur held that although the State's interest in securing a conviction of the civil-right's plaintiff and the defendants' interest in avoiding damages liability are different in kind, when the State cross-examined the plaintiff in the criminal proceeding, it had "the requisite stake in the proceeding" to be held a predecessor in interest of defendants for the purposes of Rule 804(b)(1). The same is true here, so the predecessor-in-interest component is met.

When considering whether the "like motive" requirement has been met, "courts look to the similarity of issues and the purpose for which testimony was given." *Reed,* at 768. In *Reed,* a criminal case, the Seventh Circuit affirmed the district court's determination that the defendant had a "like motive" in questioning his then co-defendant who was "unavailable" in the defendant's retrial. In so ruling, the Court found that at the first trial, (1) the unavailable witness

---

[2] The trial strategy in the criminal proceeding was a "winner take all" in that, if the State lost the motions, it might have lost the opportunity to prosecute Smith at all. Thus, the prosecutor had an acute interest in undermining and rigorously cross examining all witnesses offered by Smith. The potential stakes in the criminal proceeding were also much higher since Smith's liberty and his life (the State was seeking the death penalty) were at stake. Here, only money damages, the majority of which, aside from punitives, will be paid by the City, are at stake.

3

testified and was cross-examined by the defendants' counsel; (2) the defendant's principal strategy was to impeach the witness' credibility and to establish his own alibi; and (3) the first trial, like the second, meant the defendant was subject to imprisonment. *Id.*

At the MTS hearing, like in this trial, Smith was arguing **the identical issues** – that the Defendant detectives coerced his false confession, beat and abused him, and violated his rights. There, the prosecutors were trying to ensure that Smith's confession was not suppressed, and his arrest was not quashed so that they could later prosecute him for double murder and arson. The direct corollary to that is that the prosecutor was trying to demonstrate that the (now defendant) officers' conduct was lawful and constitutional. To do so, the prosecutors had a vested interest in discrediting any allegations of abuse, coercion and the like, and concomitantly to discredit any witness offered by Smith that would put in doubt the credibility and testimony of the detective officers. "Where both proceedings are trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial." *Volland-Golden*, 89 F. Supp. 3d at 988 (citations omitted).

This symmetry of interest is also exactly what the Seventh Circuit enunciated in *Reed*. In *Andersen,* a minute order relied upon by Defendants, Judge Kendall did not find that there was an identical issue or motive. *Andersen v. City of Chicago*, No. 16-cv-01963, Dkt. 685 (N.D. Ill. Nov. 17, 2020) (attached as Exhibit B to Defendant's Motion). *Andersen* involved criminal trial testimony, not suppression hearing testimony. Therefore, the court held that the motivation of the ASA was solely "to present evidence to prove his case beyond a reasonable doubt." *Andersen,* and *Hill* for the same reason, are distinguishable because the issue in the MTS was **identical** to the issues in this trial – did Defendants act unlawfully and unconstitutionally or not.

4

Notably, Ward, called by Smith, directly contradicted the testimony that one of the defendants in this case, Detective McWeeny and other prosecution (now defense) witnesses had given about McWeeny's interactions with Smith. Just as the Defendants here would attempt to discredit Ward's testimony or frame his observations at the scene as limited to minimize them, the prosecutors had the exact same interest and attempted to do the same thing.

Defendants argue that "the stated purpose of Ward's testimony – to corroborate that Smith entered through the back door – was not a central issue in Smith's MTQ/MTSS hearing." Mot. at 6. But Defendants are mischaracterizing "the purpose" of Ward's testimony. The main reason for wanting the testimony here is the same reason it was proffered at the MTS hearing – to corroborate Smith's version of what occurred at the scene and to discredit Detective McWeeny and other defense witnesses' contention that Smith was "obstructing" officers and the crime scene, wasn't calm, and that immediately upon arriving at the scene, Smith "dove into a pool of blood." These are the identical issues that existed at the MTS hearing. In fact, Ward's testimony that he stood with Smith and Diane in front of the house for approximately five to seven minutes directly contradicts McWeeny's testimony that he (McWeeny) escorted Smith and Diane into the house, Smith immediately dove into a pool of blood, and Smith was then immediately "arrested" and transported to Area 2. Indeed, at the MTS, the prosecutor cross examined and tried to discredit Ward on this very topic, see MTS at F-131 ("You say you stood out there with them for a while; is that right?"), and surely Defendants will try to do the same at this trial through McWeeny's and other officers' testimony.

Defendants also contend that the short length of Ward's testimony weighs in their favor, but they are incorrect. In *Engel v. Buchan*, 981 F. Supp. 2d 781, 798–99 (N.D. Ill. 2013), a § 1983 case, the court allowed the prior testimony of an unavailable witness from a related civil rights case against some of the same former FBI agents and Buffalo Grove police officers. In rejecting the same argument Defendants make here, Judge Shadur acknowledged that the police officer

5

in the other action might have interrogated the unavailable witness more fully. *Id*. "But such an essentially tactical difference in approach does not necessarily indicate—let alone equate to—a difference in motive." *Id*. The court noted that, "[a]s *United States v. McClellan*, 868 F.2d 210, 215 (7th Cir.1989) has said, 'the emphasis in this inquiry is upon the motive underlying the cross-examination rather than the actual exchange that took place.'" *Id*. The same holds true here. Ward may not have been the most crucial or lengthy witness, but the prosecution had the same exact interest in discrediting as the Defendants do here.

### 2. Ward's Testimony Is Admissible Under the Residual Hearsay Exception.

Ward's testimony is also admissible under the residual hearsay exception found in Federal Rule of Evidence 807. That rule provides that a statement that is otherwise hearsay is admissible if two requirements are met:

(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Though Rule 807 is to be used "sparingly," as Defendants point out, it was crafted for the precise purpose that the parties now face – probative and relevant evidence that in the absence of the testimony cannot be developed through another method (especially where, as here, the underlying events took place nearly 38 years ago). For purposes of assessing the trustworthiness of a hearsay statement under Rule 807, the Seventh Circuit offered the following list of factors to consider:

> the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify before the grand jury; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability.

*United States v. Moore*, 824 F.3d 620, 622–23 (7th Cir. 2016), citing *United States v. Snyder*, 872 F.2d 1351, 1355-56 (7th Cir. 1989). That list is "neither exhaustive nor absolute," but rather, "is a helpful guide." *Id.*, citing *United States v. Doerr*, 886 F.2d 944, 956 (7th Cir. 1989).

Here, Defendants have not and cannot contend that Ward was anything but truthful or honest. In fact, he readily agreed that he did not see what occurred inside the house, which supports that he was honest even though testimony that he did see what happened inside the house would have been more favorable to Smith. His testimony was also voluntary, was given under oath live in a courtroom (as opposed to at a deposition), was subject to cross-examination, and given under penalty of perjury. While he was Smith's uncle (and the murder victims' neighbor), this alone does not support that his testimony in court was untrustworthy. The testimony reflected his eyewitness observations of what occurred at the scene, and he never recanted his testimony. There is also corroborating evidence that supports Ward's testimony. In fact, Ward gave a statement to OPS, the CPD unit that investigated Smith's complaint of being beaten and abused at Area 2, and Ward's statement is consistent with his testimony. Further, four witnesses have provided testimony that corroborates Ward's testimony, and which contradicts or is inconsistent with McWeeny's version of the events at the scene, including Robert Smith and Diane Yeager-Smith, and two non-defendant CPD officers, Detective Lawrence Gates and Officer Warren Hughes. Finally, Ward is unavailable because he died.

Every single factor, save perhaps one, that the Seventh Circuit has set forth for allowing evidence in through Rule 807 exists in favor of admitting Ward's testimony under this exception as well. This effectively is a "we said/they said" case. The number of eyewitnesses at the scene when the crucial "dove into a pool of blood" conduct purportedly occurred is limited. In fact, McWeeny too is deceased and Defendants clearly intend to present his prior testimony on this topic, which itself would make it grossly unfair and highly prejudicial to forbid Smith

7

from presenting Ward's prior testimony proving that McWeeny testified falsely. Paul Ward's death should not render his prior testimony on this identical topic inadmissible.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendants' Motion In Limine #7 seeking to bar Paul Ward's prior testimony.

Dated: May 14, 2025

Respectfully submitted,

*PLAINTIFF ROBERT SMITH JR.*
By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Rd, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5469
Nicole.auerbach@elevatenextlaw.com