IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SMITH'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO BAR
ANY ARGUMENT OR EVIDENCE ASSERTING THERE WAS A DUTY
IN 1987 TO RECORD INTERVIEWS THROUGH AUDIO OR VIDEO MEANS**

Plaintiff does not understand why agreement was not reached on this motion. Plaintiff agreed from the start that in September 1987, Defendants had no statutory or department-regulation duty to audio-record or video-record interviews that they conducted at Area 2. Plaintiff stated that he would not suggest otherwise during the trial of this case, neither during cross-examination, nor closing argument. Nevertheless, the parties could not agreement over the way such a stipulation would be worded, and Defendants filed this MIL #9, which Motion should be granted in part, denied in part.

## BACKGROUND

Defendants first asked Smith to agree that Defendants had "no duty to record interviews" *at all*, which of course is not correct. Each Defendant had a duty to memorialize the interviews that they conducted with suspects and witnesses. *Brady* requires them to do so if the information is exculpatory or impeaching, and the Chicago Police Department's own regulations required Defendants to do so at the time.

We seemed to get past that problem by simply adding the words "no duty to *audio-record* or *video-record*" the interviews, but Defendants demands kept

shifting, as they also appear to shift in this current Motion.

## ARGUMENT

The sole basis for the current Motion is that the Defendants did not have *a duty* (either statutory or through police department regulations) to audio- or video-record interviews, a proposition, as we have now repeatedly stated, we do not dispute. Such a holding, however, is as far as the Court should go, notwithstanding Defendants' repeated attempts to muddy the waters or demand relief far in excess of that narrow relief. For example, in Defendants' very first sentence, they have again reverted back to asking the Court "to bar any argument or evidence asserting there was any duty to record interviews," Motion at 1, again omitting the words "audio or video recording," just as they had done during the Rule 37.2 exchange.

Then, on page 2, Defendants assert that there has been "no evidence that video or audio recording interviews was *common practice* in Chicago or Chicagoland in September 1987." Motion at 2 (emphasis added). But whether it was a common practice is not the legal standard being addressed in this Motion, nor should it be. Smith is of course permitted to ask Defendants whether they audio- or video-recorded the Smith interviews, and if so, why they did or why they did not. Audio and video recording existed in 1987; and these officers knew how to use the equipment in 1987, even if it was not common practice to do so within the Area. (The police also had access in 1987 to videotape of the crime scene that was taken by several news organizations. *See* Exhibit A – the City's Subpoena to news organizations.)

2

In fact, in Defendants' own Motion, Defendants talk about police officers recording witness statements *without the witness's consent*, which, as they correctly point out, was, in 1987, before it was amended, a violation of the Illinois Eavesdropping Act. Smith is absolutely permitted to ask why they didn't audio or video record the interviews *of him* in this instance. Defendants, in turn, are free to answer. Perhaps they will assert that the Department did not provide equipment for such audio- and video-taping, or that the equipment, even if purchased, was not otherwise available to them, or perhaps they will assert that the Illinois Eavesdropping Statute prohibited them from doing so, or perhaps they will assert that the Chain of Command had ordered them not to record, or just that it was not common practice. Any of these answers go to the weight of the evidence, not its admissibility.

And, whatever Defendants answers will be, Smith has already conceded that he is prohibited from arguing that Defendants had a legal duty to do so.

Then, on page 3, Defendants go into an extensive discussion asserting that in 1987 Defendants were only permitted to audio or video record a suspect *if they first obtained the suspect's consent*. But again, this is not a bar to asking about recording the interviews and obtaining the witness's consent before doing so. Here, each Defendant could have sought Robert Smith's consent or Diane Smith's consent to audio-record or video-record the interviews of them, but they did not do so. Smith is certainly permitted to ask why not; Defendants have not given any legal basis to suggest otherwise.

Defendants conclude this section of their motion by asserting that it was not until 2005 that the Legislator *required* such custodial interrogations to be videotaped in murder investigations, 725 ILCS 5/103-2.1, which is absolutely true, but also completely beside the point. Again, Smith concedes that it was not legally required in 1987, and that is as far as this Motion should be permitted to go.

Defendants' final argument appears to be that "there was neither the equipment to audio or video record interviews nor any policy (either internal, state-mandated, or commonly accepted) to record interviews." Motion at 2. There are two problems with this argument. The first is that Defendants repeatedly pepper throughout all of their motions in limine, including this one, numerous sweeping statements of fact that are not supported by a party or attorney declaration under 28 U.S.C. § 1746. Defendants are asking this Court to just take their word for it that "there was no such equipment," and to rule in their favor based on that unsupported representation.

Second, and equally importantly, even if the Court were just willing to accept the representation of Defendants' counsel, Defendants never explain, nor can they, how that should lead to a bar to asking Defendants about such equipment or lack of equipment. If, as Defendants now assert, "there was no such equipment," then *Defendants themselves* are perfectly capable of saying as much from the witness stand. While Defendants have a reasonable right to ensure that Smith does not argue that Defendants *had a legal duty* to audio and video record witness statements, they do not have the right to bar Smith from pursuing all of the different ways in

4

which Defendants could have better memorialized what they claim they did during Smith's criminal investigation. As one example only, Defendants have asserted: (1) that Defendant Cline directed Defendants Higgins and Solecki to search for the purported razor blade; and (2) that Defendants Higgins and Solecki claim they searched for the purported razor blade. Both are complete fabrications, and Smith will be able to prove that to be so. Would this Court seriously consider barring Smith from asking why there is not a single reference in the Defendants' police reports to searching for the razor blade OR asking Higgins and Solecki why neither photographed nor videotaped their search for the razor blade, nor prepared a grid search, nor returned the next day to search for the razor blade in the daylight, nor directed evidence technicians to do so? Asking witnesses *what they did not do* is a central part of most good cross-examination.

In sum, Plaintiff has agreed not to argue that Defendants had any "legal duty" to audio- or video record Defendants' September 19, 1987 interviews of Robert and Diane Smith. Plaintiff does object, however, to Defendants' several oblique references in this Motion to barring Plaintiff from asking Defendants about audio or video-recording those interviews *at all*, which is perfectly appropriate cross-examination. Defendants are perfectly capable of saying they were not under a legal obligation to do so or to provide any answer they wish to provide. This Motion should be denied.

Dated: May 14, 2025

                                                      Respectfully submitted,
                                                      *PLAINTIFF ROBERT SMITH JR.*

By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevatenextlaw.com