IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., ) | | |
|             Plaintiff, ) | No. 21-cv-1159 | |
| v. ) | | |
| ) | Honorable Jeffrey I. Cummings | |
| The City of Chicago, et al. ) | | |
| ) | | |
|             Defendants. ) | | |

**SMITH OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #10
TO BAR ANY EVIDENCE OR ARGUMENT ASSERTING THAT
CPD OR DEFENDANTS COULD HAVE CONDUCTED DNA TESTING**

In Defendants' MIL #10, they move to bar any evidence or argument that Defendants or the Chicago Police Department could or should have conducted DNA testing during the investigation into this case ("Motion"). As Defendants concede, "[t]he investigation underlying this homicide occurred in late 1987 and 1988." Motion at 1. The sole support that Defendants provide for their Motion is a statement of a former analyst for the CPD crime lab, who in a prior deposition stated,

> At the time I was there, DNA was just at its very, very beginning. So we did no DNA testing at the CPD lab. The furthest we could take it was electrophesis [sic: electrophoresis]."

Motion at 1, quoting Oct. 5, 2021 Anderson Dep., at 14:10-13.

There are several reasons this Court should reject this argument.

First, electrophoresis is defined:

> Electrophoresis, specifically gel electrophoresis, is used in forensics to separate and analyze DNA fragments, creating a "DNA fingerprint" for individual identification and comparison. This technique helps determine if DNA from a crime scene matches the DNA of a suspect or an unidentified individual.

*See* U.S. Dept. of Justice, National Institute of Justice, Amplified DNA Product Separation

for Forensic Analysts, Electrophoresis, at https://nij.ojp.gov/nij-hosted-online-training-courses/amplified-dna-product-separation-forensic-analysts/overview/electrophoresis (last checked: May 12, 2025).

Second, there is extensive public evidence establishing that the Chicago Police Department and Chicago Crime Lab were deeply involved in the use of DNA analysis by as early as 1978, and throughout the early 80s. In fact, the "Vitullo Rape Kit," more formally known as the "Vitullo Evidence Collection Kit for Sexual Assault Examination," was named for a CPD Sergeant, Louis Vitullo, who was at that time the chief microanalyst at the city's crime lab. https://americanhistory.si.edu/collections/object/nmah_2009657 (last checked May 7, 2025). The kit became widely known as the "Vitullo Rape Kit" due to Vitullo's role in its implementation and the press's coverage of CPD's effort to disseminate the kits to 26 area hospitals in 1978. *Id*. Within two years, the Kit was in use in over two hundred hospitals across Illinois. *Id*. By 1982, they were being used in New York and by 1984, the FBI paid to have Goddard travel to other states to begin their own kit programs. By the mid-80s, it became the national standard. By April 25, 1988, DNA was first used in Illinois to charge a criminal defendant, Jack Lamming, in Madison County, Illinois. See Chicago Tribune, DNA "Fingerprinting" Used In Sex Offense Case (April 19, 1988) ("The scientists who this test say they are more than 99 percent sure that Jack Lamming is the one who did this").

By August 15, 1988, prosecutors in the Cathleen Crowell Webb rape-allegation hoax had obtained DNA test results that had positively excluded Gary Dotson (a convicted rape defendant) and positively included Crowell's then-boyfriend, David

3

Bierne, as the source of the semen. Therefore, in light of this extensive evidence contradicting Ms. Anderson's statement, her statement does not establish that CPD was not doing DNA comparisons between late 1987 and August 1990, as Defendants suggest.

Third, Defendants declare in this Motion that the use of DNA in 1987 was not a "*common practice*" at that time and was not "*feasible*" at that time, but "common practice" and "feasibility" are not the standard of admissibility on a motion in limine seeking to bar Smith from raising the issue of DNA completely. Defendants are free to answer questions about DNA by testifying, "while some DNA was being used at that time, it was not a common practice" or "while some DNA was being used at that time, it was not feasible to apply to every single investigation that we had." Not being a common practice or not being feasible is not a basis to bar Smith from asking any questions about this subject whatsoever.

Another thing that Defendants do is repeatedly try to move back the date at which they would have had to be doing DNA analysis in order for it to be relevant. In the third sentence of their Motion, they assert that the forensic investigation in *this case* occurred "in late 1987 and 1988." Motion at 1. They also concede, as they must, that Mr. Smith was not tried for murder until August 1990. Dkt. 495, at ¶98 ("Smith's criminal trial lasted three days, from August 28-30, 1990."). And yet at the bottom of page 1, Defendants are already arguing that DNA was not commonplace or feasible "in or about September 1987." As the citation above makes clear, DNA was absolutely in play at CPD between September 1987 and the date of Mr. Smith's trial in August 1990, and Defendants' attempts to push the

4

date of application back to September 1987 should be rejected.

In addition, Defendants have done nothing – such as attaching a Declaration to their Motion under 28 U.S.C. § 1746 – to support their assertion that Defendants themselves could not have "arranged for or requested DNA testing." Indeed, there is nothing in the record at all to support that position. The evidence above certainly establishes that at a minimum, they could have requested it. Maybe it would have been turned down. Maybe it would have been tested, and the results inconclusive. (Or maybe the test results would have pointed to someone other than Robert Smith). The bottom line, however, is that Defendants themselves are perfectly capable of asserting from the witness stand that they "could not have requested DNA testing" and the jury can evaluate their testimony, the same as any other testimony. As to this Motion, however, Defendants have not provided nearly enough proof that DNA testing was wholly unavailable between September 1987 and August 1990, sufficient to bar all references to the possibility.

Nor should the Court accept Defendants' cursory declaration that the results of DNA testing or even Defendants' failure to attempt to obtain DNA results "are not relevant" to this case on the purported ground that the evidence "do[es] not make any contested fact in this matter more or less likely true than not." Motion at 2. That assertion is absurdly false. Defendants cannot in good faith assert that an actual DNA result or even Defendants' attempt or lack of attempt to obtain a DNA result is irrelevant to a case in which finding the murderer was Defendants'

5

purported investigatory goal.[1]

For all these reasons, Defendants MIL #10, respectfully, should be denied.

Dated: May 14, 2025

>Respectfully submitted,
>*PLAINTIFF ROBERT SMITH JR.*
>
>By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law

---

[1] Finally, Defendants have forfeited their Rule 403 argument. It is wholly insufficient to preserve a Rule 403 argument by just declaring that admitting the evidence "would be unduly prejudicial to Defendants" or "would risk jury confusion." Without any explanation whatsoever of how it would cause undue prejudice or jury confusion, without even a statement that the risk of undue prejudice or jury confusion substantially outweighs the evidence's probative value, and without any explanation of why the risk substantially outweighs the evidence's probative value, Defendants have simply not preserved their argument under FRE 403. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[E]ven arguments that have been raised may still be waived . . . if they are under-developed, conclusory, or unsupported by law."). *See also Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 252 (7th Cir. 2021) (Wood, J., dissenting) ("counsel's brief mentions of Rule 403 did not suffice to preserve this point"); *Id.* ("Wexford failed to preserve its Rule 403 objection with the necessary specificity").