# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MIL # 11 TO BAR RULE 404(b) EVIDENCE

In Defendants' MIL #11, Dkt.586, Defendants move to bar all Rule 404(b)

testimony from this case. More specifically, they move to bar the testimony of

Madison Hobley, Darrell Cannon, Kevin Bailey (or Corey Batchelor), Gregory Banks

(or David Bates), Anthony Holmes, Melvin Jones, Eric Caine, and Phillip Adkins.[1]

---

[1] Defendants appear to suggest that one or more of these witnesses should be barred because they were omitted from Smith's 2021 Initial Disclosures. This is incorrect. If a 404(b) witness was omitted from the Initial Disclosures or Response to an Interrogatory, Smith corrected the omission by providing during discovery extensive additional evidence with respect to that individual. For example, with respect to Kevin Bailey, Smith produced the following Bailey statements to Defendants on April 25, 2022:

> Bailey's October 17, 2019 2nd Amended Complaint in *Bailey v. City of Chicago*
> Bailey's June 26, 1990 Suppression Hearing Transcript
> Bailey's October 17, 1990 Criminal Trial Transcript
> Bailey's October 22, 2015 Post Conviction Affidavit
> Bailey's June 7, 1989 Court Reported Statement
> All of the police reports relating to Bailey's wrongful conviction

The same basic principle applies to the other 404(b) witnesses who Defendants assert were not disclosed. In this regard, Federal Rule of Civil Procedure 26(e)(1)(A) specifically provides that a party

> must supplement or correct its [Rule 26(a)(1) witness] disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*

Defendants' Motion should be denied on the following grounds: (1) barring Smith from admitting all Rule 404 and 406 evidence will deprive Smith of a "full and fair" trial; (2) because the evidence Defendants seek to bar on this Motion is admissible under Federal Rule of Evidence 406, the Court does not need to reach Defendants' underdeveloped arguments under 404(b); (3) even if the Court were to consider Defendants' 404(b) arguments, Defendants do what they have done in all 31 Motions in Limine, which is to cite solely the cases that favor their position and omit completely the cases that admit the evidence and explain in clear and precise terms why the testimony of these witnesses would be admissible; (4) Defendants have not established any "unfair prejudice" under FRE 403; and (5) Defendants have moved solely to bar eleven witnesses, and have not in this motion moved to bar any documents.

## I. 404(b) Evidence Is Not Only Relevant To Smith's Bifurcated *Monell* Claim Against The City, But Also To Smith's Constitutional and State Law Claims Against The Individual Defendants As Well.

Defendants do not dispute that several Defendants in this case – including Defendants Yucaitis, Dwyer, Rice, Higgins, and McWeeny– engaged in systemic and

---

Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). In other words, when Defendants assert that a witness was not disclosed through initial disclosures or interrogatory responses, Rule 26(e) makes clear that the witness should not be barred if the party has made the additional information – *e.g.*, the identification of Bailey – known to the other parties during the discovery process, as Smith has done here.

This is especially true, where, as here, Smith specifically informed Defendants in his June 4, 2021 Initial Disclosure, that he would call "other victims of CPD torture at Areas 2 … to testify about their personal torture experiences, including the manner in which Area 2 Detectives beat, threatened, abused, and coerced them to make false confessions and false statements."

methodical torture of Black suspects at Area 2 (or knowingly failed to intervene) when the Unit was under the command of Jon Burge, from at least 1972 to at least 1986. Nor can they. Indeed, Defendants themselves do a pretty good job of summarizing the abuse on pages 3-5 of their Motion.

This routine practice of abuse, which continued at Area 2 well after Burge left, directly resulted in Mr. Smith's beatings, choking, and his incriminating statement to the police in September 1987. Defendants also cannot dispute that this false incriminating statement was used to convict Smith. Each of the individual Defendants either directly participated in the abuse or failed to intervene. The evidence that this practice existed is not only relevant, but *required,* to prove Plaintiff's claims against the Defendant Officers, namely that Defendants suppressed this practice from Mr. Smith in violation of *Brady* (Count III), and that they conspired to abuse Robert Smith because of his race (Count IV).

Defendants' MIL #11 embodies the exact concerns Smith raised in opposition to this Court bifurcating *Monell*, namely that the Defendant Officers would attempt to artificially limit Plaintiff's case to exclude any and all background information that these Defendants regularly abused suspects at Area 2, that it was a "modus operandi" that they implemented repeatedly, and that Defendants had prepared, planned, and acquired the knowledge necessary to use torture to coerce false confessions from suspects. The same concern was expressed in another case assigned to this Court, *Gibson v. City of Chicago*, 19-cv-4152, and in order to dispel that concern in *Gibson*, Your Honor noted that while you would perhaps allow less "404(b) evidence" in a case

3

where *Monell* claims were bifurcated, as they were in *Gibson* and in this case, you suggested, without the issue being formally before you, that the Court would allow some 404(b) evidence in order to be able to set the scene for what happened to Mr. Gibson. *Gibson v. City of Chicago*, 19 cv 4152, Hearing Transcript, Dkt. 626-1, at 17-18 (N.D. Ill Nov. 25, 2024). Thus, the Court recognized that to mitigate the prejudice of bifurcation and provide a civil rights plaintiff a "full and fair trial" against the Individual Defendant Officers, certain 404(b) evidence would have to be admitted, despite its dual relevance to Plaintiff's now-bifurcated *Monell* claim. *Id.* Defendants motion ignores the Court's words from *Gibson* and broadly seeks the exclusion of all potential 404(b) evidence. Defendants, however, cannot prove that the evidence Smith wants to use is inadmissible evidence under the specific exceptions set forth in Rule 404(b)(2). Therefore, Defendants' MIL #11 should be denied.

## II. Defendants' Abuse of Black Suspects Is Admissible As A Routine Practice Under Federal Rule of Evidence 406.

Federal Rule of Evidence 406, which Defendants do not mention at all, provides:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Ev. 406. "'Character and habit are close akin. . . . A habit [] is the person's regular practice of meeting a particular kind of situation with a specific type of conduct. . . . The doing of the habitual acts may become semi-automatic." Equivalent behavior

on the part of a group is designated "routine practice of an organization" in the rule. Fed. R. Evid. 406 (Advisory Committee Notes), quoting McCormick, § 162, at 340.

Smith does not intend to call these witnesses to establish the Defendants' "bad character." He intends to call these witnesses to establish that in conducting murder investigations, these Defendants and Area 2 Violent Crimes generally had a "routine practice" of coercing confessions from innocence black suspects. As such, all of the proffered testimony is admissible under Rule 406. Defendants do not argue to the contrary. Indeed, they intentionally shirk Rule 406 altogether and then attempt to recharacterize Defendants' habit (and that of Area 2) of "meeting a particular kind of situation with a specific type of conduct." *Id*. This attempt is unsuccessful, because there are more than 100 African-Americans who have complained of this type of conduct during the 1980s.

This is important. Unlike other cases in which plaintiff has failed to provide the necessary "degree of specificity and frequency" to admit evidence of habit or routine practice under Rule 406, Smith has specifically identified all of the known times that the Area 2 Violent Crimes Detective Division, as well these specific Defendants, in this specific time period, used beatings, fabricated evidence, and other psychological tactics to coerce confessions from totally innocent black suspects. *See Simplex, Inc. v. Diversified Energy Systems, Inc.,* 847 F.2d 1290, 1293 (7th Cir.1988) (requiring the offering party to provide the specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner). Smith has done just that. For example, in a detailed Appendix attached to Plaintiff's June

4, 2021 Initial Disclosures, Smith painstakingly identified each of the then-known victims of Area 2's habit of torturing suspects in an attempt to obtain a false confession. Smith attaches this Appendix as Exhibit A. As another example, on September 6, 2021, as part of discovery, Smith produced to Defendants a list of 118 Area 2 torture victims, which also included the dates on which the torture occurred, the officers who participated in the torture, a description of the torture, and citations to each victim's testimony concerning their torture. See Dkt. 513-24.

But the Court need not only rely on the habitual nature of this practice that has been provided by Smith. Its habitual nature has been repeatedly documented in other sources as well. *See People v. Wrice,* 406 Ill. App. 3d 43, 53-54 (1st Dist. 2010) (Court found widespread, systematic torture of prisoners at Area 2); *People v. Whirl,* 2015 Il App (1st) 111483 ¶¶ 98-111 (pervasive evidence that Area 2 Detectives regularly engaged in physical abuse and torture of suspects); *Hinton v. Uchtman*, 395 F.3d 810, 822 (7th Cir. 2005) (finding Area 2 torture to have been a regular part of their system for more than ten years); *Cannon v. Burge*, WL 4361529, at *10 (N.D. Ill. 2011) (St. Eve, J.) (finding the torture outlined in the Special Prosecutor's Report to be "offensive, unacceptable, and systematic"); *United States ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999) ("It is now common knowledge that in the early to mid-1980's Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions").

Indeed, it is hard to imagine that Defendants can establish that the conduct at Area 2 was not a routine habit given the number of the City's *own documents* that refer to the conduct as "systematic." See Smith-12880-12977[2] (the Goldston-Sanders Report issued by CPD's own OPS investigators found that the abuse of black suspects at Area 2 was "systematic;" including that they were systematic in the years prior to September 1987); Smith-947-1136 (the City of Chicago's Police Accountability Task Force, at 34 ("From 1972 to 1991, CPD detective and commander Jon Burge and others he supervised tortured and abused at least 100 African-Americans on the South and West sides in attempts to coerce confessions."); Smith-11968-11978 (May 6, 2015 City Council Substitute Resolution, at 1-2) (same); Smith-11702 -11959, at 54-58 (July 24, 2007 City Council Committee Hearing (Statement of Cook County Clerk David Orr: "Area 2 conducted a program of torture involving beatings, mock executions, electric-shock, suffocation and racist psychological abuse to obtain confessions … an Alderman asked whether all the victims were black, and the answer is yes, they were."); Smith-11979-11981 (Sept. 12, 2013 Statement of Mayor Rham Emanuel apologizing for systematic torture and abuse at Area 2).

In Defendants' Motion, instead of addressing Rule 406 directly, they attempt to pass off Defendants' "habit" under Rule 406 as simply "plan and preparation" or "*modus operandi*" under 404(b); they then summarily dismiss such claim completely as only provable "through a chain of reasoning relying on propensity." Motion at 8.

---

[2] Rather than attach each of these lengthy reports as exhibits to this Opposition, Smith cites to his discovery production, identifying each report by bates range. Upon request from the Court, Smith can provide the reports themselves.

For reasons discussed in the next Section, the testimony of these witnesses is also admissible under Rule 404(b)(2), but for purposes of this Section, because this evidence – including the City's several admissions – demonstrates Defendants' routine, habitual, systematic practice at Area 2, it is admissible under Rule 406.

## III. Defendants Sweeping and Unsupported Claim That Testimony From These Witnesses Contains Only Propensity Evidence, is Wrong; The Testimony Is Admissible For Many Non-Propensity Reasons.

Even if Rule 406 did not apply here, as long as plaintiff is proffering other-acts evidence for a non-propensity purpose, Rule 404(b) and 403 allow its admission. As an initial matter, Defendants provide a wholly incomplete description of the Seventh Circuit's seminal case of *United States v. Gomez* 763 F.3d 845 (7th Cir. 2014) (*en banc*). In Defendants' Motion, they selectively pick out quotes from *Gomez* and then conclude that the proponent must establish "relevance to 'another purpose' . . . through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." Motion at 2, quoting *Gomez*, 763 F.3d at 860. They omit, however, that the Court also said, "This is not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to "another purpose" is established *only* through the forbidden propensity inference. *Gomez*, 763 F.3d at 856 (emphasis the unanimous Court's). *See also DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 1429521, at *1 (N.D. Ill. Mar. 18, 2020) ("In wrongful conviction cases, it has become commonplace for the plaintiff to seek to introduce evidence at trial regarding a defendant police officer's alleged bad acts towards . . . individuals [other than] the

8

plaintiff.  This "other acts" evidence is introduced pursuant to Rule 404(b) of the Federal Rules of Evidence").

> **A.    The Evidence Defendants Seek To Exclude Is Admissible To Prove Intent, Opportunity, Preparation and Plan Under the Seventh Circuit's Holding in *Wilson v. City of Chicago*.**

Contrary to Defendants' single paragraph on this issue, the witnesses' evidence is admissible to prove intent, opportunity, preparation, and plan under Rule 404(b)(2), and is also available for impeachment (*see* Section B below).

The preeminent opinion on other acts evidence involving Defendant Jon Burge is *Wilson v. City of Chicago,* 6 F.3d 1233 (7th Cir. 1993).  *Wilson* is strikingly similar to this case, as it involved a Section 1983 plaintiff, Andrew Wilson, who alleged that Area 2 Detectives (including John Yucaitis, a Defendant in this case) tortured him and his brother – both of whom are Black – and coerced them into making incriminating statements about two murders. At trial, the district court excluded evidence of Area 2 witness torture and coercion, specifically, that the Area 2 officers beat another suspect shortly before the plaintiff was arrested, and that another witness was subjected to electrical shocks during an interrogation by defendants nine days before the plaintiff was similarly tortured.  *Id.* at 1238.  The Seventh Circuit reversed the trial court's holding, finding that the witnesses' testimony was "plainly" relevant and that Defendants' other acts were admissible under Rule 404(b) to show intent, opportunity, preparation, and plan, as well as to impeach Burge's denial that he had engaged in any of those acts. *Id.*  The Seventh Circuit's holding in *Wilson* requires that Smith's proffered other-acts evidence be admitted against Defendants in this case and further requires that Defendants' Motion be denied.

Since *Wilson,* numerous courts have permitted other acts evidence for non-propensity purposes to prove the very claims Smith has raised here. *See DeLeon-Reyes*, 2020 WL 1429521, at \*4 ("Generally, the past crimes, wrongs, or other acts of the Defendants, if sufficiently similar to the acts described in Plaintiffs' complaints, could make it more likely that the Defendant officers had the intent, opportunity, preparation, or plan to extract false confessions, fabricate police reports, and suppress exculpatory evidence in connection with Plaintiffs' cases."); *Rivera v. Guevara*, No. 12-CV-04428, 2018 WL 11468923, at \*5 (N.D. Ill. June 1, 2018) (following *Wilson* and holding that "the other acts evidence being proffered was 'admissible through a non-propensity chain of inferences to prove intent, opportunity, knowledge and planning to frame Rivera' "); *McCoy v. Mennerich*, No. 3:18-CV-01297-NJR, 2023 WL 1782255, at \*10 (S.D. Ill. Feb. 6, 2023) (finding under 404(b)(2) that two incidents of officers attacking prisoners in a similar manner within hours of each other provided context for the motive, intent, opportunity, and plan of that division's officers); *McCoy v. Mennerich*, No. 3:18-CV-01297-NJR, 2023 WL 1782255, at \*10 (S.D. Ill. Feb. 6, 2023) (finding under 404(b)(2) that two incidents of officers attacking prisoners in a similar manner within hours of each other provided context for the motive, intent, opportunity, and plan of that division's officers). *See also People v. Tyler,* 2015 Il App (1st) 123470, ¶ 186 (citing numerous instances of torture by Detective William Moser and fellow Detectives and holding that "[e]ven one incident of similar misconduct by the same detectives can be sufficient to show intent, plan, [and] motive").

10

Nor does it matter that the 1993 *Wilson* case substantially preceded the 2014 *Gomez* case because in a very well-explained opinion in *Rivera*, Judge Gottschall described in detail how the two cases are "harmonious," and that although *Gomez* imposed a new structure in which to consider 404(b) arguments (what Defendants called, "rules-based approach," Motion at 2), the Seventh Circuit's analysis in *Wilson* still plays a controlling role in torture and false confession cases. *See* 2018 WL 11468923, at *5. *Cf. also Davies v. Benbenek,* 2014 WL 12660537, at *3 (N.D. Ill. May 28, 2014) ("In *Wilson*, evidence of the prior excessive force was probative to [the issue of] interrogating officers having the means, intent, and ability to use force against suspects during [the suspects'] interrogation at a police station").

For all these reasons, this Court should reject Defendants' 404(b) arguments.

> **B.  The Evidence Defendants Seek To Exclude Is Admissible To Impeach Any Defendant Who Has Denied That They Ever Abused A Suspect At Area 2, Was Unaware Such Abuse Was Occurring, Or Invoked The Fifth Amendment When Asked The Question (Which Applies to Four of the Defendants).**

Smith's proffered evidence of eleven 404(b) witnesses is also admissible to impeach any Defendant who has asserted at his deposition (or asserts at trial) that he never engaged in the type of misconduct at issue.

First, the case law on use of 404(b) evidence for impeachment is unambiguous and controlling. *See Wilson*, 6 F.3d at 1238; *DeLeon-Reyes*, 2020 WL 1429521, at *4; *Padilla v. City of Chicago,* 932 F. Supp. 2d 907, 918 (N.D. Ill. 2013) (prior "bad act" evidence of defendant officers' guilty pleas was admissible to show that arrestee's criminal case was dismissed due to officers' lack of credibility). *See also Tyler,* 2015 Il

App (1st) 123470, ¶ 186 ("[e]ven one incident of similar misconduct by the same detectives . . . could impeach the officers' credibility").

Second, there is no dispute that several Defendants in this case have already testified under oath, in deposition transcripts, that will be admitted into evidence, that they never participated in and never witnessed, at Area 2, the type of misconduct asserted in this case. As just one example only, Detective Brownfield testified as follows:

```
 9                    During the time that you were
10· ·an Area 2 detective, did you physically torture any
11· ·suspects?
12· · · ·A.· ·No.
13· · · ·Q.· ·Did you physically torture any witnesses?
14· · · ·A.· ·No.
15· · · ·Q.· ·During the time you were an Area 2
16· ·detective, did you physically hit any suspects?
17· · · ·A.· ·No.
18· · · ·Q.· ·Did you physically hit any witnesses?
19· · · ·A.· ·No.
20· · · ·Q.· ·During the time you were an Area 2
21· ·detective, did you ever see Lieutenant Jon Burge
22· ·torture any suspect?
23· · · ·A.· ·No.
24· · · ·Q.· ·During the time you were an Area 2
25· ·detective, did you ever see a fellow detective
·2· ·torture any suspect?
·3· · · ·A.· ·No.
·4· · · ·Q.· ·Did you see a fellow detective hit any
·5· ·suspect?
·6· · · ·A.· ·No.
·7· · · ·Q.· ·Torture any witness?
·8· · · ·A.· ·No.
·9· · · ·Q.· ·Hit any witness?
10· · · ·A.· ·No.
11· · · ·Q.· ·During the time that you were an Area 2
12· ·detective, did any fellow detective tell you that he
13· ·had hit a suspect or physically abused a suspect in
14· ·any way?
```

```
15 · · · ·A. · ·No.
16 · · · ·Q. · ·Did you ever hear Lieutenant Jon Burge
17 · talking about physically abusing a suspect or
18 · witness in any way?
19 · · · ·A. · ·No.
20 · · · ·Q. · ·So as you sit here today, is it your
21 · position that every single person who made an
22 · allegation against you that you physically abused
23 · them was making a false allegation?
24 · · · ·A. · ·That's correct.
```

Brownfield Dep., Exhibit C, at 10-11.  Numerous other Defendants have also testified to the exact same effect.  McWeeny Dep., Exhibit D, at 6-9; Pedersen Dep., Exhibit E, at 31-36.  *See* also Cline Dep. at 51 (when I took over from Burge, "I don't remember there being anything that needed to be cleaned up").  In one instance, Defendant Dwyer was specifically asked if he had beaten one of Smith's 404(b) witnesses, Madison Hobley.

```
13 · · Q. · ·Did you in fact physically torture
14 · Mr. Hobley?
15 · · · ·A. · ·I did not.
16 · · · ·Q. · ·Did you use racial slurs while
17 · interrogating Mr. Hobley?
18 · · · ·A. · ·I did not.
19 · · · ·Q. · ·Did anyone in your presence physically
20 · abuse Mr. Hobley?
21 · · · ·A. · ·No, they did not.
22 · · · ·Q. · ·Did anyone in your presence verbally
23 · abuse Mr. Hobley?
24 · · · ·A. · ·No, they did not.
```

Dwyer Dep., Exhibit F, at 249.  In light of those answers, it is truly hard to imagine how Defendants can assert that Mr. Hobley's answers to those same questions are not relevant to impeachment.

The testimony of 404(b) witnesses is particularly important to impeach Defendants' testimony for those Defendants who have repeatedly invoked the Fifth

Amendment. For Defendants who have repeatedly taken the Fifth Amendment (such as McWeeny (9 times), Dwyer (three times), Pedersen (4 times), and Brownfield (twice), not only is their Fifth Amendment invocation itself admissible in evidence, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), but when asked about their invocation, these Defendants repeatedly respond, "my lawyer made me do it" and deny that the reason they invoked the Fifth was because a truthful answer would have incriminated them. Again, Defendant Brownfield's deposition is a great example:

```
24   Did the special prosecutors Egan and Boyle
25 · or Egan or Boyle issue a subpoena to you to appear
 2   before a criminal grand jury sometime in 2004?
·3 · · · ·A. ·Yes.
·4 · · · ·Q. ·All right. ·And is it correct that you
·5 ·appeared at that grand jury?
·6 · · · ·A. ·Yes, I did.
·7 · · · ·Q. ·And is it correct that you took the Fifth
·8 ·Amendment in the grand jury?
·9 · · · ·A. ·Yes, I did.
10 · · · ·Q. ·And why did you take the Fifth Amendment?
11 · · · ·A. ·On the advice of my attorney.
12 · · · ·Q. ·Okay. ·And is it fair to say that you took
13 ·it because truthful answers to the special
14 ·prosecutor's questions might incriminate you in
15 ·illegal conduct?
    [objection and re-reading of the question omitted]
21 · · · · · ·THE WITNESS: ·No.
22 ·BY MR. CHANEN:
23 · · · ·Q. ·In that -- approximately in that same time
24 ·frame, was your deposition taken in the
25 ·Aaron Patterson case?
·2 · · · ·A. ·I did give a deposition in
·3 ·Aaron Patterson, but I don't recall when it was.
·4 · · · ·Q. ·Okay. ·Did you take the Fifth Amendment in
·5 ·that deposition as well?
·6 · · · ·A. ·Yes, I did.
·7 · · · ·Q. ·Okay. ·And you took it because your lawyer
·8 ·advised you to?
·9 · · · ·A. ·That's correct.
```

14

10 · · · · Q. · ·All right. · Is it fair to say that when
11 · you took the Fifth Amendment during that deposition
12 · it was because truthful answers to the questions at
13 · the deposition would incriminate you in illegal
14 · conduct?
15 · · · · A. · ·No.

Brownfield Dep., Exh. C, at 17-19. *See also* Pedersen Dep., Exhibit E, at 47 (same);

Dwyer Dep. Exhibit F, at 245, 248 (same).

It is that denial that the invocation was made because a truthful answer would

have incriminated him that may be easily impeached by a 404(b) witness taking the

witness stand and testifying as to what that Defendant did to him, strengthening the

Court's instruction that the jury may, but is not required to, apply a negative

inference to the Defendant having previously taken the Fifth.

### C.   The Evidence Defendants Seek To Exclude Is Admissible To Establish Conspiracy.

Similar instances of abuse by the same Defendants, which prompted complaints

against them, also establish Defendants' intent and their plan to conspire, both of

which are non-propensity purposes that bear directly on Smith's claims in this case.

*Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (noting that a

"pattern of misconduct . . . can give rise to an inference . . . of a conspiratorial

agreement"); *Petrovic v. City of Chicago*, 2008 WL 818309, at *2 (N.D. Ill. Mar. 21,

2008) (finding OPS complaint register admissible under Rule 404(b) "to show intent,

plan, *modus operandi,* and absence of mistake" in excessive force case); *Edwards v.*

*Thomas,* 31 F.Supp.2d 1069, 1074 (N.D.Ill.1999) (finding complaint against Defendant

admissible under Rule 404(b) to prove intent); *Burton v. City of Zion*, 901 F.3d 772, 778-

85 (7th Cir. 2018) (prior use of excessive force by defendant officer was admissible to establish officer's state of mind when re-arresting plaintiff).

### D. The Evidence Defendants Seek To Exclude Is Admissible To Establish Racial Animus and a Violation of Equal Protection.

Other acts evidence is also directly relevant to show Defendants violated Smith's right to equal protection through racial animus and discrimination. This is directly relevant to Defendants' federal conspiracy count under 28 U.S.C. § 1986. See Dkt.521 (Smith SJ Opposition, explaining that Smith had done more than enough to assert racial animus). *See also Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *10 (N.D. Ill. Oct. 25, 2004) (holding allegation that plaintiff "and other African Americans were treated differently than similarly situated Caucasians" can prove an equal protection violation); *Kitchen v. Burge,* 781 F. Supp. 2d 721, 738 (N.D. Ill. 2011) (permitting a "racially motivated conspiracy" claim that included "numerous other African American torture victims"). Whether Defendants had a racial motive for beating, choking, and slapping Smith and whether they acted with malice in framing him are clearly permissible purposes to admit the evidence that do not require a propensity chain of logic. *See Hurt v. Vantlin,* No. 3:14-cv-00092J, 2016 WL 3917138, at *2 (S.D. Ind. July 20, 2016) (permitting discovery on other acts evidence under Rule 404(b) because "the evidence sought goes to the malice element of that claim because it may show personal animosity") (internal citations and quotations omitted).

### E. The Evidence Defendants Seek To Exclude Is Admissible To Establish Identity.

Other acts evidence may also be admitted to establish identity. *Gomez*, 763 F.3d at 854. Because one or more Defendants have repeatedly denied their presence

at certain times and in certain locations that would expose them to liability for Smith's abuse (Dwyer's repeated and repeatedly false denials of being at Area 2 at certain times come to mind), Plaintiff is permitted to use 404(b) evidence to assist in proving the identity of his perpetrators, as well as which individuals had an opportunity to intervene, but failed to do so.

### F. The Evidence Defendants Seek To Exclude Is Admissible To Establish The Involuntariness of Smith's Confession.

"Illinois courts have consistently held that a 'pervasive pattern of criminal conduct by police officers' is enough for courts to reconsider the voluntariness of a defendant's confession." *People v. Tyler,* 2015 Il App (1st) 123470, ¶ 186.

_____

For all these reasons, there is simply no credible argument that Defendants' intent, plan, preparation, knowledge, opportunity, or identity are not relevant or permissible purposes for Mr. Smith to introduce other acts testimony in this case.

## IV. Plaintiff is Not Required to Prove that Each Allegation of Other Acts Evidence Actually Occurred Prior to Admission.

On pages 9-10 of their Motion, Defendants appear to argue that in order to present 404(b) evidence to the jury, Plaintiff Smith must also obtain "a finding" that the evidence is sufficient for a jury to find that the particular defendant committed the acts alleged. Motion at 9, citing *Gomez,* 763 F.3d at 854 and *Huddleston v. United States*, 485 U.S. 681, 689 (1988). They then go on to argue that Plaintiff cannot meet this standard either because "Defendant Officers were not involved in the alleged misconduct" (apparently on the ground that the Court should take their

word for it) or "there is insufficient evidence for the jury to conclude the acts occurred." They then list several reasons that the jury could not conclude the acts asserted by the proffered 404(b) witnesses in fact occurred:

(a) Smith's 404(b) witness have not had their abuse claims adjudicated against any Defendant;

(b) The testimony of the 404(b) witness without corroborating evidence is insufficient for the jury to conclude that the acts described by that witness in fact occurred.

(c) Under FRE 608(b), extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.

(d) The testimony will be inadmissible hearsay.

(e) The testimony will be self-serving.

(f) Unsworn statements are insufficient proof of physical abuse and coercion without some independent corroboration

(g) Plaintiff has no evidence corroborating these other 404(b) allegations of physical abuse or other misconduct.

(h) Settled civil lawsuits do not, standing alone, meet Smith's burden to establish to the jury that the acts to which the 404(b) witnesses will testify in fact occurred.

(i) Vacated convictions do not, standing alone, meet Smith's burden to establish to the jury that the acts to which the 404(b) witnesses will testify in fact occurred.

(j) Nor can the 404(b) witnesses' testimony to the jury be bolstered "with prior statements, prior testimony, medical records, or the investigation of the Office of Professional Standards ("OPS")," because all such documents are inadmissible.

(k) Rules 801 through 804 would also bar hearsay statements made to OPS and the Special Prosecutor as well as medical records.

(l) The reports of investigating bodies making abuse findings are not competent evidence because they lack foundation and are hearsay or double hearsay.

Then, they conclude, "Since there is no admissible evidence to corroborate the 404(b) witnesses, . . . these allegations are insufficient for a jury to find that the incidents occurred." Motion at 10.

This is all complete and utter nonsense, and we have no idea what the Defendants are attempting to achieve in this Section of their Motion. The case law is clear that the "credibility" of the other acts evidence tendered must only be sufficient to support a *jury finding* that Defendants committed the similar act to that 404(b) witness. *See Petrovic v. City of Chicago,* No. 06 C 6111, 2008 WL 818309, at *3 (N.D. Ill. Mar. 21, 2008) (holding a single, sustained finding in an OPS report is sufficient to meet this standard). Further, the Court cannot assess whether oral testimony is sufficient until the Court hears the oral testimony. There is no requirement that the Court make such a finding prior to the evidence, including oral testimony, is admitted. And the argument that Defendants attempt to build above, which basically boils down to: (1) the oral testimony of a 404(b) witness, standing alone, cannot be sufficient to convince a jury that the events described really happened (which is wrong as a matter of law); (2) the oral testimony must be supported by some type of corroborating evidence (which is wrong as a matter of law); and (3) none of the possibly corroborating evidence that Smith may be thinking about using to corroborate the oral testimony is itself admissible, and therefore there can be no corroboration, and therefore the Court should bar the oral testimony.

Smith has done more than enough to meet his evidentiary burden with respect to his proffered 404(b) evidence, and as to Defendants' numerous evidentiary arguments (A-L above), the Court will be able to address them individually when each side tenders their written exhibits.

## V.    Smith's 404(b) Evidence Does Not Present A Risk of *Unfair* Prejudice.

Smith has already addressed portions of Defendants' 403 arguments above, and therefore only briefly addresses the issue here, simply because Defendants ended with a long 403 section. Defendants have failed to show unfair prejudice, and other than identifying the witnesses generally, do not even specify which instances of abuse they seek to exclude. As courts in this Circuit have often stated, "Relevant evidence is *inherently prejudicial,*" but Rule 403 only allows such inherently prejudicial evidence to be excluded when the evidence's "*unfair prejudice . . .* substantially outweigh[s] probative value." *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir. 1985). *See also Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1075 (N.D. Ill. 1999). Plaintiff has not established unfair prejudice, and that is the primary reason its Rule 403 argument must be denied.

Finally, the courts of this Circuit, including the unanimous en banc panel in *Gomez,* 763 F.3d at 860, have repeatedly emphasized that any prejudice that may result can also be mitigated by an appropriate cautionary instruction to the jury. For all these reasons and additional reasons stated above, the Court should reject Defendants' 403 arguments.

---

One final point: in their Motion, Defendants only in fact request the Court to bar the testimony of eleven "may call" witnesses, eight to be called live and three to be presented through court transcripts. Those requests should be denied for all the reasons stated above. In addition, however, it is important to emphasize that throughout their Motion, Defendants request a far broader bar – to bar Smith "from

introducing *any FRE 404(b) evidence* at trial," Motion at 1 (emphasis added). That scope of request is certainly forfeited. Defendants have not pointed to a single 404(b) document or category of 404(b) documents that they assert should be excluded, nor do they address at all the long series of 404(b) documents that the Defendant City itself produced and which are admissions of a party opponent. Their Motion is addressed solely to barring evidence from eleven witnesses, but they do not address at all Smith's ability to move 404(b) documents into evidence or to use that 404(b) evidence in their cross-examinations of Defendants (including Defendants who are called as adverse witnesses). All such demands are forfeited as part of this Motion. That is not to say that when Smith produces his exhibit list, Defendants cannot object on 404(b) grounds; it is only to emphasize that Defendants' request to bar "all 404(b) evidence" in this Motion must be denied regardless how the Court rules on the specific, testimonial 404(b) evidence Defendants actually seek to bar in their Motion.

For all these reasons, Defendants' Motion in Limine No. 11 should be denied.

Dated: May 14, 2025

Respectfully submitted,
*PLAINTIFF ROBERT SMITH JR.*

By: /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach

ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevatenextlaw.com