IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SMITH'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 12
TO BAR ANY EVIDENCE OR ARGUMENT SUGGESTING THE
THE ABSENCE OF BLOOD IN THE DRYER LINT SUGGESTS
THAT THE OFFENDER DID NOT WASH AND DRY HIS CLOTHES**

Defendants' Motion in Limine #12 concerns a lint filter that was recovered by Defendants from the crime scene. Defendants subsequently submitted the filter to the Chicago Police Crime Lab for testing and the Lab detected no presence of blood. Defendants now ask this Court to bar Smith from arguing that the absence of blood in the lint filter establishes (or even suggests) that Smith did not wash and dry his clothes after allegedly committing the murders in question. This is just another motion where Defendants move *in limine* on no other ground than they don't like the evidence against them. Accordingly, it should be denied.

First, Smith's forensic serology expert Karl Reich has opined that because there was no blood detected in the lint filter, Robert Smith's Transcribed Confession stating that he dried his clothes in the dryer after committing the murders cannot be true. Defendants state that they have separately filed a *Daubert* motion to bar Reich's opinion, and then concede that if the Court denies that *Daubert* motion, the Court must also deny this Motion.

1

Second, Defendants very oddly assert that their *own expert witness*, Christine Anderson, the same person who ran the Serology Unit at the CPD Crime Lab, originally tested the lint filter for blood in 1987, concluded that there was no blood in the lint filter and who testified at her deposition that at that time her lab was capable of detecting blood to the level of 1 part per million, is not qualified to give an opinion about detecting blood in the lint filter. Motion at 2. That is literally their argument: "Do not look at the serology work done by our own expert."

Third, Defendants then argue that because Plaintiff's "no-blood-in-the-lint-filter" theory "is not supported by any admissible expert testimony," and a lay jury could not possibly know if Edith Yeager's washing machine was capable of removing all traces of blood when the perpetrator put the clothes through a wash cycle, this Court should both bar admission of the lint filter altogether and then also bar any questioning or argument about the lint filter in its entirety.

Just as there are three parts to Defendants argument, so too there are also three reasons this Court should reject Defendants' arguments in their entirety.

First, for all the reasons stated in our Opposition to Defendants' Daubert Motion against Dr. Reich, Defendants are simply wrong about his qualifications and ability to give an opinion on this issue.

Second, Defendants cannot negate admissions of a party opponent ("there was no blood in the lint filter") and negate opinions rendered by their own tendered expert, simply by declaring that their own expert – the one the Chicago Police Department chose to run their serology lab in 1987 and the one these Defendants chose to disclose

2

as their expert in 2022 – is now not qualified to issue her opinions.

Third, Defendants are wrong that expert testimony is even needed to admit the lint filter and to allow the jury to weigh the evidence of whether the complete absence of blood (not even 1 part in a million) from the lint filter suggests that the dryer was never used to dry the perpetrator's (or perpetrators') clothes. Juries are permitted to draw upon their own life experiences and common sense in reaching their verdicts. *See, e.g., United States v. Brasher*, 962 F.3d 254, 270 (7th Cir. 2020); *United States v. Durham,* 211 F.3d 437, 441–42 (7th Cir. 2000). Any person who has ever done laundry can determine from their own experience whether a household washing machine in 1987 would get every last drop of blood (to 1 part in a million) out of clothes placed in the wash cycle.

Defendants have not provided any basis whatsoever to bar the lint filter or arguments about it. They simply argue that the jury is incapable of evaluating the significance of a complete lack of blood in the dryer without expert testimony. To get to that conclusion they have to rule out the two specific experts that the parties respectively thought were capable of providing expert testimony on this very topic. In any event, Defendants' primary premise is wrong. Their entire argument goes to the weight of the lint filter evidence*, not its admissibility* nor the admissibility of inferences that the Parties may argue from it. *See also, Florek v. Vill. of Mundelein*, Ill., 649 F.3d 594, 602–03 (7th Cir. 2011) ("And when the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible.") That is the precise case here.

It was the Defendants who went back to the crime scene, pulled the lint filter from the dryer and sent it to the Crime Lab to be tested. Is there any doubt that if the lint filter had come back from the Lab with a finding that it was full of blood particles that matched the victims that Defendants would be arguing that the lint filter, the Lab results and all inferences from that evidence are fair game to be argued to the jury? Of course they would.

Defendants' Motion should be resoundingly rejected.

Dated: May 14, 2025

                                                                 Respectfully submitted,
                                                                 *PLAINTIFF ROBERT SMITH JR.*

                                By:    /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevatenextlaw.com

4