IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
|       Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
|       Defendants. | ) | |

**SMITH'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 17
TO BAR ANY EVIDENCE, ARGUMENT, OR REFERENCE TO JON BURGE**

In Defendants' MIL #17, Dkt.590, Defendants move to bar Smith from making any reference of any kind, including evidence, that relates to Jon Burge in any way. The Court should deny the Motion on the following six grounds.

First, the basic theme of Defendants' Motion is, "when you throw out the dirty bathwater (evidence against Burge), throw out the baby as well (the admissible evidence against Defendants)." What we mean by this is that there is a tremendous amount of evidence against Defendants that *is admissible under Rules 402, 403, 404(b), 406*, *608(b), and 609(b)*, which Defendants' Motion requests the Court to exclude, all in the guise of "not mentioning Jon Burge." Once the Court considers this request in the context of the actual evidence, it becomes clear why this argument must be rejected.

When the City of Chicago moved to terminate Burge from the Department, it did not just move to terminate Burge, it also moved to terminate John Yucaitis – a Defendant in this case! The City accused Burge and Yucaitis of "an astounding pattern or plan on the part of [Burge and Yucaitis] to torture certain suspects . . . into confessing to crimes." *In re Charges Filed against Burge, Yucaitis, and O'Hara*,

Nos. 1856–58, City's Memorandum in Opposition to Motion to Bar Testimony Concerning Other Alleged Victims of Police Misconduct, at 1 (Jan. 22, 1992).

Similarly, in November 1990, CPD's own Office of Professional Standards ("OPS") issued a report entitled "History of the Allegations of Misconduct By Area Two Personnel," attached as Exhibit A, which was written by Defendant City of Chicago employee Michael Goldston, Star #73, and approved by CPD's Coordinator of Operations, Leonard Benefico, also a Defendant City of Chicago employee (the "Goldston Report"). The Goldston Report did not just find that Burge engaged in misconduct but that all of the individuals named in the Report were implicated in the beatings and the torture that occurred at Area 2. Defendants themselves do a great job summarizing that report:

> Plaintiff relies on the 1990 Goldston Report in which Michael Goldston, an investigator for the Office of Professional Standards, identified 50 alleged victims of torture by CPD personnel assigned to Detective Area 2 where Burge was a commanding officer. (Ex. A, Goldston Report). The alleged misconduct included beatings, suffocation, threatening and striking victims with firearms, electroshock, and hangings. (Ex. A, Appendix F to the Goldston Report ("Statistical Analysis") at p. 1). Burge himself was named as an accused in more than half of the 35 incidents in which the offending officer could be identified. *Id.*

Motion at 2. But they then argue incorrectly that there is no evidence in that Report or elsewhere that Defendants "behaved in the same improper manner" as Burge:

> Introduction or reliance on this report and/or any other evidence concerning Jon Burge as mentioned above, invites the jury to conclude that all Chicago police officers, including the Defendants, behaved in the same improper manner as Burge. Burge, however, was not the Commander at Area 2 during [the] time [Smith was arrested] and had been replaced by Lt. Cline as the Area 2 violent crimes commander when the Yeager/Alexander homicides investigations was conducted.

2

*Id*. But this is just wrong. The Goldston Report concluded:

> In the matter of the alleged physical abuse, the preponderance of the evidence is that abuse did occur and that it was systematic. The time span involved covers more than ten years. The type of abuse described was not limited to the usual beating, but went into such esoteric areas as psycho-logical techniques and planned torture. The evidence presented by some individuals convinced juries and appellate courts that *personnel assigned to Area 2* engaged in methodical abuse.

Exhibit 1, at 3 (SMITH012885).

The Goldston Report then specifically identifies Defendant YUCAITIS as participating in the "bagging" of Jerry and Reginald Mahaffey on September 2, 1983, and both YUCAITIS and DWYER in the March 21, 1985 mock hanging of Jesse Winston. *See* Exhibit 1, at 17-19 (emphasis in original). Because this evidence – and substantial additional evidence Defendants seek to exclude – ties the acts of Burge directly to the acts of at least Defendants Dwyer, McWeeny, Pedersen, Solecki, and Yucaitis, the argument that the Court should not permit Smith to paint the Defendants with so wide a brush as one that includes Burge rings incredibly hollow.

Defendants are basically asking this Court to exclude evidence of Defendants' own conduct on the simple ground that it was Burge who supervised and also participated in the conduct, and "he is both more famous and more infamous than we are," so exclude all this evidence against us. That is not a ground for exclusion recognized by the Federal Rules of Evidence.

Second, Defendants repeatedly refer to Area 2 as this far away place that has absolutely nothing to do with them, and they refer to Burge as some mythical figure also completely unconnected to them in any way. But as the Court knows from Point 1 above, the precise opposite is true. It is worth emphasizing that Burge was

Defendants' commanding officer for years and years. Defendant Solecki worked with Burge at Area 2 for close to twelve years, 1975 to 1986. Defendant Dwyer worked with Burge for close to ten, 1977 to 1986. Defendant McWeeny, five to five-and-a-half years, 1981 to 1986. Pedersen claims not to remember how many years he worked with Burge, but there appear to be at least five overlapping years at Area 2, 1981 to 1986, as is also the case with his partner, Detective Rice. Yucaitis is harder to pin down because he died before this case was filed and testified in 1989 to having been a Detective for 21 years, without identifying location; but it appears without certainty that he was stationed at Area 2 the entire 15 years that Burge was there, 1972 to 1986. Defendants' assertion on page 3 that their actual association with Jon Burge is "loose or nonexistent" also rings incredibly hollow.

These time frames in which Defendants worked closely with Burge and Burge trained and supervised them are significant because if the Court considers Defendants' request to bar any reference to Burge whatsoever, it is difficult to conceive how all of Defendants' prior – otherwise admissible – unconstitutional acts can be discussed at all, let alone put in context. In the meantime, as discussed in Section Three below, it is Smith who carries the burden of proof to both establish that a pattern and practice of abuse existed at Area 2 and that pattern and practice was suppressed from him as part of his criminal case.

Third, as stated in detail in Smith's summary judgment opposition, a vital constitutional claim in this case is that Defendants withheld important exculpatory and impeaching evidence related to Area 2's pattern and practice of torture and

4

abuse.  See Second Amended Complaint, Dkt.82 ("SAC"), at ¶¶ 171-178 ("Pattern and Practice *Brady* Claim").  See also *Id.* at ¶¶ 4, 107-118, 174, 201; Second Corrected Opposition to Defendants' SJ Motion, Dkt.521, at 29-33.  The Court will likely recall from summary judgment that Defendants assert that "there is no legal precedent requiring police officers to disclose allegations of their misconduct." Dkt.490, at 39.  Smith immediately responded with overwhelming legal precedent that holds precisely the opposite, including:

> *Newsome v. McCabe,* 319 F.3d 301, 304-05 (7th Cir. 2003)
> *Fields v. Wharrie,* 672 F.3d 505, 517 (7th Cir. 2012) (*Fields I*)
> *Fields v. Wharrie,* 740 F.3d 1107, 1117, 1123 (7th Cir. 2014) (*Fields II*)
> *Avery v. Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017)
> *Patterson v. Burge*, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004)
> *Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *12 (N.D. Ill. Feb. 2, 2006)
> *Tillman v. Burge,* 813 F.Supp.2d 946, 962 (N.D. Ill. 2011)
> *Alonzo Smith v. Burge*, 222 F. Supp. 3d 669, 680–81 (N.D. Ill. 2016)
> *Ruiz–Cortez v. Chicago,* 11 C 1420, 2016 WL 6270768, at *16 (N.D. Ill. Oct. 26, 2016)
> *Maxson v. Dwyer,* No. 16 C 9417, 2017 WL 1493712, at *4 (N.D. Ill. Apr. 26, 2017)
> *Gibson v. Chicago*, No. 19 C 4152, 2020 WL 4349855, at *9 (N.D. Ill July 29, 2020)
> *Wilson v. Estate of Burge,* 667 F. Supp. 3d 785, 863 (N.D. Ill. 2023)

Smith has fully and properly alleged in this case that Detective Defendants suppressed vital information about the pattern and practice of "systematic" and "methodical" "abuse," including "planned torture," and of other unconstitutional acts (such as fabricating evidence) in which these Defendants repeatedly engaged prior to Smith's arrest. (Significantly, the quotes in the preceding sentence are *not* from Smith's Second Amended Complaint; they come from the City's own admissions in the Goldston Report.)

Fourth, there is another, distinct, and significant problem with Defendants' argument.  The jury must be permitted to assess the credibility of Defendants McWeeny, Pedersen, Brownfield, Cline, and others in the context of their specific

5

denials, under oath, that they ever participated in, witnessed, or even heard from other detectives or officers about the torture of Smith or of any person held in custody at Area 2 Violent Crimes. *See* SAC, Dkt.82, ¶ 116; PSOF, Dkt.502, ¶ 142, 155-56, 166. As just one example, McWeeny denied under oath at a deposition related to this case that he ever saw Burge strike anyone in police custody, put a plastic bag over the head of anyone in police custody, put a gun against the head or mouth of anyone in police custody, or use electroshock on anyone in police custody. PX30, at 6:11-7:17. McWeeny also denied that he, or any other Area 2 detective in his presence, had ever participated in any physical abuse of any person in police custody while he worked under Burge at Area 2. *Id*. at 7:18-10:8. In fact, McWeeny denied that any torture ever occurred at Area 2, *at all*, and even denied that he even had heard rumors that Burge or other detectives were torturing suspects or witnesses. *Id*. at 18:12-15. According to McWeeny, Jon Burge was "*the best supervisor he ever worked for, ever*" and further testified that the hundreds of torture allegations made against Burge and other Area 2 detectives, including himself, are all false and completely made up. *Id*., at 5:18-22 (emphasis added); *Id*. at 88:19-89:8 ("*Those are accusations that were made that I'm telling you right now didn't happen, not in the least, not while I was around*.") (emphasis added).[1]

All of this evidence is relevant because it goes directly to Defendants' character for truthfulness or untruthfulness. Again, by way of example only, prior to lying

---

[1] There are extremely similar under oath denials taken in Smith's post-conviction case, this case, or both, from Brownfield, Dwyer, Pedersen, and Solecki, but we do not list them all here. They are listed in detail in Smith's PSOF, Dkt.502, at ¶¶ 142-167.

about Area 2 at his deposition in Smith's post-conviction case, McWeeny had taken the Fifth Amendment nine times when asked if he had participated in, observed, or was aware of beatings of suspects that occurred at Area 2. For reasons known only to McWeeny (which he has taken to his grave), he decided in Smith's post-conviction case to seek immunity from state court prosecution (not federal) for giving truthful under oath testimony in Smith's case. (Pedersen and Brownfield also previously took the Fifth and were given state immunity.) That is the choice that the three of them made. These Defendants cannot hide behind that choice by excluding their own under oath testimony that is clearly relevant to their character for untruthfulness. See, e.g., FRE 404(a)(3) ("Evidence of a witness's character may be admitted under Rules 607 , 608 , and 609"); FRE 608(b) (the court may allow a party to cross-examine a witness about specific instances of conduct related to that witness's character for untruthfulness). *See also* 7th Cir. PJI 1.13 ("You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all"); *Id*. ("You also must decide what weight, if any, you give to the testimony of each witness[, including] any interest, bias, or prejudice the witness may have"); 7th Cir. PJI 1.14 ("You may consider statements given by a Party under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony").

On this ground alone, *Defendants' credibility*, the Court should not bar from this case the basic concept that Defendants assert that no torture of suspects ever occurred at Area 2. *See also* PX195, Cline December 5, 2019 Dep., at 48:17–49:7,

7

51:10-19 (despite news report of torture occurring at Area 2, Cline did not instruct his Area 2 detectives to stop using any such "techniques" because, as far as he was concerned, the torture never occurred and there was nothing to change).

Fifth, Defendants make an odd argument that anything related to Burge must be excluded because Burge was not the Commander of these Defendants on the precise date Smith was arrested. The Rules of Evidence, however, do not work that way. As already implicitly discussed extensively above, Rule 401 provides that evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." FRE 401. Defendants' argument appears to be that the only relevant facts of the case are those that center around September 19, 1987, and nothing that came before or after has any bearing on the case whatsoever (except, by the way, when they get to bring in evidence related to Smith before September 19, 1987). But the bottom line is that Rule of Evidence 401 accommodates for a lot of evidence created before or after the specific date in question, including character evidence, habit evidence, reputation evidence, opinion evidence, and so on. Relevancy is not a static concept that exists only on the day that McWeeny arrested Smith without any actual basis or Dwyer shoved Smith's own handkerchief and wallet down Smith's throat. A whole slew of additional evidence, most detailed above in Sections 1-4, are also relevant and admissible, including evidence that touches on Burge.

Sixth, and finally, Defendants' Motion is wildly overbroad and extremely artificial in its overbreadth. See Motion at 2 ("Burge had no investigatory or

8

supervisory capacity at any point during the Yeager/Alexander homicides investigation"). Defendants request this Court to bar from this case all of the following evidence:

- Jon Burge or any cases associated with Jon Burge;
- Jon Burge's termination from CPD;
- Jon Burge's 2011 criminal conviction;
- The City's 2015 Reparations Ordinance;
- Defendants' opinions about Burge as a supervisor;
- Knowledge about torture allegations against Burge;
- Whether or not any of the Defendants testified at the grand jury proceedings or asserted their Fifth Amendment rights in response to questioning concerning Burge allegations; and
- any changes made or not made at Area 2 after Lt. Cline replaced Jon Burge.

Motion at 1. As the Court can see, these are just a wide array of disparate types of evidence that Defendants do not like. Although they try to use Burge as the common theme and basis to exclude all this evidence, such a request is neither supported by the Federal Rules of Evidence, nor is it the right way to admit admissible evidence, while protecting Defendants' wishes to have the case tried without guilt by association. But "guilt-by-association" simply cannot be supplied as an excuse to exclude evidence that is "guilt-by-the-Defendants'-own-actions." The problem with the evidence that Defendants want to exclude is that it also sweeps in a bunch of evidence that is clearly admissible:

| | |
|---|---|
| Jon Burge or any cases associated with Jon Burge. | Defendants are also associated with many of those cases (at least 27 of the Burge exoneration cases involved one or more of the Defendants in this case). |
| Jon Burge's termination from CPD. | Much of that evidence applies to Yucaitis as well (as well to other Defendants under Rule 406). The evidence is also important because |

9

| | the charges and evidence are admissions of the City of Chicago. |
|---|---|
| Jon Burge's 2011 criminal conviction. | Smith would agree not to mention this, but certain evidence from that trial is admissible (and can just be referred to as "other testimony under oath"). |
| The Reparations Ordinance | The Ordinance is highly relevant admission of the City of Chicago, passed by the entire City Council. It admits that torture occurred at Area 2 and the City owed reparations for that torture to any person who could not get relief through the legal system. Such evidence should not be excluded. |
| Defendants' opinions about Burge as a supervisor; and<br><br>Knowledge about torture allegations against Burge. | This was discussed extensively above. It goes to the credibility and character for untruthfulness of every Defendant who testified on this subject. |
| Any changes made or not made at Area 2 after Lt. Cline replaced Jon Burge. | Same. It goes to the credibility and character for untruthfulness of Defendant Cline. |
| Whether Defendant has ever asserted his Fifth Amendment right in response to questioning concerning torture at Area 2. | This is admissible under numerous Supreme Court and 7th Circuit cases Defendants withheld from this Court in their MIL #19. See Smith Opp. to Defs' MIL #19. |

In short, Smith is asking this Court not to throw out the massive amount of relevant, admissible evidence about Defendants' own involvement in unconstitutional conduct at Area 2 with "the dirty bathwater" – all of the equally compelling evidence that Burge trained and supervised Defendants' physical and psychological torture of suspects. Smith does not dispute that there are other ways to ameliorate the effect that the mention of Burge may have on this case, including, as an example, an appropriate limiting instruction. But the Court should absolutely deny this Motion

as a "blanket motion" and at most, rule on any specific exclusion on individual basis in the context of the trial itself.

For all these reasons, Robert Smith respectfully requests this Court, at this time, to deny the Motion, as written, in its entirety.

Dated: May 14, 2025

                                                           Respectfully submitted,
                                                           *PLAINTIFF ROBERT SMITH JR.*

                                                  By:    /s/ *Stuart J. Chanen*

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN, LLP
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law