## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## SMITH OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 21
## TO BAR CERTAIN FINGERPRINT EVIDENCE AND ARGUMENT

Defendants' MIL #21, Dkt.572, seeks to bar all evidence and argument that touches on fingerprints in any way. Defendants' request is wildly overbroad, wholly unsupported by the Rules of Evidence or any pertinent case law, incredibly dismissive of their own admissions, and ultimately, is just another example of Defendants' requesting the Court to bar highly relevant evidence that Defendants simply do not like. The fingerprint evidence in this case is incredibly straightforward and incredibly important, and Defendants' attempts to block it should be resoundingly denied.

## BACKGROUND FACTS

As Defendants admit on the very first page of their Motion, evidence technicians removed three different sets of latent fingerprints from the crime scene. Quoting Defendants' Motion,

(1) "[E]vidence technicians . . . recovered latent fingerprints on the basement rear door." Motion at 1.

(2) "[E]vidence technicians . . . recovered latent fingerprints from a glass [jar] found on the top of the washing machine." Motion at 2.

(3) "Latent prints were also recovered from a gas can found at the scene." Motion at 2.

All three sets of prints are admissible in evidence, and Defendants do not argue

otherwise.  They don't assert the three latent prints are irrelevant, or hearsay, or lack

foundation, nor could they since the evidence was all collected by agents of Defendant

City of Chicago.  Indeed, in the Motion, Defendants summarize, in some detail, the

foundation for each of these three pieces of evidence.  See Motion at 1-2.  Defendants

also note correctly that there exists an admissible Evidence Report that mentions all

three sets of latent prints and that each set of latent prints were sent to the Chicago

Police Department Crime Lab.

Importantly, none of the three sets of prints that were sent to the Crime Lab for

comparisons ever actually received fingerprint comparisons.  As will become clear

during the trial, the failure to undertake fingerprint comparisons is, itself, both

relevant and admissible, and Defendants do not argue otherwise in their Motion.

In other words, although Defendants make a sweeping demand to bar all

fingerprint evidence for any purpose, their Motion does not supply any basis to

exclude the fingerprint evidence that was available.  What Defendants appear to

argue instead is that because Plaintiff _has not tendered a scientific expert or a lay_

_expert to testify about fingerprints_, he may not move to admit any evidence of

fingerprints and may not make any reference to fingerprints at any point in the trial.

The most fundamental problem with this argument is that Defendants intentionally

ignore that the untested latent fingerprints are relevant for the very reason that they

_remained untested_.  They were sent to the crime lab specifically for fingerprint

comparisons; the Defendants and the Crime Lab were in possession of Robert Smith's

fingerprints as of September 20, 1987 (two sets in fact), and there was a "Request for

Analysis" that specifically included a request for fingerprint comparisons, but the lab

2

never did them. Why not?

Defendants' Motion does not accommodate for this question. It instead chooses to focus on a completely different point, asking only if the latent fingerprints were "suitable" for fingerprint comparison. See Motion at 1 ("In this case, Plaintiff has not disclosed any witness, expert or otherwise, who would offer any testimony regarding the suitability of the recovered prints for comparison purposes."). There are several problems with this argument.

First, as Defendants themselves concede, their "not-disclosed-any-witness" argument is itself incorrect. Plaintiff has disclosed his forensics expert, Dr. Karl Reich, who will be testifying about latent fingerprints and specifically the three that were sent to the lab for fingerprint comparisons. See Reich Report, attached as Exhibit A, at 19-20 (noting that "DuShane never disclosed, neither in a report or during his testimony" why the gas can latent was not suitable for comparison, nor did DuShane identify prior to his death the mysterious person who "brought [the gas can prints] to his attention in October 1987," which allegedly caused DuShane to re-evaluate whether the prints were suitable).[1]

Second, Defendants have the shoe on the wrong foot (or perhaps the glove on the wrong hand). Smith does not have a burden at this trial to prove the suitability

_____

[1] Defendants assert that no one can challenge "DuShane's testimony that [the gas can latents] were not suitable for comparison" because his testimony is "unrebutted." Motion at 3. This is wrong as a matter of law. First, the jury will be permitted to view the latents, hear from Dr. Reich about the suitability and comparison of fingerprints, and conclude for themselves whether the latent was suitable for comparison. Second, even without a person viewing the fingerprints and concluding that DuShane was wrong, Smith is still permitted to argue that DuShane's testimony provided insufficient explanation as to why the print was no longer suitable, and therefore the testimony should be rejected.

of the fingerprints for comparison; rather, because the City's own evidence technicians

both concluded that both the storm door and glass jar latents were suitable for compar-

ison, it is Defendants' burden to prove why these latent fingerprints were not "suitable."

Defendants concede that burden with respect to John DuShane's testimony about the

gas can, but as stated above and in footnote 1, the jury could easily find DuShane's

testimony to be "not credible." And regardless, Defendants have not even asserted that

the latents from the rear door and the glass jar were unsuitable for comparison, nor have

they identified any witness who is in a position to do so.

Third, even if Defendants were somehow permitted to assert that the

the rear door and the glass jar fingerprints were also not suitable (which (a)

Defendants have never done; and (b) according to Defendants, they are not permitted

to do without expert testimony, which they do not have), the issue of suitability of

comparison goes to the weight of the evidence, not its admissibility. The latent is the

latent. It can be reviewed under a microscope; it can be admitted into evidence; it can

be analyzed by both experts and non-experts (jurors!). The prints can (and will once

the impounded evidence is produced) be blown up and shown to the jury, and as

Defendants concede, the jury will make its own decision whether any of the latents

were suitable and that a comparison should have been undertaken. *See* Motion at 2-

3, *citing United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002), for the proposition

that where "an untrained layman could . . . perceive[e] the same acts or events,"

"specialized explanations or interpretations" are not needed or permitted). *See also*

*supra* footnote 1.

4

Fourth, the bottom line is that none of the latent fingerprints were ever compared to Robert Smith's fingerprints or anyone else's. See Motion at 3 ("Nor is there any evidence in the record that . . . these prints . . . were compared with Plaintiff's prints"); *Id.* at 2 ("the record in this case does not reflect . . . whether [the recovered latent prints] were compared with anyone"). But this cuts completely against Defendants. Had the CPD Crime Lab compared the prints to anyone, they were required to write a forensic report about it. There are no such reports anywhere in the record. The jury can easily conclude fingerprint comparisons should have been undertaken – but that none, in fact, ever were. [2]

For all these reasons, Defendants' MIL # 21 should be denied in its entirety.

Dated: May 14, 2025

Respectfully submitted,

*PLAINTIFF ROBERT SMITH JR.*

By:   /s/ *Stuart J. Chanen*

CHANEN & OLSTEIN, LLP
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5460
Nicole.auerbach@elevate.law

---

[2]    Judge Chang's oral ruling in *Gray v. City of Chicago*, 18 C 2624, is not to the contrary. There, testing was done on a milk jug, and no fingerprints were found *at all*. The issue on that motion was what inferences could be argued about the complete absence of prints on an object, and the Court held that without expert testimony on that issue, he was not going to allow it. *See* Dkt.572-8. *Gray* has no relevance to Defendants' Motion.