IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., | ) | |
| Plaintiff, | ) | No. 21-cv-1159 |
| v. | ) | |
| | ) | Honorable Jeffrey I. Cummings |
| The City of Chicago, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SMITH'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE # 25
TO BAR PLAINTIFF FROM ASKING LEADING QUESTIONS AND
TREATING NON-DEFENDANT POLICE OFFICERS, CRIME LAB EMPLOYEES,
AND ASSISTANT STATE'S ATTORNEYS AS ADVERSE WITNESSES**

Defendants move *in limine* to bar Plaintiff, Robert Smith, from asking leading questions and treating non-defendant police officers, Chicago police crime lab employees, and assistant state's attorneys as adverse witnesses. Dkt. 595 ("Motion" or "Mot."). Defendants' Motion should be denied for the reasons stated below.

**ARGUMENT**

Defendants address this Motion under Federal Rule of Evidence 611(c), which provides that leading questions can be used "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party" and then addresses the different categories of witnesses. Smith will do the same.

**Non-Defendant Police Officers.** With the exception of former Chicago Police Officer Martin Rios and former Defendant Michael Rowan who Defendants concede are adverse parties (Mot. at 2, n.1), Defendants claim that Ronald Gaines, Frank DeMarco, Warren Hughes and Lawrence Gates, all former City employees, cannot be led. They

1

argue that their mere status as "former" City employees exempts them from being treated as adverse parties. This is simply not the case.

Recently, in *Pryor v. Corrigan*, No. 17-CV-1968, 2023 WL 1100436, at *21 (N.D. Ill. Jan. 30, 2023) (Seeger. J.), aff'd, 124 F.4th 475 (7th Cir. 2024), the court held that, "A classic example of a witness identified with an adverse party is a police officer called as a witness in a [section] 1983 trial involving an incident in which he ***or fellow officers*** were involved." Id. at *7 (emphasis added). This applies to all four witnesses in question and thus, the inquiry could end here.

Furthermore, "In addition to current employment, a witness is most likely to be treated as adverse where he or she was employed at the time of the incident in question and had a hand in the incident that resulted in suit." *Gibbons v. Vill. of Sauk Vill.*, No. 15 CV 4950, 2017 WL 4882334, at *4 (N.D. Ill. Oct. 30, 2017), citing *Ratliff v. City of Chi.*, No. 10 CV 739, 2012 WL 7993412, *1 (N.D. Ill. Nov. 20, 2012). Even the case Defendants rely on, *Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2640317 (N.D. Ill. Mar. 22, 2023) holds that "it is possible, but not strictly necessary, for a witness to be treated as adverse when he was employed by the City at the time of the incident in question." *Id.,* at *6 (citations omitted). The *Gibbons* court clarified that, "Even when that involvement is tangential, an employee of a city defendant may be considered to be identified with an adverse party." *Gibbons*, at *4.

In *Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012), the court held that "[a]ll of these witnesses, by virtue of their employment with Defendant City of Chicago, by their involvement (even if tangential or limited) with the

2

case, and by their relationship with the Defendant Officers as their co-workers, clearly qualify as 'witness(es) identified with an adverse party' for purposes of Rule 611(c) (citations omitted). In fact, in *Ratliff,* merely being an officer who was on duty at the police station when the plaintiff was present qualified as adverse under the Rule. *Id.* Similarly, in *Ellis v. City of Chicago*, 667 F.2d 606, 612–13 (7th Cir.1981), another case relied on by Defendants, the Seventh Circuit held, "When the city is a defendant to a § 1983 claim, police officers employed by the city and who were present during portions of the incident at issue are clearly qualified as a "witness identified with an adverse party."

All four former officer witnesses were employed by the City at the time of the incident in question and were involved in some way with it. Furthermore, all of the witnesses are arguably part of the systemic and pervasive effort by Area 2 personnel and those who worked with them regularly (like evidence technicians and Bomb & Arson Detectives), to cover up the widespread wrongdoing running rampant within the Area.[1]

Ronald Gaines interviewed alibi witnesses and submitted in inventory a 12-inch butcher knife that was then destroyed in violation of CPD policies prior to Smith's criminal trial without notice to Smith. This destruction is at the heart of the *Brady* claim in this case. Furthermore, Smith argues that the detectives in question, even those not

---

[1] Indeed, we know that the cover up of police misconduct within the CPD has been a pervasive problem because City officials have admitted so and jurors have so held. *See Klipfel v. Bentsen*, No. 94-cv-6415 (N.D. Ill) (jury verdict against the City, finding that the City was responsible for maintaining a code of silence within the CPD); *Obrycka v. City of Chicago*, 07 C 2372 (N.D. Ill. 2012) (same). *See also* https://www.cbsnews.com/chicago/news/emanuel-im-sorry-for-laquan-mcdonald-shooting/ (Chicago Mayor Rahm Emanuel's December 9, 2015 statement admitting the existence of a "code of silence" within the CPD and that officers ignore, deny, or cover up their fellow officers' misconduct.).

named as defendants, were part of a larger conspiracy to cover up the ubiquitous *modus operandi* within Area 2 of abusing suspects and coercing them to give false confessions so cases could be cleared and closed quickly. Undertaking shoddy investigations in an effort to appear to be truly investigating the crime, was part and parcel of that. Gaines was involved in that based on his role in this case.

DeMarco was the evidence technician who collected evidence and *failed* to collect evidence at the scene. DeMarco was openly hostile to Smith's counsel during his deposition:

```
Q.  Mr. DeMarco, do you know what an
16  independent recollection is?
17      A.  I have no idea what you're talking
18  about.  No, sir.
19      Q.  Okay.  So an independent recollection
20  for the purposes of my questions today means a
21  memory that you have, a standalone memory that
22  you have not dependent on reviewing documents or
23  photographs of -- an independent memory,
24  essentially.  Is that fair?
1       A.  Sir, I don't know what you're talking
2   about.  I have no idea what you're saying.
3       Q.  Okay.  Do you have any memory at all
4   of --
5       A.  Sir, I told you --
6       Q.  I'm not done with my question.  Please
7   don't interrupt me.
8           Do you have any memory at all about the
9   Yeager/Alexander homicides in September of 1987?
10      A.  Sir, like I said before, I'll be nice
11  about it.  This is over 34 years ago.  I don't
12  recall at all.  Okay?  At all.  I don't recall
13  things I did two days ago.  So please stop
14  asking me the same question over and over.
```
DeMarco Dep. at 113:15-114:14.

Gates was also a detective with the Chicago Police Department's Bomb & Arson department. Knowing that the missing 12" butcher knife is an issue for the Defendants, he has tried to diffuse the significance of a foot-long butcher knife at the scene of a double-murder in which the two victims had their throats cut by suggesting that he and another fire investigator maybe, possibly, might have, potentially taken the knife from the scene and used it to collect evidence. Gates also implied at his deposition that Smith's guardian and representative in this case, Diane Yeager-Smith, may have been involved in the murders (of her own mother and grandmother). Gates' involvement and positions make him very much adverse to Smith.

Finally, Officer Warren Hughes was not uninvolved in the incident in question either. Hughes lied in the criminal proceedings and at his deposition in this case by adopting McWeeny's false "dove into a pool of blood" fabrication of what occurred at the scene, in line with the *modus operandi* stated above. (8/29/90 Trial Testimony at B 48).

Furthermore, statements made by these former City employees are deemed "statements of an opposing party" under Rule 801(d)(2), and as an agent of the opposing party, they should be treated as adverse witnesses under Rule 611(c). "As to the statements made by non-party police officers, the court finds that these statements are admissible against defendant City of Chicago under Rule 801(d)(2)(D). Rule 801(d)(2)(D) excepts from the hearsay rule 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship.'" *Sadrud-Din v. City of Chicago*, 883 F. Supp. 270, 274 (N.D. Ill. 1995)

5

(holding that non-officers' statements to a reporter were statements of an opposing party and admissible).

**CPD Crime Lab Employees.** Defendants also want to make the former City crime lab technicians off limits in terms of leading questions, but these individuals were employees of a party opponent at the time of the incident and are embroiled in issues regarding the evidence in question. Notably, Christine Anderson, the serologist testified against Smith at his criminal trial and has been identified as the Defendants' expert. She therefore exudes all the qualities of someone "identified with an adverse party." Both should be treated as adverse under Rule 611(c). *Ratliff*, at *1.[2]

**Assistant State's Attorney Woulfe.** Defendants argue that Patricia Woulfe, the assistant state's attorney that handled discovery and other pretrial matters during Smith's criminal proceedings, including as one of the lead prosecutors in Smith's Motion to Suppress his coerced confession and Motion to Quash his Arrest hearing ("MTS"), should also be exempt from the adverse witness rule. Again, this request should be denied, vehemently. First, Woulfe was the precise person who effectively defended the unconstitutional conduct of the Defendants during the MTS when the identical conduct was at issue. In fact, Woulfe was the attorney who cross-examined Smith during his MTS testimony and who put many of the Defendants and their co-workers on the stand against Smith.

---

[2] While the caselaw overwhelmingly supports treating the former City employees as adverse, the Court could follow what the *Pryor* court did: "apply a presumption that they [City employees] may be called adversely because they are associated with a party." *Pryor*, at *21.

In addition, Woulfe was directly involved in suppressing the evidence of the 12" inch butcher knife that "disappeared" before Smith's trial. She also suppressed all related evidence, including photographs taken by Fire Marshal Lumdsen that clearly depicted the knife—positioned at the center of the crime scene—which Smith contends was the murder weapon and constituted direct exculpatory evidence. This is at the heart of the *Brady* claim at issue.

Further, Woulfe was extraordinarily hostile to Smith's counsel at her deposition. As just one example, when asked to read the MTS transcripts to try to refresh her memory, she refused do so, as well as repeatedly refused to answer even the most straightforward questions about her involvement in Smith's prosecution, falsely claiming that she had nothing to do with Smith's case. Woulfe absolutely qualifies as someone who, by virtue of "[her] relationship with the Defendant Officers" is a 'witness(es) identified with an adverse party' for purposes of Rule 611(c)." *Ratliff*, at *1.[3]

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendants' Motion In Limine # 25 in its entirety.

Dated: May 14, 2025

    Respectfully submitted,

    *PLAINTIFF ROBERT SMITH JR.*
    By: /s/ *Stuart J. Chanen*

Stuart J. Chanen

---

[3] Defendants note they are not attempting to treat former ASA Raymond Brogan as adverse because he was a former defendant in this matter. Mot. at 4, n.2. Woulfe worked with Brogan and had the same employer, the Cook County State's Attorneys' Office, which paid Brogan's settlement in this case. All further reasons to treat her adversely.

7

Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Rd, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5469
Nicole.auerbach@elevate.law