IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO BAR EVIDENCE OF PLAINTIFF'S BAD ACTS

Defendants, by their respective undersigned counsel, respond to plaintiff's motion *in limine* no. 10 as follows:

Plaintiff's motion *in limine* no. 10 posits that defendants seek to transform the trial into "a referendum on every aspect of plaintiff's character, every bad thing he ever did, every mistake he ever made, and everything that ever happened to him" and lists certain questions asked at Smith's deposition as the "bad act" evidence that the plaintiff seeks to exclude. Dkt. 553, at 2. Plaintiff's motion is completely misguided. The topics covered in those questions, which pertain to Smith's drug use and addiction, his relationship with Sally Payne, his marriage to Diane Yeager-Smith, his unemployment, and his history of committing burglaries are relevant and admissible for several reasons—as information that was learned during course of the investigation that relates to probable cause, because it rebuts plaintiff's claims that defendants lacked probable cause, coerced his confession, and fabricated evidence, and because it is relevant to plaintiff's claimed damages in this case.

Indeed, the Seventh Circuit recently reaffirmed that Courts **should** admit evidence pertaining to the reasons why a course of conduct was taken and damages rebuttal evidence where

a plaintiff presents evidence to a jury that portrays the individual in a positive light. *See Hernandez, et al. v. City of Peoria*, -- F.4th --, 2025 WL 1155121 (7th Cir. Apr. 21, 2025) (holding that defendants in Section 1983 wrongful death case are entitled to introduce evidence that paints a contradictory picture to that of plaintiff's evidence casting a positive light); *see also Cobige v. City of Chicago*, 651 F.3d 780, 784 (7th Cir. 2011), as amended on denial of reh'g (Sept. 8, 2011) (same). Smith's drug and alcohol binges with Sally and Santee, his unemployment, his burglaries, and the state of his marriage with Yeager-Smith all relate to plaintiff's claimed damages in this case.

This motion must be denied.

## SUMMARY OF RELEVANT FACTS

Plaintiff admittedly was on a drug and alcohol binge with Sally Payne the night the murders occurred. Ex. A, 2/6/89 Transcript of hearing on Smith's Motion to Suppress in *People v. Smith*, 87 CR 15089 at SMITH 3458-60, and 2/8/89 Transcript of hearing on Smith's Motion to Suppress in *People v. Smith*, 87 CR 15089 at SMITH 3500-03. Detectives interviewed Sally and Santee, Smith's claimed alibis, and the witnesses could not account for Smith during the time when the murders occurred because Smith had left them from just past midnight until his return at about 3:00 am. Ex. B, GPRs Payne and Santee Interviews; Ex. C, GPR Sally Payne Interview; Ex. D, GPR Santee Interview. Sally reported to the Detectives that Smith's clothing was wet upon his return. Ex. C, GPR Sally Payne Interview. Santee reported to the Detectives that Smith was known to drink and use drugs. Ex. D, GPR Santee Interview.

Diane Yeager-Smith conceded at her deposition that Smith, whom she was considering divorcing at the time, was capable of the crime "if he was on something, not in his right mind." Ex. E, Yeager-Smith Dep. 68-69. Yeager-Smith had previously seen Smith "not in his right mind"

when he was in Sally's neighborhood, which Yeager-Smith said was on 83rd, 84th, or 87th Streets. *Id.* at 46. Things were getting worse between Yeager-Smith and Smith in the weeks and months leading up to the murders (*id.* at 68), they frequently argued about him going to Sally's neighborhood (*id.* at 52), and Yeager-Smith told Smith that he needed "to do something with your life" and that "things need to change." *Id.* at 68.

During the course of the investigation of the murders, Yeager-Smith spoke with Detectives Brownfield and Yucaitis for several hours. Ex. F, Brownfield Dep. 91-93; Ex. G, Supp. Report; Ex. H, Yeager-Smith Interview (Yucaitis). Yeager-Smith informed the Detectives of the unauthorized withdrawals from her mother's bank account the month before and her suspicion that Smith made those withdrawals. Ex. E, Yeager-Smith Dep. 105-106; Ex. G, Supp. Report – Yeager Smith. Yeager-Smith informed the Detectives of Smith's drug habit and unemployment, which showed that Smith had a financial motive to fund his drug habit. Ex. G. Corroborating this motive, Smith himself admitted to numerous burglaries on other occasions to fund his drug habit. Ex. I, Smith Dep. 69, 70. Plaintiff also admitted at his deposition that in 1987 he kept a small single-edge razor in his wallet (which he would use to commit crimes), and it was no longer in his wallet at the time of his arrest. *Id.* at 196, 201-202.

## ARGUMENT

### I. The Evidence is Specifically Relevant to Probable Cause.

Smith's drug use and burglary habits are relevant to establishing probable cause (an element of plaintiff's Fourth Amendment and state law malicious prosecution claims) and to rebut plaintiff's claim of innocence. A party "may elicit the statement to prove the information they knew supporting probable cause for the malicious prosecution claim." *Jones v. City of Chi.*, 2017 WL 413613, at *16 (N.D. Ill. Jan. 31, 2017). Defendants were aware, among other facts, of Smith's

3

drug habit, his abuse of drugs and alcohol on the night of the murders, that he would use drugs and alcohol with Sally and Santee (and was doing so on the night of the murders), that he was unemployed, and that Yeager-Smith suspected him of making unauthorized withdrawals from her mother's bank account the month prior.

Plaintiff cannot on the one hand argue defendants lack probable cause and then on the other strip from them the factual information they had during the investigation. Defendants should be permitted to introduce this evidence to show that the information defendants relied upon to arrest plaintiff was based upon a proper probable cause determination, and that information is properly supported by evidence. *Jones*, 2017 WL 413613, at *16.

**II.     The Evidence is Also Relevant to Defeat Plaintiff's Fabrication Claim**.

In his court-reported confession, Smith admits the following: he was at his mother-in-law's house at about 1:30 a.m. the day before when he cut her and her mother's throats with a straight razor he kept in his wallet in his pocket; the victims were on the floor between the hall and the dining room, he then went to the basement to wash the blood off his clothes and body; as he was leaving he saw the gas can and went upstairs and threw gas around the house and lit a match and threw it in the dining room; flames blew up; he ran out the basement back door; he was shown the blue underwear, admitted they were his, and that he left them in the basement; the police did not threaten or make him promises to get him to the make the statement; he had no complaints about the way he was treated by the police; he was not under the influence of any drugs or alcohol; and he was given food, cigarettes, and allowed to use the bathroom while at the police station. Ex. J, 8/29/90 Trial Trans. at C167-168; Ex. K, Smith Court Reported Statement Transcript.

While plaintiff claims his confession was physically coerced and fabricated by the detectives, defendants deny those allegations and contend the confession is true. The above facts

4

all support that contention. Specifically, Smith went to the victims' home with the razor in his wallet (which he admitted he kept in his wallet and which was no longer in his wallet at the police station) in order to commit a burglary to steal money to buy drugs (which he admittedly did). Smith murdered the victims with the razor blade, cleaned himself and his clothes, and returned to Sally's apartment where he called Diane at 3:08 a.m. All of this evidence, which plaintiff characterizes as "bad act," or "bad character" evidence (not to mention the other evidence including Smith's underwear at the scene and blood on Smith's feet), is actually direct evidence that plaintiff's confession is not fabricated. The evidence that plaintiff seeks to bar is relevant and admissible under Rule 401.

### III. The Evidence is Also Specifically Relevant to Motive.

Rule 404(b) allows the admission of prior bad acts, in the discretion of the trial judge, to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hurn*, 496 F.3d 784, 787 (7th Cir.2007), *quoting* Fed.R.Evid. 404(b); *see also United States v. Taylor*, 522 F.3d 731, 732–33 (7th Cir.2008). Smith's drug habit provided a motive for the crime. The only items identified as missing from the house were a gun (with the ammunition left behind) kept under Yeager-Smith's mother's mattress and a set of keys. A gun can quickly be exchanged for money or drugs.

Further, evidence of Smith's unemployment and actions to get quick money in the past, as established through Smith and Yeager-Smith's testimony, is probative of his need for quick money on the night of the murders and his motive to take certain actions as a result. Based on Yeager-Smith's personal observations of Smith when he was under the influence of drugs on prior occasions, and specifically when he was using drugs with Sally in her neighborhood, it would put him in a different state, and "not in his right mind." Thus, evidence of Smith being on a binge, and

Yeager-Smith's observations of his past behavior in those circumstances, combined with his need for quick money to obtain more drugs and the evidence to show his need for quick money, are directly relevant to the question of motive.

### IV. The Evidence is Also Specifically Relevant to Show *Modus Operandi*.

Smith's prior commissions of burglaries to fund his drug habit, and his keeping of a razor in his wallet to use during those burglaries, are also relevant to show Smith's *modus operandi* ("MO"). Defendants are not arguing that Smith must have committed the subject crime because he has burglarized other houses in the past. Instead, the burglaries are properly considered as an MO in conjunction with other evidence that narrowed the suspects to people familiar with the house. Smith himself admitted that the murders and fire did not appear to be the acts of a random stranger. Ex. I, Smith Dep. 131, 296.

Under Fed. R. Evid. 404(b)(2), evidence of a person's other prior bad acts is admissible for the purposes of proving identity, where that person has placed their identity at issue. *U.S. v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998) ("[evidence of MO] may be properly admitted pursuant to Rule 404(b) to prove identity"); *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 1499043, at *6 (N.D. Ill. Apr. 11, 2013) (MO evidence "is generally only admissible to prove the identity of the defendants[.]"). This additionally includes evidence of a person's MO to show that person had a "distinctive method of operation." *Robinson*, 161 F.3d at 467.

Here, in the face of evidence that the crimes were committed by someone familiar with the house and family, plaintiff has placed his identity at issue by proclaiming his innocence and maintaining a façade of an innocent son/grandson-in-law who has no motive to commit this crime or any experience in committing burglaries. Smith's prior burglaries as a quick means of obtaining

6

money for drugs (along with the razor that is always in his wallet) are highly probative to rebut those claims.

## V.     The Evidence is Also Relevant to Damages and Smith's Credibility.

Finally, the evidence is relevant to damages. First, it is relevant to damages because, for the reasons explained above, the evidence is relevant to an assessment of guilt; and evidence of guilt is relevant to damages. *See Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999 (7th Cir. 2012). In *Parish*, the Seventh Circuit held that in a case alleging wrongful conviction, evidence of guilt is relevant to damages. *Id*. at 999 (explaining low damages are a rational result of evidence of guilt).

Second, plaintiff is expected to argue and offer evidence that Smith was stripped of his normal life, which includes his family life, and, in doing so, may paint him as involved, present, and supportive in his marriage and with his extended family. That argument would be undermined by the "bad act" evidence that plaintiff seeks to exclude. Also, although this is subject to defendants' motion *in limine* No. 20 (Dkt. 592), plaintiff's counsel claims that Yeager-Smith and Joshua Smith should be "permitted to testify about how they experienced the damage that Robert's wrongful conviction and incarceration caused the family." *See* Dkt. 592. If plaintiff offers any such damages evidence from Smith, Joshua, Yeager-Smith, or any other witness, defendants should be permitted to counter that evidence by offering evidence that Smith was not the supportive and present family member that plaintiff portrays him to be. *See Hernandez, et al. v. City of Peoria*, 2025 WL 1155121 at *5-9; see *also Cobige v. City of Chicago*, 651 F.3d at 784-85 (vacating damages award where trial court improperly excluded evidence that decedent had been a drug addict for most of her adult life, spent multi-year stretches in prison, and had been in trouble with the law frequently). Smith's drug and alcohol binges with Sally and Santee, his unemployment,

his burglaries, and the state of his marriage with Yeager-Smith all relate to plaintiff's claimed damages in this case.

Further, defendants should be entitled to rebut Smith's claimed emotional distress damages by showing that his emotional problems could stem from prior drug and alcohol abuse and an unstable family life. Indeed, "a defendant may prove that the plaintiff's emotional distress was caused by something other than defendant's actions." *McCleland v. Montgomery Ward & Co., Inc.*, 1995 WL 571324, at * 2 (N.D. Ill. Sept. 25, 1995) (citing *Berry v. Deloney*, 28 F.3d 604, 608 (7th Cir. 1994); *Alberts v. Wickes Lumber Co.*, 1995 WL 117886, at *4 (N.D. Ill. Mar. 15, 1995)). Based on the large timeframe of damages plaintiff is alleging, traumatic experiences that occurred prior to this incident are highly probative to assess plaintiff's damages accurately, properly, and fairly. *Barber v. City of Chi.*, 725 F.3d 702, 713 (7th Cir. 2013) ("The larger the chunk of one's life that is claimed to have been negatively impacted by emotional distress, the more important it is to explore other events that may have contributed to the individual's loss."). The probative value of this evidence outweighs any minimal prejudice because plaintiff has put his emotional and mental state at issue by alleging a large timeframe of damages.

Respectfully submitted,

| | |
|---|---|
| PHILIP CLINE<br>DANIEL MCWEENY[1]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS | MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: *s/ Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Paul A. Michalik<br>Daniel M. Noland |

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.

8

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090
F: 312-429-0644
dnoland@burnsnoland.com