IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 16 TO BAR DAVID AND DERRICK YEARGER FROM TESTIFYING ABOUT THREE SPECIFIC TOPICS**

Defendants, by their respective undersigned counsel, respond to plaintiff's motion *in limine* no. 16 (Dkt. 558) as follows:

David and Derrick Yeager are the victims' sons/grandsons and the brothers of Diane Yeager-Smith. They have not been deposed in this case; however, defendants interviewed them during the investigation, and David Yeager wrote a letter to the Special Prosecutor opposing Smith's clemency petition (*see* Dkt. 558-1). Plaintiff's motion seeks to exclude the following evidence, based on David's comments in that letter: (a) David and Derrick Yeager's disapproval of Smith's marriage to their sister, Diane Yeager-Smith, (b) their negative opinions and dislike of Smith, including their claims about his behavior, and (c) their belief that Smith must have committed the murders. *See* Dkt. 558, at 1.

**I.    Plaintiff Has an Insufficient Basis to State that David and Derrick Yeager's Anticipated Testimony Regarding Smith Lacks Foundation.**

Plaintiff contends that the expected testimony of David and Derrick Yeager, including their views of Smith, is based on mere "beliefs," but that is only because plaintiff is drawing those

comments from David's two-page letter to the Special Prosecutor (Dkt. 558-1, the "Letter"))[1], not a deposition or other court testimony. *See* Dkt. 558. Plaintiff has no basis to state that proper foundation cannot be laid for the statements and observations of David Yeager that plaintiff quotes from the Letter. For example, David and Derrick, with proper foundation, should be permitted to testify as to their personal observations of the relationships between Smith and his in-law family, including his relationship with their sister, Diane Yeager-Smith.

    David and Derrick have not yet had the opportunity to offer any further basis for their assessment that the crime was an "inside job" or for their comments on the relationship between Yeager-Smith and Smith, Smith's past, or the behavior in support of their conclusion that Smith took advantage of their sister. However, based on Derrick's interview with the detectives, he saw his mother and grandmother and visited their house on a frequent basis, and he was also in regular contact with Yeager-Smith. See Ex. A (CITY-RS-000102). In September 1987, Derrick lived just a few minutes away from his mother and grandmother. Ex. B, Yeager-Smith Dep., at 21:2-8. He had just been at the house the day leading up to the murders to cut the grass in the afternoon, and he was back at 6:00 pm that day to pick up his kids. Ex. A (CITY-RS-000102). David and Derrick, who grew up in the house where their mother and grandmother were murdered (*see* Dkt. 558-1), would be expected to have personal knowledge of their mother and grandmother's house, their day-to-day habits, and how they maintained their household, such as whether they regularly locked their doors and whether they had a gun in the house and where they kept it. *See*, *e.g.*, Ex. B, Yeager-Smith Dep. 131:8-132:15. They also would have observed interactions among the family, including Smith and Yeager-Smith.

---

[1] Plaintiff's motion *in limine* no. 16 does not specifically seek to exclude the Letter, but exclusion of the Letter is referenced in plaintiff's motion *in limine* no. 15 (Dkt. 557) and addressed by defendants in response to that motion.

David and Derrick are not expected to testify about crime rate statistics in the Roseland area in the 1980s; however, they do have personal experiences with and knowledge of their community, their mother's and grandmother's households, and the facts that led them to believe the crime did not appear to have been committed by a random stranger (which Smith himself also believes (Ex. C, Smith Dep. 131, 296)).

If plaintiff believes any of David or Derrick's testimony is unreliable, that can be addressed through cross-examination, contrary evidence, and jury instructions. David and Derrick's testimony should not be barred solely because there is an insufficient foundation for their anticipated testimony in a two-page letter.

> II. **The Information Provided by David and Derrick is Relevant to the Issue of Probable Cause and what the Defendants Were Aware of in the Course of Their Investigation.**

In assessing whether defendants had probable cause to arrest and charge Smith, the jury will have to consider "what Defendant knew and the reasonably trustworthy information Defendant had received." 7th Cir. Pattern Ins. No. 7.08. Plaintiff's motion seeks to exclude, and thus artificially limit, the information the defendants collected in the course of their investigation. Defendant Det. Brownfield interviewed David Yeager on September 19, 1987. In that interview, David reported the following to him: he is an accountant in Milwaukee; the last time he had seen his mother and grandmother was on Labor Day; he, his mother, and Yeager-Smith (with a note underneath of "Robert-husband") have keys; his (deceased) mother said someone used her bank card twice in the last month for a withdrawal (which Diane also reported to the detectives, along with her suspicion that it was Smith), and the bank suggested it was a family member; he did not like Smith, and complained about Diane marrying him; and his mother had a .22 revolver that was his father's. Ex. D (CITY-RS-000050). The GPR is not a verbatim statement of the interview,

and, thus, Detective Brownfield found David's statement that David did not like Davie and complained about marrying him to be sufficiently relevant to note it in the report. The record should not be wiped of evidence relating to Smith's relationship with his in-law family (part of which were the victims of the crime), particularly when that information was a part of the body of information the detectives collected.

### III. David and Derrick's Anticipated Testimony is Relevant to Damages.

As further discussed in defendants' response to plaintiff's motion *in limine* No. 10, plaintiff is expected to make damages claims that necessarily examine Smith's role and relationships within the family. Those claims could be undermined by the testimony of David and Derrick Yeager as to their own experiences relating to Smith's conduct and role in the family. *See Hernandez, et al. v. City of Peoria*, -- F.4th --, 2025 WL 1155121 (7th Cir. Apr. 21, 2025) (holding that defendants in Section 1983 wrongful death case are entitled to introduce evidence that paints a contradictory picture to that of plaintiff's evidence casting a positive light); *see also Cobige v. City of Chicago*, 651 F.3d 780, 784 (7th Cir. 2011), as amended on denial of reh'g (Sept. 8, 2011) (same).

Regarding the brothers' reported dislike of Smith, it is worth noting that Smith himself testified that he did not think Derrick liked him, but claimed it was because Derrick and David did not help their mother at all. Ex. C, Smith Dep. at 128-30. According to Smith, he did "everything" for their mother and grandmother. *Id.* He thought Derrick was jealous of that. *Id.* at 128. Smith claimed that once he became engaged to Yeager-Smith he was essentially the only one helping out at her mother and grandmother's home. *Id.* at 128-30. Smith's alleged help at the house was his explanation for why he kept his clothes there. *Id.* at 231-232. Defendants should have the opportunity to rebut this testimony, which relates not only to damages, but also to issues surrounding plaintiff's guilt and the investigation.

Certainly, any testimony by Smith as to the normal life and family bonds that he lost while incarcerated would be one-sided and unfairly prejudicial if his in-laws are barred from offering any testimony, including the first-hand knowledge and experiences of David and Derrick, that may contradict Smith's testimony or undermine his credibility.

|  |  |
|---|---|
| PHILIP CLINE<br>DANIEL MCWEENY[2]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS<br><br>/s/ *Stacy A. Benjamin*<br>Special Assistant Corporation Counsel<br><br>Eileen E. Rosen<br>Stacy A. Benjamin<br>Andrew J. Grill<br>Brittany D. Johnson<br>ROCK, FUSCO & CONNELLY, LLC<br>333 W. Wacker, 19th Fl<br>Chicago, IL 60606<br>T: 312-494-1000<br>F: 312-494-1001<br>sbenjamin@rfclaw.com | Respectfully submitted,<br><br>MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: *s/ Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Paul A. Michalik<br>Daniel M. Noland<br>Katherine C. Morrison<br>Daniel J. Burns<br>Dhaviella N. Harris<br>Burns Noland LLP<br>311 S. Wacker Dr., Suite 5200<br>Chicago, IL 60606<br>T: 312-982-0090<br>F: 312-429-0644<br>dnoland@burnsnoland.com |

---

[2] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.