IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
No. 6 TO BAR ALL REFERENCES TO AN ALLEGED ROMANTIC OR SEXUAL
RELATIONSHIP BETWEEN SMITH AND HIS CHILDHOOD FRIEND SALLY PAYNE**

Defendants, by their respective undersigned counsel, respond to Plaintiff's motion *in limine* no. 6 as follows:

Plaintiff's motion seeking to bar all reference to an alleged romantic or sexual relationship between Robert Smith and Sally Payne goes too far. Smith testified at his 2021 deposition that he was with Sally Payne drinking alcohol and using drugs at her apartment or the bar below on 83rd and Racine from about noon the day before the murders until he was picked up by his wife Diane Yeager Smith at about 5:00 a.m. – except for between 12:00 a.m. and 3:00 a.m., when the murders occurred. (Ex. A, Smith Dep at 63-64.) Smith did not recall how long he had known Sally at the time of murders but testified that he knew her from before he met Diane. (Ex. A at 36-37, 65.) Smith and Sally used drugs whenever they were together and he denied having a sexual relationship with her. (Ex. A at 64-65.) Diane testified at her deposition that that she had never been to Sally's house or socialized with her, and that whatever Smith did over at her house "it was no good, whatever it was, but I can't tell you the ins and outs of it." (Ex. B, Yeager Smith Dep at

49-51) Smith and Diane had frequent fights and arguments over his time spent at Sally's, which was "a lot… [m]aybe four times a week" in the months preceding the murders. (*Id*. at 52-53.)

While Smith denied being engaged in a sexual or romantic relationship with Sally at the time of the murders at his 2021 deposition, that is not a sufficient basis to bar the evidence. The argument ignores what was known to the police at the time they investigated him for the murders of his mother-in-law and grandmother-in-law. As part of their investigation, Defendant Officers learned from Smith that he had been with Sally at her home for more than 16-hours, during part of which his wife Diane was working and after she had gone home and gone to bed. Diane further concedes that her marriage to Smith was rocky at the time, and she was contemplating separation or divorce. (Ex. B at 85.) Diane's mother had even told her in relation to concerns about the marriage that "if I ever wanted to come home, I always had a home." (*Id.* at 56.) Furthermore, Smith told Defendants Brownfield and Yucaitis that he lied to Diane about where he was when he called her at 3:00 a.m. because he did not want her to know he was at Sally's house. (Ex. C, General Progress Report, CITY-RS-054). Any reasonable person, knowing that Smith had been out all day and night with a woman who was not his wife would believe that something of a romantic or sexual relationship existed between Smith and Sally.

Thus, the inference of a romantic or sexual relationship existing between Smith and Pyane is relevant to what was known or believed by Defendant Officers during their investigation and the plausibility of Smith committing the crimes. Plaintiff is of course welcome to introduce evidence to the contrary through Smith's denial of a romantic/sexual relationship with Sally. But Smith's deposition testimony alone, as Plaintiff's motions argues, is insufficient to bar *all* reference to such a relationship between Smith and Sally.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion *in Limine* No. 6 to bar all reference to an alleged romantic or sexual relationship between Smith and his childhood friend Sally Payne.

|  |  |
|---|---|
| PHILIP CLINE<br>DANIEL MCWEENY[1]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS<br><br>/s/ *Stacy A. Benjamin*<br>Special Assistant Corporation Counsel<br><br>Eileen E. Rosen<br>Stacy A. Benjamin<br>Andrew J. Grill<br>Brittany D. Johnson<br>ROCK, FUSCO & CONNELLY, LLC<br>333 W. Wacker, 19th Fl<br>Chicago, IL 60606<br>T: 312-494-1000<br>F: 312-494-1001<br>sbenjamin@rfclaw.com | Respectfully submitted,<br><br>MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: *s/ Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Paul A. Michalik<br>Daniel M. Noland<br>Molly E. Thompson<br>Daniel J. Burns<br>Dhaviella N. Harris<br>Burns Noland LLP<br>311 S. Wacker Dr., Suite 5200<br>Chicago, IL 60606<br>T: 312-982-0090<br>F: 312-429-0644<br>dnoland@burnsnoland.com |

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.