**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Robert Smith, Jr., ) | |
| ) | |
| Smith, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 21 TO BAR THE "LUMSDEN PHOTOGRAPH" AND ARGUMENT ABOUT THE "LUMSDEN PHOTOGRAPH"**

**INTRODUCTION**

The photograph Smith seeks to bar proves that defendant officers did not plant Smith's underwear at the scene and that Smith, in fact, committed the murders. It was taken at approximately 4:30 a.m. on September 19, 1987 by Fire Marshall ("FM") Lumsden during his cause and origin investigation. (Ex. A, Lumsden dep at 225). It is relevant and admissible to a multitude of issues, including to defeat Smith's fabrication of and planting evidence claims. Smith presents no argument, legal or factual, that the photo could possibly be barred under any scenario.

The fact the Office of the Special State's Attorney ("OSSA") failed to obtain the photo prior to agreeing to vacate Smith's case and deciding to not oppose his petition for COI is likewise admissible. (Dkt. 594, motion to bar COI at 2, 8). Though failing to conduct a sufficient investigation to obtain the CFD photos, the OSSA falsely told Judge Davis that no photo of the underwear existed when explaining the reasons for dismissing the case, including questioning the integrity of the police recovery of the photo. (Ex. B, 10/23/20 Tr. in *People v. Smith* at 5-6). Moreover, the photo was not withheld by the City, but was in the trial file of the Cook County State's Attorney's Office ("CCSAO"). Smith's motion should be denied in total and, as argued in motion *in limine* 24, the COI should also be barred because the OSSA falsely told the court no photo of the underwear existed at the hearing where the case against Smith was dismissed.

**BACKGROUND[1]**

The fire at the scene was called in to 911 about 3:23 a.m. and FM Lumsden arrived around 4:00 a.m. (Ex. C, CFD Report at CITY-RS-295). Lumsden investigated the cause and origin of the

---

[1] To argue his motion, Smith makes several inaccurate factual representations and fails to supply the court with documentation supporting his assertions. Defendants therefore provide an accurate presentation of the facts related to the recovery of the underwear and Lumsden's photos. This is a pattern found in most of Smith's MILs and, in and of itself, supports denying the relief requested in this Motion and all of Smith's motions when he fails to support factual assertions (often times inaccurate) with citations to the record.

1

fire and took photographs. (*Id*. Ex. D, Photos at CITY-RS-575-598). The fourth photo taken by Lumsden, capturing Smith's underwear on the first step of the stairs within feet of the victims, was taken about 4:30 a.m. (Ex. D, CITY-RS-578; Ex. A, Lumsden dep at 225). None of the first responders recovered the underwear or recognized its significance. Smith returned to the scene with Diane about 5:30 (Ex. E, Diane Yeager Smith MTS Testimony at SMITH-3354-3355).

Around 6:00 p.m. that evening, Smith told the police he was not wearing any underwear when they asked to recover his clothing. (Ex. M, Higgins' 8/29/90 Tr. at SMITH-4190-91. The detectives recovered Smith's underwear on the first basement stair later that evening and he admitted he inadvertently left them at the scene after committing the murders and doing his laundry. (Ex. F, Smith's statement). For the next 33 years, Smith falsely claimed the underwear were planted by the detectives and that they coerced his confession. One of his main defenses that his lawyer repeatedly argued throughout his closing was that the underwear was planted based on the failure of the first responders to recover the underwear or capture them in a photograph. (Ex. G, Smith's attorney's closing at SMITH-4461-4463). Contrary to Smith's argument, the CFD photos were produced to the CCSAO during the original criminal proceedings, including the photo capturing the underwear. In fact, these photos were in the CCSAO trial file when produced in response to defendants' subpoena in this case with the original envelope post-marked February 17, 1988. (Ex. H, CFD photos in CCSAO file at CCSAO SMITH 1605-1609). The developed photos were of poor quality, and apparently neither the prosecution nor defense realized a photo of the underwear existed. (*Id.*; Ex. G at SMITH-4462 and SMITH-4485-4486, closing arguments for both the prosecution and defense discussing the believed absence of a photo of the underwear).

In 2020, Smith continued to pursue his false claim that the underwear was planted. Unfortunately, Smith convinced the OSSA handling his post-conviction proceedings there were

2

problems with the integrity of the recovery of the underwear, and the Special State's Attorney agreed to dismiss the case, acknowledging at his deposition that he did not subpoena the CFD photos. (Ex. I, O'Rourke 9/29/22 dep at 102). The OSSA did not obtain the CCSAO trial file on this case, which contained the CFD photos, apparently because the CCSAO could not locate it. (Ex. N, 3/16/20 CCSAO letter). Nonetheless, without conducting any further investigation, the OSSA misinformed Judge Davis that no photo of the underwear existed, stating as follows:

> Additionally, the location in which the underwear were found begs one to question the integrity of the search. Numerous technicians inspected the stairs almost a half-day earlier and did not recover or even record the existence of bloody underwear. We have the strange circumstance that two different sets of detectives found an occasion to go back to the crime scene, even though the mobile crime lab had been there and recovered what they deemed to be as evidentiary. There are no reports of these underwear, there are *no photographs of these underwear, there is no evidence of this underwear* and there was no testimony by who allegedly found this underwear and the time of this -- of where it was recovered. (Ex. B, 10/23/20 Tr. at 5-6 (emphasis added)).

Instead of subpoenaing the CFD, the Special State's Attorney testified he relied on TIRC's investigation that no photos of the underwear existed. (Ex. I, O'Rourke 9/29/22 dep at 102).

Smith thereafter filed this case. Defense counsel learned the CFD retained the film strips of the photos Lumsden took and the subject photo was developed, clearly depicting the underwear exactly where the Defendant Officers reported they found them in 1987. (Ex. D at CITY-RS-578).



3

Though he admitted the underwear was his during his suppression hearing in 1988, Smith equivocated in this case whether they belonged to him, even suggesting they may belong to David Yeager, son and grandson of the victims. (Ex. J, Smith's dep at 230). Defendants then sought DNA testing of the underwear and Smith abruptly reversed course and admitted the underwear belonged to him and had the victim(s)' blood on them. (Ex. K, Dkt. 267, Stipulation admitting the underwear are his and the blood on the underwear (and other items) is from one or both victims).

**I.     The City Did Not Withhold FM Lumsden's Photos During the Criminal Proceedings, the Photo Depicting Smith's Discarded Underwear is Inculpatory and Not Exculpatory, and There Is No Legal or Factual Basis to Bar the Photo**.

Smith argues Lumsden's photo of the underwear should be barred because it was allegedly withheld during the criminal proceedings. However, the photo was not withheld and there is no basis to bar it in this case. The case law Smith cites in support of his Motion (at 3-4) admittedly involved documents withheld in the direct litigation (not alleged here), and relief was granted in those cases based on the discovery violation therein. The Lumsden photographs were not withheld in this case. As there was no discovery violation in this case, Smith's motion must be denied.

Moreover, contrary to Smith's argument, the Lumsden photographs were not withheld in the criminal proceedings, as plainly evidenced by the fact that they are contained in the CCSAO trial file. (Ex. H). That the OSSA did not obtain the CCSAO file is not the fault of Defendants. As explained above, the developed photo capturing the underwear in the CCSAO file was of poor quality and difficult to see the underwear, but it was not withheld.

Smith also incorrectly asserted in his Motion (at 1) that Lumsden's photos were in the CPD's Investigative File and that the City in this case represented that they were. Smith cites nothing to support these assertions. For good reason, the assertions are simply not true. Lumsden worked for the CFD, not the CPD, and his photos are not in the CPD's Investigative File, nor did

4

the City make any representation that they were. Further, the OSSA admittedly did not subpoena the CFD, who has possessed the film strips of Lumsden's photos since 1987. Smith's claim that the CPD did something wrong in not producing the CFD photos it did not possess is baseless.

Finally, Smith's assertion that Lumsden's photo depicting his underwear on the stairs is exculpatory is both puzzling and baseless. If it were exculpatory, it is hard to imagine why Smith would want to hide it from his jury. Regardless, as explained above, the photo disproves Smith's claim defendants planted the underwear at the scene as well as his fabrication claim regarding same. To the contrary, the underwear and the photograph of the underwear on the first step is direct physical evidence proving Smith committed the murders. Barring it would be a gross injustice.

**II.    The OSSA's Failure to Obtain FM Lumsden's Photo of Smith's Underwear and False Statement to the Circuit Court that No Photo Existed Is Admissible to Explain Why This Case was Improvidently Vacated.[2]**

Without citing any legal authority, Smith argues (at 4-5) that defendants should be barred from arguing the conviction was vacated because the City has "unclean hands" due to its alleged failure to produce the Lumsden photo. This argument is a repackaged argument from Section I of Smith's Motion, which defendants address above. In short, the City did not withhold FM Lumsden photos from the prosecution and the OSSA never subpoenaed the CFD to obtain the CFD photographs. Simply put, the OSSA failed to obtain the Lumsden photo and, as a result, misrepresented to Judge Davis that no such photo of the underwear existed.[3] This evidence is

---

[2] While Smith also references the TIRC decision in his motion, the TIRC finding allowing Smith's case to proceed to a post-conviction proceeding is inadmissible and defendants have no intention of introducing that finding. Should Smith attempt to introduce it in any way, defendants object. If the finding is somehow allowed, then the fact TIRC failed to obtain the Lumsden photo would be admissible for the reasons outlined herein.

[3] This Special State's Attorney was recently found "inept" by Circuit Court Judge Daniel Shanes relative to his handling of another homicide case. (Ex. L, *People v. Trutenko et al*., 22 CR 1350201, 22 CR 1358601, February 19, 2025 order at 9, 13, and 49). Among other things, Judge Shanes found the Special Prosecutor to be "deficient" and "unfamiliar with criminal discovery obligations and trial procedure." *Id*.

5

relevant to defend Smith's malicious prosecution claim that the underlying criminal case was dismissed in a manner indicative of innocence, to show that the case was not dismissed due to any misconduct by defendants, and for other reasons. Defendants do not have "unclean hands," and Smith cites no case law supporting his position, thereby waiving the argument. *Shipley v. Chi. Bd. Election Comm'rs*, 947 F.3d 1056, 1062-63 (7th Cir. 2020).

Arguing a lack of evidence, Smith next contends (at 5) that defendants should not be able to argue the OSSA dismissed the case based on his faulty belief and statement to the court that no photo of the underwear existed. Once again, Smith incorrectly represents the record. Special State's Attorney Myles O'Rourke testified that had he possessed the photo, "it would have changed the analysis and the evaluation for certain…." (Ex. I, 9/29/22 O'Rourke dep at 102). O'Rourke further testified that "when Dan [Noland] showed the [photo of the] underwear to me [at part I of his deposition], … it was a very strange moment for me because it was listed in a disposition saying there are no such photos" and that "The recovery of that we did think was a very material piece of evidence, and so that was very important to us." (*Id*. at 102-103). There was no badgering of Mr. O'Rourke, and he acknowledged, when finally answering the direct question as to whether the photo may have changed his decision to agree to vacate the case, that "anything is possible." (Ex. I, 9/29/22 O'Rourke dep at 65).[4] In sum, Smith's assertion that there is no evidence to support the argument that the case would not have been dismissed is without merit.

Smith's "final basis" in support of his motion (at 6) cites to Judge Guzman's oral comment in *Patrick v. City of Chicago* regarding evidence from *Patrick* that Smith does not specify. Smith's argument is undeveloped and should be deemed waived. *Shipley,* 947 F.3d at 1062-63.

---

[4] O'Rourke's explanation that being presented with a photo of Smith's underwear by the City's lawyer was a "strange" moment may explain why he did not initially answer the question at the first part of his deposition.

6

In this case, there is no doubt of both the relevance of this evidence and why the OSSA agreed to dismiss the case. (Ex. B, 10/23/20 Tr. at 5-6). On the record, the OSSA stated they were agreeing to vacate the conviction because they questioned the integrity of the recovery of the underwear based on their assertion – without investigation and now known to be a falsehood - that no photo existed. *Id*. The reason why the OSSA dismissed the case and failed to oppose the COI is unquestionably relevant, particularly given that Smith is expected to rely on the COI, if admitted, as evidence of a favorable termination in support of his malicious prosecution claim. For the favorable determination element of a malicious prosecution claim where charges were dismissed by *nolle prosequi*, as they were here, why the prosecutor decided to dismiss the charges matters. *See Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020). The prosecution's grounds for dismissing the case are therefore relevant to the malicious prosecution claim. In addition, this evidence is necessary to rebut Smith's assertions of innocence. *See Evans v. City of Chicago*, 231 F.R.D. 302, 317 (N.D. Ill. 2005)(where the plaintiff sought to use a pardon to show innocence, defendants were entitled to obtain the basis of the pardon to diminish its weight). Defendants should be allowed to introduce evidence that the criminal case would not have been dismissed or the COI granted because they have discovered powerful evidence in this litigation refuting Smith's innocence and his claim the detectives planted his underwear, which was the primary basis cited by the OSSA.

What's more, as we argue in our motion to bar the COI, the fact that the OSSA did not have the photo of the underwear to present to the circuit court at the hearing on the petition for COI supports barring the COI. (Dkt. 594 at 2, 8).

WHEREFORE, Smith's motion to bar should be denied and defendants' motion to bar the COI should be granted.

|  |  |
|---|---|
| PHILIP CLINE<br>DANIEL MCWEENY[5]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS<br><br>/s/ *Stacy A. Benjamin*<br>Special Assistant Corporation Counsel<br><br>Eileen E. Rosen<br>Stacy A. Benjamin<br>Andrew J. Grill<br>Brittany D. Johnson<br>ROCK, FUSCO & CONNELLY, LLC<br>333 W. Wacker, 19th Fl<br>Chicago, IL 60606<br>T: 312-494-1000<br>F: 312-494-1001<br>sbenjamin@rfclaw.com | Respectfully submitted,<br><br>MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: *s/ Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Daniel M. Noland<br>Paul A. Michalik<br>Molly E. Thompson<br>Daniel J. Burns<br>Burns Noland LLP<br>311 S. Wacker Dr., Suite 5200<br>Chicago, IL 60606<br>T: 312-982-0090<br>F: 312-429-0644<br>dnoland@burnsnoland.com |

---

[5] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.

8