IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
No. 3 TO BAR EVIDENCE AND ARGUMENT REGARDING SMITH'S PURPORTED
REFUSAL TO TAKE A POLYGRAPH**

Defendants, by their respective undersigned attorneys, respond to Plaintiff's Motion *in Limine* No. 3 as follows:

**Factual Background**

As part of the investigation into the homicides of Edith Yeager and Willie Bell Alexander, both Robert Smith and Diane Yeager Smith were asked to take a lie detector test by Det. McWeeny. Diane agreed, and Smith refused. At his deposition, Det. McWeeny testified that Smith's hesitation about taking a polygraph was a "red flag" to him because innocent people are not hesitant, and Smith was. (Dkt. 495-27, McWeeny Dep. at 83-84). Plaintiff now argues in his motion (dkt. 546 at p. 2) that the "only evidence that Smith in fact declined a polygraph came more than 34 year later, at Smith's deposition in 2021." Not only is this argument irrelevant to the admissibility of the refusal evidence, Plaintiff does not even accurately cite the record. Smith testified in 1989 that he refused a lie detector test twice and confirmed he refused a lie detector at his 2021 deposition in this case.

In 1989, at the hearing on Smith's motion to quash his arrest and suppress his statement, McWeeny testified that as part of his initial investigation, he asked Smith "if he would be willing to take a lie detector test." Smith responded that he "wanted to think about it [taking the lie detector test]." Dkt. 495-8, Feb. 7, 1989 MTSS Transcript at E-37:12-20. At this same hearing, Smith testified that there was a third "black guy" that came in and asked if he would take a lie detector test, to which Smith responded: "I told him no. 'No, I ain't got no need to take a lie detector test. I ain't did nothing.'" (*Id.* at E-136:8-20) and "they come in and ask me about a lie detector test, something. They asked me do you want to take a lie detector test? And I said no." Dkt. 495-9, Feb. 8, 1989 MTSS Transcript at F81:20-F82:6.

Consistent with Smith's own testimony, Det. Yucaitis testified at the same hearing that when he arrived to work he "learned that a male subject and a female subject had been brought in, both had been asked if they would take a polygraph examination. The male subject had declined and the female subject had agreed to submit to a polygraph examination." *Id*. at E-63:20-E-65:7; *see also* Dkt. 495-9, Smith testimony Feb. 8, 1989 MTSS Transcript at F81:20 – F82:6.

At his 2021 deposition, Smith confirmed that he refused to take a lie detector test for the third time "Because I had failed the one before that I had took, and I was high off of drugs." (Dkt. 495-7, Smith Dep., at 308:1-13).

## **ARGUMENT**

First, the undisputed evidence in this case clearly establishes that Smith did, in fact, refuse to take a polygraph exam. Putting that aside, there is no basis to exclude relevant evidence of Smith's refusal to take a polygraph exam in this case as it is highly probative of the investigative steps taken by Defendants and their beliefs relating to those steps as it concerns probable cause, it

does not implicate Smith's Fifth Amendment rights, and evidence regarding Smith's denial of a polygraph is not unfairly prejudicial to Plaintiff.

Evidence of Smith's refusal to submit to a polygraph exam is highly relevant to the claims and defenses in this case. First, Plaintiff has a pending malicious prosecution claim under Illinois law – an absolute defense to which is the existence of probable cause. And, although it is true that under Illinois law, the *results* from a polygraph examination may not be used to determine probable cause or guilt **in a criminal proceeding** because of unreliability, this is not a criminal proceeding and Defendants are not seeking to introduce the "results" of a polygraph, but rather Smith's refusal to participate in the testing at all, despite his initial protestations of innocence. The polygraph evidence does not go to Smith's guilt, as it would in a criminal trial, but rather to the issue of probable cause to charge Smith with the crime. *See Booker v. Ward*, 94 F. 3d 1052, 1058 (7th Cir. 1996) (relying on polygraph results as one factor in the probable cause analysis).

Moreover, Plaintiff cites no case barring the refusal to take a polygraph exam in assessing the totality of the investigation that led to charging. Indeed, the limited case law on the issue is quite the opposite. *See Valdez v. Gilger*, 2015 IL App (1st) 140195-U, ¶ 40 ("Defendants additionally point out that no Illinois case has held evidence concerning polygraphs inadmissible for this purpose as a matter of law in a malicious prosecution case. We agree and find that the circuit court did not err in finding the polygraph results supported a finding of probable cause.").

Indeed, evidence of Smith's refusal to submit to a polygraph examination goes directly to the information known to the Defendants at the time of Smith's arrest, detention and prosecution for the double homicide– Defendant McWeeny testified to why this fact raised concerns to him regarding Smith's involvement – which are all relevant to a probable cause determination. *See Mucha v. Village of Oak Brook*, 650 F. 3d 1053, 1057 (7th Cir. 2011) (citing *Gonzalez v. City of*

3

*Elgin*, 578 F. 3d 526, 537 (7th Cir. 2009) ("In evaluating probable cause, we look only to the information known to the officer… from the perspective of a reasonable person in the position of the officer."). Along these same lines, this evidence goes to the reasonableness of the continued investigation of Smith despite his initial denial of involvement. For example, at the time Smith refused to take a polygraph examination, he had not yet confessed to the murders and instead told police he was not involved. Then, when the police asked Smith to take a polygraph examination, he refused. This is highly relevant and admissible evidence as to the reasonableness of Defendants' continuing to investigate Smith's involvement in these murders – as it is simply one additional step that officers attempted to take in the course of their investigation – even if this evidence would have been inadmissible against him at a criminal trial. *See e.g. United State ex. Rel. Robinson v. Wilson*, 2001 U.S. Dist. LEXIS 3400, at *19 (N.D. Ill. Mar. 14, 2001) ("A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest where such testimony is necessary and important" even though such evidence may have otherwise been inadmissible hearsay).

Second, Smith's Fifth Amendment rights against self-incrimination are not at issue here. Smith's convictions for the Yeager/Alexander murders were vacated, and the charges against him were dismissed with prejudice in their entirety. (Ex. A, Oct. 23, 2020 Order Vacating Conviction). Thus, under Illinois law, Smith cannot be retried for these offenses. *People v. Gill*, 379 Ill. App. 3d 1000, 1006-07 (Ill. App. Ct. 2008) ("Illinois law is clear that the State may dismiss a charge 'with prejudice' and that the effect of the State's doing so is to subsequently bar the State from prosecuting the same defendant for the same offense based on the same facts"). Accordingly, any Fifth Amendment right against self-incrimination that may attach to evidence of Smith's refusal to take a polygraph exam is simply irrelevant in these proceedings. Smith's Fifth Amendment

rights are not implicated. *Mitchell v. United States*, 526 U.S. 314, 326 (1999) ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the [Fifth Amendment] privilege… If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.") (citation omitted).

However, even if his Fifth Amendment rights were implicated, Plaintiff cites no actual authority or support for the proposition that this evidence is categorically inadmissible – even in criminal cases. Indeed, *United States v. Resnick*, 823 F. 3d 888 (7th Cir. 2016), does not stand for a categorical implication of Fifth Amendment rights requiring exclusion of evidence that a polygraph examination was refused. Instead, the *Resnick* Court identified a gray area, much like the case here, where an individual, after being read his *Miranda* rights, initially provides exculpatory answers then subsequently refuses a polygraph. *See Resnick*, 823 F. 3d at 898-99. Ultimately, however, the Resnick Court declined to decide the issue and instead determined they need not decide this issue to resolve the matter at hand. *Id*.

Moreover, even if there were such a blanket exclusion against polygraph *results,* the refusal to take a polygraph examination does not implicate the same reliability concerns as there is no reliability factor to consider – Defendants are not seeking to admit any results, as there are none; thus, this is not a basis to exclude this evidence. *Thorne v. Member Select Insurance Co*., 2016 U.S. Dist. LEXIS 67027 at * 9 (N.D. Ind. May 23, 2016) (evidence of refusal to submit to a polygraph admissible). Given these factors, it is clear that the probative value of testimony and/or evidence regarding Smith's refusal to take a polygraph examination is far outweighed by its alleged prejudicial effect.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion *in Limine* No. 3 to bar evidence or argument of Smith's refusal to take a polygraph examination.

|  |  |
|---|---|
|  | Respectfully submitted, |
| PHILIP CLINE<br>DANIEL MCWEENY[1]<br>STEVEN BROWNFIELD<br>WILLIAM PEDERSEN<br>JOHN SOLECKI<br>ROBERT DWYER<br>ESTATE OF JOHN YUCAITIS<br>ESTATE OF RICE<br>ESTATE OF WILLIAM HIGGINS | MARY B. RICHARDSON-LOWRY<br><br>Corporation Counsel of the City of Chicago<br><br>By: /s/ *Daniel M. Noland*<br>Special Assistant Corporation Counsel<br><br>Terrence M. Burns<br>Paul A. Michalik<br>Daniel M. Noland<br>Molly E. Thompson<br>Daniel J. Burns<br>Dhaviella N. Harris<br>Burns Noland LLP<br>311 S. Wacker Dr., Suite 5200<br>Chicago, IL 60606<br>T: 312-982-0090<br>F: 312-429-0644<br>dnoland@burnsnoland.com |
| /s/ *Stacy A. Benjamin*<br>Special Assistant Corporation Counsel<br><br>Eileen E. Rosen<br>Stacy A. Benjamin<br>Andrew J. Grill<br>Brittany D. Johnson-Delgado<br>ROCK, FUSCO & CONNELLY, LLC<br>333 W. Wacker, 19th Fl<br>Chicago, IL 60606<br>T: 312-494-1000<br>F: 312-494-1001<br>sbenjamin@rfclaw.com |  |

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.