IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
No. 5 TO BAR "AN UNSUPPORTED ALLEGATION THAT ROBERT MADE
UNAUTHORIZED ATM WITHDRAWLS" [sic]**

Defendants, by their respective undersigned counsel, respond to Plaintiff's Motion *in Limine* No. 5 to Bar An Unsupported Allegation that Robert Made Unauthorized ATM Withdrawals as follows:

**Factual Background**

Plaintiff's Motion *in Limine* No. 5 (Dkt. 548) misrepresents the record when it argues that the only evidence in the record to support the allegation that Smith withdrew money from victim Edith Yeager's bank account comes from two police reports – a GPR written on September 19, 1987 of an interview with David Yeager, the victim's son, and a September 19, 1987 supplementary report detailing an interview with Diane Yeager-Smith. Both are corroborated by testimony from the author of the report and the witnesses.

A supplementary report dated September 19, 1987, by Dets. Yucaitis and Brownfield, states that Diane Yeager-Smith told detectives that there had been two withdrawals of $100 and $50 made from her mother's account with the use of a money card. The bank stated that someone with her mother's bank card had to withdraw the money. She further stated that she and her mother

were the only ones with the card, but that she (Yeager-Smith) did not withdraw the money. Afterwards, Ms. Yeager-Smith got rid of her card. *See* Dkt. 495-31 at CITY-RS-142-43.[1] At her deposition, Diane Yeager-Smith confirmed the information in Yucaitis and Brownfield's supplementary report that in August 1987, just a month prior to the murders, there were two unauthorized withdrawals from her mother, Edith Yeager's, bank account that she suspected Smith made. Dkt. 495-1, Diane Yeager Smith Dep. at 106-107. She also confirmed that she remembers that Smith denied making the withdrawals when she asked him, but she doesn't think she fully believed him. *Id*. Diane Yeager-Smith further testified at her deposition that Smith took money from her without asking a few times as well, and that it was a point of contention between them. *Id.* at 108:1-12.

In addition, there is a September 19, 1987 handwritten general progress report (GPR), also by Brownfield/Yucaitis, of an interview with David Yeager, the victims' son/grandson, that states:

> Mother said someone has used her bank card twice in last month for withdrawl [sic] – 1st x $100 $^{00}$  2nd time $50 $^{00}$ still had her card – someone took card and apparently replaced same. Bank made suggestion – family member.

(Dkt. 548, Ex. A). Defendant Brownfield also testified at his deposition about Diane's statement regarding the unauthorized bank withdrawals, as well as whether the victims' sons, Derrick and David, were questioned about the withdrawals, and any additional investigation performed regarding these withdrawals. Dkt. 495-30 at 172-176. It is expected that Derrick and David will corroborate the information when they testify at trial and will confirm that they provided it to Detectives working the case.

---

[1] This is a readable version of Plaintiff's Exhibit B to Motion *in Limine* No. 5.

## ARGUMENT

The record in this case clearly establishes that Diane Yeager-Smith suspected that Smith withdrew money from Edith Yeager's bank account in the month prior to her murder and communicated that information to the police during the investigation of the murders. That information was corroborated to police by her brother David. David told the Detectives the bank suspected a family member, and Diane Yeager-Smith testified that the only people with a bank card to the account were her mother and herself. Thus, Plaintiff's assertion that there is no evidence that Smith was associated with the transactionsis inaccurate.

### I. Information regarding suspicions that Smith made unauthorized withdrawals from one of the victim's bank accounts a month prior to the murder is relevant and not unfairly prejudicial.

Plaintiff argues that the evidence provided to police from both Diane and David is not relevant because there is no evidence that the ATM withdrawals were linked to the homicides. *See* Dkt. 548 at p. 4. This argument incorrectly frames the issue. The unauthorized ATM withdrawals, which the Defendant Officers learned of early in the investigation, suggested to police that Smith had a financial motive for the crimes. Plaintiff claims that Smith was maliciously prosecuted by all Individual Defendants under Illinois law (Dkt. 82, Count VII[2]), for which probable cause is a complete defense. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 116 (Ill. 2021); *Martinez v. City of Chicago*, 900 F. 3d 838, 849 (7th Cir. 2018). Probable cause exists under Illinois law where an officer is aware of facts and circumstances sufficient to lead a prudent person to believe that an individual had committed an offense. *Coleman v. City of Peoria*, 925 F. 3d 336, 350 (7th Cir. 2019) (citing *Poris v. Lake Holiday Prop. Owners Ass'n*, 2013 IL 113907 (Ill. 2013); *Bedford v. Dewitt*, 662 F. Supp. 3d 856, 878 (N.D. Ill. Mar. 17, 2023)). Here, the fact that unauthorized

---

[2] All Defendant Officers have moved for summary judgment on this claim which has not yet been decided.

withdrawals were made from Edith Yeager's bank account just a month before she and her mother were murdered and that Smith's own wife told police she suspected Smith made those withdrawals, is relevant to whether probable cause existed to charge Smith for the victims' murders because it is information known to Defendant Officers at the time of the investigation that suggested a financial motive for the crime. While this evidence alone may not establish probable cause, when combined with other evidence such as Smith's bloody underwear on the stairs, the victims' blood on his feet, observations that his clothes were wet at 3:00 a.m., his lack of money to fund his drug and alcohol habit, his being in the middle of a drug and alcohol binge at the time the murders occurred, the fact that an item of value (a gun) was missing from the victims' home and no signs of forced entry (suggesting the victims knew the offender), Defendants should be entitled to rely on this evidence to show the full picture of what the Defendants knew and to argue there was probable cause to charge Smith with the murders.

The totality of Defendant Officers' investigation is highly relevant to Defendants' defense in this case, as it was information they learned that inculpated Smith and warranted continuing to investigate him for the murders, despite Smith's initial denials. Defendants' defense in this case includes arguing that Smith in fact committed the murders, which, combined with a lack of evidence corroborating that he was abused, would not only be relevant to the issue of probable cause, but would also negate the claims of fabrication and coercion. Plaintiff's argument that he is prejudiced because the jury "may assume that if Robert stole money from Yeager's account, he also may have killed her" does not outweigh its relevance to Defendants' defense in this case.

Plaintiff cannot exclude relevant evidence just because it is prejudicial. As court's routinely observe: "most relevant evidence is prejudicial, so the issue is whether it was unfairly prejudicial." *Whitehead v. Bond*, 680 F.3d 919, 932 (7th Cir. 2012). "Evidence is *unfairly* prejudicial only if it

4

will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Denberg*, 212 F.3d 987, 994 (7th Cir. 2000) (emphasis in original and internal citation omitted). Plaintiff's motion does not establish how the evidence Defendant Officers obtained from Smith's wife and brother-in-law that he likely stole money from the victim's bank account is so unfairly prejudicial that it must be barred. There is nothing about this evidence that will lead to a verdict for Defendants based on emotion. Thus, evidence that Defendant Officers learned from family members of their suspicion that Smith made unauthorized withdrawals from the victim's bank account a month before the murders is highly relevant to the defense in this case that there was probable cause to charge Smith with the murders and that his confession was not fabricated or coerced.

## II. The information contained in the police reports regarding the unauthorized ATM withdrawals is not inadmissible hearsay.

Plaintiff also, citing no legal authority or developed argument, argues that information contained in the police reports regarding the ATM withdrawals is inadmissible hearsay (ignoring Diane Yeager-Smith's own testimony). This is incorrect. Statements introduced to show their effect on the listener, rather than the truth of the matter they assert, are not hearsay. *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019). A statement in a police report is not hearsay if it is offered "to show the effect that the statements had on the officers" who heard it. *Id. citing Woods v. City of Chicago*, 234 F.3d 979, 986-87 (7th Cir. 2000) (the probable cause analysis does not even require the information known the police even be true); *see also, United State ex. Rel. Robinson v. Wilson*, 2001 U.S. Dist. LEXIS 3400, at *19 (N.D. Ill. Mar. 14, 2001) ("A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest where such testimony is necessary and important" even though such evidence may have otherwise been inadmissible hearsay). For the reasons discussed above,

5

the contents of the reports establish what was known to Defendant Officers and served as a basis for the investigative steps they took in the investigation.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion *in Limine* No. 5 to Bar an Unsupported Allegation that Robert Made Unauthorized ATM Withdrawals.

Respectfully submitted,

PHILIP CLINE
DANIEL MCWEENY[3]
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090
F: 312-429-0644
dnoland@burnsnoland.com

---

[3] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.

6