IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Smith Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1159 |
| v. ) | |
| ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., ) | |
| ) | Magistrate Judge M. David Weisman |
| Defendants. ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* No. 8 TO BAR EVIDENCE OF CRIMINAL CONVICTIONS OVER TEN YEARS OLD AND ANY PRIOR ARREST**

Defendants, by their respective undersigned counsel, respond to Plaintiff's Motion *in Limine* No. 8 to Bar Evidence of Criminal Convictions Over Ten Years Old and Any Prior Arrest as follows:

Plaintiff acknowledges that in the years prior to Smith's arrest in 1987, he had several felony convictions, including a conviction for federal postal theft and several state burglary convictions, and several thefts that "arose out of Mr. Smith's drug addiction…" (Dkt. 550, at pp. 1, 2). Indeed, Smith's criminal history is riddled with misdemeanor and felony level theft, drug, and burglary charges, continuing from 1966 to 1987, interspersed with several similar arrests. *See* Group Ex. A, Smith's Criminal History at CITY-RS-00003-5, CCSAO 96-97. First, evidence of Smith's criminal history is relevant to a determination of probable cause. In addition, this string of related arrests and offenses are also admissible under Rule 404(b) as they establish a pattern and practice of criminal offenses related to the funding and extent of Smith's drug abuse, which is relevant here as Smith admitted to police the during their investigation and at his deposition that he was abusing drugs and funded that abuse mostly through theft and burglaries. For example,

Smith was convicted for theft of a firearm in 1980, for which he received a 5-year sentence, paroled in 1982 (Ex. A at CCSAO SMITH 97), less than 10 years prior to his arrest for the Yeager/Alexander murders, and the evidence establishes that one of the victim's firearms was missing from the home following the incident. The evidence is also admissible under Fed. R. Evid. 609, which allows a witness's character for truthfulness to be attacked through introduction of certain prior criminal convictions.

## ARGUMENT

### I. Smith's criminal history is relevant to probable cause.

Smith's drug use and burglary habits are relevant to establishing probable cause (an element of plaintiff's state law malicious prosecution claim) and to rebut plaintiff's claim of innocence. A party "may elicit the statement to prove the information they knew supporting probable cause for the malicious prosecution claim." *Jones v. City of Chi.*, 2017 WL 413613, at *16 (N.D. Ill. Jan. 31, 2017). Defendants were aware, among other facts, of Smith's criminal history – including theft and burglary, his incarceration history, his drug habit, his abuse of drugs and alcohol on the night of the murders, and that he would use drugs and alcohol with Sally and Santee (and was doing so on the night of the murders), that he was unemployed, and that Yeager-Smith suspected him of making unauthorized withdrawals from her mother's bank account the month prior.

Additional non-propensity relevance of his prior criminal activity also comes directly from Smith himself, who testified at this motion to suppress that the detectives who questioned him knew his criminal history and asked him about it. (Dkt. 495-9, Day 2 MTSS at 113-115.) Specifically, Smith testified that the police "said you have [sic] known to be carrying a razor as a weapon" and he told them "I stopped carrying my razor", but "they knew I carried a razor". (*Id.*

2

at 114.) It is anticipated that Plaintiff will argue at trial this is evidence of what Defendants did to allegedly coerce and fabricate Smith's confession as to the murder weapon and Defendant will rebut that evidence with the criminal history they knew of, which was extensive and dated back to 1966, in which no razor blade was mentioned as being used in the crime.

Plaintiff cannot on the one hand argue defendants lack probable cause to charge him with the murders and then on the other strip from them the factual information they had during the investigation that led them to that conclusion. Defendants should be permitted to introduce this evidence to show that the information defendants relied upon to arrest plaintiff was based upon a proper probable cause determination, and that information is properly supported by evidence. *Jones*, 2017 WL 413613, at *16.

## II. Smith's criminal history is admissible under Rule 404(b).

Rule 404(b) permits the use of the other crimes and wrongs when such evidence is not being offered to prove propensity, but rather for some other purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In this case, a financial motive for the crimes to fund Smith's drug habit was developed during the investigation, and his criminal history corroborated that motive. Smith admitted to police his extensive drug use during the day and night of the crime. His wife and brother-in-law also told police about recent money taken from one of the victims' bank accounts, and Diane also told them that Smith took money from her own bank account. *See* Response to Plft. MIL no. 5. The Detectives also had Smith's criminal history, which Detective Leracz obtained shortly after Smith's arrest. Indeed, Plaintiff admits in the Motion (Dkt. 550, at pp. 1, 2), that Smith's criminal activity was all related to funding his drug addiction. And, although Diane did not find any money stolen when she looked over the house with Detectives, she did confirm that her mother's gun was

3

missing, an item of significant monetary value that could have been sold to purchase drugs. Indeed, Smith himself testified that he would use the "money he got from items he hustled on the street," which he acquired "by burglary" to purchase drugs, and would include actual tangible items, like for example "fans, TVs." *See* Dkt. 495-7, Smith Dep., at 69-70.

Accordingly, contrary to Plaintiff's assertion, evidence of Smith's prior arrests and convictions is not being introduced as propensity evidence, but rather because it is enmeshed in the totality of motive evidence collected by Defendant Officers and thus relevant to the reasonableness of their investigation and probable cause to charge Smith with murder. It is also relevant to rebut Plaintiff's claims that Defendants fabricated or coerced Smith into stating the murder weapon was a razor blade he kept in this wallet that he just so happened to no longer have after the murders.

### III. Smith's criminal history is admissible under Rule 609.

With respect to Rule 609, even if a prior conviction is over 10 years old, it may still be admissible if the court determines, in the interests of justice, that the conviction's probative value substantially outweighs its prejudicial effect. Fed R. Evid. 609(b). In that regard, the Seventh Circuit has established a five-part test to determine whether the conviction's probative value substantially outweighs its prejudicial effect including (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the [witness's] testimony, and (5) the centrality of the credibility issue. *United States v. Montgomery*, 390 F. 3d 1013, 1015 (7th Cir. 2004); *see also Whitlow v. Martin*, 2010 U.S. Dist. LEXIS 157887, at * 6-7 (employing 5-part test in civil matter).

4

Here, Smith's character for truthfulness is a central issue in this case. Indeed, for several of Plaintiff's claims, Smith's own testimony is the only evidence tending to establish that certain events occurred; and, in other circumstances, it is the only evidence tending to negate the officers' version of events. The fact that Smith's prior convictions are more than 10 years old should not weigh in favor of inadmissibility in this case, as under that rubric, any of Smith's prior crimes would be inadmissible, as Smith spent over three decades in prison, which arguably limited his ability to continue his criminal activity to some extent. In particular, Smith's conviction for theft of a firearm is particularly salient because it shows a pattern/practice that is consistent with Smith's involvement in the Yeager/Alexander homicides. Thus, the impeachment value, the similarities between the circumstances involving these offenses, the importance of Smith's testimony to this case, and the fact that Smith's credibility is central to the issues in this case all weigh in favor of admission of Smith's prior felony convictions, and specifically his 1980 conviction for theft of a firearm for which he was paroled in 1982, just 5 years prior to the Yeager/Alexander homicides.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion *in Limine* No. 8 to Bar Evidence of Criminal Convictions Over Ten Years Old and Any Prior Arrest.

Respectfully submitted,

PHILIP CLINE
DANIEL MCWEENY[1]
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
ROBERT DWYER
ESTATE OF JOHN YUCAITIS
ESTATE OF RICE
ESTATE OF WILLIAM HIGGINS

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson

---

[1] Daniel McWeeny died on March 6, 2025, and his death was suggested on the record on April 2, 2025 (dkt. 540). The parties are in the process of agreeing to substitution of a special representative for him and include his name here as a placeholder.

5

| | |
|---|---|
| /s/ *Stacy A. Benjamin* <br> Special Assistant Corporation Counsel <br><br> Eileen E. Rosen <br> Stacy A. Benjamin <br> Andrew J. Grill <br> Brittany D. Johnson <br> ROCK, FUSCO & CONNELLY, LLC <br> 333 W. Wacker, 19th Fl <br> Chicago, IL 60606 <br> T: 312-494-1000 <br> F:  312-494-1001 <br> sbenjamin@rfclaw.com | Daniel J. Burns <br> Dhaviella N. Harris <br> Burns Noland LLP <br> 311 S. Wacker Dr., Suite 5200 <br> Chicago, IL 60606 <br> T: 312-982-0090 <br> F: 312-429-0644 <br> dnoland@burnsnoland.com |