IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Diane Yeager Smith, as special representative for Robert Smith Jr., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21 C 1159 |
| v. | ) ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., | ) ) | Magistrate Judge M. David Weisman |
| Defendants. | ) | |

**DEFENDANTS' TRIAL BRIEF**

### I. INTRODUCTION

At 3:22 a.m. on September 19, 1987, a fire was reported at the home of Edith Yeager and Willie Bell Alexander. Their burnt bodies, clad in their bed clothes and their throats slashed, were found in the hallway of the first floor near the stairway to the basement. Investigators from the Chicago Fire Department (CFD) and Chicago Police Department (CPD) Bomb & Arson determined the fire was set to cover up the murders. There were no signs of a forced entry to the home, the bolt on the open basement door was extended, and blood and bloody water around the basement washer/dryer suggested the offender used the machines.

The day before and night of the murders, Robert Smith (Smith) had been out doing drugs and drinking with friends, but none accounted for his whereabouts from 12:00 a.m. to 3:00 a.m. Smith and his then-wife, Diane Yeager-Smith (daughter/granddaughter to the deceased, "Diane"), just happened to be driving by the home at approximately 5:30 a.m. Smith was taken into custody by Det. McWeeny based on his unusual behavior at the crime scene, after a struggle with police in the same area where the bodies were initially found. Smith was then handcuffed, escorted to a transport vehicle (driven by officers Rios and Wells) and taken to Area 2. During initial questioning, Smith denied any involvement in the homicides. However, as the investigation continued, detectives uncovered and

confronted Smith with several pieces of evidence that pointed to his involvement. Smith ultimately confessed to the crimes and gave a court-reported statement. Smith was then charged with the crimes and a jury convicted him of the two murders. In 2020, Smith's conviction was vacated based upon the Special Prosecutor's faulty understanding of the evidence and Smith then obtained a certificate of innocence. Most notably, the Special Prosecutor accepted Smith's long-standing false claim that his underwear must have been planted by the detectives because it was not recovered for many hours after the scene investigation. Had he conducted due diligence, the Special Prosecutor would have found a CFD photo capturing the underwear on the first step of the basement stairs taken about 4:30 a.m. that morning. Not coincidentally, Smith admitted he wasn't wearing underwear when he was arrested. Moreover, Smith stipulated in this lawsuit that the underwear belonged to him and that the blood found on the soles of his feet and his clothing belonged to one or more of the victims. (Dkt. 267).

Defendants believe they can achieve judgment as a matter of law on all claims if Defendants' Motion in Limine No. 1 to bar Smith's deposition and motion to suppress testimony is granted. If Smith's prior testimony is not barred, Defendants believe they can achieve judgment as a matter of law on all claims but for Count I, Plaintiff's coerced confession claim under the Fifth and Fourteenth Amendments and the related derivative claim in Count VIII; however, Defendants believe they should prevail on judgment as a matter of law even on this claim as to Defendants McWeeny, Solecki, Brownfield and Yucaitis.

## II. PLAINTIFF'S CLAIMS[1] AND DEFENDANTS' THEORIES OF THE CASE

### A. Count I – Coerced confession under the Fifth and Fourteenth Amendments against all Defendant Officers.

---

[1] Plaintiff's *Monell* claim is bifurcated from this matter's trial (dkt. 485) and therefore, is not discussed in this brief.

Plaintiff claims that Smith was coerced into repeating a false confession fed to him by Defendant Officers. Dkt. 82 at ¶¶ 158-163. Defendant Officers all deny any claims of abuse or coercion. Smith claims he was initially kicked repeatedly in the chest by Officer Rios (not a defendant) upon his arrival at Area 2, during which no Defendant Officer was present. When Defendant McWeeny arrived sometime later, Smith alleges that another unknown detective with McWeeny attacked Smith, but that McWeeny pulled that officer off Smith and then proceeded to interviewed him about the crimes. Smith alleges he was then subjected to frequent physical and psychological abuse over the course of the next 18 hours prior to his confession by other unidentified detectives who fed him details of the crime and used racist language during the abuse.

However, photos and medical records negate Smith's claims of continuous abuse for over 12 hours while at Area 2. Photos taken of Smith by both the court reporter and evidence technician after his court reported confession (after he had been in custody for over 18 hours) show no evidence of injury. Smith also stated in his court reported statement that no one made any threats or promises to him and that he had no complaints about the way he was treated by the police. Defendants' medical expert, Brian Schurgin, MD will testify that Smith's medical records from CCJ and Cermak hospital reflect only a bruise to his chest. Smith's rib fracture and other injuries noted in his medical records a few days after he arrived at CCJ relate to a fall he took from a second story tier in the jail. This fall was likely deliberate - either out of guilt and remorse for the murders or to create injuries he would falsely attribute to the police. Smith's initial outcry at CCJ about his abuse was limited to what happened at the crime scene and initially when he was brought to Area 2 where he claims Rios kicked him. Smith expanded his allegations to non-stop abuse when he testified in support of his motion to suppress statements.

Should the jury believe Smith despite these inconsistencies, Defendant Officers will nevertheless argue that: (1) Defendants Solecki, McWeeny, Brownfield and Yucaitis were not involved in the taking of an inculpatory statement and that no misconduct was attributed to them so

3

they should be dismissed, *Wilson v. Warren Cnty. Ill.*, 830 F. 3d 464, 469 (7th Cir. 2016); and (2) these Defendants are entitled judgment as a matter of law under qualified immunity based on their lack of involvement. *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017).

Defendants Cline, Pedersen, Rice and Higgins (and later ASA Raymond Brogan) were the only Defendants present when Smith made inculpatory statements about his involvement in the murders. Defendant McWeeny is entitled to judgment as a matter of law as he had no involvement in any of Smith's inculpatory statements whatsoever – Smith didn't make any inculpatory statement until 14 hours after McWeeny spoke with him and McWeeny was not alleged to have engaged in any physical or mental abuse. Further, Smith denied that McWeeny provided him any details about the crime. *Vance v. Peters*, 97 F. 3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated on fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."); *see also Grieveson v. Anderson*, 538 F. 3d 763, 776 (7th Cir. 2008). Likewise, Smith has never alleged abuse directly against Yucaitis and Brownfield and they did not obtain an inculpatory statement from Smith and were not present when Smith made inculpatory statements, thus they too are entitled to judgment as a matter of law. *Id*. Smith also has never claimed abuse or coercive treatment by Solecki, who was with Smith for approximately 5 minutes. *Id*. Thus, the derivative failure to intervene and conspiracy claims based upon Smith's allegedly coerced confession as to these Defendants will fail for lack of evidentiary support. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (stating conspiracy is not an independent basis of liability in § 1983 actions); *Harper v. Albert*, 400 F. 3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). In addition, if the Court grants Defendants' Motion in Limine No. 1, Smith will be unable to establish that he suffered abuse at the hands of any Defendant as his testimony will be the only evidence in the record to establish such a claim. Moreover, Smith will be unable to prove the confession was false, which lends credence to Defendants' denials of coercion.

4

### B. Count II – Fabrication of Evidence Used at Trial Against all Defendant Officers.

Following summary judgment, Plaintiff has two remaining due process violations under Count II (Dkt. 82, ¶¶ 164-170). Each is discussed *infra*.

#### 1. Fabrication of Smith's confession against all Defendants.

Smith claims that portions of his confession were demonstrably false and Defendant Officers should have known that his confession was fabricated. Defendants deny that they fabricated Smith's confession and that they knew his confession was false. Specifically, Smith claims that his confession was demonstrably false because he stated he slashed both the victims' throats twice and one of the victims' throats was cut only once. Defendants will establish that there is nothing demonstrably false in Smith's confession.

Moreover, there is a plethora of evidence beyond the confession that suggested Smith was the offender, thus no Defendant Officer could have known "with certainty" that his confession was fabricated, despite his claims of coercion, including but not limited to: (1) Smith's bloody underwear at the crime scene and the fact he was not wearing underwear when he was taken into custody; (2) blood on Smith's socks and the soles of his feet which he has stipulated belonged to one or more of the victims; (3) Smith's alibi witnesses being unable to account for his whereabouts around the time of the murders; (4) the lack of forced entry into the home suggesting the victims knew their attacker; (5) Smith's drug habit and history of stealing things he could then sell for drug money and the fact that a gun was missing from the home; (6) the fact that the offender used the washing machine in the basement and Sally Atkins told police that Smith's clothes were wet when he arrived back at her home around 3:00 a.m.; (7) Smith's odd and disruptive behavior at the crime scene; (8) Smith's refusal to take a polygraph exam; (9) the fact that Smith carried a razor blade in his wallet in 1987 when the murders occurred that just happened to no longer be in his wallet at the time of his arrest; etc. Ultimately, despite Plaintiff's claim surviving summary judgment on this theory, Defendants are

entitled to judgment in their favor on this claim as a matter of law because there is no evidence to establish that Smith's confession was fabricated or that any Defendant knew his confession was false.

Finally, Defendants will argue that Smith cannot state a viable fabrication claim based upon his own confession as the only evidence to support Smith's fabrication claim is his alleged coercion, which is insufficient as a matter of law. *Coleman v. City of Peoria*, 925 F. 3d 336, 346 (7th Cir. 2019); *Avery v. City of Milwaukee*, 847 F. 3d 433, 439 (7th Cir. 2017). Plaintiff cannot establish that Defendant Officers fabricated Smith's confession because Smith admits that the contents of his confession came from him and things he learned over the course of his interrogation, not that he did not confess or that any of the Defendant Officers were the ones to tell him what to say in his court-reported statement.

### 2. Fabrication of Smith's bloody underwear recovered on the basement step against Higgins and Solecki.

Plaintiff claims that Smith's bloody underwear was fabricated by Higgins and Solecki. Defendants deny that they fabricated Smith's bloody underwear – including the existence of blood on the underwear and/or the underwear's location. Defendant Officers should receive judgment in their favor as a matter of law despite summary judgment being denied on this claim because Smith does not dispute that his underwear was recovered at the scene (just that the exact location at the top of the basement step was fabricated) and there is no evidence that either the blood or the location of the underwear was fabricated. Instead, Smith admits that the underwear is his and the blood on the underwear belongs to one of the victims. (Dkt. 267). A photograph, taken by CFD Fire Marshall Lumsden at around 4:30 a.m., before Smith even arrived at the crime scene, depicts what appears to be the blue underwear exactly where Defendants Solecki and Higgins found it, and Solecki is expected to testify that the blue item in the photograph is consistent with the location, color and material of the underwear that was recovered from the crime scene. Thus, Smith will be unable to

offer more than unsupported conjecture that the underwear was fabricated. Accordingly, judgment as a matter of law is warranted because this evidence was not fabricated.

### C. Count IV and IX – Federal conspiracy under §1983 and conspiracy under Illinois law (Count IX) against all Defendant Officers.

Plaintiff's conspiracy claims are derivative of the federal constitutional claims. As a result, where those claims fail against any individual Defendant Officer, so too, do the derivative claims and they should be dismissed. *Smith v. Gomez*, 550 F. 3d 613, 617 (7th Cir. 2008) (stating conspiracy is not an independent basis of liability in § 1983 actions). Furthermore, Plaintiff will be unable to establish any conspiracy claim because he will be unable to present evidence that each of the Defendants entered into any agreement to deprive Smith of his rights.

### D. Count V –§1983 Failure to intervene against all Defendants.

As noted above, all Defendant Officers deny that Plaintiff was abused and coerced, so if a jury finds for Defendant Officers on Count I, any failure to intervene claim fails too. Further, Plaintiff's abuse and coercion claims are undercut by the evidence of Smith's guilt, which includes the victims' blood on his underwear and the soles of his feet, as well as the lack of evidence corroborating his alleged abuse, as discussed above in Section II.a. If the jury does not find for Defendant Officers on Count I, Defendant Officers will still be asking for entry of judgment as a matter of law on this claim based on qualified immunity and also will be asking for entry of judgment as a matter of law as to Defendants McWeeny, Solecki, Brownfield and Yucaitis as they were not present when Plaintiff was allegedly abused.

### E. Count VIII – Intentional infliction of emotional distress under Illinois law against all Defendant Officers.

If Defendants prevail on all the aforementioned claims, then a jury need not reach this issue. *See Cooney v. Casaday*, 746 F. Supp. 2d 973, 977-78 (N.D. Ill. 2010) (plaintiff's IIED claim must fail when it is premised on alleged constitutional violations that fail). Thus, the evidence to support

this claim is tied to Plaintiff's alleged constitutional violations and will be dependent upon the outcome of those issues. However, should Plaintiff prevail on any one of the above claims and Defendant Officers not receive judgment in their favor as a matter of law, the only Defendant Officers against whom this claim should proceed are those whom Plaintiff has alleged were present for and/or abused him as stated in Section II.b.1. Plaintiff has not disclosed an expert to testify regarding mental health damages or psychiatric symptoms unrelated to his cognitive decline, thus the extent of the damages claim is based upon the normal and consequential damages that flow from Smith's constitutional injuries. Therefore, should Plaintiff prevail on any of the constitutional claims underpinning the IIED claim, Plaintiff has no basis or evidence to argue that his injuries caused severe mental health conditions and/or lasting damages that require lifelong care and/or treatment, nor to factor such an amount into the claim for damages.

Respectfully submitted,

PHILIP CLINE
STEVEN BROWNFIELD
WILLIAM PEDERSEN
JOHN SOLECKI
GERI YANOW FOR THE ESTATES OF JOHN YUCAITIS, RICE, WILLIAM HIGGINS AND DANIEL MCWEENY


/s/ *Stacy A. Benjamin*
Special Assistant Corporation Counsel

Eileen E. Rosen
Stacy A. Benjamin
Andrew J. Grill
Brittany D. Johnson-Delgado
ROCK, FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Fl
Chicago, IL 60606
T: 312-494-1000
F: 312-494-1001
sbenjamin@rfclaw.com

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: *s/ Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
T: 312-982-0090
F: 312-429-0644
dnoland@burnsnoland.com