# PTO Exhibit E
*Smith v. City et al.*
**Defendants' Witness List**

## Will Call Witnesses
(LIVE)

Phillip Cline, Defendant
> Lt. Cline was the Violent Crimes Commander at Area 2 when the Yeager/Alexander homicides were investigated. He has knowledge of and involvement in the investigation and Robert Smith's confession.

William Pederson, Defendant
> Det. Pederson was one of the third watch detectives assigned to assist in the Yeager/Alexander homicides investigation and who interacted with Robert Smith.

Steven Brownfield, Defendant
> Det. Brownfield was one of the second watch detectives assigned to assist in the investigation of the Yeager/Alexander homicides and interacted with Diane Yeager-Smith and Robert Smith.

John Solecki, Defendant
> Det. Solecki was one of the third watch detectives assigned to assist in the investigation of the Yeager/Alexander homicides. He, along with Higgins and Rowan went to the crime scene where Smith's underwear and a blue sheet were recovered. He was present for Smith's inculpatory statements relating to his underwear and the blue sheet.

Michael Rowan, Detective
C/O former attorneys of record, Rock Fusco & Connelly, LLC
> Det. Rowan was one of the third watch detectives assigned to assist in the Yeager/Alexander homicide investigation. He requested evidence technicians obtain blood standards from Smith and collection of his socks, went to the crime scene along with Dets. Higgins and Solecki and is aware of their recovery of the underwear and blue sheet. Rowan also interviewed Robert Smith's purported alibi witnesses Sally Atkins Payne and Michael Santee.

Christine Anderson, CPD Crime Lab serologist
C/O Burns Noland
    Anderson will testify about her examination, testing and reporting of the physical and biological evidence recovered from the crime scene and Robert Smith during the homicide investigation, the evidence presented through her at Smith's criminal trial, and the substance of her testimony during her two depositions in this civil case.

Raymond Brogan, Felony Review Assistant State's Attorney
C/O Brian Gainer, Johnson & Bell, former attorney of record
    Brogan was called to the station by detectives investigating the Yeager/Alexander homicides, he reviewed the evidence and heard Robert Smith's verbal confession, took Smith's his court reported confession and approved the felony murder charges.

Brian Schurgin, MD
    Defendants' retained medical expert will testify about the matters disclosed in his Rule 26 report and at his deposition.

Rachel Oefelien, Forensic DNA Analyst/Chief Science Officer
    Defendants' regained DNA and serology expert will testify about the matters disclosed in her Rule 26 report and at her deposition.


(UNAVAILABLE - Criminal trial and/or deposition transcript):

Daniel McWeeny (deceased)
    Det. McWeeny assisted in the investigation of the initial crime scene of the Yeager/Alexander homicides and interacted with Robert Smith and Diane Yeager-Smith at the crime scene and had both brought to Area 2 where he conducted their initial interviews. He testified in at the motion to suppress statements, at Smith's trial and gave a deposition in the Smith's post-conviction proceedings.

William Higgins, Defendant (deceased)
    Det Higgins was one of the third watch detectives assigned to assist in the investigation of the Yeager/Alexander homicides, he initially spoke with Smith and later was sent to the crime scene and was present for the recovery of the underwear and blue sheet, he confronted Smith upon his return to Area 2 with the evidence recovered and was present for Smith's inculpatory statements relating to the underwear and a blue sheet. Higgins was also present for Smith's court reported statement taken by ASA Raymond Brogan. He testified at the motion to suppress statements and at Smith's trial.

John Yucaitis, Defendant (deceased)
> Det. Yucaitis, partnered with Det. Brownfield, was one of the second watch detectives assigned to investigate the Yeager/Alexander homicides and who interacted with Diane Yeager-Smith and Robert Smith and testified at Smith motion to suppress statements.

Jack Lumsden, CFD Fire Marshall (deceased)
> Lumsden investigated cause and origin of the arson for the CFD and took photos during that investigation, including one that captured Smith's underwear on the top stair prior to Smith and Yeager-Smith's arrival at the crime scene. He gave a deposition in the matter.

Thadeus Melko, Evidence Technician (deceased)
> Melko took blood standards from Smith's feet and collected his socks. He testified at Smith's trial.

## May Call Witnesses
(LIVE)

Robert Dwyer, CPD Detective
> Det. Dwyer assisted in the investigation of the initial crime scene of the Yeager/Alexander homicides.

Frank DeMarco, CPD Evidence Technician
C/O Burns Noland
> Conducted forensic investigation of crime scene, along with partner Batchelder, photographs of crime scene and evidence collected, and photographs of Smith taken after his court reported confession.

Edmund Leracz, CPD Detective
C/O Burns Noland
> Leracz was the assigned detective, along with partner Binkowski, to investigation of Yeager/Alexander homicides. He authored the report of the investigation of the crime scene and directed the CPD investigation.

Ronald Gaines, CPD Detective
C/O Burns Noland
> Gaines was assigned to assist in the Yeager/Alexander homicides investigation on the second watch and interviewed Sally Atkins Payne and Michael Santee and submitted the kitchen knife for analysis.

Jerry McGovern, CPD Detective
C/O Burns Noland
> McGovern assisted in the investigation of the initial crime scene of the Yeager/Alexander homicides and returned to the Area while Smith was present.

Warren Hughes, CPD police officer
C/O Burns Noland

    Hughes, and his partner Barrins, were the first responders at the crime scene. He made observations of the crime scene before and after the fire was suppressed and assisted with Smith being escorted from the crime scene.

Martin Rios, CPD police officer
C/O Law Office of Daniel Herbert
    Rios will testify about the circumstances surrounding his transporting (with officer Wells) Smith from the crime scene to Area 2 and interactions with Smith at Area 2.

Hervie Wells, CPD police officer
C/O Burns Noland
    Wells will testify about the circumstances surrounding his transporting (with Rios) Smith from the crime scene to Area 2 and interactions with Smith at Area 2.

Patrick Garrity, CPD Polygraph examiner
C/O Burns Noland
    Garrity conducted the polygraph examination of Diane Yeager-Smith and statements were made by her during the examination.

Tommy Lee Spence, CPD booking officer or Robert J. Graff, Sr. CPD Lockup Keeper
C/O Burns Noland
    Records relating to Robert Smith while in the CPD lockup following charges.

Lawernce Gates, CPD Bomb & Arson investigator
C/O Burns Noland
    Detective Gates conducted the investigation of the arson for the CPD, as part of his investigation he took photographs and collected evidence and concluded the fire was arson. He likely used the knife (captured in photographs after the fire debris was removed) to take samples of the carpet at the fire origin.

Pam Fish, CPD Crime Lab serologist
C/O Shelly Kulwin, Kulwin, Masciopinto & Kulwin, LLP, 161 N. Clark St. Suite 2500, Chicago
    Fish conducted serological forensic testing on evidence collected in the Yeager/Alexander homicides investigation and will testify about her observations and conclusions.

Bernadette Kwak, CPD Crime Lab trace analyst
C/O Burns Noland
    Kwak conducted trace forensic analysis on evidence collected in the Yeager/Alexander homicides investigation and will testify about her observations and conclusions.

David C. Thomas, Executive Director TIRC
    To lay foundation for Robert Smith's audio recorded statement to TIRC concerning Sally Payne's son driving him around the night of the murders.

Ronald Rivera, CFD Commanding Fire Marshall
C/O Burns Noland

>To lay the foundation, if necessary, for the CFD records, photographs, and film strips produced by the City this case.

David Grant, CPD Sergeant
C/O Burns Noland
>To lay the foundation, if necessary, for the CPD and/or CFD photographs.

Alan Osoba
C/O Burns Noland
>Forensic examination and testing related to arson investigation evidence.

Diane Yeager Smith
>Diane has knowledge about Smith, her then-husband's criminal history, drug and alcohol addiction, relationship with Sally Atkins Payne and Michael Santee, his whereabouts before and after the crime, her presence at the crime scene with Smith and her involvement in the CPD's investigation of the crime.

Derrick Yeager
>Son and grandson of the victims. He cooperated with investigators and provided statements to the Detectives during the investigation of the crime. He has knowledge of Smith's relationship with his sister, mother and grandmother prior to the murders.

David Yeager
2829 W. Acacia Street, Milwaukee, WI
>Son and grandson of the victims. He cooperated with investigators and provided statements to the Detectives during the investigation of the crime. He has knowledge of Smith's relationship with his sister, mother and grandmother prior to the murders. He also spoke with the special prosecutor during the post-conviction proceedings prior to the dismissal of the charges.

Barry D. Lifschultz, MD, medical examiner
Evanston, IL
>Conducted autopsies on crime victims, testified at Smith's trial as to cause and manner of death.

Joseph Szybist, court reporter
235 Arlington Ave. Naperville, IL
>Court reported and transcribed Robert Smith's statement to ASA Brogan and took photograph of Smith following statement.

William Connelly or Peter Zaper, ASA Prosecutors
>Connelly and Zaper were the prosecutors at Smith's trial and will testify about the evidence introduced at Smith's trial and their knowledge of the police investigation.

Myles O'Rourke
O'Rourke & Moody, LLP., 10 S. LaSalle Street, Chicago

5

>Special prosecutor for the post-conviction matter and certificate of innocence proceedings. Present for the depositions of Cline, McWeeny, Pederson and Brownfield in the post-conviction proceedings.

Plaintiff objects to Mr. O'Rourke's testimony for the reasons stated in Plaintiff's MIL to bar attempts to relitigate Smith's post-conviction and COI proceedings.

Dani Stuart, Forensic Serologist
>Defendants retained forensic serologist will testify about the matters disclosed in her Rule 26 report and at her deposition.

Linda A. Mitchell
Theophilius E. Green, Psy.D.
>August 30, 1988 report on their observations, examination and conclusion about the psychological status, diagnosis and recommendations relating to Robert Smith Jr. presented to his criminal defense attorney in the matter of *People v. Smith*.

David C. Garron, PhD. 1750 W. Harrison Street
Dr. Garron's May 23, 1990 report on his observations, examination and conclusion about the current mental state of Robert Smith Jr. on that same date submitted in the matter of People v. Smith.
**Plaintiff Smith objects to Ms. Mitchell, Dr. Green, and Dr. Garron testifying because they were retained by Smith's Public Defender solely for the purposes of evaluating Mr. Smith in a death penalty case (in Aug. 1988 and May 1990), one early in the retention of the Public Defenders' Office and one shortly before trial. While the medical privilege was waived when the reports were shared with the Criminal Court, under Rule 403, it would be unduly prejudicial to have any of these individuals testify or to have their reports admitted. We also do not believe that Defendants can lay a foundation for these witnesses or their reports in that Defendants do not have any current contact information for any of them.**

Muhamed Irfan, M.A., Psychologist
>December 23, 1991 and January 22, 1992 reports on his observations, examination and conclusion about the psychological status, diagnosis and recommendations relating to Robert Smith Jr.

**Plaintiff Smith objects to Mr. Irfan testifying because he was retained by IDOC solely for the purposes of Smith's adjustment to prison and certain medical or psychological complaints Mr. Smith was expressing at that time. While the privilege was waived when this report was produced by IDOC in discovery in this case, under Rule 403, it would be unduly prejudicial to have this individual testify or to have his report admitted. We also do not believe that Defendants can lay a foundation for Muhamed Irfan's testimony or reports because Defendants do not have any current contact information for Mr. Irfan.**

Diana Goldstein, PhD
65 E. Wacker Pl. #2240, Chicago IL
>Dr. Goldstein conducted psychological testing on Smith that showed dementia following his deposition and recorded statements made by Smith during his examination by Dr. Dinwiddie concerning the crime and his incarceration.

6

**Plaintiff Smith has moved to strike this witness for the reasons set forth in Plaintiff's sole *Daubert* Motion (Dkt.562) and in Plaintiff's MIL #7 (Dkt.550). In both motions Smith set forth that any issue related to "dementia" is not relevant to any disputed issue of material fact to be decided by the jury. The sole even arguable basis to have any of these witnesses testify (Goldstein, Dinwiddie, Argumedo) is to opine on the status of Mr. Smith's dementia as of a specific date, November 17, 2021. We have serious doubt that any of these witnesses are qualified to do so, and in any event, it will create a completely unnecessary and confusing piece of satellite litigation in which third parties are testifying to the jury about the Plaintiff's – and only the Plaintiff's – capacity to testify almost four years ago. That is a decision the jury should make on its own from observing the testimony.**

Stephen H. Dinwiddie, MD
676 N. St. Clair St. Suite 1100, Chicago, IL
    Conducted psychiatric examination of Smith and found him to suffer from Major Neurocognitive Disorder, and incompetent and totally disabled as a result of that disorder by at least December 2021, 10 days after Smith gave his deposition in this case.

**Plaintiff Smith has moved to strike this witness for the reasons set forth in Plaintiff's *Daubert* Motion (Dkt.562), MIL #7 (Dkt.550), and summarized directly above.**

Monica Argumedo, MD
    Defendants' retained forensic psychiatrist. Will testify concerning her opinions about Smith's mental health condition at the time of his deposition, consistent with her report and deposition.

**Plaintiff Smith has moved to strike this witness for the reasons set forth in Plaintiff's *Daubert* Motion (Dkt.562, MIL #7 (Dkt.550), and summarized directly above.**

Jacquelin Ja, CPD Evidence & Recovered Property Section
    Chain of custody testimony for evidence collected in the Yeager/Alexander homicides investigation and maintained by CPD Evidence & Recovered Property Section.

Partick Brown and/or Bill Marino, Circuit Court Of Cook County
    Chain of custody testimony for evidence collected in the Yeager/Alexander homicides investigation and impounded by Circuit Court after trial.

(UNAVAILABLE - Criminal trial and/or deposition transcript)

Raymond Binkowski, CPD Detective (deceased)
    Assigned, along with his partner Leracz, to investigate of Yeager/Alexander homicides. He co-authored the report of the investigation of the crime scene and testified at Smith's criminal trial.

Thomas Batchelder, CPD Evidence Technician (deceased)
    Conducted forensic investigation of crime scene, along with partner DeMarco, photographs of crime scene and evidence collected, and photographs of Smith taken after his court reported confession. Testified at Smith's trial.

John DuShane, forensic print examiner (deceased)
    DuShane gave testimony at Smith's criminal trial concerning fingerprint evidence.

Robert Dempsey, CFD Captain (deceased)
    Demsey testified at Smith's trial concerning the CFD suppression of the fire that was set to cover up the murders and the condition of the house upon arrival and after the fire was extinguished.

Patrick Barrins, CPD police officer (deceased)
    Barrins and his partner Hughes were the first responders at the crime scene. He testified at Smith's trial concerning his observations before and after the fire was suppressed.

Mary Pratt, Robert Smith's sister
    Testified at Smith's sentencing about his access to a car.

<span style="color:red">Smith has no objection to Ms. Mary Pratt Purdie as a live witness at the trial. Smith, however, does object to the admission of her sentencing hearing testimony because she is not an unavailable witness.</span>

Charles Tenelton, fire witness
    Testified at Smith's trial about reporting fire to police and his observations.

## Conditional 404(b) Rebuttal Witness Addendum

In the event Plaintiff is allowed to introduce 404(b) evidence in this case against any Defendant Officer, Defendants identify the following witnesses who will testify live or through designations as rebuttal:

As to Madison Hobley:
1.     Andre Council. Testimony at trial implicating Hobley in the crime to which he confessed. (By designated previous testimony)
2.     Kenneth Stewart. Testimony at Hobley's trial implicating Hobley in the crime to which he confessed. (By designated previous testimony)
3.     Jane Lichty Loeb, c/o Joseph Hodal of the Cook County State's Attorney's Office. Former ASA who was assigned to the felony review unit and saw Mr. Hobley at Area 2. Designations from Ms. Loeb's previous testimony at trial was sent to Plaintiff conditionally, in the event she is deemed unavailable.

As to Darrell Cannon:
1.     Henry R. Simmons, 120 N. LaSalle Street, Chicago, IL 60602. Live witness. Former ASA Simmons took Cannon's court reported statement admitting to his involvement in the November 1983 murder of Darren Ross and is expected to testify about his interactions with Cannon and the police officers at that time.
2.     Gordon B. Nash Jr., 191 N Wacker Dr Ste 3700 Chicago, IL 60606, or Leone J. Flosi, 1415 W 22nd St Tower Floor Oak Brook, IL 60523. Live Witness. Mr. Nash or Mr. Flosi is expected to testify about the investigation of the Office of the Special Prosecutor into Cannon's

allegations of mistreatment by police and of the allegations and investigation into Cannon's allegations against any of the defendant officers in this case.
3. Tyrone McChristian. By designation. Previous testimony before the Grand Jury implicating Cannon in the crime to which he confessed.

As to Anthony Holmes:
1. Thomas J. Reed, 53 W Jackson Blvd Ste 841 Chicago, IL, 60604. Live witness. Mr. Reed is expected to testify about the investigation of the Office of the Special Prosecutor into Anthony Holmes' allegations of mistreatment by police.
2. Paul Kayman, 39 S. La Salle St Chicago, IL 60603. Live witness. Former ASA Kayman took Holmes' statement admitting to his involvement in the 1972 murder of Joseph Murphy and is expected to testify about his interactions and observations of Holmes and police officers at that time.

As to Eric Caine
1. William Lacy, 50 W Washington Ste 1001 Chicago, IL 60602, live witness. ASA Lacy is expected to testify about his interactions and observations of Eric Caine. In the event Mr. Lacy is unavailable, Defendants has provided Plaintiff with designated testimony relating to Mr. Caine's court reported statement.
2. Peter Troy (deceased). Former ASA Troy's testimony attached hereto as Exhibit F. We have highlighted in blue on the transcript that testimony defendants conditionally seek to introduce.

As to Phillip Adkins:
1. Lester Joseph, 2216 Forest Glen Rd Silver Springs, MD 20910. Live witness. Former ASA Joseph took Adkins's court reported statement in which he admitted to his role in the armed robbery that took place on June 7, 1984, and is expected to testify about his interactions with Adkins and the police officers at that time.

AS to Kevin Bailey or Corey Batchelor
1. David G. Fischer, 9936 S. Talman Ave. Chicago, IL 60655. Live Witness. Former ASA Fisher took the court reported statements of Bailey and Batchelor.

Plaintiff objects to all of these purported "404(b) rebuttal" witnesses on the following grounds.

First, and most importantly, the testimony that they have proffered for these individuals is not proper 404(b) rebuttal testimony. When a Rule 404(b) or Rule 406 witness testifies that a Detective beat him, it is not proper rebuttal to that testimony to start attacking the 404(b) witness as implicated in the underlying crime in that witness's underlying case. As one example only, they want to call Andre Council for "testimony at trial implicating Madison Hobley in the crime to which he confessed." That has nothing whatsoever to do with whether Hobley was beaten by one or more defendants in this case, and it is wholly improper "404(b) rebuttal testimony." If the Court reviews all of the people they want to call in this category, and all the testimony these Defendants want these witnesses to give, it is just more of the same – attacks on the witnesses, testimony about their involvement in the underlying crimes within which they were charged. It is not rebuttal to their testimony regarding unconstitutional conduct at Area 2. (We can give the Court additional specific examples, if the Court desires, but not given the particular timing of this objection.)

Second, none of these witnesses were not listed in Defendants' Initial Disclosures, or revised Initial Disclosures, even though Smith's 404(b) witnesses were disclosed early in discovery.

Third, they were not listed in Defendants' April 15, 2025 witness list even though Defendants had a complete list of Defendants' 404(b) witnesses – served April 8, 2025 – at that time.

Fourth, these names were added to Defendants' witness list literally just moments before the Pretrial Order was due (although they had sent some prior testimony from some of them, which transcripts they asserted were admissible as rebuttal evidence).

In sum, none of these witnesses are proper "rebuttal" witnesses to the 404(b) and 406 testimony Smith is requesting the Court to admit, and none of them were timely or properly disclosed. They should all be barred as 404(b) rebuttal witnesses.