IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Smith Jr., ) | | |
|                  Plaintiff, ) | No. 21-cv-1159 | |
| v. ) | | |
| ) | Honorable Jeffrey I. Cummings | |
| The City of Chicago, et al. ) | | |
| ) | | |
|                  Defendants. ) | | |

**SMITH'S <u>CONTESTED</u> MOTION FOR COURT ASSISTANCE IN FINALIZING THE TERMS OF THE PARTIES' WRITTEN SETTLEMENT AGREEMENT**

Plaintiff Robert Smith Jr., by and through his representative, Diane Yeager Smith (collectively, "Smith") respectively requests the Court's assistance in helping the parties finalize a signed settlement agreement in this matter. To put a very fine point on it, Smith believes that Defendants are intentionally delaying the time for resolution of Smith's settlement because of its own budgeting and public relations issues. We foreshadowed these concerns the last time we were before the Court, and Smith now seeks the Court's assistance to finalize a written agreement. In support of this Motion, Smith states as follows:

      1.      On July 9, after two weeks of waiting for the City of Chicago ("City") to send its "standard agreement," the City sent Smith a draft agreement.

      2.      Two hours and 39 minutes later, Smith's counsel sent the City Smith's track changes to the agreement. (A copy of Smith's redline changes to the City's draft agreement was emailed to the Court's settlement email as Confidential Ex. 1). [1]

      3.      On July 24, after another two weeks elapsed, the City sent Smith a response draft that ignored every single substantive edit that Smith had made. (A copy of the City's response

---

[1] Because the City has requested that the settlement amount remain confidential until posted on the monthly agenda of the City Finance Committee, Smith has sent the exhibits referred to in this Motion to the Court's settlement email and refers to them as "Confidential Ex. __." Smith will file only this Motion, without exhibits, in the Court's public filing system.

1

Case: 1:21-cv-01159 Document #: 715 Filed: 07/31/25 Page 2 of 6 PageID #:32188

draft was emailed to the Court as Confidential Ex. 2). In addition to refusing to consider any of Smith's substantive edits, it is also inexplicable how it could have taken two weeks to produce this draft. See Exhibit 2.

4. On Monday, July 28, the parties conducted a meet and confer, and the City's primary position (with one exception related to paragraph 11) was, "this is our standard agreement, and we are not going to change it," and "the agreement is acceptable to other plaintiffs; it should be acceptable to you." (If this was the City's "standard agreement," why did they say they needed two weeks to produce it?, and why did it take another two weeks to say, "we reject all of your edits"?)

5. Smith informed the City that it would be bringing this Motion, and the City requested only that we note its opposition to the motion.

6. Smith has two primary concerns. First, the process should not be taking this long. As Smith noted in open court when the parties reached their agreement to settle, given Smith's advanced age, health conditions, and the fact that he borrowed heavily against his lawsuit at high interest rates so that he could survive and receive the care he needed, it is important that Smith obtain his place in line before the Finance Committee and City Council as soon as possible, so that he may be paid as soon as possible.

Second, the City's take-it-or-leave-it negotiating position is unacceptable.

7. More specifically, as set forth in Confidential Exhibits 1 and 2, the parties have substantive disagreements about several issues. Even a cursory review of the two drafts establish that the City refuses to move the Settlement Agreement to resolution so that it can be signed. While some of these issues, standing alone, may seem minor, cumulatively, they prejudice Smith if they are left as the City requests. Efforts to come to further resolution were unsuccessful.

2

**Paragraph 5** – under the City's version of the Agreement, there is no provision that affirmatively states, "the City agrees to pay Smith X." It is left in completely passive voice that Smith "agrees to accept X dollars to settle this case." Should the City choose not to pay, this provision, as written, is unenforceable. The City states that "this was sufficient for other plaintiffs," but the fact is that it shouldn't have been. The Agreement, in order to protect Smith, should, at a minimum, bind the City to pay the agree-upon amount.

**Paragraph 6** – a sentence has been moved verbatim from paragraph 6 to paragraph 7, where it makes more sense. For some unstated reason, this is unacceptable to the City.

**Paragraph 7** – the parties appear to be in agreement about the four conditions that must be met before payment, with one crucial exception: the City wants Smith to dismiss the case with prejudice *before* he receives his money. In Mr. Chanen's, Ms. Auerbach's, and Mr. Olstein's collective 82 years of practice, no party has ever asked them to release a defendant **with prejudice** before that party's obligations under the Settlement Agreement are also met. Indeed, counseling Mr. Smith to do so would be tantamount to malpractice. Should the City default on this obligation, the crux of the agreement from Smith's perspective, he would have no recourse if the case were already dismissed with prejudice. It is absurd to seek this provision, and the City's attempt to do so instead lays bare the fact that this, like the other positions the City takes, is solely for purposes of obfuscation and delay. In addition to being absurd, it shows little confidence in this Court's ability to quickly dispose of the case after the money is paid.

**Paragraph 8** – in addition to refusing to agree to bring the matter before the Finance Committee and then the City Council by a specific date (something Smith's counsel requested in open court, but tentatively agreed to forego), the City is now demanding *75 additional days* after City Council approval to make payment to Smith. There is no basis for it whatsoever, and Smith will not agree to wait until 2026 for his payment. He is paying extraordinarily high interest rates to borrow money to live in his present nursing home. That money is not unlimited, and the City is doing everything in its power to burden Smith to extend the time frame into the next calendar year.

**Paragraph 10** – The City wants to deduct from Smith's Settlement Amount any amount of money that Smith purportedly owes to the City of Chicago on the day of the settlement payment. Smith is unaware of any money that is or would be owed. In an effort to accommodate the City and to finalize the agreement, Smith agreed to this odd term provided that the City identify in advance any amounts that it plans to deduct. The City refuses to do so. Frankly, this complete lack of transparency and good faith on the part of the City suggests a "gotcha" in the works, and is a basis to strike the provision altogether. (If the City wants to collect on monies Smith owes – without saying what monies those are – it is certainly entitled to file its own lawsuit.)

**Paragraph 11** – Throughout the Agreement, the City uses the word Plaintiff interchangeably, sometimes to refer to Mr. Smith, sometimes to refer to Ms. Smith, and sometimes to refer to both. This is untenable, especially since there is an easy solution.

Mr. Smith should be referred to as Mr. Smith, and Ms. Smith should be referred to as Ms. Smith, precisely as Smith's counsel suggested during the meet and confer.

The City said in response that time it "really wants to get this right" and that "it would think about it" and get back to Smith's counsel, but no change of position has been conveyed since the City made this pronouncement – even after Mr. Chanen sent Draft 3 of the Agreement to the City's counsel, ensuring that even his own draft conformed to that suggestion. *See* Confidential Exhibit 3, the current draft between the parties. This is a fight over substance, not just pronouns. The City wants Ms. Smith to release claims she never asserted in the case and which have never previously been raised in settlement negotiations. The Court will recall during Motions in Limine that the City argued the exact opposite position, that Ms. Smith had no personal claims of her own and that she could not argue any damage to her before the jury. Nevertheless, they now want her to waive all personal claims that she purportedly had, could have had, or will have in the future, even though her role in the case was *solely as the representative of Mr. Smith*. Requiring a *personal* release from her – which was never part of the prior negotiations and which would require an additional amount of money from the City – is a completely unreasonable demand at this time. If they had wanted a personal release from Ms. Smith, it should have been raised previously.

**Paragraph 14** – The City drafted the Agreement and therefore should a dispute arise, the terms should be construed against the City. The City, however, wishes to release itself from such rule, and Smith disagrees.

**Paragraph 15** - The City wants Diane Smith to represent in the Agreement that "no other person or entity has or has had any interest in the claims or causes of action referred to herein," but Ms. Smith cannot do that because it is not accurate. As Smith has disclosed, he has received loans secured by the claims. Defendants cannot explain why they need this provision, but nevertheless insisted on re-inserting it even when after we struck it as untrue.

**Paragraph 4** – Smith has requested that a sentence in paragraph 4 purportedly stating why the parties agreed to settle to be stricken because it is both superfluous and inaccurate. The sentence does not reflect the reason Smith settled the case, and the parties' reasons are not germane to the settlement in any event. The City already has an agreed provision establishing that nothing in the agreement connotes an admission of liability. The City cannot demand that Smith agree to non-substantive "public relations" provisions with which he does not agree.

8. We recognize that the City is under financial stress and has received negative publicity for both the numerous cases it has settled in 2025 and the $120 million judgment against in one of the cases that went to trial, but it is completely unreasonable to put that on the back of a single plaintiff, especially one with Mr. Smith's health and financial conditions.

4

Mr. Gibson's settlement was approved by both the Committee and the Council expeditiously; Mr. Wilson's settlement was approved by the Committee expeditiously; and the City has failed to provide any explanation whatsoever why Smith is not being treated the same way.

9. Unfortunately, it has become clear to Smith that we the Court to break the impasse between the parties on the outstanding terms. In addition, given the transparent attempts to unreasonably delay the process, Smith renews the request he made previously to require the City to use its best efforts to get this matter before the Finance Committee by no later than the end of September and the City Council by no later than the end of October.

WHEREFORE, Plaintiff Robert Smith respectfully requests this Court to:

A. Order and conduct a continued settlement conference for the purpose of getting resolution on the outstanding issues or refer the matter to Magistrate Judge Weisman to do so; and

B. Order the parties to execute the Settlement Agreement within five business days of the terms being finalized; and

C. Order the City to use its best efforts to bring this Settlement Agreement before the Finance Committee for approval by no later than the end of September and before the City Council by no later than the end of October, 2025.

Dated: July 31, 2025

Respectfully submitted,
*PLAINTIFF ROBERT SMITH JR.*

By: /s/ *Stuart J. Chanen*

Stuart Chanen
Ariel Olstein
CHANEN & OLSTEIN
8822 Niles Center Road, Suite 100
Skokie, IL 60077
847-469-4669
Stuart@ChanenOlstein.com

Nicole Nehama Auerbach
ELEVATENEXT LAW, LLP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
312-676-5469
Nicole.auerbach@elevatenextlaw.com