IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Diane Yeager Smith, as special representative for Robert Smith, Jr., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21 C 1159 |
| v. | ) ) | Judge Jeffrey I. Cummings |
| The City of Chicago, et al., | ) ) | Magistrate Judge M. David Weisman |
| Defendants. | ) ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT ASSISTANCE IN FINALIZING THE TERMS OF THE PARTIES' WRITTEN SETTLEMENT AGREEMENT**

Defendants the City of Chicago ("City'), Phillip Cline, Steven Brownfield, William Pedersen, John Solecki, Robert Dwyer, Geri Yanow as special representative of the Estates of Daniel McWeeny, John A. Yucaitis, Robert Rice, and William Higgins ("Defendant Officers") (collectively "Defendants"), by their undersigned counsel, for their response in opposition to plaintiff's motion for court assistance in finalizing the terms of the parties' written settlement agreement, state as follows:

**INTRODUCTION**

After the parties reached a settlement in this matter, the City sent plaintiff's counsel its usual, standard written settlement agreement and release by the date ordered by the Court. The City's use of its usual, standard release and settlement agreement was not unexpected. Counsel for the City explicitly informed plaintiff on the record that the City accepted the Court's recommended settlement proposal "[s]ubject to City Council approval … and the execution of the usual Release and Settlement Agreement that the City of Chicago uses to resolve matters." Dkt. 717, 6.25.25 trans. 6:22-7:6. Counsel for the Defendant Officers reiterated this point, explaining "[a]s soon as

all of the documents – it is just the standard settlement agreement that, I am sure, Mr. Chanen has seen before. Once that is signed, then my understanding is, then the Law Department is in a position to get it where it needs to go, so that it starts moving through the process." *Id.* at 8:19-24. Neither plaintiff nor her counsel objected to the use of the City's usual, standard release and settlement agreement when mentioned, and plaintiff's counsel did not state that he was unaware of it.[1]

Nevertheless, plaintiff's counsel returned that standard settlement agreement and release with numerous stylistic and substantive changes. Although the City was able to agree to some of plaintiff's counsel's proposed revisions, it could not agree to others.[2] Despite plaintiff's insistence on certain terms that the City cannot agree to, plaintiff now accuses the City of "intentionally delaying" the settlement. But plaintiff's desire for a complete revamp of the City's usual, standard release and settlement agreement—a document used in virtually all the City's police misconduct settlements—is the cause of any delay. The City's settlement agreement is crafted so that it can as a municipality maintain continuity and consistency in all its litigation. Unless special circumstances warrant an exception, the Department of Law avoids substantive deviations.

While the City appreciates that plaintiff would like to bring this to a close, so would the City. The best way to do that is not engage in motion practice, but to accept the usual terms that virtually every other plaintiff does. That Robert Smith "borrowed heavily against his lawsuit at high interest rates" does not require the City to unilaterally accept plaintiff's terms. Also, Mr. Smith is not unique in his decision to opt for high interest prelitigation loans. It is a risk he took,

---

[1] In fact, in a previous settlement letter to plaintiff's counsel, the City informed plaintiff that any settlement would be "subject to the parties' execution of the City's standard Release and Settlement Agreement and approval by the Chicago City Council." Plaintiff cannot complain that she is unaware that the City would use its usual, standard release and settlement agreement.

[2] Plaintiff's Motion (at ¶4) contains quotations purportedly attributable to "the City." These quotations are inaccurate, and it is unclear why plaintiff has represented those statements as quotations.

not the City. And presumably, that loan is a reason to settle now rather than go to trial in this case. In the end, plaintiff can receive the money within 60 days of City Council approval, assuming the other terms completely within plaintiff's control are met before that approval.

## DISCUSSION

After a plaintiff and the City agree to a settlement, the typical next step is for the plaintiff to review and execute the City's usual, standard release and settlement agreement. After that is completed, the case will be entered into a queue for presentation to the City Council for final approval. The City's attorneys cannot guarantee that a certain case will be presented to the City Council by a certain month, as that decision is made by City Council. Moreover, the City Council limits the amount of settlements it will consider at each monthly meeting. But again, in order for a settlement to be entered into the queue for consideration at a future City Council meeting, the City and plaintiff must first execute the settlement agreement.

As an initial matter and emblematic of the difficulties in reaching a final written release and settlement agreement, plaintiff's counsel still maintains the erroneous belief that Robert Smith is the plaintiff. He is not. This Court explicitly explained that Diane Yaeger Smith is the plaintiff. Dkt. 678 at 2 n.1 ("Thus, Diane was substituted as a party and plaintiff 'step[ped] into the same position of the original party.'"). Ms. Smith attended the settlement conference as a party. The Court further confirmed that fact during the June 10, 2025 status hearing. Dkt. 692 at 21:2-4. That plaintiff's counsel will not accept the reality of the circumstances of the case defeats plaintiff's assertion that the "delays" are attributable to the City. More importantly, the identity of plaintiff is

crucial to executing a written release and settlement agreement and is the subject of certain disputes as discussed below. The City responds to each of plaintiff's objections as follows.[3]

**"Paragraph 5:"** The provision Plaintiff's counsel takes issue with (which is in paragraph 6 of the City's current draft) states

> "Plaintiff, Diane Yeager Smith, as Special Representative for Robert Smith, Jr., accepts a settlement from Defendant City of Chicago in the total amount of [REDACTED], with each party bearing its own costs and attorneys' fees."

This paragraph is designed to affirmatively state that plaintiff accepts the settlement amount agreed upon. Plaintiff's counsel proposed a change to include a clause that "City of Chicago agrees to pay . . .". Plaintiff's counsel argues that the language is necessary because "there is no provision that affirmatively states, 'the City agrees to pay Smith X.'" Motion at 3. Plaintiff's counsel contends that the provision is unenforceable as written, but he is ignoring the rest of the agreement. He neglects to tell this Court that there is an entire paragraph (paragraph 8) explaining the City's obligation, including, "The City agrees to pay Plaintiff the total settlement amount specified in paragraph 6 herein." Paragraph 8, as well as paragraph 7, explain what conditions must be met before the City's obligation to pay is enforceable. That is the reason that the City does not state in the earlier paragraph simply that it agrees to pay the amount. The payment is conditioned upon specific events, including City Council approval.

**"Paragraph 6:"** Plaintiff next complains that the following sentence found in paragraph 5 of the City's current draft should be moved to a different paragraph where it "makes more sense."

> Plaintiff agrees that she will be required to execute this Release and Settlement agreement prior to the City's presentation of the Settlement Agreement to the Chicago City Council and that Plaintiff's offer to settle on these terms shall not be

---

[3] Plaintiff does not identify which draft of the agreement she is referring to when referencing specific paragraph numbers in her motion. The City will refer to the draft at Confidential Exhibit 2, which incorporated some of plaintiff's proposed revisions but rejected others.

> revoked or otherwise repudiated unless the Chicago City Council rejects the Settlement Agreement.

The City disagrees that it makes "more sense" to move that sentence. The sentence in question is in a paragraph that sets forth plaintiff's duties, *i.e.* dismissing all claims against all defendants and executing the release and settlement agreement before the matter may be presented to the City Council. Logically, and consistent with the numerous other release and settlement agreements the City has entered into with settling plaintiffs, this sentence belongs in ¶5. Further, if the only argument plaintiff's counsel has for moving this paragraph is essentially for better flow, it seems silly to engage this Court in this dispute.

**"Paragraph 7:"** Plaintiff objects to this clause found in paragraph 7 of the City's current draft:

> The City will not be obligated to perform its obligations pursuant to this Release and Settlement Agreement until the following events occur: . . . (3) the court enters an order dismissing this case **without prejudice** which automatically converts to a dismissal with prejudice seventy-five (75) days from the entry of the order, with each party bearing its own costs and attorney.

(Emphasis added). Somehow, plaintiff argues that the City wants plaintiff "to dismiss the case with prejudice *before* he [sic] receives his [sic] money." Plaintiff's counsel apparently misread the agreement. Nothing requires plaintiff dismiss this case with prejudice before payment has been made. The 75 days for conversion to "with prejudice" is purposefully longer than the 60 days required for payment. The parties can file the stipulation to dismiss at the time of City Council approval, and as long as the other conditions have already been met, payment will be made 15 days before the conversion.

Moreover, the standard proposed stipulation to dismiss the City intends to use states as follows:

> IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto, by their respective attorneys of record, that this matter has been settled by the parties and, therefore, all claims related to this cause should be dismissed without prejudice, to be automatically converted to dismissal with prejudice 75 days from

5

> the entry of the Court's order, unless a party has moved to extend this date prior to the expiration of the 75 days. Each side shall bear its own costs and attorneys' fees.

Thus, if the payment does not occur within the 75 days, there is nothing preventing either party from asking the court to extend that deadline for the conversion.

**"Paragraph 8:"** Paragraph 8 in the City's current draft of the agreement states, "The City agrees to pay Plaintiff the total settlement amount as specified in paragraph 6 herein within sixty (60) days of" certain conditions being met—primarily, a dismissal order entered, City Council approval, and plaintiff's destruction of confidential materials. Plaintiff argues the "City is now demanding 75 additional days after City Council approval to make payment to Smith." The City has no idea what plaintiff is referring to regarding as the language is clear that payment occurs in 60 days.

Moreover, plaintiff proposes that the City change the timeline to state "The City will be obligated to pay the Settelment [sic] Amount within five business days of the following four conditions being met . . . ." Conf Ex. 2, ¶ 8. That is not feasible, not only from a pure logistical standpoint, but also what the City agrees to for one plaintiff will be demanded by all others. Sixty days allows the City's Department of Finance sufficient time to process the funds. Settlements the size of plaintiff's especially warrant the period of 60 days. In a City as large as Chicago, the City is constantly processing payments of every type, not just settlements. And as typical of large corporations and government entities, it is not as simple as cutting a check. Sixty days allows the City enough time to properly manage its fiscal, legal, and regulatory obligations in processing and distributing payments, in light of the high-volume of payment processing that occurs on a daily basis. No doubt every plaintiff would prefer to be paid in 5 days, but that is simply not a feasible request.

6

**"Paragraph 10:"** Plaintiff objects to the language requiring deductions from the settlement amount of any money that Robert Smith may owe to the City of Chicago. The City of Chicago's Municipal Code requires that the "Comptroller shall set off against such payment the amount of the debt due and owing to the City, including all associated interest, fees, and expenses. The Comptroller shall fully apply the set off amount before paying the remaining payment amount to the person entitled to payment from the City." Chi. Mun. Code § 1-19-040. This set off is required by law. Plaintiff argues that the City refuses to give notice of any debt owed by Mr. Smith, but rather the City rejected plaintiff's request to make it a condition upon which the City would follow this ordinance, inserting that the City must "notif[y] Smith's counsel in writing of any such sums (then known to the City) at least by the date that the City Council votes on the Release and Settlement Agreement." Conf. Ex. 2, ¶ 10. The ordinance does not require that step, and the Comptroller's duty under the ordinance is not subject to that condition. The City cannot bind itself to an agreement that amends the Comptroller's obligations under the ordinance. When the Comptroller conducts the debt check at the time the payment request is submitted, the City will as a courtesy (as it does as a matter of course) provide the results and documentation provided by the Comptroller to plaintiff's counsel so they will be aware of the amount that will be set off. The City cannot agree to a condition precedent to the Comptroller's duty to set off debt that is not contained in the ordinance.

**"Paragraph 11:"** Plaintiff's counsel next asserts that plaintiff, Diane Smith, should not be obligated to release any claim "arising either directly or indirectly out of the incident which was the basis of this litigation." Again, Diane Smith is the plaintiff as Mr. Smith's special representative, serving as guardian to Mr. Smith. This paragraph prevents her from bringing a suit

7

out of these events. There would be no point in this settlement if she were permitted to sue the City again for the same events.

That being said, the City believes it is appropriate to clearly add that plaintiff is releasing on behalf of Mr. Smith, so it proposes the following paragraph[4]:

> Plaintiff does hereby release and forever discharge on behalf of herself, Mr. Smith, and their executors, administrators and assigns, all claims she or Robert Smith, Jr. had or has/have or may have in the future against the Individual Defendants, Former CPD Superintendent Philip Cline, Steven Brownfield, William Pedersen, John Solecki, Geri L. Yanow, as Special Administrator for the Estates of Daniel McWeeny, John Yucaitis, Robert Rice, and William Higgins, and the City of Chicago, and its future, current or former officers, agents and employees, including but not limited to all claims she or Robert Smith, Jr. had, has/have, or may have in the future, under local, state, or federal law, arising either directly or indirectly out of the incident which was the basis of this litigation, and that such release and discharge also are applicable to any and all unnamed and/or unserved Defendants.

**"Paragraph 14:"** In what is paragraph 13 of the City's current draft of the agreement, plaintiff proposes removing the sentence: "Terms contained herein shall not be construed against a party merely because that party is or was the principal drafter." Plaintiff argues that disputes in the release and settlement agreement should be construed against the City. The City disagrees. Plaintiff's counsel, who claim "82 years" of collective experience as attorneys, have had the opportunity to review the release and settlement agreement and are now litigating over terms. There is no reason for the City to be construed as the more sophisticated party.

**"Paragraph 15:"** Plaintiff wishes to delete the language that "no other person or entity has or had any interest in the claims or causes of action referred to herein" because Robert Smith has "received loans secured by the claims." The fact that Mr. Smith has loans that may give others an interest in the settlement, is exactly why this language is necessary. That is not a reason to remove the language, but a reason to disclose what those obligations are.

---

[4] This language differs slightly from the language discussed during the parties' conferrals.

"**Paragraph 4:**" In paragraph 4 of the City's current draft, plaintiff rejects the language that "the Parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy" because it is "superfluous and inaccurate," and suggests this is some public relations move for the City. This clause is for the parties to acknowledge the benefits that a settlement conveys to both parties which is one of the bases for entering the agreement. Judges emphasize these as the exact reasons parties should enter settlement. Plaintiff certainly believes that time is a factor in her decision to reach a settlement instead of proceed to trial. This Court recognized a settlement was "the best way to resolve this case." Dkt. 717 at 12:10-11.

Finally, plaintiff argues at the end of page four of her motion that two individuals, Mr. Wilson and Mr. Gibson, had settlements that were recently approved by City Council "expeditiously" but "the City has failed to provide any explanation whatsoever why Smith is not being treated the same way." The two individuals referenced by plaintiff executed and returned the City's usual, standard release and settlement agreement, and their cases were then placed into the queue for presentment to the City Council. This is exactly the process by which the City is operating with plaintiff here. The only delay that is unique is that plaintiff has demanded substantive changes the City does not accept and has filed this motion, delaying the process. Mr. Gibson and Mr. Wilson agreed to the terms, including timing of payment, that plaintiff objects to. Of course, plaintiff's counsel is free to request revisions. But the City is not required to assent to them. Ultimately, plaintiff's counsel's questionable and often unexplained opposition to the City's standard agreement is the cause of any delay, because the execution of a written release and

9

settlement agreement is a requirement before the settlement may be presented to the City Council for approval.

Respectfully submitted,

| | |
|---|---|
| PHILIP CLINE, ESTATE OF DANIEL MCWEENY, STEVEN BROWNFIELD WILLIAM PEDERSEN JOHN SOLECKI ROBERT DWYER ESTATE OF JOHN YUCAITIS ESTATE OF RICE ESTATE OF WILLIAM HIGGINS | MARY B. RICHARDSON-LOWRY Corporation Counsel of the City of Chicago By: *s/ Daniel M. Noland* Special Assistant Corporation Counsel |
| /s/ *Stacy A. Benjamin* Special Assistant Corporation Counsel | Terrence M. Burns Daniel M. Noland Paul A. Michalik Molly E. Thompson Daniel J. Burns Burns Noland LLP 311 S. Wacker Dr., Suite 5200 Chicago, IL 60606 T: 312-982-0090 dnoland@burnsnoland.com |
| Eileen E. Rosen Stacy A. Benjamin Andrew J. Grill Brittany D. Johnson ROCK, FUSCO & CONNELLY, LLC 333 W. Wacker, 19th Fl Chicago, IL 60606 T: 312-494-1000 sbenjamin@rfclaw.com | |

10

**CERTIFICATE OF SERVICE**

    I hereby certify that on **August 7, 2025**, I electronically filed the foregoing **Defendants' Response in Opposition to Plaintiff's Motion for Court Assistance in Finalizing the Terms of the Parties' Written Settlement Agreement** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to counsel of record.

                                                         s/ *Daniel M. Noland*